# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC. 701 South 22nd Street Philadelphia, PA 19146 | : : : : : : : | No.  21-cv- |
| and | : : | |
| CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH 701 South 22nd Street Philadelphia, PA 19146,                    Plaintiffs,          v. | : : : : : : : | |
| ANTHONEE PATTERSON 1544 West 25th Street Jacksonville, FL 32209 | : : : : | |
| and | : : | |
| ROCHELLE BILAL, in her official capacity as Sheriff of Philadelphia County 100 South Broad Street, 5th Floor Philadelphia, PA 19110,                    Defendants. | : : : : : : | |

**VERIFIED COMPLAINT**
**CIVIL ACTION -- EQUITY**

Plaintiffs, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church Corporation") and the Church of the Lord Jesus Christ of the Apostolic Faith (the "Church"), by and through their attorneys, Fox Rothschild LLP, hereby assert the following claims against Defendants, Anthonee Patterson ("Patterson") and Philadelphia County Sheriff Rochelle Bilal ("Sheriff Bilal"), as follows:

## INTRODUCTION

1.     Plaintiffs file this Complaint against Defendants to prevent the unconstitutional taking of their Church sanctuary and other property based upon arbitration adjudications, an improperly entered judgment, Writ of Possession and Eviction Notice against the Church Corporation – all of which were issued in a case to which neither the Church nor Church Corporation was a party.

2.     The harm at stake here cannot be overstated:  If Patterson, through Sheriff Bilal, is allowed to act on the improper adjudications and judgment, the First, Fifth, and Fourteenth Amendment rights of the Plaintiffs and the Church's more than 6,000 members will be eviscerated. The Church will be forced by the actions of the Commonwealth to accept Patterson as a member of the Church (he was excommunicated in 1992) and as President of the Church Corporation, in clear violation of the First Amendment.  Such a result would deprive Plaintiffs and their parishioners of their constitutional rights.  It would be nothing short of a state-mandated establishment of religion by effectuating an unconstitutional change in leadership within the Church and Church Corporation.

3.     In fact, Patterson has obtained a Writ of Possession and an Eviction Notice was posted by Sheriff Bilal to remove Plaintiffs and their congregants from the Church's sanctuary,

and to prevent Bishop Shelton from conducting services as the Church's spiritual leader, less than two weeks before Christmas. *See* Ex. A, Writ of Possession and Eviction Notice.[1]

4.      The Pennsylvania Commonwealth Court has unequivocally determined that neither the Church Corporation nor the Church were named as parties to the Philadelphia Court of Common Pleas case captioned as *Anthonee Patterson v. Kenneth Shelton*, July Term, 1995, No. 2945 (the "**Patterson Action**"). *See* Ex. B, 2008 Pennsylvania Commonwealth Court opinion in *GlassRatner Management & Realty Advisors, LLC v. General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., et al.*, Nos. 1144, 1568 C.D. 2006 (Pa. Commwth. Ct. Jan. 31, 2008), at p. 3 ("*GlassRatner Opinion*").

5.      The *GlassRatner Opinion* is the *only* Pennsylvania appellate decision to which the Church and Church Corporation were parties that addressed the issue of whether they were parties to the **Patterson Action**. Thus, that decision by the Commonwealth Court is the only binding precedent that this Court can follow.

6.      In the 25-plus years since the **Patterson Action** was filed, Patterson has not sought to join the Church or Church Corporation in that Action:

- they were not named as parties when the **Patterson Action** was filed in 1995;

- they were not sought to be added as parties when that Action was revived in 2004;

- they were not sought to be added after the 2008 *GlassRatner Opinion*, in which the Commonwealth Court expressly found that the Church and Church Corporation were not parties to the **Patterson Action** and remanded that **Action** for further proceedings; and

- they were not added in the 13 years since the **Patterson Action** was remanded for those further proceedings, including trials in 2011 (before Court of Common Pleas

---

[1] The Writ of Possession and Eviction Notice was stayed pursuant to the Court of Common Pleas Order on December 2, 2020. That Order was obviated by a subsequent Order issued on January 27, 2021 denying Bishop Shelton's Emergency Motion for Permanent Injunction. Thus, Patterson, with the assistance of Sheriff Bilal, intends to enforce the Writ of Possession and Eviction Notice immediately.

Judge Maier) and 2014 (before Court of Common Pleas Judge Beck Dubow) which neither the Church nor Church Corporation attended or were compelled to attend.

7.     In short, Patterson has never joined the Church or Church Corporation to the **Patterson Action**. *Id.*

8.     Notwithstanding the fact that the Commonwealth Court found that the Church and Church Corporation were not parties to the **Patterson Action**, Patterson sought and has improperly obtained a judgment in that **Action** against the Church Corporation.

9.     Patterson now seeks to seize assets held by the Church Corporation (which are held on behalf of the Church) and install himself as president of the Church Corporation and fill the Board of Trustees with his "minority faction."  But neither Patterson nor his "minority faction" are members of the Church or Church Corporation – they left or were excommunicated nearly 30 years ago.

10.    It is axiomatic that a judgment cannot be enforced against a non-party where that non-party has never been served with process or been a party to the underlying case.

11.    Patterson's attempt, through Sheriff Bilal, to execute on the judgment in the **Patterson Action** is the latest salvo in his decades-long attempt to extract the assets held by the Church Corporation and take control of the Church and Church Corporation.  This cannot be permitted by this Court.

12.    Because Patterson's effort to execute on the judgment from the **Patterson Action** against the Church Corporation is nothing more than an attack on the most basic due process and First Amendment rights of the Church and Church Corporation, Plaintiffs are forced to file this action and seek injunctive relief to protect their property and constitutional rights.

## THE PARTIES

13.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

14.     The Church, which was established more than 100 years ago, is an unincorporated religious society headquartered at 701 S. 22nd Street in Philadelphia, Pennsylvania.  Ex. C, Declaration of John R. Brown ("Brown Decl.") at ¶ 3. The Church is a national religious organization with more than 50 satellite churches across the country and more than 6,000 members nationwide (25% of whom are in Pennsylvania).  *Id.* at ¶¶ 5, 12.

15.     The Church Corporation, with a principal place of business located at 701 S. 22nd Street in Philadelphia, Pennsylvania, is organized under the Pennsylvania Nonprofit Corporation Law.  *Id.* at ¶ 11.  The Church's business interests are handled by the Church Corporation, which manages property for the members.  *See* Ex. D, *Church of the Lord Jesus Christ of the Apostolic Faith, Inc., et al. v. Shelton, et al.*, 773 A.2d 1290 (Pa. Commwth. Ct., Nos. 376, 559 C.D. 2000, filed April 10, 2001), *appeals denied,* 790 A.2d 1019 (Pa. 2001) and 812 A.2d 1231 (Pa. 2001) ("***Shelton I***") at p. 1.[2]

16.     The Church Corporation is led by a Board of Trustees.

17.     Members of the Board of Trustees have always been members of the Church. Ex. C, Brown Decl. at ¶ 19.

18.     In addition, all of the Church Corporation Trustees are also clergy in the Church. *Id.*

---

[2] Patterson was a party to one of the underlying actions that were consolidated by the Commonwealth Court in ***Shelton I.***

19.     Anthonee Patterson is an individual who, upon information and belief, resides in Jacksonville, Florida.  Upon information and belief, Patterson is the head of a small church using the same or a similar name as the Church in this case, but he and that church entity are not affiliated with Plaintiffs here.

20.     ***Patterson is not a member of Plaintiffs' Church.***  He was excommunicated in 1992 after he and other Church members left the Church following the death of the Church's former leader, Bishop S. McDowell Shelton.

21.     Further, in an August 31, 2006 Proclamation from the Church's Council of Priests, the Church declared that it "will not accept Anthonee Patterson or any of those who aid, abet or associate with him as members or officers of this Church, as they have demonstrated that they hold religious and doctrinal views contrary to our own."  Ex. E, August 31, 2006 Council of Priests Proclamation ("Proclamation"); *see also Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 416 (3d. Cir. 2012).[3]

22.     Patterson has not attended Plaintiffs' Church in more than 30 years, he does not accept Bishop Kenneth Shelton as the General Overseer and spiritual leader of Plaintiffs' Church, and he has not tithed or made any donations during that period of time, all in violation of the Church's requirements and doctrine.  Ex. C, Brown Decl. at ¶¶ 28, 29. For all of these reasons, and pursuant to Church doctrine and by-laws, Patterson is not a member of the Church.

23.     Sheriff Bilal serves as the Sheriff of the City and County of Philadelphia with a principal place of business located at 100 South Broad Street in Philadelphia.  She is being sued in her official capacity.  Patterson has enlisted Sheriff Bilal to execute a Writ of Possession in order to seize Church Corporation property, including the Church's sanctuary, and to install

---

[3] Plaintiff in the *Askew* case, Joseph Askew, was (and may still be) a member of the church led by Patterson.

himself as President and/or receiver of the Church Corporation, a member of the Church and General Overseer of the Church based on arbitration adjudications issued in the **Patterson Action** to which the Church and Church Corporation were not parties.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the laws and Constitution of the United States.

25.     This Court should exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise from the same case or controversy that give rise to jurisdiction under 28 U.S.C. § 1331.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the claims asserted by Plaintiffs arose within this District.

## FACTUAL BACKGROUND

27.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

28.     The Church was founded in 1919 by Bishop S.C. Johnson.  *See* Ex. D, ***Shelton I*** at p. 1; *Askew*, 684 F.3d at 415-16.

29.     The Church is hierarchical in nature, operating its headquarters and housing its administrative offices in Philadelphia.  Ex. C, Brown Decl. at ¶ 6.

30.     The Church's highest judicatory body is its spiritual leader, known as the General Overseer.  *Id.* at ¶ 8; *Askew*, 684 F.3d at 420.

31.     The Church Corporation "is the secular arm of the Church and was established as a nonprofit corporation in 1947."  *Id.*  The Church Corporation "is the legal owner of all property of the Church."  Ex. D, ***Shelton I*** at p. 1.

32.     Following the death of Bishop Johnson, Bishop S. McDowell Shelton "served as General Overseer of the Church and President of the Corporation from 1961 until his death on October 13, 1991." *Id.*; *Askew*, 684 F.3d at 416.

33.     This case has its genesis in the 1991 death of Bishop S. McDowell Shelton, which led to a bitter struggle over control of the Church and Church Corporation.[4] Ex. D, ***Shelton I*** at p. 2; *Askew*, 684 F.3d at 416.  That struggle resulted in numerous lawsuits, "the fundamental question [in each being] who has the legal right to control the [Church] Corporation and the property." Ex. D, ***Shelton I*** at p. 3; *see also Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton*, 740 A.2d 751, 753 (Pa. Commwth. Ct. 1999).

34.     Ultimately, the Commonwealth Court found that Kenneth Shelton ("Bishop Shelton") was the rightful General Overseer of the Church following the death of S. McDowell Shelton.  *See* Ex. D, ***Shelton I*** at p. 25; *Askew*, 684 F.3d at 416.

35.     Thus, since 1992, the Church has been led by Bishop Shelton.

36.     Pursuant to the Church's by-laws, the General Overseer manages the affairs of the Church. Ex. D, ***Shelton I*** at p. 2.

37.     "Whoever serves as the General Overseer of the Church also serves as the President of the Board of Trustees of the [Church] Corporation." *Id.*; *see also Askew*, 684 F.3d at 416.  Both of those are lifetime positions. Ex. D, ***Shelton I*** at p. 2; *Askew*, 684 F.3d at 416.

38.     Those two positions are intertwined and both are based on the religious beliefs of the Church. Ex. C, Brown Decl. at ¶¶ 14, 19.  Indeed, all of the trustees are members of the

---

[4] In 2008, Patterson was found to have improperly taken more than $1.6 million from the Estate of S. McDowell Shelton and was ordered to return those funds.  Ex. F, Opinion Sur Appeal, *In re: S. McDowell Shelton, Deceased*, No. 1569 DE of 1994 (Pa. Com. Pl., Dec. 31, 2008) (Herron, J.) at pp. 25-26.  That money was never returned to the Estate.

Church's clergy and their responsibilities include supporting the Church and Bishop Shelton in their spiritual mission.  *Id*. at ¶ 19.

39.     During his tenure, Bishop Shelton has represented the Church throughout the world and met with religious and political leaders such as Pope John Paul II, Nelson Mandela, King Hussein of Jordan, and Prime Minister Yitzhak Rabin of Israel.  *Id.* at ¶ 22.

40.     In ***Shelton I***, the Commonwealth Court upheld the lower court's finding that "Anthonee Patterson was never validly elected General Overseer" of the Church.  Ex. D, ***Shelton I*** at pp. 9, 21; *see also Askew*, 684 F.3d at 416.

41.     The findings and rulings in ***Shelton I*** have never been vacated or overturned, and remain binding on Patterson, who was a party to that case.

42.     In 1995 Patterson filed the **Patterson Action** against Bishop Shelton and Erik Shelton (a Church Corporation board member) in which he claimed that:  (a) he, not Bishop Shelton, was confirmed as the General Overseer and President of the Church Corporation; (b) Bishop Shelton failed to present an annual report of the financial affairs of the Church Corporation from 1991-1994 as alleged to be required by the Pennsylvania Nonprofit Corporation Law; and (c) Bishop Shelton "looted" Church and Church Corporation funds.  Ex. B, ***GlassRatner Opinion*** at pp. 3-4.

43.     The relief Patterson sought in the **Patterson Action** was "pursuant to Section 5793(b) of the Nonprofit Corporation Law" and included:  (a) the appointment of a receiver to take control of Church Corporation property, account and records (even though the Church Corporation was not a party to the Patterson Action); (b) an order requiring Bishop Shelton or a receiver to issue annual financial reports for the Church Corporation for 1991-1994; (c) an accounting of funds removed from Church or Church Corporation accounts by Bishop Shelton or those acting in

concert with him; (d) an order confirming Patterson as General Overseer (even though the Commonwealth Court determined in *Shelton I* that Bishop Shelton was the rightfully elected General Overseer and Patterson was not); and (e) an order calling for elections to be held for offices the court finds to be vacant (even though the Nonprofit Corporation Law provides for no such relief). *Id.* at pp. 4-5.

44.     As the Commonwealth Court determined, the "Church and [Church] Corporation are not named parties to [the **Patterson Action**]." *Id.* at 3. Thus, as explained below, Patterson could not obtain the relief he sought in the **Patterson Action** as due process prohibits such relief against a non-party.

45.     The **Patterson Action** was stricken from the docket on February 22, 1996 and remained so until December 2004, when Patterson filed a motion to reinstate it. *Id.* at p. 5. That motion was granted and the **Patterson Action** was reinstated.

46.     Significantly, all of the prior lawsuits concerning control of the Church and Church Corporation were resolved before the Patterson Action was reinstated in 2005 and thus the issue of who was the rightful General Overseer had been conclusively decided by the Commonwealth Court.

47.     On November 30, 2005, "Patterson and [Bishop] Shelton agreed to proceed to binding arbitration with no right of appeal and the same was memorialized in a written order dated January 10, 2006."[5]  *Id.*; *see also* Ex. G, Arbitration Agreement; Ex. H, Jan. 10, 2006 Order in **Patterson Action**. Significantly, the Commonwealth Court found that *only* Patterson and Bishop Shelton agreed to arbitration – not the Church or Church Corporation. Ex. B, *GlassRatner Opinion* at p. 5.

---

[5] Erik Shelton was dismissed from the case before Patterson and Bishop Shelton proceeded to arbitration.

48. Moreover, as recently as this past June, Patterson himself represented to the United States Supreme Court that the parties to the arbitration agreement were Patterson and Shelton and explained that, "[f]ollowing years of litigation, **Shelton and Patterson** voluntarily agreed to binding common law arbitration to resolve **all remaining disputes** . . . ." and quoted the arbitration agreement as stating that "'this arbitration will be binding on **both parties** [Patterson and Shelton] with no right to appeal.'"  *See* Ex. I, Patterson's June 11, 2020 Submission to the United States Supreme Court (emphasis added).

49. The arbitration in the **Patterson Action** resulted in a number of "adjudications," including adjudications that purported to turn over the assets held by the Church Corporation to Patterson's "minority faction," which the arbitrator found had "acted in harmony with the laws, usages and customs" of the Church, notwithstanding that such a finding clearly violates the First Amendment as discussed below.  Ex. B, **GlassRatner Opinion** at p. 6.

50. The adjudications further appointed GlassRatner Management & Realty Advisors, LLC ("GlassRatner") as receiver for the Church and Church Corporation.  *Id.*  GlassRatner was tasked with, among other functions, conducting an accounting of Church Corporation finances. The adjudications also ordered – in direct contradiction of the Commonwealth Court decisions in **Shelton I** – that all officers of the Church Corporation be removed and that elections for the office of General Overseer and President of the Church Corporation be conducted after GlassRatner's accounting and report.[6]  *Id.*

51. The only arbitration decisions that have ever been confirmed by a court are the April 26, 2006 "Adjudication" and the May 8, 2006 "Supplemental Adjudication."  Ex. J, April

---

[6] Several Church Corporation officers also were required to pay back money they received or spent on behalf of the Church; but like the Church and Church Corporation, none of the officers was a party to the arbitration or the Patterson Action, and thus, as non-parties, could not be affected by decisions in these matters.

26, 2006 Adjudication; Ex. K, May 8, 2006 Supplemental Adjudication.   Neither of those confirmed decisions provides for the transfer of property to Patterson.

52.    A Final Adjudication and Decree was issued on July 25, 2006.  Ex. L, July 25, 2006 Final Adjudication and Decree. Although the Final Adjudication and Decree was never confirmed, it purports to remove all officers from the Church Corporation (including Bishop Shelton), require a vote for all Church Corporation trustees, require a vote for General Overseer of the Church, and transfer all Church property to Patterson's "control and responsibility as receiver."   *Id.* at p. 10, ¶¶1-3.

53.    The basis of the Final Adjudication and Decree is that Patterson and his "minority faction" have been shown "to have acted in harmony with the laws, usages and customs accepted by the [Church] before the dispute and dissension arose."  *Id.*

54.    Bishop Shelton timely filed petitions to vacate the arbitration Adjudication and Supplemental Adjudication, and Patterson filed a petition to confirm them.  Ex. B, *GlassRatner Opinion* at p. 7.  The trial court in the **Patterson Action** denied Bishop Shelton's petitions to vacate and, instead, entered judgment "in favor of Patterson and against [Bishop] Shelton", and confirmed the April 26, 2006 Adjudication and May 8, 2006 Supplemental Adjudication.  *Id.*; *see also* Ex. M, August, 2006 Opinion and Order of trial court in Patterson Action confirming April 26, 2006 Adjudication and May 8, 2006 Supplemental Adjudication.

55.     Bishop Shelton timely appealed to the Commonwealth Court the denial of his petition to vacate the arbitration adjudications.  Ex. B, *GlassRatner Opinion* at pp. 7-8.

56.    In 2008, the Commonwealth Court vacated the arbitration award and adjudications on the grounds that the arbitrator had exceeded the scope of his authority by granting relief outside that asked for in the **Patterson Action** Complaint, the Arbitration Agreement and what was

permitted by the Nonprofit Corporation Law.  *See* Ex. N, *Patterson v. Shelton*, Nos. 1967, 1968 C.D. 2006, 2008 WL 9401359 (Pa. Commwth. Ct. Jan. 31, 2008) ("*Shelton II*").

57.    Following the arbitration decisions – but before the Commonwealth Court vacated them in 2008 – GlassRatner began acting as receiver for Patterson and sought to take control of the assets of the Church and Church Corporation.  Ex. B, *GlassRatner Opinion* at p. 8.  In that regard, GlassRatner – in a separate action – filed an emergency petition for special injunction against the Church and Church Corporation to prevent dissipation of assets and to compel access to the buildings, offices and assets of the Church and Church Corporation.  *Id.* at pp. 8-9.  The trial court granted that petition.  *Id.* at p. 9.

58.    At the same time, the Church and Church Corporation filed a separate action against GlassRatner and Patterson in which they asserted that they were not parties to the **Patterson Action** or the arbitration, and therefore could not be bound by the arbitrator's decisions.  *Id.*  In addition, they claimed that the trial court lacked subject matter jurisdiction because the Church and Church Corporation were indispensable parties to the **Patterson Action** but were never joined to it or served with process in the same.  *Id.*

59.    In their action against GlassRatner and Patterson, the Church and Church Corporation sought, among other relief, a temporary restraining order enjoining Patterson and GlassRatner from seeking to enforce the arbitration adjudications or to take any action against the Church or Church Corporation, and a declaration that the Church and Church Corporation "were not made parties to the arbitration or the [**Patterson Action**]."  *Id.* at pp. 9-10.  Patterson and GlassRatner filed preliminary objections, which were sustained by the Court and the Complaint was dismissed.  *Id.* at p. 10.  The Church and Church Corporation timely appealed to the Commonwealth Court.

60.     On January 31, 2008, the Commonwealth Court issued two opinions:  (a) an opinion in the **Patterson Action** vacating all of the arbitration decisions (*see* Ex. N, **Shelton II**); and (b) an opinion in the consolidated cases – GlassRatner against the Church Corporation; and the Church Corporation and Church against GlassRatner and Patterson (collectively, the "**GlassRatner Actions**") – reversing the trial court's dismissal of the Complaint and finding that the Church and Church Corporation were not named as parties to the Patterson Action or the arbitration.  Ex. B, *GlassRatner Opinion* at pp. 3, 5, 10-12.

61.     Both the **Patterson Action** and **GlassRatner Actions** were remanded to the trial court and proceeded separately.  The **GlassRatner Actions were** resolved in 2010.  No further appeal of the **GlassRatner Actions** was taken.   Thus, the Commonwealth Court's 2008 *GlassRatner Opinion* is the binding appellate authority.  *See generally* Ex. B.

62.     The **Patterson Action** took a much more circuitous route.[7]  It proceeded – without the Church or Church Corporation, which had never been parties to that case or made parties to it – until 2014 when the trial court found "that it lacked subject matter jurisdiction over [the] dispute …. [b]ecause the matter requires interpretation of religious doctrine and the same would be prohibited by the First Amendment."  Ex. O, *Patterson v. Shelton*, No. 1312 C.D. 2016, 2017 WL 5760009 (Pa. Commwth. Ct. Nov. 29, 2017) ("**Shelton III**") at p. 5.  As a result, the **Patterson Action** complaint was dismissed.  *Id.*

63.     Patterson appealed that decision to the Commonwealth Court, which affirmed the trial court.  *Id.*  Patterson also sought allowance of appeal to the Pennsylvania Supreme Court and filed writ of certiorari with the United States Supreme Court.  *Id.*  Both were denied.  *Id.*

---

[7] There were two trials in the **Patterson Action**:  one in 2011 before Court of Common Pleas Judge Maier, and one in 2014 before Court of Common Pleas Judge Beck Dubow.  Neither the Church nor Church Corporation attended those trials or were required to as they were not parties to the **Patterson Action**.

64. On May 27, 2016, Patterson filed a motion with the trial court in the **Patterson Action** to determine that all orders issued in that **Action** be declared void based on the court's finding that it lacked subject matter jurisdiction to hear the case in the first place. *Id.* at pp. 5-6. "In sum, Patterson alleged that only the 2006 binding arbitration award remained valid and asked the trial court to declare void all post-July 10, 2006 rulings/orders that were inconsistent with that award because the courts lacked subject matter jurisdiction to alter the same." *Id.* at p. 6. The trial court denied that motion and Patterson appealed to the Commonwealth Court. *Id.*

65. On October 17, 2017, while Patterson's appeal was pending, Patterson filed a Praecipe for Writ of Revival with the trial court. Ex. P, Praecipe for Writ of Revival. Although Pa. R. C. P. 3030 provides that such an action is treated as a new complaint, the Praecipe was docketed in the **Patterson Action** (July Term, 1995, No. 2945), to which the Church and Church Corporation are not parties.

66. The Writ of Revival, signed by Patterson, is addressed to "Kenneth Shelton and Trustees of the General Assembly of the Church of the Lord Jesus Christ, Inc."[8] Ex. P, Praecipe for Writ of Revival. The Writ of Revival appears to seek reinstatement of the "arbitration award" against Bishop Shelton and the Church Corporation, notwithstanding that the Commonwealth Court previously determined in the *GlassRatner Opinion* (to which Patterson was a party and which has never been appealed or vacated) that the Church Corporation was not a party to the arbitration or the **Patterson Action** from which it sprung. *Id.*; *see also*, Ex. B, *GlassRatner Opinion* at pp. 3, 5.

---

[8] Importantly, Plaintiffs are unaware of an entity referred to as "Trustees of the General Assembly of the Church of the Lord Jesus Christ, Inc." as that is not the proper legal name of the Church or Church Corporation.

67.    On November 8, 2017, Bishop Shelton filed preliminary objections to the Praecipe for Writ of Revival.  Ex. Q, Preliminary Objections to Praecipe for Writ of Revival.

68.    Patterson filed a response to Bishop Shelton's Preliminary Objections on December 4, 2017.  Ex. R, Patterson's Brief in Opposition to Preliminary Objections.  In that response, Patterson acknowledges that the Church Corporation was not a party to the 2006 arbitration.  *See id.* at p. 3 *("**Shelton and Patterson** agreed to binding common law arbitration…")* (emphasis added).

69.    On November 29, 2017, the Commonwealth Court issued an opinion in Patterson's appeal in the **Patterson Action**, in which he argued that "all post-July 10, 2006 rulings/orders" in that Action were void due to a lack of subject matter jurisdiction.  Ex. O, *Shelton III*.  In that opinion the Commonwealth Court found that the court lacked subject matter jurisdiction and reversed the trial court's July 14, 2016 Order.

70.    Significantly, neither the Church nor the Church Corporation was a party to *any* of the Commonwealth Court decisions in the **Patterson Action**, including the decision reached on November 29, 2017.

71.    Bishop Shelton then filed a motion in the trial court seeking to have all prior orders stricken for lack of subject matter jurisdiction.  That motion was denied.

72.    The **Patterson Action** was stayed pending Bishop Shelton's appeals to the Commonwealth Court.

73.    On April 15, 2019, the Commonwealth Court denied Bishop Shelton's latest appeal.  Bishop Shelton ultimately appealed the Commonwealth Court's April 15, 2019 Opinion to the United States Supreme Court, which denied certiorari on October 5, 2020.  *See Shelton v. Patterson* --- S.Ct. ---, 2020 WL 5882239 (Oct. 5, 2020).

16

74. Patterson's submission to the United States Supreme Court in response to Bishop Shelton's petition for certiorari acknowledged that the only parties to the arbitration were Patterson and Shelton.  Ex. I, Patterson's June 11, 2020 Submission to the United States Supreme Court.

75. On October 7, 2020, Patterson moved to lift the order staying execution of the judgments in the **Patterson Action**, including the improperly docketed judgment against the Church Corporation.

76. On November 2, 2020, the trial court lifted the stay in the **Patterson Action.**

77. On or about November 23, 2020, Patterson obtained a Writ of Possession for the Church's headquarters and Sheriff Bilal posted an Eviction Notice requiring that the Church be vacated by December 15, 2020 at 9:00 a.m.  Ex. A.

78. On December 2, 2020, Bishop Shelton filed an Emergency Motion for a Permanent Injunction and the trial court issued an ex parte Order staying "all matters, including any attempts by Plaintiff to evict Defendant or execute any of the judgments" in that case pending the outcome of that motion.

79. Patterson responded to the Emergency Motion on December 3, 2020, and on January 27, 2021 the Court of Common Pleas denied Bishop Shelton's Emergency Motion for a Permanent Injunction.

80. Bishop Shelton appealed that decision as of right and sought a stay pending resolution of that appeal.  The request for a stay was denied on February 4, 2021.

81. Plaintiffs seek relief from this Honorable Court to protect their rights and the rights of their parishioners.  In that regard, they have filed a motion for temporary restraining order and/or immediate injunctive relief.

## LEGAL FRAMEWORK

82.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

83.     Because the assets that Patterson seeks to obtain are titled in the name of the Church Corporation, not Bishop Shelton, any action to enforce a judgment in a case where the Church Corporation was not a party violates due process. *See, e.g., Hansberry v. Lee,* 311 U.S. 32, 40–41 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. . . . A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statutes of the United States prescribes, . . . and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments requires.").

84.     Such due process protections apply with the same force to arbitration proceedings. *See Calbex Mineral Ltd. v. ACC Resources Co., L.P.*, 90 F.Supp.3d 442, 459 (W.D. Pa. 2015) ("To comport with due process parties to an arbitration must be given 'notice reasonably calculated' to inform them of the proceedings and 'an opportunity to be heard'….the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the *parties to the dispute have had a full opportunity to present their cases*.") (emphasis added) (citing *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985)); *Hendricks v. Feldman Law Firm LLP*, 2015 WL 5671741 (D. Del. Sept. 25, 2015); *see also Allstate Ins. Co. v. Fioravanti*, 299 A.2d 585, 588 (Pa. 1973) ("[A]djudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing, wherein each party shall have the opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence on his own behalf and

to make argument."); *Gwin Eng'rs, Inc. v. Cricket Club Estates Dev. Group*, 555 A.2d 1328, 1330 (Pa. Super. Ct. 1989) (stating that in the context of an arbitration, "[t]he right to a fair hearing comprises the right to notice and an opportunity to be heard"); *Gaslin, Inc. v. L.G.C. Exps., Inc.*, 482 A.2d 1117, 1124 n.8 (Pa. Super. Ct. 1984) ("[t]he setting aside of an [arbitration] award is proper…on a showing of denial of a hearing"); *Mellon v. Travelers Ins. Co.*, 406 A.2d 759, 762 (Pa. Super. Ct. 1979) (setting aside an arbitration award on due process grounds because the panel of arbitrators in the case had based its award on claims that were raised *sua sponte* by the panel without affording the appellant the "opportunity to make arguments or introduce evidence with respect to those claims.").

85.     In addition to notice and a fair hearing, due process requires voluntary participation in the arbitration by the parties that are to be bound by the arbitrator's award:  "Arbitration presupposes the existence of a contract to arbitrate." *Goldstein v. Int'l Ladies' Garment Workers' Union*, 196 A. 43, 47 (Pa. 1938); *see Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 105 (3d Cir. 2000) ("…for though arbitration clauses are severable from their larger contracts, the question whether the underlying contract contains a valid arbitration clause still precedes all others because 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)).  Where a party denies being bound by a contract to arbitrate, that party is entitled to a judicial determination on the issue "by the Constitution as part of its assurance of due process of law." *Id.*; *see Sandvik*, 220 F.3d at 105.

86.     The taking of assets titled in the name of the Church Corporation under these circumstances would also violate the Fifth Amendment to the United States Constitution. *See, e.g., Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the

opportunity to be heard"); *N. Forests II, Inc. v. Keta Realty Co*., 130 A.3d 19, 29 (Pa. Super. Ct. 2015), *reargument denied* (Feb. 11, 2016), *appeal denied*, 158 A.3d 1237 (Pa. 2016) (striking trial court's judgment because failure to join or notify indispensable parties violated absent parties' due process rights); *Jefferson Cty. Assistance Office, Dep't of Pub. Welfare v. Wolfe*, 582 A.2d 425, 427 (Pa. Commwth. Ct. 1990) ("We find that MacDonald is an indispensable party to this litigation and the failure to provide her with notice and an opportunity to be heard was a violation of her due process rights.").

87.     Further, given the relief Patterson sought in the **Patterson Action** and now seeks through his Writ of Possession, the Church and Church Corporation were, without question, indispensable parties to the **Patterson Action**.  *See Polydyne, Inc. v. City of Philadelphia*, 795 A.2d 495, 496 (Pa. Commwth. Ct. 2002) ("A party is deemed to be indispensable when 'his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'"); *Church of the Lord Jesus Christ*, 740 A.2d at 755 ("An indispensable party is one whose rights are so connected with the claims of the litigants that no relief can be granted without impairing or infringing on those rights."); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

88.     Failure to join an indispensable party is fatal to a plaintiff's claim.  "If all necessary and indispensable parties are not parties to an action in equity, the court is powerless to grant relief."  *Huston v. Campanini*, 346 A.2d 258, 259 (Pa. 1975).  As the Pennsylvania Commonwealth Court has explained, "[i]n the interest of justice, Pennsylvania law allows this objection to be raised at any time during the proceedings, even on appeal.  The question of jurisdiction over the subject matter may even be raised *sua sponte* by the court."  *Church of the Lord Jesus Christ*, 740 A.2d at 755-56 (internal citations omitted).  This rule applies to arbitrations as well. *See Hendricks v.*

*Feldman Law Firm LLP*, 2015 WL 5671747 at *4 (D. Del. 2015) ("Arbitrators exceed their powers when they determine the rights and obligations of non-parties to an arbitration.") (citing *Bevan v. DaVITA, Inc.*, 557 Fed.App'x 706, 710 (10th Cir. 2014), *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003)); *see also Ringgold Sch. Dist. v. Ringgold Educ. Assoc.*, 694 A.2d 1163, 1165 (Pa. Commwth. Ct. 1997) ("[I]t is well-established that an objection to a court's jurisdiction *can never* be waived."); *Barnes v. McKellar*, 644 A.2d 770, 772-73 (Pa. Super. Ct. 1994) (affirming trial court's decision that the "lack of subject matter jurisdiction rendered the arbitration award void").

89.     The relief Patterson seeks in the **Patterson Action** affects the rights of the Church and Church Corporation.  That fact is unassailable based on the Commonwealth Court's prior holding in *Church of the Lord Jesus Christ*, 740 A.2d at 756-58.  As Patterson was the appellee in that case he cannot now contest its findings or holding.  Thus, his failure to join the Church Corporation in the **Patterson Action** or the arbitration renders any judgments in those matters "null and void" and "entitled to no authority or respect …." *Id.*

90.     Patterson would have the Court believe there was proper subject matter jurisdiction (and no attendant due process concerns) in this case where, for the last 25-plus years, the indispensable Church and Church Corporation were never joined to the arbitration or to the **Patterson Action.** This is simply wrong.

91.     Pennsylvania courts uniformly recognize that "the absence of an indispensable party goes absolutely to the court's jurisdiction" and is so critical that "the issue should be raised *sua sponte.*" *Huston v. Campanini*, 346 A.2d 258, 259 (Pa. 1975) (citations omitted); *see Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008).  Indeed, the defense of a failure to join an indispensable party can never be waived.  *See Orman,* 118 A.3d at 406; *see General Refractories*

21

*Co. v. First State Ins. Co.*, 500 F.3d 306, 318 (3d Cir. 2007) ("Put another way, a finding of indispensability…necessitates dismissal for lack of subject matter jurisdiction.").

92.     In addition, the arbitration adjudications violate the First Amendment in two fundamental ways.  First, they seek to interpret Church doctrine by finding that Patterson "acted in harmony with the laws, usages and customs" of the Church.  Ex. J, April 26, 2006 Adjudication 15-16; Ex. L, Final Adjudication and Decree, p. 1; p. 7, ¶¶ 1-2.  Such a determination is constitutionally impermissible.  *Our Lady of Guadalupe School v. Morrisey*, 140 S. Ct. 2049, 2055 (2020) (First Amendment guarantees religious institutions the right to decide on their own matters of church government and those of faith and doctrine) (citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952)); *see, e.g., Presbyterian Church v. Mary Elizabeth Blue Hill Memorial Presbyterian Church*, 393 U.S. 440, 443-44 (1969) ("First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practices."); *Askew*, 684 F.3d at 418 (holding that the First Amendment severely circumscribes "the role that civil courts may play in resolving disputes touching on matters of faith…Civil courts encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance.  The non-entanglement principle, anchored in First Amendment values, thus 'requires that civil courts defer to the resolution of issues of religious doctrine and polity by the highest court of a hierarchical church organization.'")(quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)).

93.     Second, the arbitration adjudications require the Church to accept Patterson as a member of the Church and Church Corporation.  But in 1992 the Church expressly rejected Patterson as a member, which was confirmed in 2006.  Ex. E, Proclamation.  Indeed, the Church's

Proclamation expressly notes that Patterson's religious beliefs differ from those held by the Church. *Id.*

94.     As the United State Supreme Court declared, by "forbidding the 'establishment of religion' and guaranteeing the 'free exercise thereof,' the Religion Clauses ensured that the new Federal Government – unlike the English Crown – would have no role in filling ecclesiastical offices. The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. 171, 184 (2012).

95.     The same applies here with the attempt to install Patterson in any position within the Church or Church Corporation – it is an "'entirely ecclesiastical matter left to'" Plaintiffs' own judgment. As the Supreme Court has repeatedly held, Plaintiffs have the "'power to decide for themselves, free from state interference, matters of church government'" such as who will sit on the board of the Church Corporation or be General Overseer of the Church. *Id.* at 186 (quoting *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952).

96.     Bishop Shelton – as General Overseer, and thus president of the Board of Trustees – is solely responsible for nominating trustees for the General Assembly to elect (*Askew*, 684 F.3d at 416) – neither an arbitrator, the state or, respectfully, this or any court can do so. *See, e.g. Kedroff*, 344 U.S. at 107 (holding right to use church cathedral is "strictly a matter of ecclesiastical government"); *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724 (1976) (holding that First Amendment permits "hierarchical religious organizations to establish their own rules and regulations for internal … government …").

97.     Thus, "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, … interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs.  By imposing an unwanted minister, the state infringes upon the Free Exercise Clause, which protects a religious group's rights to shape its own faith and mission through its appointments."  *Hosanna-Tabor*, 566 U.S. at 188.

98.     Enforcing the arbitration adjudications through a judgment, Writ of Possession and Eviction Notice in the **Patterson Action** runs afoul of the First Amendment's guaranty that religious institutions can "decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'"  *Our Lady of Guadalupe School v. Morrissey*, 140 S. Ct. 2049, 2055 (2020) (citing *Kedroff,* 344 U.S. at 116).  The adjudications impermissibly interpret Church doctrine by finding that Patterson "acted in harmony with the laws, usages and customs" of the Church.  Ex. B, ***GlassRatner Opinion*** at p. 6, *see also* Ex. J, Adjudication at pp. 15-16; Ex. L, Final Adjudication and Decree at p. 6, ¶¶ 1-2.

99.     The values secured by the First Amendment are jeopardized here because the adjudications Patterson seeks to enforce result from the arbitrator having engaged in an analysis of Church doctrine and practices – for the arbitrator to have found that Patterson and his faction "acted in harmony with the laws, usages and customs" of the Church, he would have to engage in such an impermissible analysis.

100.     Plaintiffs cannot now be compelled to accept Patterson – or anyone else – as a member.  *See, e.g., Boy Scouts of American v. Dale*, 530 U.S. 640, 647-48 (2000); *The Circle School v. Pappert*, 381 F.3d 172, 181-82 (3d Cir. 2004).  As the United States Supreme Court has held, "'implicit in the right to engage in activities protected by the First Amendment is a

corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, **religious**, and cultural ends.'"  *Dale*, 530 U.S. at 647 (emphasis added) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)); *see also Askew,* 684 F.3d at 421; *Circle School*, 381 F.3d at 182-83; *Salvation Army v. Dep't of Cmty. Affairs of the State of New Jersey*, 919 F.2d 183, 200 (3d Cir. 1990); *Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135, 149 (2d. Cir. 2000).

101.     *"Government actions that may unconstitutionally burden this freedom may take many forms, one of which is 'intrusion into the internal structure or affairs of an association' like a 'regulation that forces the group to accept members it does not desire.'"*  *Dale*, 540 U.S. at 648 (emphasis added) (quoting *Roberts*, 468 U.S. at 623).

102.     However, the arbitration adjudications, Writ of Possession, and Eviction Notice that Patterson seeks to enforce – through the assistance of Sheriff Bilal – require that non-church members – Patterson and his "minority faction" – not only be included in the process of amending the Church by-laws, but that they make up the *entire* board of trustees of the Church Corporation.

103.     The "Religion Clauses protect the right of churches and other religious institutions to decide 'matters of faith and doctrine' without government intrusion. … State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion.  The First Amendment outlaws such intrusion." *Our Lady of Guadalupe School,* 140 S.Ct. at 2060.  This applies equally to churches or other church related institutions related to the governance of religious entities, like parochial schools or, in the case, the Church Corporation.  *See id.*

104.     The Church has prospered for the past 28 years under the leadership of Bishop Shelton – it is not hyperbole to state that inserting Patterson into the Church community will destroy the very foundations of the Church given his decades-long campaign against the Church, Church Corporation and Bishop Shelton.

### COUNT I
### (against all Defendants)
### Declaratory Judgment

105.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

106.     Pursuant to the Commonwealth Court's decision in the ***GlassRatner Opinion***, which is binding on Patterson, the Church and Church Corporation were not parties to the **Patterson Action** or the arbitration.

107.     Accordingly, due process prohibits the application of any decisions in the **Patterson Action** or the arbitration to the Church or Church Corporation, and prohibits Patterson, through Sheriff Bilal, from applying the arbitration adjudications or judgment in that case to the Church or Church Corporation.

108.     Because the relief Patterson sought in the **Patterson Action** and now seeks through his Writ of Possession would necessarily impact property and assets held by the Church Corporation on behalf of the Church, the Church and Church Corporation were indispensable parties to both the **Patterson Action** and the arbitration.  However, neither the Church nor Church Corporation was ever joined to the **Patterson Action** or arbitration, which deprives a court of subject matter jurisdiction.

109.     Allowing Patterson, through Sheriff Bilal, to seize Church Corporation property would violate the Fifth and Fourteenth Amendment rights of the Church Corporation.

110.    Lastly, allowing Patterson, through Sheriff Bilal, to install himself as a Church member and/or member of the Church Corporation would violate Plaintiffs' First Amendment rights.

111.    But Patterson is asking Sheriff Bilal to more than that – he asking that he be installed as General Overseer of the Church – the Church's highest spiritual leader.

112.    Consequently, the arbitration adjudications and/or judgment that Patterson is seeking to have enforced through his Writ of Possession cannot be enforced against the Church or Church Corporation.

113.    Plaintiffs are therefore entitled to declaratory relief declaring the arbitration adjudications to be unconstitutional and to preliminary and permanent injunctive relief enjoining Sheriff Bilal from enforcing them.

**COUNT II**
**(against Sheriff Bilal)**
**42 U.S.C. § 1983 – Violation of the First Amendment of United States Constitution**

114.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

115.    Violations of the First Amendment are actionable under 42 U.S.C. § 1983.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 528 (1993).

116.    "The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'"  *Our Lady of Guadalupe School*, 140 S. Ct. at 2055 (citing *Kedroff* 344 U.S. at 116).

117.    The Church is a religious institution that is hierarchical in nature and well known for its community outreach and philanthropic endeavors.

118.     Enforcement of the arbitration adjudications and improper judgment against the Church Corporation in the **Patterson Action**, which have the practical effect of removing Bishop Shelton as General Overseer of the Church, replacing the current Board of Trustees with non-Church members (Patterson and his "minority faction"), and seizing Church Corporation assets and transferring them to Patterson and his "minority faction", is a direct and substantial infringement upon this First Amendment right.

119.     Patterson further seeks to enforce the arbitration adjudications through Sheriff Bilal, who operates under the color and pretense of state law.

120.     Plaintiffs are therefore entitled to declaratory relief declaring the arbitration adjudications to be unconstitutional and to preliminary and permanent injunctive relief enjoining Patterson from enforcing them through Sheriff Bilal.

121.     Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein.

122.     Unless Sheriff Bilal is enjoined and restrained from enforcing the purported judgment in the **Patterson action**, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution, and will suffer the loss of their real and personal property forever.

123.     As Plaintiffs' constitutional violations are ongoing, Plaintiffs are entitled to immediate and permanent injunctive relief.

124.     Because Defendants' actions required Plaintiffs to retain counsel and incur attorney's fees and costs to bring this action, Plaintiffs are entitled to the recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and 42 U.S.C. § 1988(b).

125.     Plaintiffs have also suffered actual damages in an amount to be proven at trial.

**COUNT III**
**(against Sheriff Bilal)**
**42 U.S.C. § 1983 – Violation of the Due Process Protections of the**
**Fifth and Fourteenth Amendments of United States Constitution**

126.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

127.    The United States Constitution requires that parties whose rights are affected by a judicial proceeding be given notice and an opportunity to be heard in connection with those proceedings and that parties cannot be bound by a judgment without such due process.

128.    The Pennsylvania Constitution likewise guarantees that due process of law be afforded in the courts of the Commonwealth.

129.    These due process protections are equally applicable to arbitration proceedings.

130.    Furthermore, due process requires voluntary participation in the arbitration by the parties that are to be bound by the arbitrator's award, because arbitration is a matter of contract.

131.    Neither the Church nor the Church Corporation were ever made party to the **Patterson Action**, the lawsuit from which the judgment Patterson seeks to enforce arose.

132.    Neither the Church nor the Church Corporation were ever made party to the arbitration proceeding that stemmed from the **Patterson Action**.  Moreover, the only two parties to the arbitration agreement at issue were Patterson and Bishop Shelton – a fact Patterson repeatedly has admitted on the record.

133.    Consequently, the absence of the Church and the Church Corporation from the **Patterson Action** (and the underlying arbitration) renders any purported judgment against them invalid and unenforceable.

134.    Moreover, the assets that Patterson seeks to obtain are titled in the name of the Church Corporation, not Bishop Shelton. Therefore, any action to enforce a judgment in a case

where "[t]he Church and the Corporation are not named parties" (Ex. B, *GlassRatner Opinion* at p. 3), eviscerates due process.

135.    Patterson further seeks to enforce the arbitration adjudications through Sheriff Bilal, who operates under the color and pretense of state law.

136.    Plaintiffs are therefore entitled to declaratory relief declaring the arbitration adjudications to be unconstitutional and to preliminary and permanent injunctive relief enjoining Sheriff Bilal from enforcing them.

137.    Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein.

138.    Unless Sheriff Bilal is enjoined and restrained from enforcing the purported judgment in the **Patterson action**, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution, and will suffer the loss of their real and personal property forever.

139.    Because Defendants' actions required Plaintiffs to retain counsel and incur attorney's fees and costs to bring this action, Plaintiffs are entitled to the recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and 42 U.S.C. § 1988(b).

140.    Plaintiffs have also suffered actual damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants Patterson and Sheriff Bilal, and relief as follows:

(a)    For a preliminary injunction enjoining Defendants Patterson and Sheriff Bilal from seeking to enforce any arbitration adjudication, judgment, Writ of Possession, or Eviction in the **Patterson Action** against the Church or Church Corporation, or from otherwise seizing or taking control of any assets of the Church and Church Corporation and/or requiring that Patterson be allowed entry to any Church property;

(b)     For permanent injunctive relief preventing Patterson and Sheriff Bilal from seeking to enforce any arbitration adjudication or judgment, Writ of Possession or Eviction in the **Patterson Action** against the Church or Church Corporation, or from otherwise seizing or taking control of any assets of the Church and Church Corporation and/or requiring that Patterson be allowed entry to any Church property;

(c)     For a declaration that Patterson is bound by the findings in the ***GlassRatner Opinion*** that the Church and Church Corporation were not parties to the **Patterson Action** or arbitration;

(d)     For a finding that Patterson is in contempt of the Commonwealth Court's mandate in the ***GlassRatner Opinion*** by seeking to apply the arbitration adjudications to the Church Corporation in direct contravention of the Commonwealth Court's finding that the Church Corporation was not a party to the **Patterson Action** or arbitration;

(e)     For attorneys' fees; and

(f)     For such other and further relief as this Court deems just and appropriate.


                                Respectfully submitted,

                                **FOX ROTHSCHILD LLP**

Dated:  February 11, 2021       /s/  Michael K. Twersky
                                Michael K. Twersky (PA ID No. 80568)
                                Beth Weisser (PA ID No. 93591)
                                Emma Kline (PA ID No. 314027)
                                2000 Market Street, 20th Floor
                                Philadelphia, PA 19103
                                Telephone: (215) 299-2000
                                Fax: (212) 299-2150
                                mtwersky@foxrothschild.com
                                bweisser@foxrothschild.com
                                ekline@foxrothschild.com


                                *Attorneys for Plaintiffs*
                                *Trustees of the General Assembly of the Church*
                                *of the Lord Jesus Christ of the Apostolic Faith,*
                                *Inc. and the Church of the Lord Jesus Christ of*
                                *the Apostolic Faith*

## <u>VERIFICATION</u>

I, John R. Brown, Esq., hereby depose and say that I am authorized to take this Verification on behalf of Plaintiff, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., in my position as General Counsel, and I further verify that the statements made in the foregoing pleading are true and correct based upon my knowledge, information and belief.

I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: February 10, 2021

_____
JOHN R. BROWN, ESQ.

**CERTIFICATE OF SERVICE**

I hereby that on this 11th day of February, 2021, I served a true and correct copy of the

foregoing Verified Complaint on the following by the means indicated below:

**BY ELECTRONIC MAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Anthonee J. Patterson
1544 W. 25th Street
Jacksonville, FL  32209
anthoneep@aol.com

**BY E-MAIL**

Rochelle Bilal
Sheriff of Philadelphia County
100 South Broad Street, 5th Floor
Philadelphia, PA  19110
c/o Diana P. Cortes, Esquire
(diana.cortes@phila.gov)

/s/ Michael K. Twersky
Michael K. Twersky