## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE TRUSTEES OF THE GENERAL
ASSEMBLY OF THE CHURCH OF THE
LORD JESUS CHRIST OF THE
APOSTOLIC FAITH, INC., et.al.,

        Plaintiffs,

    v.

ANTHONEÉ PATTERSON,

    and

ROCHELLE BILAL,

        Defendants.

CIVIL ACTION

No. 21-634-KSM

USDC-EDPA REC'D CLERK
2022 APR 18 PM 8:44

### <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2022, upon consideration of Defendant Anthoneé Patterson's Motion to Dissolve Preliminary Injunction, it is **ORDERED** that the Motion is **GRANTED**, and that the preliminary injunction issued by this Court on March 19, 2021 (Dkt#37, Dkt#38) is hereby dissolved, with prejudice.

 

                                      _____
                                        KAREN SPENCER MARSTON, J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE TRUSTEES OF THE GENERAL
ASSEMBLY OF THE CHURCH OF THE
LORD JESUS CHRIST OF THE
APOSTOLIC FAITH, INC., et.al.,

        Plaintiffs,

        v.

ANTHONEÉ PATTERSON,

      and

ROCHELLE BILAL,

        Defendants.

CIVIL ACTION

No. 21-634-KSM

## MOTION TO DISSOLVE PRELIMINARY INJUNCTION

Pursuant to Federal Rules of Civil Procedure Rules 54(b) and 65, Defendant Anthoneé Patterson hereby moves this Court for an order dissolving the preliminary injunction issued by this Court on March 19, 2021 (Dkt#37, Dkt#38) on the grounds that it was obtained by fraud and misrepresentation to the Court, together with such other and further relief to Patterson as this Court deems just and proper. In further support of this Motion, Patterson relies upon the attached memorandum of law and the exhibits to the contemporaneously filed Motion to Take Judicial Notice and Declaration of Anthoneé Patterson, which are incorporated herein by reference.

Respectfully submitted,

*Anthoneé Patterson, Defendant Pro Se*
1544 West 25th Street
Jacksonville, FL 32209
(904) 386-3108

Dated: April 18, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Anthoneé Patterson, Defendant Pro Se, hereby certify that I caused a true and correct copy of the foregoing to be served on the parties listed below by the means indicated below:

___ Facsimile                    ✓ Email                    ___ U.S. Mail, First Class

___ U.S. Mail, Priority       ___ Federal Express        ___ UPS

_____

*Anthoneé Patterson, Defendant Pro Se*

Dated: April 18, 2022

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE TRUSTEES OF THE GENERAL
ASSEMBLY OF
THE CHURCH OF THE LORD JESUS
CHRIST OF THE
APOSTOLIC FAITH, INC.,

and

CHURCH OF THE LORD JESUS CHRIST
OF THE APOSTOLIC FAITH,

Plaintiffs,

v.

ANTHONEÉ PATTERSON,

and

ROCHELLE BILAL,

Defendants.

No. 21-cv-00634

**DEFENDANT ANTHONEÉ
PATTERSON'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO
DISSOLVE PRELIMINARY
INJUNCTION**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ....................................................................................1

II.   PLAINTIFFS HAVE REPEATEDLY AND REGULARLY TAKEN THE POSITION
     IN OTHER COURTS AND PROCEEDINGS THAT THEY PARTICIPATED IN
     THE ARBITRATION OR WERE REPRESENTED BY OR IN PRIVITY WITH
     KENNETH SHELTON IN THE ARBITRATION .....................................................2

III.   ARGUMENT .............................................................................................................6

     A.   This Court Has Authority to Modify or Dissolve an Injunction Upon Changed
          Circumstances .................................................................................................6

     B.   The Amendments to the Church Bylaws After the Arbitration Award
          Confirm that Plaintiffs Were, At a Minimum, In Privity with Shelton ............7

     C.   Plaintiffs' Counsel is Well Aware of These Facts and Circumstances Yet
          Chose to Misrepresent the Facts to This Court ..................................................9

IV.   CONCLUSION.........................................................................................................10

CERTIFICATE OF SERVICE ..........................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**

*Drivers Union v. Meadowmoor Co.*, 312 U.S. 287 (1941).................................................... 6

*Eagan by Keith v. Jackson*, 855 F. Supp. 765 (E.D. Pa. 1994)............................................ 9

*Favia v. Indiana University of Pennsylvania*, 7 F.3d 332 (3d Cir. 1993)....................... 6

*Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988).................. 6

*Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir. 1953)......................... 6

Defendant Anthoneé Patterson submits this memorandum of law in support of his Motion to Dissolve the Preliminary Injunction previously issued by this Court on the grounds that it was obtained by fraud and misrepresentation and in violation of the doctrine of judicial estoppel.

## I.   PRELIMINARY STATEMENT

Patterson previously presented this Court with voluminous and compelling evidence establishing that Plaintiff in this matter were state-court losers under the *Rooker-Feldman* doctrine and/or were barred from relitigating their current claims in this proceeding because they were parties in the state court action or, at a minimum, were in privity with Shelton – who has controlled both the Church and Church Corporation since the mid-1990s. This Court ultimately disregarded this evidence, relying in significant part on the claims by various witnesses and former counsel on Plaintiffs' behalf that the counterclaims in the arbitration on behalf of the Church, Church Corporation, and Trustees were either asserted in error or were never formally "approved" for filing and its conclusions that other joint filings or filings Plaintiffs made in other state and federal courts did not demonstrate privity.

The exhibits attached to Patterson's accompanying Motion to Take Judicial Notice, however, confirm that Plaintiffs repeatedly took the position (when it served their purposes to do so) that they were parties to the underlying Pennsylvania actions or were otherwise in privity with Shelton. They consist of various court filings and other documents confirming that Plaintiffs and Shelton acted in concert with each other or that, at a minimum, Shelton represented their interests. Accordingly, Plaintiffs claims at the evidentiary hearing on their motion for preliminary injunction were false, and this Court should dissolve the injunction on the grounds that it was obtained by fraud.

**II.    PLAINTIFFS HAVE REPEATEDLY AND REGULARLY TAKEN THE POSITION IN OTHER COURTS AND PROCEEDINGS THAT THEY PARTICIPATED IN THE ARBITRATION OR WERE REPRESENTED BY OR IN PRIVITY WITH KENNETH SHELTON IN THE ARBITRATION.**

Contrary to their current claims before this Court, the Church and Church Corporation have repeatedly acted in concert with Kenneth Shelton or pleaded positions before other courts and this Court in prior proceedings confirming their privity with him. Moreover, the attorneys who acted as witnesses in this matter and the attorneys representing the Church and Church Corporation here are well aware of this fact because they were involved in these other matters.

In a 1994 action filed in this Court, Luther E. Weaver, Kenneth Shelton's counsel in the Arbitration, represented the Church and Church Corporation in a suit against Patterson, Fincourt Shelton (Patterson's counsel in the Arbitration) and others alleging various claims of fraud and attempting to seize leadership of the Church and take over Church and Church Corporation assets. (Exhibit A.) The complaint alleges in various places that it is aligned with and controlled by Kenneth Shelton as its spiritual and administrative leader. (Exhibit A at ¶¶ 8-13, 29, 70.) The Church and Church Corporation, represented by Weaver, provided documentary discovery in that case, copying Brown on the transmission. (Exhibit B.)

In the Arbitration itself, Weaver sent a March 14, 2006, fax to Fincourt Shelton and ADR Options, transmitting the court transcript where the process to be used in the Arbitration was established. (Exhibit C.) He copied John Brown, the Church and Church Corporation's counsel, as well. (Exhibit C.) The transcript confirmed that each rival faction would select five to seven individuals to serve on the Arbitration panel and explained how the Arbitration would proceed if one or more of the individuals each side selected were unable to serve. (Exhibit C.) Brown spoke extensively in this colloquy. (Exhibit C at p. 2 (19:10-15), 3 (18:8), 4 (17:11-19).) Brown stated at one point "On behalf of the defendant Kenneth Shelton, the names selected from those

2

provided by plaintiff are…" <u>even though he was the Church and Church Corporation's counsel</u>. (Exhibit C at p. 4 (17:11-19.) Weaver further sent a March 15, 2006, fax to Fincourt Shelton submitting the Church members who were to serve as arbitrators in the pending Arbitration. (Exhibit D.) Again, Brown was copied on the fax. (Exhibit D.)

In a June 8, 2006, order of the Philadelphia Court of Common Pleas, the receiver appointed in the Arbitration Award, in an action against the Church and Church Corporation, sought and obtained an order directing them to provide the receiver with access to financial and other records, Church and Church Corporation real property, and Church funds and accounts so that the receiver could protect those assets pursuant to the Award. (Exhibit E.) The order further enjoined the Church and Church Corporation from continuing to loot or dissipate those assets. (Exhibit E.) This order further confirms that the Pennsylvania courts considered the Church and Church Corporation as participants in the Arbitration or, at a minimum, as adequately represented in the Arbitration by Kenneth Shelton.

In an order dated July 10, 2006, the Philadelphia Court of Common Pleas rejected the attempts of Kenneth Shelton to vacate the Award claiming, *inter alia*, that the Church and Church Corporation were necessary parties, as disingenuous and confirmed the Award. (Exhibit F.) The Church and Church Corporation subsequently filed an action in the same court, again claiming that they had not been parties to the Arbitration, and the court dismissed the action with prejudice as "one more disingenuous attempt at collateral attack" in a July 20, 2006, order. (Exhibit G.) Again, this confirms that the Pennsylvania courts considered the Church and Church Corporation as participants in the Arbitration or, at a minimum, as adequately represented in the Arbitration by Kenneth Shelton.

In a Philadelphia Orphans' Court decree dated November 6, 2006, the court dismissed a petition filed by the Church and Church Corporation seeking to declare the Award and related orders invalid. (Exhibit H.) The Church and Church Corporation claimed, *inter alia*, that the Award and orders were invalid for lack of indispensable parties, the attorney general and Church Corporation. (Exhibit H at p. 2.) The Orphans' Court rejected this claim, noting that the attorney general had responded that it had no position in the litigation and that the Church Corporation's interests were represented in the Arbitration by Kenneth Shelton. (Exhibit H at p. 2.)

The Church and certain individual members subsequently sued Patterson, the Church Corporation, and the New Jersey variant of the Church Corporation asserting the same baseless claims made in this action to avoid enforcement of the Award against the Church's New Jersey assets. (Exhibit I.) In a January 16, 2007, order, the Superior Court of New Jersey denied their motion for a temporary restraining order and permanent injunction and dismissed their case with prejudice. (Exhibit I.)

The March 6, 2013, Pennsylvania Commonwealth Court opinion decided Patterson's appeal of the dismissal of his complaint during the series of appeals in between the setting aside of the Award and the Pennsylvania courts eventual reinstatement of the Award. (Exhibit J.) In reinstating his complaint, the Commonwealth Court repeatedly stated that the Church and Church Corporation were directly involved in the underlying litigation, listing the various lawsuits concerning the issues raised in Patterson's suit, some of which the Church and Church Corporation were plaintiffs, confirmed that Patterson's claims sought receivership over the Church and Church Corporation's assets, and the Church and Church Corporation's participation as a party in discovery in that action, (Exhibit J at pp. 2-4.) The Commonwealth Court noted that Kenneth Shelton was "the person with full control of the Corporate Trustee" and confirmed that

4

finding elsewhere in the opinion. (Exhibit J at pp. 11, 14.) It stated throughout the opinion that Patterson's claims were on behalf of the Church. (Exhibit J at pp. 10-17.)

Further confirmation that the Church and Church Corporation were involved in the Arbitration, or completely represented by Kenneth Shelton in the proceedings, is found in the fact that the Church Bylaws Plaintiffs rely upon as establishing sufficient separation between Kenneth Shelton, the Church Corporation, and the Church, <u>did not exist until after the Arbitration</u>. The Bylaws of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith were amended in July 2006 to separate the office of General Overseer from that of the President of the Church Corporation, where those offices had previously been synonymous, with the General Overseer previously automatically becoming president of the Church Corporation. (Exhibit K at Article Two, Section Two; Exhibit L at fn.13.) The Bylaws were amended in 2000 to purportedly limit the General Overseer's complete and absolute control over the Board of Trustees and the Church Corporation's property and assets to allow for election of the Trustees, although the General Overseer still had to approve any candidate for Trustee. (Exhibit K at Article Three, Section Three.) Further amendment was made in 2000 to grant the General Overseer unfettered discretion to remove any Church member from the Church, no doubt in response to the Pennsylvania courts' rulings that Patterson had standing as a Church member to assert his claims under the Pennsylvania Nonprofit Corporation Law after the Award was vacated and prior to its reinstatement. (Exhibit K at Article Five, Section Five.) Again, these amendments were made after the Arbitration Award.

Moreover, Kenneth Shelton and the Plaintiffs confirmed they were united in interest by collectively seeking and obtaining injunctive relief in the Pennsylvania courts when the writ of possession was granted. (Exhibit M.) If the split in interests the parties now claim exists were

real and not contrived, Kenneth Shelton would not have been a part of this request for relief.

Moreover, the sane contentions advanced here – that the Church and Church Corporation were

not parties to Arbitration and the judgment may not be entered against them – were rejected

when the relief was only granted in part. (Exhibit M.) The Baltimore, Maryland Circuit Court als

rejected these arguments as contrary to the record. (Exhibit O.)

Kenneth Shelton and Plaintiffs have conspired to present a false narrative of the history

of these multiple litigations and their ultimate culmination in the Arbitration Award in order to

trick the Court into violating the *Rooker-Feldman* doctrine. This Court should correct its initial

erroneous ruling based on this additional information and dissolve the inappropriately issued

injunction.

## III.    ARGUMENT

### A.    This Court Has Authority to Modify or Dissolve an Injunction Upon Changed Circumstances.

This Court has the authority to modify or dissolve an injunction when changed

circumstances make it unnecessary or inappropriate. *Drivers Union v. Meadowmoor Co.*, 312

U.S. 287, 298 (1941); *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332, 337 (3d Cir.

1993). Here, circumstances exist rendering the previously issued preliminary injunction

inappropriate because the Plaintiffs' claims that they did not participate in the underlying

litigation and are not in privity with or virtually represented by Kenneth Shelton are

demonstrably false.

Where, as here, a party has gained advantage by characterizing the law or facts involved

in a case, the party may not later contradict that characterization to obtain further advantage,

whether in the same matter or series of suits. *Scarano v. Central R. Co. of New Jersey*, 203 F.2d

510, 513 (3d Cir. 1953). This judicial estoppel focuses on the connection between the litigant and

the judicial system, is designed to protect the courts' integrity, and applies even in cases in multiple forums. *Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). If there is "essential similarity in the underlying events," judicial estoppel will preclude a party from changing its position in subsequent litigation to gain a perceived advantage. *Id.* at 420 n.5.

Here, the exhibits referenced above and the prior evidence submitted confirm that, when it was convenient to do so in prior proceedings, the Plaintiffs here had no issue asserting their alignment with Kenneth Shelton and confirming that he, as their "spiritual and administrative leader," represented their interests in the various disputes between the rival Church factions. Only when it became expedient to do so did they ever claim that he did not in fact represent their interests and that they were never participants in the Arbitration. But this is precisely the situation judicial estoppel exists to prevent. Plaintiffs here are contradicting their prior legal positions on virtually identical disputes addressed in the Arbitration to gain advantage now. As the Pennsylvania courts have repeatedly held, they participated in the Arbitration, and they now have buyer's remorse over their agreement to submit to the binding common law arbitration with no right to appeal. Indeed, multiple state and federal courts have given the Pennsylvania judgments the full faith and credit to which they are entitled. (Exhibit N[1].)

It is important for the Court to understand that this is no mere conflict between Patterson and Kenneth Shelton as two individuals. They are the respective leaders of rival factions of the Church. Patterson asserted the claims adjudicated in the Arbitration on behalf of himself and the other Church members harmed by Kenneth Shelton and the trustees under his influence and control looting Church and Church Corporation assets. Kenneth Shelton claimed the right to

---

[1] This chart, which Patterson has maintained and updated periodically as a business record during the various proceedings between the parties, tracks the numerous litigations concerning this dispute over the decades. The last page lists the various jurisdictions where the Pennsylvania Judgments were given the full faith and credit they should be afforded here as well.

engage in this misconduct as the undisputed authority over both the Church and Church Corporation. The Plaintiffs here (or their predecessors in interest) joined him in that claim. They should not be allowed to change that position now to thwart the process they participated in and agreed to.

**B.      The Amendments to the Church Bylaws After the Arbitration Award Confirm that Plaintiffs Were, At a Minimum, In Privity with Shelton.**

Again, it is critical that this Court understand the nature of the underlying dispute is not a mere conflict of wills between Patterson and Kenneth Shelton, but a dispute between factions of the Church led by those men. The Church members behind Patterson and Kenneth Shelton, respectively, were intimately involved in every aspect of this conflict, spanning multiple litigations in several jurisdictions, and were fully aware that the disputes were to be resolved in the Arbitration. The amendments to the Bylaws <u>after the Arbitration Award</u> confirm this. It is apparent from the face of the amendments that their sole purpose was to manufacture an appearance that, contrary to the facts of Kenneth Shelton's complete and utter control of all Church affairs that existed at the time of the alteration (and still exists, despite the fiction contrived by Kenneth Shelton and the Plaintiffs). They would have been entirely unnecessary if there truly was not privity between Kenneth Shelton, the Church, and the Church Corporation. Further, it is entirely disingenuous to rely upon post-arbitration amendments to the Bylaws as justification to find a lack of privity for purposes of this specious federal court claim.

There is no rational or lawful claim that Plaintiffs or their predecessors in interest were not state-court-losers under *Rooker-Feldman* in this case given the undisputed fact that they were compelled to amend the Bylaws <u>after the Arbitration Award</u> to even contrive the claim. The injunction should be dissolved.

The injunctive relief sought in the Pennsylvania courts by Kenneth Shelton and the Plaintiffs further confirms that the claim they were not in privity during the Arbitration is nothing more than a scam to misguide this Court into violating the *Rooker-Feldman* doctrine. If Kenneth Shelton and the Plaintiffs were not truly united in interest, why would he be a party to the request for injunctive relief? How can Plaintiffs be united in interest with Kenneth Shelton now, after his malfeasance has finally been acknowledged and the Church and Church Corporation finally placed in position to recover what was stolen, to defeat that recovery if they were not also united in interest or in privity at the time of the Arbitration? Again, the injunction should be dissolved.

C. **Plaintiffs' Counsel is Well Aware of These Facts and Circumstances Yet Chose to Misrepresent the Facts to This Court.**

In addition, attorneys, as officer of the Court, have a duty of candor to the court. *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994). Here, in addition to the evidence previously presented, the exhibits referenced above confirm that the attorney witnesses and the attorneys representing the parties have been well aware for some time that they have asserted positions contrary to the claims here in other cases and before other tribunals. It is respectfully submitted that these attorneys have misled the Court in advancing the claims asserted here and had a duty, at a minimum, to identify to the Court each and every occasion where the Church and Church Corporation participated in litigation on Kenneth Shelton's side of the case or asserted their alignment with him and support for him in a litigation. They had a further duty to acknowledge each occasion where they, as attorneys, participated in or were included on communications between the opposing parties to keep them aware of the status of the litigations they now claim they were not "participating" in. Their failure to do so warrants dissolving the current injunction.

**IV.    CONCLUSION**

For the reasons set forth above, this Court should issue an order dissolving the preliminary injunction previously issued in this case, together with such other and further relief to Patterson as this Court deems just and proper.

Date:    April 18, 2022

Respectfully Submitted,

Anthonee Patterson, Defendant Pro Se
1544 West 25th Street
Jacksonville, FL 32209
(904) 386-3108

## **CERTIFICATE OF SERVICE**

I, Anthoneé Patterson, Defendant Pro Se, hereby certify that I caused a true and correct

copy of the foregoing to be served on the parties listed below by the means indicated below:

___ Facsimile               ✓ Email                    ___ U.S. Mail, First Class

___ U.S. Mail, Priority          ___ Federal Express           ___ UPS

*Anthoneé Patterson, Defendant Pro Se*

Dated: April 18, 2022

11

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC. and THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC. 701 South 22nd Street Philadelphia, PA 19146-0180 | : : : : : : : : : | |
| Plaintiffs | : : | |
| -against- | : : | CIVIL ACTION NO. 94-C.V-H1R |
| FINCOURT SHELTON 1416 Tanglewood Drive North Wales, PA 19454 and ANTHONEE' J. PATTERSON 1544 W. 25th Street Jacksonville, FL 32209 and GEORGE E. PATTERSON, SR. 1584 West 12th Street Jacksonville, FL 32209 and ALAMOTH LEAH GREGORY 2610 W. Cheltenham Avenue Philadelphia, PA 19150 | : : : : : : : : : : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

## COMPLAINT IN CIVIL ACTION

Plaintiffs Church of the Lord Jesus Christ of the Apostolic Faith, Inc. and the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. by their attorneys, Bowser, Weaver & Cousounis, P.C., pursuant to its Complaint against Defendants, hereby allege:

## JURISDICTION AND VENUE

1. Jurisdiction for the first count of this Complaint arises under the provisions of Sections 1962 and 1964 of the Racketeer

Influenced and Corrupt Organizations Act ("RICO") of the Organized Control Act of 1970, as amended. Title 18 U.S.C. §§1962 and 1964(a) and (c), which provide that the district courts of the United States shall have jurisdiction to award damages to any person injured in his business or property by reason of a violation of §1962, and to prevent and restrain violations of §1962.

2. Jurisdiction over the remaining counts of this Complaint, which are brought under state law, arises under the doctrine of pendent jurisdiction.

3. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to Title 18 U.S.C. §1965(a) in that Defendants Fincourt Shelton and Alamoth Leah Gregory reside within the Eastern District of Pennsylvania, and all of the Defendants are found, have agents in, have a principal place of business in and transact and have transacted various of their affairs, including many of the wrongful acts alleged herein, within the Eastern District of Pennsylvania.

<u>THE PARTIES</u>

4. The Church of the Lord Jesus Christ of the Apostolic Faith (sometimes hereinafter referred to as "the Church"), is an international church with affiliate churches in numerous states within the United States and in numerous foreign countries. At all times relevant the Church was engaged in and affected interstate and foreign commerce.

5. The Church maintained a church building for worship services, its administrative offices and international headquarters at 701 South 22nd Street, Philadelphia, Pennsylvania 19146-0180.

6. The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., also known as the

Church of the Lord Jesus Christ of the Apostolic Faith is a Pennsylvania nonprofit corporation and a church organization located at 701 South 22nd Street, Philadelphia, Pennsylvania 19146-0180.

7.    The members of the Board of Trustees of the Church are the duly elected administrative heads of the Church whose principal place of business is located at 701 South 22nd Street, Philadelphia, Pennsylvania 19146-0180.

8.    At all times relevant, the spiritual and administrative leader of the Church was Bishop Kenneth N. Shelton ("the Bishop") having been duly elected and ordained in 1992.  The Bishop also serves in the capacity as the President of the Board of Trustees by virtue of Article VII of the Rules and By-laws of the Church.  A true and correct copy of these Rules and By-laws are attached hereto as Exhibit "A".

9.    Article VII of the Rules and By-laws of the Church provides that "The General Overseer, Bishop (Omega) Kenneth N. Shelton shall continue to hold the office of General Overseer Trustee and President of the Board of Trustees during his lifetime." (See: Exhibit "A").

10.   The duly certified excerpts of the transcript from the Church of the Lord Jesus Christ of the Apostolic Faith, Annual General Assembly Business Session dated September 3, 1992, a copy of which is attached hereto as Exhibit BB", reflect the affirmation by the General Assembly of the elevation of Bishop Kenneth N. Shelton as the General Overseer of the Church.

11.   On or about September 3, 1992, the General Assembly of the Church adopted a Resolution naming the following individuals to serve as members of the Board of Trustees of the Church: Bishop Kenneth N. Shelton, President and Treasurer; Elder Erik V. Shelton, Vice Presi-

dent and Secretary; Minister John C. SheIton-Thomas, Chief Adminis-trator; A. Woodward Shelton-Reagan (Elder); J. Eric Smith (Elder); George Brown (Deacon). A true and correct copy of this Resolution is attached hereto as Exhibit "C".

12. The September 3, 1992 Resolution further provided that all Church accounts shall be signed by Bishop Kenneth N. Shelton alone or by Elder Erik V. Shelton and Minister John C. Shelton-Thomas together. (See Exhibit "C").

13. On or about September 2, 1993, the General Assembly of the Church adopted a Resolution naming the following individuals to serve on the Board of Trustees: Bishop Kenneth N. Shelton, President and Treasurer; Elder Erik V. Shelton, Vice President and Secretary; Elder John C. Shelton-Thomas, Chief Administrator; Elder A. Woodward Shelton-Reagan, Trustee; Elder J. Eric Smith, Trustee; Deacon George Brown, Trustee; Deacon J. Leon Bligen, Trustee. A true and correct copy of this Resolution is attached hereto as Exhibit "D".

14. Defendant, Fincourt Shelton, was at all times relevant an individual residing at 1416 Tanglewood Drive, North Wales, Pennsyl-vania 19454 and doing business at 6 North 9th Street, Suites 200 and 201, Darby, Pennsylvania 19023 and 891 Main Street, Darby, Pennsylvania 19023.

15. Defendant, Anthonee' J. Patterson, was at all times relevant an individual residing at 1544 W. 25th Street, Jacksonville, Florida 32209, and doing business at 6 North 9th Street, Suites 200 and 201, Darby, Pennsylvania 19023 and 891 Main Street, Darby, Pennsylvania 19023.

16. Defendant, George E. Patterson, Sr. was at all times relevant and individual residing at 1584 West 12th Street, Jackson-

ville, Florida 32209, and doing business at 6 North 9th Street, Suites 200 and 201, Darby, Pennsylvania 19023 and 891 Main Street, Darby, Pennsylvania 19023.

17.   Defendant, Alamoth Leah Gregory, was at all times relevant an individual residing at 2610 W. Cheltenham Avenue, Philadelphia, Pennsylvania 19150, and doing business at 6 North 9th Street, Suites 200 and 201, Darby, Pennsylvania 19023 and 891 Main Street, Darby, Pennsylvania 19023.

## FACTUAL BACKGROUND

18.   At all times relevant, the Church maintained ordinary and necessary bank accounts, credit card accounts, real estate and other assets necessary to conduct the business of the Church.

19.   As noted above, at all times relevant, pursuant to the duly adopted certification and resolution of September 3, 1992, the signatories on all Church accounts were the Bishop alone and/or Elder Erik V. Shelton and Minister John C. Shelton Thomas together.   (See Exhibit "C").

20.   At all times relevant and among other accounts and banks, the Church maintained the following bank accounts at Fidelity Bank in Philadelphia, Pennsylvania: a) # 3015204468; b) 4004710333, c) 0002536720, d) 4004710531, e) 0002523181 and f) 0001656222.

21.   At all times relevant and among other accounts and banks, the Church maintained bank account # 0928-5651 at CoreStates Bank in Philadelphia, Pennsylvania, and Certificate of Deposit # 00412-22431 at said Bank.

22.   In addition to the above bank accounts, the Church maintained "national" accounts in various states within the United States including but not limited to the First Union National Bank in

Jacksonville, Florida; the Maryland National Bank in Baltimore, Maryland; the First Union National Bank in Atlanta, Georgia; the First Union National Bank in Lakeworth, Florida; and the First Union National Bank in Charlotte, North Carolina.

23. At all times relevant the Church was the owner of an American Express Credit Card number 3782-926068-92005.

24. At all times relevant the Church utilized P.O. Box 3880 at the Schuylkill Post Office Station located at 905 South 19th Street, Philadelphia, Pennsylvania 19146, for the receipt of mail from all over the United States and from abroad.

25. The Church was also the owner and occupier of various real estate holdings within the Eastern District of Pennsylvania and throughout the United States of America.

26. At all times relevant, none of the Defendants were active members of the Church. Indeed, in 1992, all of the Defendants, left the Church as part of a dissident and disgruntled group.

27. At one point, Defendant Fincourt Shelton was a Trustee of the Church, but in or about March 1992, he was removed from the Office of Trustee by the actions of the Board of Trustees in full accordance with the Rules and By-laws of the Church.

28. Further, on or about May 24, 1992, Defendant Fincourt Shelton was disfellowshipped from the Church of the Lord Jesus Christ of the Apostolic Faith, meaning that he was no longer a member of the Church, nor entitled to hold any offices within the Church. (See Exhibit "B", p.2).

29. In 1992 Defendant Shelton commenced litigation in order to attempt to seize control of the Church. This matter eventually was captioned: <u>Church of the Lord Jesus Christ of the Apostolic Faith,</u>

<u>Inc., et al. v. Erik Shelton, Kenneth Shelton and A. Woodward Reagan,
et al.,</u> Court of Common Pleas, Philadelphia County, June Term 1992, No.
1887.  The record thereof is incorporated by reference herein.

30.  This litigation was ended by a combination of Orders of
the Honorable Abraham J. Gafni and by the filing of a Praecipe by
Defendant Fincourt Shelton to discontinue the action in or about
September 1992 whereby he voluntarily conceded all claims against him.

31.  From May 24, 1992, Defendant Fincourt Shelton, Esquire
has had no connection with the Church or with the Board of Trustees.

32.  Since the discontinuance of the above litigation, peace
and harmony has prevailed within the Church for a two year period.

33.  Subsequently, Defendants Shelton, Anthonee' Patterson,
George Patterson and Gregory became involved with another organization
which began to use a name identical to that of the Church, being "The
Trustees of the General Assembly of the Church of the Lord Jesus Christ
of the Apostolic Faith, Inc.", but located at 891 Main Street, Darby,
Pennsylvania 19023.  This entity will hereinafter be referred to as the
"Darby Enterprise".

<u>Scheme, Artifice and Conspiracy to Defraud</u>

34.  From at least May 1994 up to and including the present,
the Defendants did knowingly, wilfully and unlawfully conspire,
cooperate, combine, confederate and agree together and with each other
to commit certain criminal, fraudulent and tortious acts, and a scheme
and artifice to defraud the Church, its members, the Commonwealth of
Pennsylvania Corporation Bureau, the United States Postal Service,
various banks containing monies and assets of the Church, American
Express Travel Related Services, Inc. ("American Express") which had
issued credit cards to the Church and to various members of the Church,

the Darby Enterprise and through the enterprise of associating with each other, for the purpose of stealing, converting and trespassing against the monies, property and assets of the Church nationwide, and to interrupt and to stop the business of the Church.

<u>Plan and Purposes of the Scheme to Defraud</u>

35.   It was a part of the plan and purpose of the conspiracy and of the scheme to defraud that the Defendants would and did:

a.   establish an organization which began to use a name identical to that of the Church;

b.   file with the Pennsylvania Department of State and present falsely made and fraudulent corporate documents purportedly on behalf of the Church, to make it appear that the Defendants were the lawful representatives of the Church when in truth and in fact such was not the case;

c.   receive from the Pennsylvania Department of State, by mail, the falsely made and fraudulent corporate documents purport-edly on behalf of the Church, to make it appear that the Defendants were the lawful representatives of the Church when in truth and in fact such was not the case;

d.   utilize the above referenced falsely made and fraudulent corporate documents for the purpose of defrauding various individuals and entities who had lawfully been entrusted with monies, real estate and other property and assets of the Church, into believing that the Defendants were the rightful owners or custodians of said property, thereby;

e.   illegally obtaining monies, property and assets of the Church from these individuals and entities;

f.    denying the Church access to its own mail box, to disrupt the business of the Church and to illegally seize and obtain mail rightfully belonging to the Church, and;

g.    illegally seizing and/or canceling American Express Credit Cards lawfully issued to Church members, to disrupt the business of the Church, and then to obtain new credit cards in the names of the Defendants;

h.    by mail, wire and personal delivery, take the fraudulent corporate documents to various banking institutions where the Church maintained accounts and other property, for the purpose of defrauding said institutions into believing that the Defendants were the rightful owners and/or signatories to said accounts, the Defendants thereby gaining access to these monies, when in truth and in fact such was not the case;

i.    utilizing these false and fraudulent documents for the purpose of executing false deeds to seize control of various Church properties;

i.    carrying on the scheme to defraud which originated in the Commonwealth of Pennsylvania to various other states within the United States of America, to wit: Florida, Georgia, Maryland, North Carolina and Virginia, thereby affecting interstate and foreign commerce.

<u>Acts in Furtherance of the Scheme to Defraud</u>

36.    To carry out the plans and purposes of the scheme to defraud, the Defendants did, among others, the following acts:

<u>(Fraud Involving State of Pennsylvania Corporation Bureau)</u>

37.  On or about May 28, 1994, the Defendants fraudulently prepared "Statement of Correction" forms, pursuant to Title 15 Pa. C.S.A. §138.

38.  Pursuant to Title 15 Pa.C.S.A. §138(a), a Statement of Correction is to be filed whenever any document authorized or required to be filed in the Department of State has been filed and is an inaccurate record of the corporate or other action therein referred to, or was defectively or erroneously executed.

39.  Pursuant to Title 15 Pa.C.S.A. §138(a), however, the Statement of Correction "shall be executed by the association or other person that effected the defective or erroneous filing".

40.  On or about June 13, 1994, the Defendants fraudulently filed three false and fraudulent "Statements of Correction" with the Pennsylvania Department of State, Corporation Bureau, attempting to strike three prior legitimate corporate filings from the Bureau's records.  A true and correct copy of these documents are attached hereto as Exhibit "E".  These documents were false and fraudulent in that:

a.   the Defendants had no authority to file any corporate documents on behalf of the Church, and indeed were not in possession of the legitimate corporate seal of the Church;

b.   no defective or erroneous corporate action had taken place requiring the filing of Statements of Correction;

c.   the Statements of Correction filed by the Defendants were not filed by any party who had "effected [any] defective or erroneous filing".

41.  This part of the scheme, joined in by all Defendants, was crafted by Defendant Fincourt Shelton, an attorney at-law, who knew

that the Pennsylvania Department of State, Corporation Bureau, would not in the ordinary course of business, attempt to verify whether the Statements of Correction were being properly filed.

42.   All of the Defendants knew that the Pennsylvania Department of State would place evidence of said filing in the United States mail to be returned to the Defendants, which they planned to use to add the aura of legitimacy to their fraudulent scheme.

43.   On or about May 28, 1994, the Defendants fraudulently prepared a "Annual Statement - Nonprofit Corporation" form. A true and correct copy of this document is attached hereto as Exhibit "F".

44.   Pursuant to Title 15 Pa.C.S.A. §5110 entitled "Annual Report", on or before April 30 of each year, a corporation that has effected any change in its officers during the preceding calendar year shall file in the Department of State a statement executed by the corporation and setting forth:   (1) the name of the corporation, (2) the post office address, including street and number, if any, of its principal office, and (3) the names and titles of the persons who are its principal officers.

45.   The Annual Statement - Nonprofit Corporation form prepared by the Defendants was false and fraudulent in that it falsely stated that:

a.   the address of the Church had changed from 701 South 22nd Street, Philadelphia, Pennsylvania 19146-0180 to 891 Main Street, Darby, Pennsylvania 19023, Delaware County, the home of the Darby Enterprise, when in truth and in fact the address of the Church had not changed;

b.   Anthonee' J. Patterson was the General Overseer and a trustee of the Church, that Fincourt B. Shelton was the Church's

counsel and a trustee of the Church, that George E. Patterson was the First District Overseer and a trustee of the Church and that Defendant Alamoth L. Gregory was the Executive Administrator and trustee of the Church when in truth and in fact none of the Defendants held the said positions.

46. On or about June 13, 1994, the Defendants fraudulently filed the false and fraudulent Annual Statement - Nonprofit Corporation form along with the false and fraudulent Statements of Correction with the Pennsylvania Department of State, Corporation Bureau by mail in violation of Title 18 U.S.C. §1341.

47. On or about June 17, 1994, the aforementioned fraudulent filing resulted in unauthorized and fraudulent Articles of Amendment being recorded by the Pennsylvania Department of State.

48. On or about the 17th day of June, 1994, the fraudulent Articles of Amendment were caused to be placed in the United States mail by the Commonwealth of Pennsylvania, Department of State Corporation Bureau and mailed to the Defendants addressed to Anthonee' J. Patterson c/o Church of the Lord Jesus Christ, at 6 North 9th Street, Suite 200, Darby, Pennsylvania 19023, in violation of Title 18 U.S.C. §1341. A true and correct copy of this mailing is attached hereto as Exhibit "G".

49. On or about June 12, 1994, the Defendants prepared false and fraudulent Resolutions, purportedly issued by the Church, when in truth and in fact they had not been issued by the Church. These false and fraudulent Resolutions declared that on May 27, 1994, Defendant Anthonee' Patterson became Bishop of the Church of the Lord Jesus Christ of the Apostolic Faith as declared by a General Assembly allegedly held on May 27, 1994. These resolutions further falsely and

fraudulently represented that at the alleged General Assembly, Defendant George E. Patterson, Sr. was elected "District One Overseer", that Defendant Fincourt B. Shelton was appointed as Church attorney and that Defendant Gregory was appointed Executive Administrator.  This Resolution further and falsely stated that all Defendants were appointed to the Board of Trustees of the Church.

50.  The Defendants used the false and fraudulent Statements of Correction, Annual Report and Resolutions to disrupt the business of the Church, and to steal, convert and to trespass against the monies, property and assets of the Church.

51.  After receipt of the false and fraudulent Articles of Amendment through the United States mail, and subsequent to June 7, 1994, the false and fraudulent Articles of Amendment were used to embezzle, defraud, and facilitate theft by deception, by Defendants, Fincourt Shelton, Anthonee' Patterson, George Patterson and Gregory.

52. As set forth more fully below, the Defendants presented these false and fraudulent documents to banks, American Express and to the United States Postal Service fraudulently representing to these institutions that the Defendants were the lawful representatives of the Church entitled to all of the assets of the Church, when in truth and in fact they were not.

### (Fraud Involving The United States Post Office)

53.  On or about July 7, 1994, Defendant Anthonee' Patterson, on behalf of all Defendants, mailed a letter on false and fraudulent letterhead to Stephen Hawkins, the officer in charge, of the U.S. Postal Service, 2970 Market Street, Room 206, Philadelphia, Pennsylvania 19104-9998.  A true and correct copy of this letter is attached hereto as Exhibit "H".

CHURCHAF\SHELTON\PLEAOIMG\COMP2-C.CHU

54.   The Patterson letter contained several false and fraudulent representations which in part were as follows:

a.   that Minister Anthonee' J. Patterson is the new General Overseer of the Church of the Lord Jesus Christ of the Apostolic Faith which maintains a Post Office Box being 3880, when in truth and in fact the General Overseer of the Church is the Bishop;

b.   that Ms. Alamoth Leah Gregory, Defendant Fincourt B. Shelton and/or Anthonee' J. Patterson were authorized to retrieve mail from P.O. Box 3880, when in truth and in fact none of the Defendants were so authorized, in violation of Title 18 U.S.C. §1341.

55.   On or about July 7, 1994, Defendant Shelton, on behalf of all Defendants, forwarded a false and fraudulent letter to Stephen Hawkins, the Officer in Charge, of the U.S. Postal Service, 2970 Market Street, Room 206, Philadelphia, Pennsylvania 19104-9998 containing several false and fraudulent representations Which were in part as follows:

a.   that a General Assembly of the Church was held on May 27, 1994 at which Anthonee' J. Patterson was appointed as General Overseer of the Church, when in truth and in fact the General Overseer of the Church is the Bishop;

b.   that the corporate documents which were enclosed were true and genuine, when in truth and in fact any and all corporate documents submitted showing Patterson's authority to act on behalf of the Church were falsely made;

c.   that a General Assembly was held on May 27, 1994 appointing Anthonee' J. Patterson as General Overseer of the Church when in truth and in fact such was not the case;

in violation of Title 18 U.S.C. §1341. A true and correct copy of this letter is attached hereto as Exhibit "I".

56. Relying upon the false and fraudulent representations set forth in Patterson's letter of July 7, 1994, and Shelton's letter of July 7, 1994, the United States Postal Service refused access to the duly authorized representatives of the Church to Post Office Box 3880, thereby prohibiting the Church from obtaining any of its mail.

57. Relying upon the fraudulent misrepresentations in these letters, the United States Postal Service permitted access to said mailbox to the Defendants thereby permitting them to obtain, steal and convert to their own use from the United States mail money, property and assets belonging to the Plaintiffs in violation of Title 18 U.S.C. §1341.

## (Fraud Involving The Banks)

58. The Defendants utilized the above-mentioned false and fraudulent documents to fraudulently convince banking institutions that they were the lawful representatives of the Church, entitled to all of the assets thereof, when in truth and in fact they were not.

59. Beginning on or about July 6, 1994, The Defendants, utilizing the above described false and fraudulent documents, fraudulently induced and misled bank officials into believing that they were the rightful owners and duly authorized signatories on the Fidelity Bank accounts set forth above. Pursuant to this submission of false documentation, and by the making of false and fraudulent representations that the Defendants were the duly authorized signatories on these bank accounts, the Defendants falsely and fraudulently obtained from these various bank accounts the sum of over Two Hundred Thousand Dollars ($200,000.00).

60. On July 6, 1994, the Defendants presented the above described false and fraudulent documents to CoreStates Bank and did convert to their own use the Church's bank account # 0928-5651 containing funds in the approximate amount of Eight Thousand Nine Hundred and Ninety Four Dollars and Thirty Four Cents ($8,994.34), and Certificate of Deposit # 00412-22431 in the approximate amount of Twenty Thousand Six Hundred Sixty One Dollars and Fifty Nine Cents ($20,661.59) at said Bank.

61. On July 6, 1994, Defendants Anthonee' J. Patterson and Fincourt B. Shelton went to the Fidelity Bank in Philadelphia, Pennsylvania, falsely representing themselves to be the newly authorized representatives of the Church of the Lord Jesus Christ of the Apostolic Faith.

62. While at the Bank, the Defendants submitted the above false and fraudulent filings and resolutions to the bank in order to defraud the bank into believing that they were entitled to have access to all of the funds of the bank. A true and correct copy of the documents submitted to Fidelity and the various other banks is attached hereto as Exhibit "J".

63. In reliance upon these false and fraudulent documents and representations of the Defendants, Fidelity Bank permitted the Defendants to have access to all of the Bank's accounts belonging to the Church. The Defendants then proceeded to close five deposit accounts numbered 4004710333, 0002536720, 4004710531, 0002523181 and 0001656222, the aggregate balance of these accounts being $50,351.64. These funds were then transferred into a new account numbered 3105755048, which was opened by the Defendants on July 6, 1994.

64.  The Defendants Anthonee' J. Patterson and Fincourt Shelton caused the Bank to name them as the only authorized signatories on this new account.

65.  On July 6, 1994, in reliance upon the false and fraudulent documents and representations as set forth above, the Bank permitted these Defendants to close Account # 3015204468 which contained Twenty Five Thousand, Forty-One Dollars and Two Cents ($25,041.02). These funds were given to Defendant Fincourt Shelton, on behalf of all Defendants who promptly converted these Church funds to their own use. A true and correct copy of a letter from counsel for the Bank July 15, 1994 setting forth these facts is attached hereto as Exhibit "K".

66.  On or about July 9, 1994, not then realizing the national scope of the Defendants' scheme, Plaintiffs sought a temporary restraining order from the Court of Common Pleas of Philadelphia County, Pennsylvania, to regain the property seized by the Defendants and to return to the status quo pending the outcome of the litigation which the Plaintiffs were about to commence.

67.  On or about July 9, 1994, the Honorable Robert A. Latrone of the Court of Common Pleas signed an Order granting Plaintiffs' Motion for a Temporary Restraining Order and entering a Rule returnable on the Plaintiffs' Motion for a Preliminary Injunction for Tuesday, July 11, 1994. A true and correct copy of the Temporary Restraining Order is attached hereto as Exhibit "L".

68.  On Wednesday, July 13, 1994, the Honorable Joseph D. O'Keefe of the Court of Common Pleas granted another Temporary Restraining Order, although entitled Preliminary Injunction Order, a true and correct copy of which is attached hereto as Exhibit "M".

69. The bonding-security requirements in Judge O'Keefe's Order were amended by the Court on July 15, 1994, and the Order was extended by Stipulation approved by the Court on July 28, 1994, to Tuesday, August 2, 1994. A true and correct copy of the Amended Order and Stipulation are attached hereto respectively as Exhibits "N" and "O".

70. The July 13, 1994 Order signed by Judge O'Keefe (Exhibit "M") provided, inter alia, as follows:

a.   that the (Defendants herein) "... shall forthwith cease and desist from representing to anyone that they are the current representatives of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., (also known as "Church of the Lord Jesus Christ of the Apostolic Faith") located at 701 South 22nd Street, Philadelphia, Pennsylvania, 19146, the current representatives thereof being, inter alia, Bishop Kenneth N. Shelton, Elder Erik V. Shelton and John C. Shelton Thomas ("Petitioners"), and shall immediately cease and desist from representing to anyone that the address of (Plaintiffs herein) has been changed.

b.   that the (Defendants herein) shall forthwith cease and desist from interfering with any and all monies, accounts, credit cards or any other assets of the (Plaintiffs) the Church of the Lord Jesus Christ of the Apostolic Faith, and that the (Defendants herein) shall return to the control of the persons of Bishop Kenneth N. Shelton, Elder Erik V. Shelton and John C. Shelton-Thomas, all assets seized, taken, etc., by them in July 1994, "said assets are to include but shall not be limited to the following... a) All funds from Fidelity Bank, Philadelphia: (1) Fidelity Bank # 3015204468 (app. $25,041.02)."

71.  Following the entry of each of the above Orders, repre-
sentatives of the Plaintiffs contacted and visited the relevant banks
in order to regain the monies that had been seized by the Defendants.

72.  When Plaintiffs contacted the Fidelity Bank, the Bank
advised that all funds with the exception of those taken from Account
# 3015204468, which had contained the sum of $25,041.02, could be
returned to the Plaintiffs since these funds had been moved to new
accounts within the same Bank.

73.  With respect to Account # 3015204468 which had contained
$25,041.02, the Bank advised that those funds had been removed by
cashiers check payable to "The Church of the Lord Jesus Christ of the
Apostolic Faith, Inc.", and that the check had been given directly to
Defendant Fincourt Shelton.

On July 15, 1994, the bank forwarded a letter to counsel for
the Plaintiffs verifying these facts.  (Exhibit "K").

74.  After receiving the letter from Fidelity Bank, counsel
for Plaintiffs forwarded a letter to Defendant Fincourt Shelton on July
19, 1994, who was representing himself and all other Defendants in the
Common Pleas Court matter, a true and correct copy of which is attached
hereto as Exhibit "P".  Pursuant to said letter, Plaintiffs demanded
that the funds taken pursuant to the cashiers check from Account
#3015204468 be returned immediately per the Order of the Court.

75.  In spite of Plaintiffs' demand letter, and the Orders of
the Court of Common Pleas of Philadelphia, the Defendants have refused
to return said funds.

76.  On or about July 8, 1994, Fincourt B. Shelton, Esquire,
Anthonee' J. Patterson, and Roland Patterson, a confederate of the
Defendants, were encountered by John Brown, Esquire, in-house counsel

and an officer of the legitimate Church organization, attempting to gain access to accounts, safe deposit boxes and other Church property through misrepresentations at Fidelity Bank in Philadelphia.

77.  On or about July 8, 1994, Defendants George Patterson, Sr., and Anthonee' J. Patterson did take a fraudulent corporate resolution to the First Union National Bank in Jacksonville, Florida.  A true and correct copy of this resolution is attached hereto as Exhibit "Q".

78. In reliance upon these fraudulent documents and the false and fraudulent representations of George Patterson and Anthonee' Patterson, the Jacksonville Bank permitted the Defendants to close out three of the Church's bank accounts, Account # 3425006164315 (One Thousand Two Hundred Four Dollars and Twenty-One Cents ($1,204.21)); Account # 2125000530084 (Three Thousand Six Hundred Fourteen Dollars and Forty-Nine Cents ($3,614.49)), and Account # 2125000530110, (Four Thousand Four Hundred Sixty-Nine Dollars and Twenty-Three Cents ($4,469.23)), receiving thereafter a cashier's check in the amount of Nine Thousand Two Hundred Eighty-Seven Dollars and Ninety-Three Cents ($9,287.93).  A true and correct copy of records reflecting this transaction are attached hereto as Exhibit "R".

79.  On or about July 12, 1994, the Defendants, through their agent Joseph Askew, did close out four (4) bank accounts at the Maryland National Bank in Baltimore, Maryland facilitated by a false and fraudulent resolution naming Joseph Askew and Ernest Leonard, Sr. as representatives of the Church authorized to close any and all accounts.  A true and correct copy of this resolution is attached hereto as Exhibit "S".

80.  Through the scheme at the Maryland National Bank, the Defendants and agents of the Defendants stole $6,101.73 of the funds

belonging to the Church through the use of the false and fraudulent resolution, from Account Nos. 6268875, 51163601, 504118076 and 2466936. Documents reflecting the theft of these funds are attached hereto as Exhibit "T".

81.   On or about July 13, 1994, the Defendants, through their agents, caused a bank account belonging to the church, Account #2055300472925, containing the sum of Three Thousand Four Hundred Sixteen Dollars and Ninety-Six Cents ($3,416.96) to be closed at the First Union National Bank in Atlanta, Georgia.  This action was facilitated with the use of a false and fraudulent corporate resolution, certification, the false and fraudulent Statement of Correction and the mailing from the Pennsylvania Corporation Bureau which was fraudulently caused by the Defendants, all of which documents are attached hereto as Exhibit "U".

82.   On or about July 13, 1994, Anthonee' J. Patterson and Kevin Patterson unlawfully, and pursuant to the above described scheme and artifice to defraud, and after causing the closing of the account, withdrew the Three Thousand Four Hundred Sixteen Dollars and Ninety-Six Cents ($3,416.96) from the First Union National Bank Account in Atlanta, Georgia.

83.   On or about July 19, 1994, Defendants Fincourt Shelton and Anthonee' J. Patterson did fraudulently cause the transfer of funds from a Church account at the First Union National Bank in Lakeworth, Florida in the amount of Twenty Thousand Two Hundred Fifty-Nine Dollars and Forty-Two Cents ($20,259.42), from Account # 2629902495082 which was released in the form of a cashier's check in that amount was facilitated by the use of the false and fraudulent resolution purportedly authorizing him to close out any of the Church's accounts.  A true and

correct copy of the cashier's check demonstrating the theft of these funds is attached hereto as Exhibit "V".

84.   For the purpose of adding legitimacy to the fraudulent actions of Anthonee' J. Patterson in the removal of funds from First Union Bank of Lakeworth, Florida, and to cover up and to delay detection of the conspiracy and scheme to defraud, Defendant Fincourt Shelton, as the agent for all of the Defendants, caused a false and fraudulent letter to be sent via telecopier and by United States mail, signed by Carena C. McIlwain, an attorney associated with Defendant Shelton's office to the First Union Bank of Lakeworth, Florida.  A true and correct copy of this letter is attached hereto as Exhibit "W".

85.   This letter dated July 28, 1994, which was sent by facsimile transmission and mailed to the First Union Bank in Florida, falsely stated that:

a.   Defendant Fincourt B. Shelton is the attorney for the Church and that he was duly appointed by the President of the Board of Trustees to that position on January 14, 1990, which position had not been rescinded;

b.   "Minister Anthonee' J. Patterson is the duly appointed and elected General Overseer for the Church of the Lord Jesus Christ of the Apostolic Faith with full power to act on behalf of the Church";

c.   that the appointment of Defendant Patterson was constituted by empowerment of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith on May 28, 1994;
in violation of Title 18 U.S.C. §§1341 and 1343.

86.   In or July 1994, a Church account at the First Union National Bank in Charlotte, North Carolina, in the amount of One

Thousand Eight Hundred Dollars ($1,800.00), was closed by the Defendants with the use of a fraudulent corporate resolution falsely stating that Anthonee' J. Patterson was the General Overseer.  A true and correct copy of this resolution is attached hereto as Exhibit "X".

## (Fraud Involving American Express)

87.  On or about July 7, 1994, the Defendants utilized the above-described false and fraudulent filings and resolutions to defraud the Church and American Express Travel Related Services, Inc., 20022 North 31st Avenue, Phoenix, Arizona 85027, into believing that the Defendants were duly authorized owners and custodians of the American Express credit cards of the Church.  A true and correct copy of the documents forwarded to American Express are attached hereto as Exhibit "Y".

88.  On or about July 7, 1994, the Defendants utilized these false and fraudulent documents to cause charge and credit card accounts of the Plaintiffs to be closed and requested that new corporate cards be issued to Defendants Fincourt B. Shelton, Anthonee' J. Patterson, George E. Patterson, Sr. and Alamoth Leah Gregory.

89.  In perpetrating this fraudulent conduct upon the Church and upon American Express, the Defendants did do the following:

a.   called American Express by phone, making false and fraudulent representations causing American Express to believe that these Defendants were associated with, and the duly authorized representatives of, the Plaintiffs, and thereby entitled to credit cards and the credit rating of the Church;

b.   demanded during said call that the credit cards of the Church be immediately canceled and that new credit cards in the names of the Defendants be issued;

c.   mailed and sent by facsimile transmission to American Express the above-stated false and fraudulent resolutions and filings in order to defraud American Express and to induce American Express into believing that these Defendants were associated with, and the duly authorized representatives of, the Plaintiffs, and thereby entitled to credit cards and the credit rating of the Church, when in truth and in fact such was not the case;

in violation of Title 18 U.S.C. §§1343 and 1341.

## (Fraud Involving Real Property)

90.   On or about the 20th day of March, 1994, defendants caused a fraudulent deed to be executed, outside of the chain of title, regarding real property belonging to the Church located at 1990 Ali Baba Avenue, Opalocka, Florida.   This false and fraudulent deed is attached hereto as Exhibit "Z".

91.   As indicated upon Exhibit "Z", this false and fraudulent deed was "prepared by Fincourt Shelton", at Suite 201, 6 North 9th Street, Darby, Pennsylvania.

92.   This aforementioned property was lawfully deeded to the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., 701 South 22nd Street, Philadelphia, Pennsylvania, on October 15, 1974.   This lawful deed is attached hereto as Exhibit "AA".

93.   The fraudulent deed prepared by Defendant Shelton was witnessed by Defendants Anthonee' J. Patterson and George Patterson, notarized by Roland F. Patterson and executed by one Mamie Ponder.

94.   The fraudulent deed listed the grantee as the Darby Enterprise, "Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., Suite 200, 6 North 9th

Street, Darby, Pennsylvania 19023", and was recorded on June 3, 1994 by the Clerk of Dade County, Florida.

95.  On or about July 7, 1994, defendants unlawfully entered the premises and prevented the lawful owners from gaining access to the property.

<u>(Continuing Fraud)</u>

96.  As a continuation of the fraud perpetrated herein, and in continued violation of the Orders of the Court of Common Pleas, the Defendants caused a letter dated July 22, 1994, authored by Defendant Anthonee' J. Patterson, to be sent by facsimile transmission and mailed to various local affiliates of the Church across the country.  This letter instructs the local churches to discontinue the required practice of depositing money into the national accounts of the Church by stating: "**T*na HEED AND KEEP YOUR FINANCES IN YOUR LOCAL ACCOUNTS**".

97.  The letter dated July 22, 1994 was sent from the offices of the Darby Enterprise, being 891 Main Street, Darby, Pennsylvania and 6 North Ninth Street, Suites 200 and 201, Darby, Pennsylvania 19023. A true and correct copy of this letter is attached hereto as Exhibit "BB".

## COUNT I - RICO

98.  Paragraphs 1 through 97 are hereby incorporated by reference as if fully set forth herein.

99.  The knowing and intentional failure of the Defendants, individually and as representatives of the Darby Enterprise, to disclose material facts, and their deliberate misrepresentation of material facts in conjunction with the telephone conversations, letters, checks or other remittances sent through the United States

mails described above constitute repeated violations of Title 18 U.S.C. §1341, relating to mail fraud, and Title 18 U.S.C. §1343, relating to wire fraud, and further constitute acts of racketeering activity as that term is defined in Title 18 U.S.C. §1961(1)(B).

100. Defendants Pincourt Shelton, Anthonee' J. Patterson, George E. Patterson, Sr. and Alamoth Leah Gregory, were associated in fact, although not a legal entity, through their association with each other and through their management and operation of the Darby Enterprise from at least May 1993 through the present, as well as through their schemes to defraud as set forth herein, which association in fact constituted an enterprise as that term is defined in Title 18 U.S.C. §1961(4).

101. The Darby Enterprise is an entity capable of holding a legal or beneficial interest in property, and Defendants Fincourt Shelton, Anthonee' J. Patterson, George E. Patterson, Sr. and Alamoth Leah Gregory are persons subject to the Racketeering influenced and Corrupt Organizations Act pursuant to 18 U.S.C. §1961(3).

102. During all times relevant, the Darby Enterprise was an association and therefore an enterprise as the term is defined in Title 18 U.S.C. §1961(4).

103. All Defendants were associated in fact with each other through the within described scheme and artifice to defraud, which association in fact constituted an enterprise as the term is defined in Title 18 U.S.C. §1961(4).

104. The enterprise of the Defendants Fincourt Shelton, Anthonee' J. Patterson, George E. Patterson, Sr. and Alamoth Leah Gregory is an entity capable of holding a legal or beneficial interest

in property, and are persons subject to the Racketeering influenced and Corrupt Organizations Act pursuant to 18 U.S.C. §1961(3).

105. During all times relevant, Defendant Fincourt Shelton was an individual and therefore an enterprise as the term is defined in Title 18 U.S.C. §1961(4).

106. During all times relevant, Defendant Anthonee J. Patterson was an individual and therefore an enterprise as that term is defined in 18 U.S.C. §1961(4).

107. During all times relevant, Defendant George E. Patterson, Sr. was an individual and therefore an enterprise as the term is defined in Title 18 U.S.C. §1961(4).

108. During all times relevant, Defendant Alamoth Leah Gregory was an individual and therefore an enterprise as that term is defined in Title 18 U.S.C. §1961(4).

109. The wire frauds and mail frauds perpetrated by Defendants upon Plaintiffs, the Commonwealth of Pennsylvania, the United State Postal Service, American Express, and the banks, constituted a pattern of racketeering activity consisting of at least two acts of racketeering activity, all of which occurred after the effective date of Title 18 U.S.C. §1961 et seq., and the last of which occurred within ten years after the commission of a prior act of racketeering activity within the meaning of Title 18 U.S.C. §1961(5).

110. Defendants Shelton, Anthonee' Patterson, George Patterson and Gregory used income that they derived from the above-described pattern of racketeering activity in the operation of each of the enterprises, the activities of which affect interstate and foreign commerce, in violation of 18 U.S.C. §1962(a).

111. Defendants Shelton, Anthonee' Patterson, George Patterson and Gregory acquired or maintained an interest in or control of each of the enterprises, the activities of which affect interstate and foreign commerce, in violation of 18 U.S.C. §1962{b}.

112. Defendants Shelton, Anthonee' Patterson, George Patterson and Gregory conducted or participated in the conduct of each of the enterprises through the above-described pattern of racketeering activity which enterprises' activities' affect interstate and foreign commerce, in violation of 18 U.S.C. §1962(c).

113. The Defendants conspired with each other to violate 18 U.S.C. §1962(a), (b), and (c), in violation of 18 U.S.C. §1962⟨d⟩.

114. As a direct and proximate result of the foregoing violations of 18 U.S.C. §1962 by Defendants, Plaintiffs sustained injury to their property, assets and business in an amount yet to be fully determined.

WHEREFORE, the Plaintiffs pray that the Court:

a. enter judgment against the Defendants, jointly and severally, and in favor of the Plaintiffs in this matter;

b. enter a preliminary and permanent injunction against the Defendants to cease and desist from engaging in the conduct described above;

c. award the Plaintiffs treble damages, interest, costs of suit and attorney's fees pursuant to Title 18 U.S.C. §1964(c), to compensate the Plaintiffs for the injuries which they suffered to the business and property of the Church; and

d. award such other relief as the Court may deem just and proper under the circumstances.

## COUNT II - EQUITY UNDER STATE LAW

115. Paragraphs 1 through 114 are hereby incorporated by reference as if fully set forth herein.

116. The Plaintiffs require that this Court enter preliminary and permanent injunctions against the Defendants, and anyone acting in concert with them, as:

      a.   Plaintiffs are likely to succeed on the merits of their claims;

      b.   Plaintiffs will suffer irreparable injury if the preliminary and permanent injunctions are not issued;

      c.   Plaintiffs have no adequate remedy at law;

      d.   no harm will be caused to the Defendants upon the issuance of the injunctions.

117. Based upon the above, Plaintiffs are likely to succeed on the merits. None of the Defendants were active members of the Church at the time of these events described above, and Defendant Fincourt Shelton had been disqualified from membership for over two years. As a result, the Defendants have absolutely no claim to possess or in any way interfere with any of the property of the Church.

118. If the requested injunctions are not issued, Plaintiffs will suffer irreparable injury. Upon information and belief, the Defendants are without adequate personal resources to cover their ordinary and necessary living needs. Upon information and belief, this was one of the purposes in carrying out this fraudulent scheme against the Plaintiffs.

119. Thus, if preliminary and permanent injunctions are not issued:

a.  property, assets and monies of the Church, essential for the running and operation of the Church, will be forever outside the reach of the Church;

b.  the peace and harmony of the Church will continue to be interrupted, interfered with and destroyed by the Defendants in light of the fact that part of the scheme and artifice to defraud as demonstrated above, is to prevent Bishop Shelton and his parishioners from operating as a Church.

120. In addition, the Patterson Defendants reside and travel frequently to the State of Florida where they have conducted certain fraudulent activities with respect to the radio broadcast of the Church. If the requested preliminary and permanent injunctions are not issued, these Defendants will continue to abscond with and hide the monies and assets of the Church, making any potential recovery of these funds impossible.

121. The fraudulent use of the name "Church of the Lord Jesus Christ of the Apostolic Faith" by the Defendants has and will continue to harm the Church in the conduct of its ordinary and necessary business, continue to cause confusion and harm the reputation of the Church among its business associates and vendors, and continue to harm the good credit rating of the Church if these Defendants are not restrained from these misrepresentations. Banking institutions, the U.S. Postal Service, credit card companies and the like will continue to be confused with respect to the misuse and abuse of the name of the Church.

122. The Plaintiffs have no adequate remedy at law for the reasons set forth above. In addition, Defendant Fincourt Shelton has been carrying on an on-going war and dispute with the Church from early to mid-1992, which war and dispute has now been revived in the year

1994.  The history of this matter clearly indicates that Defendant Shelton will not cease and desist from interfering with the members of the Church or Church property now or in the future, unless an injunction is issued.

123. No harm will come to Defendants upon the issuance of preliminary or permanent injunction orders.  The Defendants have absolutely no right to utilize or avail themselves of any of the assets of the Church.  The Defendants are not members of the Church and indeed, as averred above, Defendant Fincourt B. Shelton has been removed from Church membership for over two years.

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants jointly and severally, and that preliminary and permanent injunctions be issued against the Defendants as follows:

a.   that the respondents shall immediately cease and desist from representing to anyone that they are the duly elected and/or duly ordained representatives of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. ("Church of the Lord Jesus Christ of the Apostolic Faith"), located at 701 South 22nd Street, Philadelphia, Pennsylvania, or at 6 North 9th Street, Suites 200 and 201, Darby, Pennsylvania 19023, or that they represent said entity at and/or from any other location or in any capacity;

b.   that the Respondents cease and desist from interfering with any and all monies, accounts, credit cards or any other assets of the Church of the Lord Jesus Christ of the Apostolic Faith wherever held;

c.   that the Respondents cease and desist from notifying any public entities such as the City of Philadelphia, the Common-

wealth of Pennsylvania or of any other state, or the United States of America that they are duly elected and/or ordained representatives of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.;

    d.   that any and all banking institutions holding accounts in the name of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. are not to honor the requests of Respondents Fincourt B. Shelton, Anthonee' J. Patterson, George E. Patterson, Sr. or Alamoth Leah Gregory to obtain or be entitled to the assets of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., but that they continue to recognize the legitimate Church leadership;

    e.   that all monies wrongfully obtained by the Defendants be immediately returned;

    f.   that such other relief be granted as the Court deems just and reasonable.

## COUNT III - FRAUD UNDER STATE LAW

124. Paragraphs 1 through 123 above are hereby incorporated by reference herein as if fully set forth.

WHEREFORE, Plaintiffs pray that judgment be entered in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount sufficient to compensate Plaintiffs for all loses suffered, together with legal interest, costs and reasonable attorneys' fees.

## COUNT IV - CONVERSION UNDER SATE LAW

125. Paragraphs 1 through 124 above are hereby incorporated by reference herein as if fully set forth.

126. As a result of the above conduct, the Defendants did knowingly, wilfully and unlawfully obtain, steal and permanently convert to their own use lawful property of the Church set forth above.

127. The Defendants did convert, inter alia, the following property:

      a.   the monies of the Church in the approximate amount of over Two Hundred Thousand Dollars ($200,000.00);

      b.   the post office box of the Church and United States Mail lawfully belonging to the Church;

      c.   the good name and reputation of the Church;

      d.   American Express Credit Cards of the Church;

      e.   real estate belonging to the Church;

      f.   other property of the Church yet to be uncovered.

WHEREFORE, Plaintiffs pray that judgment be entered in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount sufficient to compensate Plaintiffs for all loses suffered, together with legal interest, costs and reasonable attorneys' fees.

## COUNT V - TRESPASS UNDER STATE LAW

128. Paragraphs 1 through 127 above are hereby incorporated by reference herein as if fully set forth.

129. As a result of the above conduct, the Defendants did knowingly, wilfully and unlawfully obtain, steal and interfere with and convert to their own use lawful property of the Church, to wit:

      a.   the monies of the Church in the approximate amount of over Two Hundred Thousand Dollars ($200,000.00);

      b.   the post office box of the Church and United States Mail lawfully belonging to the Church;

      c.   the good name and reputation of the Church;

    d.    American Express Credit Cards of the Church;

    e.    real estate belonging to the Church;

    f.    other property of the Church yet to be uncovered.

WHEREFORE, Plaintiffs pray that judgment be entered in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount sufficient to compensate Plaintiffs for all loses suffered, together with legal interest, costs and reasonable attorneys' fees.

## COUNT V - CONSPIRACY UNDER STATE LAW

130. Paragraphs 1 through 129 above are hereby incorporated by reference herein as if fully set forth.

A. **Statement of The Conspiracy**

131. From at least May 1994 up to and including the present, the Defendants did knowingly, wilfully and unlawfully cooperate, combine, confederate and agree together and with each other, with and through the Darby Enterprise, and with other persons known and unknown to the Plaintiffs, to commit certain tortious acts against the Church, to wit, to develop, operate and to carry out a scheme to defraud against the Church for the purpose of stealing, converting and to trespassing against the monies, property and assets of the Church, and to interrupt and stop the free and lawful operation of the business of the Church.

B. **Plan and Purposes of the Conspiracy**

132. It was the plan and purpose of the conspiracy that the Defendants would and did:

    a.    establish an organization using a name identical to that of the Church;

    b.    file with the Pennsylvania Department of State and present falsely made and fraudulent corporate documents purportedly on

behalf of the Church, for the purpose of illegally obtaining monies, property and assets of the Church;

        c.   deny the Church access to its own mail box so as to disrupt the business of the Church and to illegally seize and obtain mail rightfully belonging to the Church, and;

        d.   illegally seize and/or cancel American Express Credit Cards lawfully issued to Church members, to obtain new credit cards in the names of the Defendants and to disrupt the business of the Church.

   C.  <u>Overt Acts In Furtherance of The </u>Conspiracy

133. To carry out the plans and purposes of the conspiracy the Defendants did the following acts:

134. Paragraphs 34 through 95 above are hereby incorporated by reference herein as if fully set forth.

WHEREFORE, Plaintiffs pray that judgment be entered in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount sufficient to compensate Plaintiffs for all loses suffered, together with legal interest, costs and reasonable attorneys' fees.

<u>COUNT VI - PUNITIVE DAMAGES UNDER STATE LAW</u>

135. Paragraphs 1 through 134 above are hereby incorporated by reference herein as if fully set forth.

136. By engaging in the conduct heretofore alleged, each of the Defendants separately and in concert with each other engaged in shocking, extreme and outrageous conduct justifying an award of punitive damages to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiffs pray that an award of punitive damages be entered in favor of the Plaintiffs and against the Defendants

jointly and severally, together with legal interest, costs and reasonable attorneys' fees.

BOWSER, WEAVER & COUSOUNIS, P.C.

BY: _____
CHARLES W. BOWSER, ESQUIRE
LUTHER E. WEAVER, fll, ESQUIRE
DAVID C. HARRIS, ESQUIRE
Bowser, Weaver & Cousounis, P.C.
Suite 2290, 1650 Arch Street
Philadelphia, PA 19103
(215) 751-0600
Attorneys for Plaintiffs

Date:  August 4, 1994

**EXHIBIT B**

# BOWSER, WEAVER & COUSOUNIS, P.C.
### Attorneys-at-Law
July 12, 1995

Telephone: (215) 790-06
Telecopier: (215) 790-066

**Via Hand Delivery**

John W. Morris, Esquire
One Penn Square West
Suite 1300
Philadelphia, PA  19102-4813

        Re:  Church of the Lord Jesus Christ
             of the Apostolic Faith

Dear Mr. Morris:

        Enclosed please find discovery as outlined on the attached
schedule.  More will be forthcoming.

        As agreed at the hearing yesterday, please provide me with
dates that we may take the deposition of your client, Anthonee'
Patterson.

                        Very truly yours,

                        LUTHER E. WEAVER, III

LEW:
Enclosure

cc:  John R. Brown, Esquire (Via Facsimile)
     Fincourt B. Shelton, Esquire (Via regular mail)

250 South 16th Street, Philadelphia, PA 19102

AREA CODE 215 735-8982

CABLE ADDRESS: APOSTOLIC PHILADELPHIA

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP S. McDOWELL SHELTON - APOSTLE AND GENERAL OVERSEER
HEADQUARTERS: ON APOSTOLIC SQUARE AT 22ND & BAINBRIDGE STREETS
PHILADELPHIA, PENNSYLVANIA 19146 U.S.A.

POST OFFICE BOX 3880

TWELFTH MONTH 16, 1991

## NOTICE

TO:  Board of Trustees

     Be it known, that a Board of Trustees meeting
will be held on December 28, 1991 at Headquarters Conference
Room, located at 701 South 22nd Street, Philadelphia,
PA Apostolic Square starting at 12 noon.  This meeting
will be open only to Board of Trustees members.

     The Board of Trustees will meet for the purpose
of deciding Church affairs arising as a result of the
passing of our Holy Apostolic Blessedness, Bishop S.
McDowell Shelton.

                    By Order of the Board of Trustees


_Elder Nehemiah_

Elder Nehemiah
President


_Elder Marcus_

Elder Marcus
President

AREA CODE 215: 735-8982

CABLE ADDRESS: APOSTOLIC PHILADELPHIA

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) – APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0160, U.S.A.

POST OFFICE BOX 3880

## BOARD OF TRUSTEES MEETING

## MINUTES OF NOVEMBER 2, 1991

This meeting of the majority of the members of the Board of Trustees of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was one of a series continued from earlier meetings held at Headquarters Church, in Philadelphia, Pennsylvania, on November 2, 1991.

**PRESENT:**
**Elder Kenneth N. Shelton, Elder Erik V. Shelton, Elder J. Eric Smith, Elder A. Woodward Shelton-Reagan, Minister John C. Shelton-Thomas, Minister Fincourt B. Shelton, Deacon George Brown, Deacon Daniel Bowens,** and **Lord Frank Matthews**. These members constitute a quorum.

**ABSENT:**
Three members were absent: **Elder Roddy J. Nelson Shelton I, Minister Roddy J. Nelson Shelton II, Minister Nathaniel Shelton-Bligen** (Proxy of Minister Shelton-Bligen  voted by Elder Kenneth N. Shelton).

**MINUTES APPROVED:**
The minutes of previous Board of Trustees meeting were approved.

**NEW BUSINESS:**
Elder Kenneth N. Shelton expressed concern, that though he was to be a signer on accounts with Elder Roddy J. Nelson Shelton I and Elder J. Eric Smith, he was not contacted although he made himself available. There was and inquiry as to whether  anyone knew of Elder Roddy J. Nelson Shelton I whereabouts or how to contact him.

Elder Kenneth N. Shelton motioned that Elder Marcus Shelton-Reagan be a signatory on Church Bank Accounts, seconded by Minister John C. Shelton-Thomas, and by unanimous vote was added as one of the signers on Church Bank Accounts.

## BOARD OF TRUSTEES MEETING

### MINUTES OF NOVEMBER 2, 1991
### PAGE -2-

Minister Fincourt B. Shelton motioned that the Board of Trustees address Church employees concerns, in regard to continued employment, which was duly seconded.

Minister Fincourt B. Shelton motioned that at least two Priests be selected, by a majority vote of Priests, to make personal appearances in accordance with an itinerary set forth by Bishop S. McDowell Shelton (deceased) was unanimously carried by the Board.

Respectfully submitted,

_____
Secretary

AREA CODE 215: 735-8982

CABLE ADDRESS: APOSTOLIC PHILADELPHIA

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER
HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.
POST OFFICE BOX 3880

## BOARD OF TRUSTEES MEETING

## MINUTES OF DECEMBER 28, 1991

A  meeting of the majority of the members of  the Board of Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on December 28, 1991 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**PRESENT:** Elder A. Woodward Shelton-Reagan, Elder Roddy J. Nelson I, Elder Kenneth N. Shelton, Elder Erik V. Shelton, Elder J. Eric Smith, Minister John C. Shelton-Thomas, Minister Roddy J. Nelson Shelton II, Minister Fincourt B. Shelton, Deacon George Brown, and Lord Frank Matthews.  Deacon Daniel Bowens tendered his resignation and is no longer a member. These members constitute a quorum.

**ABSENT:** One member was absent: **Minister Nathaniel Shelton-Bligen** (Proxy of Minister Nathaniel Shelton-Bligen voted by Elder Kenneth N. Shelton).

**NEW  BUSINESS:** The following resolutions were considered by the Board of Trustees:

Resolution 1A:  On or after December 29, 1991, the Trustees by a majority vote of the Board of Trustees are given blanket authority given to conduct all negotiations and closings in new purchase or sale of any property, real or personal, to be acquired or disposed of by the General Assembly Corporation. The title to any real or personal property is to be acquired in the name of the Trustees of the General Assembly.  Title to any real or personal property is to be disposed of in like manner (amended 1991).

**Resolved by vote of Board of Trustees.**
11-Yes, 0-No

## BOARD OF TRUSTEES MEETING

## MINUTES OF DECEMBER 28, 1991
## PAGE -2-

<u>Resolution 1B:</u>  On or after December 29, 1991 the recorded voice of His Holy Apostolic Blessedness Bishop S. McDowell Shelton shall be utilized in all of the affiliated churches of the Church of the Lord Jesus Christ for church services unless otherwise authorized by the majority vote of the Board of Trustees (1991).

**Resolved by vote of Board of Trustees..**
9-Yes, 1-No, 1-Abstention

<u>Resolution 1C:</u>  The appointment and renewal of executives and trustees shall be left up to majority vote of the Board of Trustees (1991).

**Resolved by vote of Board of Trustees.**
9-Yes, 0-No, 2-Abstention

<u>Resolution 2:</u> Resolved that the following persons shall be trustees of the General Assembly until the next scheduled General Assembly meeting:

**Elder Kenneth N. Shelton**
**Elder A. Woodward Shelton-Reagan**
**Elder Erik V. Shelton**
**Minister John C. Shelton-Haguth**
**Minister Fincourt B. Shelton**
**Elder J. Eric Smith**
**Minister Nathaniel Shelton-Bligen**
**Deacon George Brown**

**Resolved by vote of Board of Trustees.**
11-Yes, 0-No

The following nominations were considered by the Board of Trustees:

**Elder Kenneth N. Shelton, a/k/a Elder Omega Shelton,** Co-President
Resolved by vote of Board of Trustees.
11-Yes, 0-No

## BOARD OF TRUSTEES MEETING

### MINUTES OF DECEMBER 28, 1991
### PAGE -3-

**Elder A. Woodward Shelton-Reagan,** a/k/a **Elder Shelton Marcus,** Co-President
Resolved by vote of Board of Trustees.
11-Yes, 0-No

**Elder Erik V. Shelton,** a/k/a **Elder Y'saac Shelton,** Secretary
Resolved by vote of Board of Trustees.
11-Yes, 0-No

**Minister Fincourt B. Shelton,** a/k/a **Minister Asher Shelton,** Treasurer
Resolved by vote of Board of Trustees.
9-Yes, 0-No, 2-Abstention

**Minister John C. Shelton Thomas,** a/k/a **Minister Shelton Haguth,** Chief Administrator
Resolved by vote of Board of Trustees.
9-Yes, 0-No, 2-Abstention

Resolution 3: Resolved that all church accounts shall be signed by any two of three named executive trustee persons:

**Elder Kenneth N. Shelton,** a/k/a **Elder Omega Shelton,** Co-President

**Elder A. Woodward Shelton-Reagan,** a/k/a **Elder Shelton Marcus,** Co-President

**Elder Erik V. Shelton,** a/k/a **Elder Y'saac Shelton,** Secretary

Resolved by vote of Board of Trustees.
11-Yes, 0-No

Respectfully submitted,

Secretary

AREA CODE 215: 735-8982                                CABLE ADDRESS: APOSTOLIC PHILADELPHIA

## The Trustees of the General Assembly of the
## Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.

POST OFFICE BOX 3880

## GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF DECEMBER 29, 1991

A business meeting of the majority of the members of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on December 29, 1991 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**ATTENDEES:**   More than fifty members were in attendance. This constitutes a quorum.

**NEW BUSINESS:**   Minister Fincourt B. Shelton read Amended Church Bylaws, as adopted by the Board of Trustees, to the General Assembly.  At the end of each resolution, a vote was taken. The following resolutions were submitted for ratification by the General Assembly:

Resolution 1A: On or after December 29, 1991, the Trustees by a majority vote of the Board of Trustees are given blanket authority given to conduct all negotiations and closings in new purchase or sale of any property, real or personal, to be acquired or disposed of by the General Assembly Corporation. The title to any real or personal property is to be acquired in the name of the Trustees of the General Assembly.  Title to any real or personal property is to be disposed of in like manner (amended 1991).

**Approved by unanimous vote of General Assembly.**

Resolution 1B: On or after December 29, 1991 the recorded voice of His Holy Apostolic Blessedness Bishop S. McDowell Shelton shall be utilized in all of the affiliated churches of the Church of the Lord Jesus Christ for church services unless otherwise authorized by the majority vote of the Board of Trustees (1991).

**Approved by unanimous vote of General Assembly.**

## GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF DECEMBER 29, 1991
PAGE -2-

**Resolution 1C**: The appointment and renewal of executives and trustees shall be left up to majority vote of the Board of Trustees (1991).

**Approved by unanimous vote of General Assembly.**

**Resolution 2**: Resolved that the following persons shall be trustees of the General Assembly until the next scheduled General Assembly meeting:

**Elder Kenneth N. Shelton**, a/k/a **Elder Omega Shelton**, Co-President
Approved by unanimous vote of General Assembly.

**Elder Marcus Shelton-Reagan**, a/k/a **Elder Shelton Marcus**, Co-President
Approved by unanimous vote of General Assembly.

**Elder Erik V. Shelton**, a/k/a **Elder Y'saac Shelton**, Secretary
Approved by unanimous vote of General Assembly.

**Minister Fincourt B. Shelton**, a/k/a **Minister Asher Shelton**, Treasurer
Approved by unanimous vote of General Assembly.

**Minister John C. Shelton Thomas**, a/k/a **Minister Shelton Haguth**, Chief Administrator
Approved by unanimous vote of General Assembly.

**Elder J. Eric Smith**, Trustee
Approved by unanimous vote of General Assembly.

**Minister Nathaniel Shelton-Bligen**, a/k/a **Minister Kainos Neusonje**, Trustee
Approved by unanimous vote of General Assembly.

**Deacon George Brown**, a/k/a **Lord Philemon**, Trustee
Approved by unanimous vote of General Assembly.

## GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF DECEMBER 29, 1991
### PAGE -3-

Resolution 3: Resolved that all church accounts shall be signed by any two of three named executive trustee persons:

**Elder Kenneth N. Shelton,** a/k/a **Elder Omega Shelton,** Co-President

**Elder Marcus Shelton-Reagan,** a/k/a **Elder Shelton Marcus,** Co-President

**Elder Erik V. Shelton,** a/k/a **Elder Y'saac Shelton,** Secretary

Approved by unanimous vote of General Assembly.

Respectfully submitted,

_____
Secretary

AREA CODE 215: 735-8983                                    FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER
HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.
POST OFFICE BOX 3880

## BOARD OF TRUSTEES MEETING

### MINUTES OF MAY 23, 1992

A meeting of the majority of the members of the Board of Trustees of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held in Philadelphia, Pennsylvania, on May 23, 1992.

Notice of this Board of Trustees meeting, was waived by unamious approval of active members.

**PRESENT:**          **Elder Kenneth N. Shelton, Elder Erik V. Shelton, Elder Marcus Shelton-Reagan, Minister John C. Shelton Thomas, Deacon George Brown.** These members constitute a quorum.

**ABSENT:**           One member was absent: **Elder J. Eric Smith** (Proxy of Elder J. Eric Smith voted by Elder Kenneth N. Shelton).

**MINUTES APPROVED:**  The minutes of previous Board of Trustees meeting were approved.

**NEW BUSINESS:**      The members of the Board of Trustees (quorum present) of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., - **in recognition that is God's will** - by unanimous vote approved the installation of Elder (Omega) Kenneth N. Shelton as Bishop, Spiritual Leader, and General Overseer of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

Respectfully submitted,

_Elder Erik V. Shelton_

Secretary

AREA CODE: (215) 735-8982                                    FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER
HEADQUARTERS: 22ND & BAINBRIDGE STREETS, PHILADELPHIA, PA 19146-0180, U.S.A.
POST OFFICE BOX 3880

## SPECIAL GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF MAY 24, 1992

A special meeting of the General Assembly of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on May 24, 1992 at Headquarters Church on 22nd and Bainbridge Streets, Philadelphia, Pennsylvania. This meeting was convened immediately following the consecration of His Eminence, Bishop Kenneth N. Shelton.

**PRESENT:**          Bishop Kenneth N. Shelton, Elder A. Woodward Shelton-Reagan, Elder Erik V. Shelton, Minister John C. Shelton-Thomas and Deacon George Brown.

**ABSENT:**           One member was absent: Elder J. Eric Smith

**ATTENDEES:**        Quorum present.

**NEW BUSINESS:**     Bishop Kenneth N. Shelton declared as his first order of business that "Fincourt B. Shelton (silenced trustee) is disfellowshipped", no longer a trustee, minister or member of the Church organization, due to his reprehensible conduct. This action was overwhelmingly and unanimously applauded by the members in attendance.

Respectfully submitted,

_Elder Erik V. Shelton_

Secretary

AREA CODE 215: 735-8982

FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS, PHILADELPHIA, PA 19146-0180, U.S.A.

POST OFFICE BOX 3880

## BOARD OF TRUSTEES MEETING

### MINUTES OF SEPTEMBER 2, 1992

This annual meeting of the Board of Trustees, of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on September 2, 1992 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**PRESENT:**      **BISHOP KENNETH N. SHELTON**, President & General Overseer , **Elder Marcus Shelton-Reagan**, **Elder Erik V. Shelton**, **Elder J. Eric Smith**, **Minister John C. Shelton-Thomas** , and **Deacon George Brown**. The members constitute a quorum.

**MINUTES APPROVED:**      The minutes of previous Board of Trustees meeting were approved.

**NEW BUSINESS:**      Discussion regarding presentation of amended by laws to the General Assembly for ratification. Discussion was subsequently followed by motion which was duly seconded providing for full reading with explanation of by laws in their entirety. This matter was unanimously carried by all members present.

## BOARD OF TRUSTEES MEETING

### MINUTES OF SEPTEMBER 2, 1992
### PAGE 2

A motion was submitted by Bishop Kenneth N. Shelton to again present the issue of Fincourt Shelton's disfellowship to the General Assembly for ratification. This motion was duly seconded and unanimously carried by all members present.

It was noted that the election of officers would be addressed in the General Assembly meeting, with all present officers presented for consideration.

Respectfully submitted,

Elder Erik V. Shelt

Secretary

AREA CODE: (215) 735-8982

FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.

POST OFFICE BOX 3880

## ANNUAL  GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF SEPTEMBER 3, 1992

A meeting of the Annual General Assembly Business Session of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on September 3, 1992 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**PRESIDING OFFICERS:**  **BISHOP KENNETH N. SHELTON,** President & General Overseer, **Elder Erik V. Shelton,** Vice President & Secretary General, **Minister John C. Shelton-Thomas,** Chief Administrator, **Elder Marcus Shelton-Reagan,** Trustee, and **Deacon George Brown,** Trustee, Also in attendance was **John R. Brown,** Esquire, Church General Counsel.

**ATTENDEES:**  More than fifty members where in attendance.  These members constitute a quorum.

**NEW BUSINESS:**  Upon the motion of Chief Administrator, the following names were submitted until the next annual meeting for ratification by the General Assembly:

**Bishop Kenneth N. Shelton,** President & General Overseer.
Approved by unanimous vote of General Assembly.

**Elder Erik V. Shelton,** Vice-President & Secretary General
Approved by unanimous vote of General Assembly.

**Minister John C. Shelton-Thomas,** Chief Administrator
Approved by unanimous vote of General Assembly.

**Elder Marcus Shelton-Reagan,** Trustee
Approved by unanimous vote of General Assembly.

**MINUTES OF SEPTEMBER 3, 1992**
**PAGE -2-**

**Elder J. Eric Smith**, Trustee
Approved by unanimous vote of General Assembly.

**Deacon George Brown**, Trustee
Approved by unanimous vote of General Assembly.

The following Articles of Incorporation was read and presented to the General Assembly for ratification:

## ARTICLE I

SECTION I:   Each annual session of this body shall be designated and called The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith. Any session called by the General Overseer shall also be designated as a general assembly, and shall have all the rights and powers and authority of the Annual General Assembly.

**Approved by unanimous vote of General Assembly.**

SECTION 2: The officers thereof shall consist of a General Overseer and a General Secretary.

**Approved by unanimous vote of General Assembly.**

## ARTICLE II

SECTION I: The Bishop and Apostle as President of the Board of Trustees shall have the power to arrange for the registration of this Corporation in all the states of the United States in which there shall be a church home, or shall arrange to incorporate anew in any of the states or possessions of the United States, or any foreign country.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF SEPTEMBER 3, 1992
PAGE -3-

SECTION 2: On or after December 29, 1991, The Trustees by a majority vote of The Board of Trustees are given blanket authority to conduct all negotiation and closings in new purchase or sale of any property, real or personal, to be acquired or disposed of by the General Assembly Corporation. The title to any real or personal property is to be acquired in the name of the Trustees of the General Assembly. Title to any real or personal property is to be disposed of in like manner (Amended 1991).

**Approved by unanimous vote of General Assembly.**

On or after December 29, 1991 the recorded voice of His Holy Apostolic Blessedness Bishop S. McDowell Shelton shall be utilized in all of the affiliated Churches of the Church of the Lord Jesus Christ for Church services unless otherwise authorized by the majority vote of the Board of Trustees (Amended 1991).

**Approved by unanimous vote of General Assembly.**

The appointment and renewal of executives and Trustees shall be left up to the majority vote of the Board of Trustees (Amended 1991).

**Approved by unanimous vote of General Assembly.**

## ARTICLE III

All motions of importance and resolutions must be submitted in writing to the General Overseer or any Committee named and designated by him. The power of submitting or not submitting a motion or resolution to the General Assembly shall be left entirely to the discretion of the General Overseer.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF SEPTEMBER 3, 1992
PAGE -3-

SECTION 2: On or after December 29, 1991, The Trustees by a majority vote of The Board of Trustees are given blanket authority to conduct all negotiation and closings in new purchase or sale of any property, real or personal, to be acquired or disposed of by the General Assembly Corporation. The title to any real or personal property is to be acquired in the name of the Trustees of the General Assembly. Title to any real or personal property is to be disposed of in like manner (Amended 1991).

**Approved by unanimous vote of General Assembly.**

On or after December 29, 1991 the recorded voice of His Holy Apostolic Blessedness Bishop S. McDowell Shelton shall be utilized in all of the affiliated Churches of the Church of the Lord Jesus Christ for Church services unless otherwise authorized by the majority vote of the Board of Trustees (Amended 1991).

**Approved by unanimous vote of General Assembly.**

The appointment and renewal of executives and Trustees shall be left up to the majority vote of the Board of Trustees (Amended 1991).

**Approved by unanimous vote of General Assembly.**

## ARTICLE III

All motions of importance and resolutions must be submitted in writing to the General Overseer or any Committee named and designated by him. The power of submitting or not submitting a motion or resolution to the General Assembly shall be left entirely to the discretion of the General Overseer.

**Approved by unanimous vote of General Assembly.**

## ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

## MINUTES OF SEPTEMBER 3, 1992
## PAGE -4-

### ARTICLE IV

The quorum for the transaction of business before the General Assembly shall be fifty members voting before matters of the General Assembly. The presiding officers shall call for the yeas and nays, which shall be recorded by the General Secretary. A majority of those present and voting shall determine such matters of the General Assembly, except in the case of the election of officers, which is otherwise provided for here in these By-laws.

**Approved by unanimous vote of General Assembly.**

### ARTICLE V

SECTION 1: Elders and Ministers desiring to hold credentials with this Body must have the one Baptism, as prescribed in Acts 2:4; 2:38; 10:44-48; and 19:1-6, and believe, teach and preach the same, and shall have prescribed to such baptism for at least one year.

**Approved by unanimous vote of General Assembly.**

SECTION 2: He must be able to read and write.

**Approved by unanimous vote of General Assembly.**

SECTION 3: He must be able to conduct a religious service when necessary.

**Approved by unanimous vote of General Assembly.**

SECTION 4: He must be able to officiate at a Marriage Ceremony, Baptismal Service and the Lord's Supper.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF SEPTEMBER 3, 1992
PAGE -5-

SECTION 5: Any person desiring to be a licensed worker in this body, may obtain such license by complying with the following requirements:

(A)     Must have the one baptism as above set forth

(B)     Believe the same

(C)     Must have had some fruits of the Spirit in their lives

(D)     Must have letter of recommendation from his (or her) home assembly, wherein he (or she) has been working showing fitness and ability.

(E)     Shall present such letter, with application to the General Secretary, who shall thereupon issue licenses to such worker; General Overseer.

**Approved by unanimous vote of General Assembly.**

SECTION 6: A written recommendation is required from the state Elder over the state in which a minister lives when applying for his first papers with this Body. Such a letter should be sent with the application.

**Approved by unanimous vote of General Assembly.**

SECTION 7: Any minister holding credentials with this Body, who may be charged with sin by two or three witnesses shall be tried by a Committee made up of the General Overseer or his nominee, State Elder or another man of good report among the saints designated by the General Overseer.

**Approved by unanimous vote of General Assembly.**

SECTION 8: No minister or missionary shall be allowed to hold credentials with this Body who teaches against any of the doctrine of The Church of the Lord Jesus Christ of the Apostolic Faith.

**Approved by unanimous vote of General Assembly.**

SECTION 9: After any member or officer has been duly accused of an offense punishable by The Church, his status in The Church shall be determined soley by the General Overseer, until trial. Nevertheless, this provision shall not be interpreted to, in any wise deprive The General Overseer from the right to remove any Elder, Minister, Officer or membership without accusation or trial if he may deem it necessary for the good of The Church of the Lord Jesus Christ of the Apostolic Faith.

**Approved by unanimous vote of General Assembly.**

## ARTICLE VI

Ordination may be had and given by the consent of the General Overseer or with the assistance of whoever he may appoint.

**Approved by unanimous vote of General Assembly.**

## ARTICLE VII

The General Overseer, Bishop (Omega) Kenneth N. Shelton shall continue to hold the office of General Overseer, Trustee and President of the Board of Trustees during his life time. The General Secretary shall be elected for the term of one year. The General Secretary is eligible to serve as many successive terms as he may be elected to by the General Assembly. He shall hold office until his successor is elected and qualified. The General Secretary shall be approved and nominated by the General Overseer and will be elected upon receiving a majority vote of these voting on the specific questions of his election at the General Assembly.

**Approved by unanimous vote of General Assembly.**

## ARTICLE VIII

The person offering a resolution or motion may open and close the discussion thereon and such person may take not more than fifteen minutes of time on any motion, resolutions, or questions unless special permission for such purpose is given.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS
MINUTES OF SEPTEMBER 3, 1992
PAGE -7-

## ARTICLE IX

The Headquarters of The Church of the Lord Jesus Christ of the Apostolic Faith is located on Apostolic Square in Philadelphia, Pennsylvania. However, the session of the Body may be held in any other city of the United States or foreign country, should the General Assembly or General Overseer only so desires.

*Approved by unanimous vote of General Assembly.*

## ARTICLE X

The General Overseer shall have full authority to determine any question concerning parliamentary procedures and there shall be no appeal from the decision of the General Overseer. The General Overseer in his discretion may adopt the rule of procedure set forth in Robert's Rules of Order. The General Overseer shall be the full arbitrator on all matter affecting the Interpretation doctrine applicable to The Church of the Lord Jesus Christ.

*Approved by unanimous vote of General Assembly.*

## ARTICLE XI

These rules, By-Laws and regulations may amended at any session of the General Assembly, provided that such proposed amendment shall be a condition precedent to the submission of the amendment to the General Assembly. A majority vote of those voting on the specific proposed amendment shall be necessary before this approval. This paragraph does not apply to any change of By-Laws or regulations submitted by the General Overseer, who may, at any time, present any motions or resolutions.

*Approved by unanimous vote of General Assembly.*

## ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF SEPTEMBER 3, 1992
### PAGE -8-

### ARTICLE XII

The Elders and Licensees shall be subject to the State Elders and in cases of insubordination and grievous discord, shall be tried by a Committee. When an appeal is taken from the decision of the State Elder, or when trial by Committee is proper, said Committee shall be composed of the General Overseer or his nominee, the State Elder and another man of good report among the saints chosen by the General Overseer may at any time assume original jurisdiction, in any such matter and the decision of the General Overseer shall have full power to suspend or expel any person so tried from the General Assembly of the Church of the Lord Jesus Christ from the local assembly thereof.

**Approved by unanimous vote of General Assembly.**

### ARTICLE XIII

In case of majority complaint against an elder or officer, or member, the General Overseer shall appoint an investigating committee to investigate the complaint. The said Committee will report any violations of the doctrine, rules, regulations or moral laws and the General Overseer shall thereupon take such action as he may deem warranted. A final appeal may be taken to the General Overseer and the General Overseer may at anytime assume original jurisdiction, in any such matter and the decision of the General Overseer shall be binding on all persons. The General Overseer shall have full power to suspend or expel any person so tried from the General Assembly of the Church or from any local assembly thereof.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF SEPTEMBER 3, 1992
PAGE -9-

## ARTICLE XIV

The affairs of the General Assembly shall be managed by a Board of Trustees. The General Overseer, by virtue of his office, shall always be a Trustee and the President of the Board of Trustees. The other trustees shall be elected by the General Assembly annually and shall serve for a term of one year or until their successors are qualified and elected. Every trustee os eligible for re-election for as many terms as the General Assembly may elect him. The General Assembly may elect only to the office of trustee, a person first approved and nominated by the General Overseer.

**Approved by unanimous vote of General Assembly.**

## ARTICLE XV

Any conflict existing in the rules, regulations and By-Laws of the General Assembly of The Church of the Lord Jesus Christ of the Apostolic Faith, or any matters not covered by the rules and regulations shall be determined by the General Overseer and his ruling thereon shall be final.

**Approved by unanimous vote of General Assembly.**

## ARTICLE XVI

SECTION I: The General Secretary shall succeed temporarily to the office of the General Overseer or by the appointment by the General Assembly elects him or a successor. A statement of the Divine Apostolic Authority of the General Overseer is to appoint his successor with vote of the General Assembly.

**Approved by unanimous vote of General Assembly.**

SECTION 2: However, an ordained Elder shall be eligible regardless of the time of his ordination or the length of his service as Elder.

**Approved by unanimous vote of General Assembly.**

ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

MINUTES OF SEPTEMBER 3, 1992
PAGE -10-

### ARTICLE XVII

All officers local, state, national or international of The Church of the Lord Jesus Christ are appointed by the General Overseer and are holding office at his will and pleasure and can therefore be removed by him.

All money raised or collected by any individual member, local church, agency or auxiliary of The Church of the Lord Jesus Christ must be sent within one week of its receipt to the President of the Board of Trustees to Headquarters on Apostolic Square, Philadelphia, PA 19146, as funds of the General Assembly of The Church of the Lord Jesus Christ of the Apostolic Faith. The tithes and offering of whatever kind, nature or collection by any Elder, local Minister, any other officer or member, is the property of the General Elder. Although all tithes and lover offering are the personal property of the General Overseer, the present General Overseer does not, at this time, assert his discretion to have these tithes and love offering set aside as his personal property.

**Approved by unanimous vote of General Assembly.**

### ARTICLE XX

All Churches established or affiliated with the General Assembly of the Church of the Lord Jesus Christ is under the control of the General Elder and is subject to the Doctrine expressed and initiated by him. The General Overseer, by his reason of office, has blanket authority in directing the mood of religious worship, all affiliations of The Church of the Lord Jesus Christ of the Apostolic Faith, as well as broadcasting and nay phase of publication.

**Approved by unanimous vote of General Assembly.**

## ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF SEPTEMBER 3, 1992
### PAGE -11-

### ARTICLE XXI

Qualifications and membership shall be judged by the following:

(A)　Tithe paying

(B)　Life being consistent with the doctrine of The Church of the Lord Jesus Christ of the Apostolic standard

(C)　Regular attendance except when this is for the reason of long sickness or physical impossibilities; at such time the member is required to remain in contact with the General Overseer at regular intervals to explain reason of absence; as well as to one in charge of local assembly.

**Approved by unanimous vote of General Assembly.**

### BY-LAWS

BE IT RESOLVED THAT:

1.　All doctrinal controversies shall come before the General Overseer for consideration and final settlement.

**Approved by unanimous vote of General Assembly.**

2.　All payments of tithes by Elders, Licensees, Ministers and members as commanded in Malachi 3:9 is basic to our doctrinal salvation and necessary for the growth and advancement of The Church.

**Approved by unanimous vote of General Assembly.**

3.　All Churches and auxiliary functions of this body are to report every convention. This includes all Ministers, Elders, Licensees, Missionary and any other Officer.

**Approved by unanimous vote of General Assembly.**

## ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF SEPTEMBER 3, 1992
### PAGE -12-

4.  The WHOLE TRUTH magazine which was established in May, 1948 shall be the official church organ and it has been decided that the it has been decided that the General Overseer be Editor-in-Chief.

**Approved by unanimous vote of General Assembly.**

5.  All Churches in this body must report to their state or district overseer on their activities and he, in turn, must send his report along with the church report once a month to the General Overseer accompanied by the finance raised.

**Approved by unanimous vote of General Assembly.**

President and General Overseer stated that Fincourt B. Shelton was removed from the Board on May 24, 1992. Upon the motion of the President and General Overseer and by unamious vote from the General Assembly, Fincourt B. Shelton is disfellowshiped and removed from the Board of Trustees.

**Approved by unanimous vote of General Assembly.**

A general discussion then followed on the affairs of the corporation.

Respectfully submitted,

Secretary

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

**BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER**
**HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.**
**POST OFFICE BOX 3860**

## <u>BOARD OF TRUSTEES MEETING</u>

### MINUTES OF SEPTEMBER 1, 1993

This annual meeting of the Board of Trustees, of the  Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on September 3, 1993 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**PRESENT:**

**BISHOP KENNETH N. SHELTON**, President & General Overseer , **Elder Marcus Shelton-Reagan, Elder Erik V. Shelton, Minister John C. Shelton-Thomas** and **Deacon George Brown**.  The members constitute a quorum.

**ABSENT:**

One member was absent:  **Elder J. Eric Smith** was absent due to illness.

**MINUTES APPROVED:**

The minutes of previous Board of Trustees meeting were approved.

**NEW BUSINESS:**

Review of matters to be presented during the Annual Meeting of the General Assembly:

* · Reports of District Supervisors
* Progress on building projects
* Report on status of litigation

Motion was made and duly seconded to present these matters, and unanimously carried by board members in attendance.

## BOARD OF TRUSTEES MEETING

### MINUTES OF SEPTEMBER 1, 1993
### PAGE 2

Bishop Kenneth Shelton presented a nomination of Deacon Leon Bligen for consideration as trustee. This nomination was unanimously supported by board members in attendance - to be presented to the General Assembly for election.

It was noted that the election of officers would be addressed in the General Assembly meeting, with all present officers presented for consideration.

Respectfully submitted,

_Elder Erik V. Shelt_

Secretary

AREA CODE: (215) 735-8982                                    FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) · APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS, PHILADELPHIA, PA 19146-0180, U.S.A.

POST OFFICE BOX 3880

## ANNUAL GENERAL ASSEMBLY BUSINESS MEETING

### MINUTES OF SEPTEMBER 2, 1993

A meeting of the Annual General Assembly Business Meeting of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held on September 2, 1993 at Headquarters Church on 22nd and Bainbridge Street, Philadelphia, Pennsylvania.

**PRESIDING OFFICERS:**   **BISHOP KENNETH N. SHELTON**, President & General Overseer, **Elder Erik V. Shelton**, Vice President & Secretary General, **Elder John C. Shelton-Thomas**, Chief Administrator, **Elder Marcus Shelton-Reagan**, **Deacon George Brown**, Trustee, and **Deacon Leon Bligen**, Trustee. Also in attendance was **John R. Brown**, Esquire, Church General Counsel.

**ABSENT:**   One officer was absent: **Elder J. Eric Smith**, Trustee.

**ATTENDEES:**   Quorum was present.

**MINUTES APPROVED:**   The minutes of the previous meeting were approved.

**NEW BUSINESS:**   Upon the motion of President & General Overseer, and by unanimous vote by the General Assembly, the following persons are current members of the Board until the next annual meeting:

**Bishop Kenneth N. Shelton**, President & General Overseer
Approved by unanimous vote of General Assembly.

## ANNUAL GENERAL BUSINESS MEETING

### MINUTES OF SEPTEMBER 2, 1993
### PAGE -2-

**Elder Erik V. Shelton,** Vice-President & Secretary General
Approved by unanimous vote of General Assembly.

**Elder John C. Shelton-Thomas,** Chief Administrator
Approved by unanimous vote of General Assembly.

**Elder Marcus Shelton-Reagan,** Trustee
Approved by unanimous vote of General Assembly.

**Elder J. Eric Smith,** Trustee
Approved by unanimous vote of General Assembly.

**Deacon George Brown,** Trustee
Approved by unanimous vote of General Assembly.

**Deacon Leon Bligen,** Trustee
Approved by unanimous vote of General Assembly.

The following reports were presented before the General Assembly:

* Report of District Supervisors
* Progress on building projects
* Report on status of litigation

A general discussion then followed on the affairs of the corporation.

**ADJOURNMENT:**    A motion for adjournment was made by the President & General Overseer. The meeting was adjourned.

Respectfully submitted,

Secretary

AREA CODE 215: 735-8982                                    FAX (215) 735-4287

# The Trustees of the General Assembly of the
# Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

BISHOP KENNETH N. SHELTON (BISHOP OMEGA Y. L. SHELTON) - APOSTLE AND GENERAL OVERSEER

HEADQUARTERS: 22ND & BAINBRIDGE STREETS,  PHILADELPHIA, PA 19146-0180, U.S.A.

POST OFFICE BOX 3880

## BOARD OF TRUSTEES MEETING

## MINUTES OF SEPTEMBER 1, 1994

A meeting of the majority of the members of the Board of Trustees of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., was held prior to the Annual General Assembly Business Meeting for ratification, at Headquarters Church, in Philadelphia, Pennsylvania, on September 1, 1994.  The meeting was called to order by Bishop Kenneth N. Shelton, President & General Overseer.

**PRESENT:**    **BISHOP KENNETH N. SHELTON**, President & General Overseer, **Elder Erik V. Shelton**, Vice President & Secretary General, **Elder John C. Shelton-Thomas**, Chief Administrator, **Deacon George Brown**, Trustee, and **Deacon Leon Bligen**, Trustee.  These members constitute a quorum.  Also in attendance was **John R. Brown**, Attorney for the Board of Trustees.

**ABSENT:**    One member was absent: **Elder A. Woodward Shelton-Reagan**, Trustee.

**MINUTES APPROVED:**    The minutes of previous Board of Trustees meeting were approved.

**OLD BUSINESS:**    Attorney John R. Brown read an excerpt from the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., Corporate Rules and By-Laws (Article XIII) relating to the proper procedure to remove an individual from the Board.

**NEW BUSINESS:**    The President & General Overseer stated that he removed, Elder J. Eric Smith, Trustee, from the Board of Trustees, after a special meeting held earlier this year with Elders and other members of the Board of Trustees because of misconduct.  Upon motion of the

## BOARD OF TRUSTEES MEETING

### MINUTES OF SEPTEMBER 1, 1994
### PAGE -2-

President & General Overseer for ratification of the removal of, Elder J. Eric Smith, Trustee, from the Board of Trustees, by unanimous vote was removed from office.  This removal will be for ratification to the General Assembly during the Annual Business Meeting.

The President & General Overseer stated that he recommend that all present Trustees of the Board of Trustees remain on the Board.  This recommendation would include the previous nomination of Elder Isaiah Mercer as a new member, and Elder J. Eric Smith's removal from office.

**NEW BUSINESS:**   Upon motion of the President & General Overseer for the nomination of Elder Isaiah Mercer, as a Trustee of the Board, seconded by the Vice President, and by unanimous vote, was elected as a Trustee of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.  This nomination will be presented for ratification during the Annual General Assembly Business Meeting.

The President & General Overseer indicated that there will be an institution of better checks and balances and protective devices at the state and local levels, which will included internal auditing.

**ADJOURNMENT:**   A motion for adjournment was made by the President & General Overseer.  The meeting was adjourned.

Respectfully submitted,

Elder Eric V. Shut

Secretary

**EXHIBIT C**

# L.E. WEAVER & ASSOCIATES, P.C.

14th Floor, 1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 790-0600
Fax: (215) 790-0628

## FACSIMILE TRANSMITTAL SHEET

**TO:**
1. Mr. Michael Carney
2. Fincourt B. Shelton, Esquire
3. John Brown, Esquire

**COMPANY:**
1. ADR Options, Inc.
2. Fincourt B. Shelton & Associates, P.C.
3. Law office of John Brown

| FAX NUMBER: | 1. (215) 564-1822 2. (610) 532-5558 3. (215) 735-4287 | DATE: | March 14, 2006 |
|---|---|---|---|

**FROM:**   Luther E. Weaver, III, Esquire

**CLIENT NAME:**   CHURCH.AF

**NUMBER OF PAGES INCLUDING THIS PAGE:   6**

### CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE AND OTHERS WHO HAVE BEEN SPECIFICALLY AUTHORIZED TO RECEIVE IT. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

**NOTES:**       Transcript inadvertently omitted.

```
 1              C O L L O Q U Y

 2      more people.

 3           MR. SHELTON:  We'll have no less than

 4      five.

 5           MR. WEAVER:  Five total.  I'm with you

 6      now.

 7           MR. SHELTON:  No less than five.  We're

 8      going with seven but we'll agree to continue

 9      if there's five.

10           MR. BROWN:  Now, the lack of ability to

11      participate has to be verified by some means,

12      okay.

13           MR. SHELTON:  Well --

14           MR. BROWN:  We made these selections.

15      We just don't want willy-nilly.

16           MR. SHELTON:  I don't either.  We didn't

17      expect to be sitting here.  We thought we

18      were going to be in Judge Levin's courtroom.

19      We had no control over that.  He had a heart

20      attack.

21                      -   -   -

22      PROCEEDINGS CONTINUED TO FRIDAY, DECEMBER 2, 2005,

23              COURTROOM 616, CITY HALL.

24                      -   -   -

25
```

18

```
 1              C O L L O Q U Y

 2          MR. SHELTON:  Now, in the event that any

 3      of the arbitrators get sick or can't for some

 4      reason serve, will we agree at this point

 5      we'll proceed with five?  I don't want to

 6      have to come back and fight about another

 7      name unless, you know....

 8          MR. BROWN:  You can't.

 9          MR. WEAVER:  You can't do that.  We'll

10      work with the neutral and replace him.

11          MR. SHELTON:  Okay.  Very well.  As

12      opposed to going two a side.  I don't think

13      you heard me.  I said in other words let's

14      say Oatis Hunter for some reason couldn't

15      serve, then I would say, okay, well, just

16      strike somebody off my list and let's keep

17      rolling.

18          MR. WEAVER:  Yeah.  As long as it's an

19      even number, we can do that.

20          MR. SHELTON:  In the event something

21      happens beyond any of our control, of course,

22      yes, we'll go to the arbitrator, the neutral.

23          MR. WEAVER:  Yeah.  I would say if it

24      gets down to just -- my thought if it gets

25      down to two people on my side, we need to get
```

1      C O L L O Q U Y

2      I do that.

3          MR. SHELTON:  On behalf of plaintiff

4      Bishop Anthonee J. Patterson, we are

5      selecting from the list provided by

6      defendants A. Woodward Reagan, Minister Oatis

7      Hunter, and Minister James Brown.  Those are

8      my selections off the defendant's list, and

9      he selected three off my list.

10          MR. WEAVER:  Mr. Brown will read those.

11          MR. BROWN:  Okay.  On behalf of the

12      defendant Bishop Kenneth Shelton, the names

13      selected from those provided by the plaintiff

14      are Elder Samuel Green, Sr., Elder George

15      Washington, and Brother George Newsome.

16      That's from your list.

17          THE COURT:  Can I have that copy of

18      those names?

19          MR. BROWN:  He has his list right here.

20          THE COURT:  So Reagan, Brown, and Hunter

21      are the --

22          MR. SHELTON:  -- plaintiff's selections

23      from the defendant's list.

24          THE COURT:  And these three are the

25      plaintiff's arbitrators.

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL TRIAL DIVISION

- - -

ANTHONEE PATTERSON                    :

            VS.                       :   JULY TERM, 1995

KENNETH SHELTON AND                   :   NO. 2945

ERIK SHELTON                          :

- - -

WEDNESDAY, NOVEMBER 30, 3005

- - -

COURTROOM 616

CITY HALL

PHILADELPHIA, PENNSYLVANIA

- - -

B E F O R E:  THE HONORABLE JAMES MURRAY LYNN, J.

- - -

APPEARANCES:

      FINCOURT B. SHELTON, ESQ.
      COUNSEL FOR THE PLAINTIFF

      LUTHER E. WEAVER, III, ESQ.
      COUNSEL FOR THE DEFENDANT

      JOHN BROWN, ESQ.
      COUNSEL FOR THE DEFENDANT

SHANNAN GAGLIARDI, RPR, CRR, 215-683-8026



# L.E. WEAVER & ASSOCIATES, P.C.

March 14, 2006

<u>VIA FAX ONLY</u>

Fincourt B. Shelton, Esquire
Fincourt B. Shelton & Associates, P.C.
504 Main Street
Suite 100
Darby, PA 19023

    Re:   Anthonee' Patterson v. Kenneth Shelton and Erik Shelton;
            <u>CCP, Phila. Cty., July Term, 1995; No. 2945</u>

Dear Mr. Shelton:

    One of the Arbitrators selected by the Defendant is ill and will be unable to serve on the Panel. Minister Oatis Hunter suffered a stroke, and has not recovered to a sufficient degree to enable him to serve.

    As I recall our agreement, if one arbitrator on either side is unable to serve, the other party must drop one arbitrator. If more than one, a new member of the panel is selected. (See pages 17-19 of the Transcript of November 30, 2005 attached). We are simultaneously bringing this development to the attention of the ADR Options. Please advise if my understanding is incorrect in any respect. Thank you.

    Very truly yours,

LUTHER E. WEAVER, III

LEW:cc
Enclosure

cc:   John Brown, Esquire
      Mr. Michael Carney, ADR Options

W:\CLIENTS\CHURCHAF\PATTERSO\LETTERS\LwFShelton33-Lwpd
LUTHER E. WEAVER, III, ESQUIRE
14TH FLOOR, 1525 LOCUST STREET
PHILADELPHIA, PA 19102-3752
TEL: (215) 790-0600 / FAX: (215) 790-0629
E-MAIL: LEW@LEWEAVER.COM

**EXHIBIT D**

# L.E. WEAVER & ASSOCIATES, P.C.

14th Floor, 1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 790-0600
Fax: (215) 790-0628

## FACSIMILE TRANSMITTAL SHEET

**TO:**   Fincourt B. Shelton, Esquire

**COMPANY:**   Fincourt B. Shelton & Associates, P.C.

| **FAX NUMBER:**   (610) 532-5558 | **DATE:**   March 15, 2006 |
|---|---|

**FROM:**   Luther E. Weaver, III, Esquire

**CLIENT NAME:**   CHURCH.AF

**NUMBER OF PAGES INCLUDING THIS PAGE:**   3

### CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE AND OTHERS WHO HAVE BEEN SPECIFICALLY AUTHORIZED TO RECEIVE IT. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

**NOTES:**

Elder Leon Bligen
Elder A. Woodward Reagan
Elder John C. Thomas
Elder T. Bowens
Minister James Brown
Minister Anthony Lamb
Minister Oatis Hunter
Deacon Donald Conyers
Deacon James Jamison
Deacon Melvin Morgan
Deacon James Strong
Deacon Larry Williamson

Thank you for your prompt attention regarding this matter.

Sincerely,

John R. Brown, Esq.

p.2



# L.E. WEAVER & ASSOCIATES, P.C.

March 15, 2006

**VIA FAX ONLY**

Fincourt B. Shelton, Esquire
Fincourt B. Shelton & Associates, P.C.
504 Main Street
Suite 100
Darby, PA  19023

  Re:   Anthonee' Patterson v. Kenneth Shelton and Erik Shelton;
      CCP, Phila. Cty., July Term, 1995; No. 2945

Dear Fincourt:

   The list of names we submitted for arbitrators is attached.

         Very truly yours,

         LUTHER E. WEAVER, III

LEW:cc
Enclosure

cc:   John Brown, Esquire

W:\CLIENTS\CHURCHAF\PATTERSO\LETTERS\LwFShelton36-L.wpd

LUTHER E. WEAVER, III, ESQUIRE
14TH FLOOR, 1525 LOCUST STREET
PHILADELPHIA, PA 19102-3732
TEL: (215) 790-0600 / FAX: (215) 790-0628
E-MAIL: LEW@LEWEAVER.COM

**EXHIBIT E**

Jun. 14. 2006 12:33PM                                    No. 1410   P. 2/3

GLASS RATNER MANAGEMENT &          :
REALTY ADVISORS, LLC, RECEIVER     :        COURT OF COMMON PLEAS
c/o    Grant & Lebowitz, LLC       :        PHILADELPHIA COUNTY
       1818 Market Street, 33rd floor  :
       Philadelphia, PA 19103      :        JUNE TERM, 2006
                                   :
               Petitioner          :        NO.
                                   :               MAY 2006
                                   :
        v.                         :               004266
                                   :
CHURCH OF THE LORD JESUS CHRIST    :
OF THE APOSTOLIC FAITH;            :
22nd and Bainbridge Streets        :
Philadelphia, PA 19146             :
                                   :
        and                        :
                                   :
TRUSTEES OF THE GENERAL ASSEMBLY   :
OF THE CHURCH OF THE LORD          :
JESUS CHRIST OF APOSTOLIC FAITH, INC. :
701 South 22nd Street              :
Philadelphia, PA 19146             :
                                   :               053405
               Respondents         :
                                   :

## ORDER
_AFTER HEARING AND CONSIDERATION_

AND NOW this *8* day of June, 2006, it is hereby Ordered that Respondents, Church of

the Lord Jesus Christ of the Apostolic Faith, and Trustees of the General Assembly of the Lord Jesus

Christ of the Apostolic Faith, Inc., their officers, trustees and agents are directed to provide to the

Receiver all financial and accounting records, reports, bank statements, credit card statements and

invoices, tax returns and such other financial data as requested by the Receiver, GlassRatner

Management & Realty Advisors, LLC ("GlassRatner").

Jun. 14. 2006 12:33PM

It is further Ordered that Respondents, their officers, trustees, directors, employees, and agents shall immediately allow the Receiver ("GlassRatner"), its principals, agents and employees full access to and possession of all real and personal property now in the possession or control of the Respondent Church and Respondent Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

It is further specifically Ordered that the Receiver, its principals, employees and agents, shall be immediately allowed access to the property, edifice, computers, records and offices, including but not limited to the offices of Kenneth Shelton and John Shelton Thomas, at 22nd and Bainbridge Streets, 701 S. 22nd Street, and 22nd and Apostolic Way, Philadelphia.

It is further Ordered that Respondents are barred and enjoined from removing, withdrawing, transferring, conveying, concealing, destroying or altering any data, reports, records, bank statements, credit card invoices, financial data or documents, or other real or personal property of any kind.

It is further Ordered that Respondents are enjoined from withholding assets and records, or from interfering with the Receiver's preservation, management and possession of bank accounts, rents, cash contributions and such other funds and assets as Respondent may now control or possess.

It is further Ordered that Respondents shall perform all acts necessary to transfer to the receiver all funds, cash and assets directly under Respondents control or derived from the assets and operation of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., it officers, trustees, administrators, employees and agents.

BY THE COURT:

J. _____

DOCKETED

JUN 1 2 2006

AARON PALMER

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUN 1 2 2006

FIRST JUDICIAL DISTRICT OF PA

**EXHIBIT F**

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL SECTION**

| | | |
|---|---|---|
| ANTHONEE PATTERSON | : | JULY TERM, 1995 |
| PLAINTIFF | : | |
| | : | NO.: 2945 |
| v. | : | |
| KENNETH SHELTON and | : | Control NO's. 052941; 060306 |
| ERIK SHELTON | : | |
| DEFENDANT | : | |

RECEIVED
JUL 11 2006
CIVIL ADMINISTRATION

---

## MEMORANDUM AND ORDER

Dych, J.

July, 2006

Before me for adjudication, are petitions to Confirm Arbitration Award, Vacate Arbitration Award, and Vacate Supplemental Adjudication and Orders of Arbitrator. This long and acrimonious litigation dates back to July 1995 and has produced a docket in the Court of Common Pleas running 36 pages.

It is uncontroverted that on January 10, 2006, the Honorable James Murray Lynn of this Court entered an Order dismissing the case from the Court of Common Pleas by agreement and submitting the matter to Arbitration before the Honorable Edwin E. Nythons, United States Magistrate Judge (Ret.). All evidentiary rulings were to be made by the arbitrator and the arbitration was to be binding on both parties with no right of appeal. The parties also waived procedural arguments such as standing. (A copy of Judge Lynn's Order is attached hereto and made a part hereof by reference). On April 26, 2006, Judge Nythons issued a comprehensive and scholarly Adjudication followed by a Supplemental Adjudication dated May 8, 2006. (copies of both Adjudications are attached hereto and made a part hereof by reference).

It is clear that a common law arbitration award is binding and may not be set aside absent a

clear showing that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused rendition of an unjust and equitable or unconscionable award. 42 P.A.C.S.A. § 7341. Furthermore, the parties explicitly waived any right to appeal (see Judge Lynn's Order and Judge Nythons' Supplementary Adjudication).

I find after a review of the Petitions and Responses as well as Judge Nythons' Adjudications that the Petitions to Vacate are nothing but disingenuous attempts to collaterally attack and evade the Award, since the arbitrator clearly did not misbehave nor render an unconscionable decision.

Accordingly, the following Order is entered:



IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL SECTION

| | | |
|---|---|---|
| ANTHONEE PATTERSON | : | JULY TERM, 1995 |
| PLAINTIFF | : | |
| | : | NO.: 2945 |
| v. | : | |
| KENNETH SHELTON and | : | Control NO's. 052941; 060306 |
| ERIK SHELTON | : | |
| DEFENDANT | : | |

## ORDER

AND NOW, this **10** day, of **JULY**, 2006, after consideration,

defendant's petition and supplemental petition to vacate are **DENIED** and the Arbitration Award is

**CONFIRMED.**

BY THE COURT:

DYCH, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 1 2 2006

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

DOCKETED
JUL 1 2 2006
E. HAURIN
CIVIL ADMINISTRATION

CERTIFIED FROM THE RECORD ON **JUL 20 2006**
JOSEPH H. EVERS
PROTHONOTARY OF PHILADELPHIA COUNTY
BY:

**EXHIBIT G**

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **ANTHONEE PATTERSON** | : | **JULY TERM, 1995** |
| **v.** | : | **NO. 2945** |
| **KENNETH SHELTON** | : | **Control No.   062197** |

## O R D E R

AND NOW, this _20_ day of _JULY_ , 2006, upon consideration of Lord Jesus Christ of the Apostolic Faith, Inc.'s Motion to Determine Preliminary Objections, and any response thereto, it is hereby ORDERED and DECREED that the "Preliminary Objections to the Emergency Petition to Confirm Arbitration Award filed by non parties, The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, and the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc:" are **STRICKEN** as an impermissible filing.

**BY THE COURT:**

DYCH, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 2 4 2006

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

RECEIVED
JUL 2 4 2006
CIVIL ADMINISTRATION

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| CHURCH OF THE LORD JESUS<br>CHRIST OF THE APOSTOLIC<br>FAITH; and<br>THE TRUSTEES OF THE GENERAL<br>ASSEMBLY OF THE CHURCH OF<br>THE LORD JESUS CHRIST OF THE<br>APOSTOLIC FAITH, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : | MAY TERM, 2006<br><br>NO. 3099 |
| v. | : <br> : | |
| ANOTHONEE PATTERSON; and<br>GLASSRATNER MANAGEMENT &<br>REALTY ADVISORS, LLC | : <br> : <br> : | Control No.   061198 |

## O R D E R

AND NOW, this **20** day of **July**, 2006, upon

consideration of Defendant Anthonee Patterson's Motion to Determine Preliminary

Objections, and any response thereto, it is hereby ORDERED and DECREED that said

Preliminary Objections are **SUSTAINED** [*] and Plaintiff's Complaint is dismissed with

prejudice.

BY THE COURT:

DYCH, J.

RECEIVED

JUL 2 0 2006

CIVIL ADMINISTRATION

Docketed
COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 2 1 2006

FIRST JUDICIAL DISTRICT OF PA
USE I.D.:

---

[*] These preliminary objections are sustained based upon the reasoning laid out in this court's July 10, 2006
Memorandum and Order which were captioned at July Term, 1995, Number 2945. The instant action is but
one more disingenuous attempt at collateral attack.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH; and THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC. | MAY TERM, 2006<br><br>NO. 3099 |
| v. | |
| ANOTHONEE PATTERSON; and GLASSRATNER MANAGEMENT & REALTY ADVISORS, LLC | Control No. 061198 |

## O R D E R

AND NOW, this **20** day of **July**, 2006, upon consideration of Defendant Anthonee Patterson's Motion to Determine Preliminary Objections, and any response thereto, it is hereby ORDERED and DECREED that said Preliminary Objections are SUSTAINED* and Plaintiff's Complaint is dismissed with prejudice.

BY THE COURT:

_____
DYCH, J.

RECEIVED

JUL 2 0 2006

CIVIL ADMINISTRATION

Docketed
COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 2 1 2006

FIRST JUDICIAL DISTRICT OF PA
USER J.D.

---

* These preliminary objections are sustained based upon the reasoning laid out in this court's July 10, 2006 Memorandum and Order which were captioned at July Term, 1995, Number 2945. The instant action is but one more disingenuous attempt at collateral attack.

**EXHIBIT E**

GLASS RATNER MANAGEMENT &
REALTY ADVISORS, LLC, RECEIVER
c/o   Grant & Lebowitz, LLC
      1818 Market Street, 33rd floor
      Philadelphia, PA 19103

            Petitioner

    v.

CHURCH OF THE LORD JESUS CHRIST
OF THE APOSTOLIC FAITH;
22nd and Bainbridge Streets
Philadelphia, PA 19146

    and

TRUSTEES OF THE GENERAL ASSEMBLY
OF THE CHURCH OF THE LORD
JESUS CHRIST OF APOSTOLIC FAITH, INC.
701 South 22nd Street
Philadelphia, PA 19146

         Respondents

:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

JUNE TERM, 2006

NO.

MAY 2006

004266

053405

## ORDER

*AFTER HEARING AND CONSIDERATION*

AND NOW this  day of June, 2006, it is hereby Ordered that Respondents, Church of

the Lord Jesus Christ of the Apostolic Faith, and Trustees of the General Assembly of the Lord Jesus

Christ of the Apostolic Faith, Inc., their officers, trustees and agents are directed to provide to the

Receiver all financial and accounting records, reports, bank statements, credit card statements and

invoices, tax returns and such other financial data as requested by the Receiver, GlassRatner

Management & Realty Advisors, LLC ("GlassRatner").

It is further Ordered that Respondents, their officers, trustees, directors, employees, and agents shall immediately allow the Receiver ("GlassRatner"), its principals, agents and employees full access to and possession of all real and personal property now in the possession or control of the Respondent Church and Respondent Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.

It is further specifically Ordered that the Receiver, its principals, employees and agents, shall be immediately allowed access to the property, edifice, computers, records and offices, including but not limited to the offices of Kenneth Shelton and John Shelton Thomas, at 22nd and Bainbridge Streets, 701 S. 22nd Street, and 22nd and Apostolic Way, Philadelphia.

It is further Ordered that Respondents are barred and enjoined from removing, withdrawing, transferring, conveying, concealing, destroying or altering any data, reports, records, bank statements, credit card invoices, financial data or documents, or other real or personal property of any kind.

It is further Ordered that Respondents are enjoined from withholding assets and records, or from interfering with the Receiver's preservation, management and possession of bank accounts, rents, cash contributions and such other funds and assets as Respondent may now control or possess.

It is further Ordered that Respondents shall perform all acts necessary to transfer to the receiver all funds, cash and assets directly under Respondents control or derived from the assets and operation of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., it officers, trustees, administrators, employees and agents.

BY THE COURT:

J.

DOCKETED

JUN 1 2 2006

AARON PALMER

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUN 1 2 2006

FIRST JUDICIAL DISTRICT OF PA

**EXHIBIT H**

COURT OF COMMON PLEAS OF PHILADELPHIA
ORPHANS' COURT DIVISION
O. C. No. 1134 NP of 2006
In re: The Trustees of the Church of the Lord Jesus Christ
of the Apostolic Faith, Inc.
Control No. 067451

D E C R E E

AND NOW, this  6th  day of November 2006, after a hearing and upon consideration of the Petition by The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith ("General Assembly"), by Church Members Carlton Morrison, Diane Taylor, Andrew Scott and C. Katerline Williams, Trustees *ad litem*, and by Carlton Morrison, Diane Taylor, Andrew Scott and C. Katherline Williams,  individually ("Church Members") requesting the Orphans' Court:

(1)    To exercise exclusive authority over all disputes relating to the administration and proper application of the property of the nonprofit corporation, named  The Trustees of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.;

(2)    To declare null and void all orders of the Trial Division of this Court in the civil action captioned <u>Anthonee Patterson v. Kenneth Shelton,</u> Philadelphia Court of Common Pleas, Trial Division, July Term 1995, No. 2945 ("the 1995 Litigation) relating to the property of the nonprofit corporation;

(3)    To declare null and void the prior decisions of the arbitrator Edwin E. Naythons pursuant to an agreement between respondents Anthonee Patterson and Kenneth Shelton, and;

(4)    To order the arbitrator and receiver to cease all activities until further order of this Court,

it is hereby ORDERED and DECREED that the Petition is Dismissed because, inter alia, a judge of coordinate jurisdiction may not overrule the decisions of a co-equal judge. <u>Yamulla Trucking & Excavating Co., Inc.,</u> 2001 Pa. Super. 72, 771 A.2d 782 (2001), <u>app. denied,</u> 421 Pa. Super. 642, 612 A.2d 540 (1992)("Judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other"); <u>Martin Stone Quarries, Inc.,</u> 2001 Pa. Super. 318, 786 A.2d 998 (2001), <u>app. denied,</u> 569 Pa. 707, 805 A.2d 525 (2002)(recognizing but not applying the general principle). In light of the extensive litigation before the Civil Trial Division that spanned more than a decade, any request for review of those prior decisions should be raised instead before the appropriate Civil Trial Division Judge or the appellate court. Moreover, since appeals

have been filed concerning the issues raised by petitioners,[1] no action may be taken by this court as to those issues. Pa.R.A.P.1701("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter").

The Petitioners' assertion that the prior orders of the Civil Trial Division in the 1995 Litigation must be declared null and void due to the lack of the indispensable parties--the Attorney General and the Church Corporation—should be raised, in the first instance, before the appropriate judge of the Civil Trial Division. Moreover, this assertion of failure to include indispensable parties is not supported by the record. The Attorney General in his formal answer states that "although an indispensable party to all actions involving charitable trusts, the Attorney General as parens patriae and in the exercise of his discretion has determined that it will not take a position in this litigation."[2]

The claim that the interests of the Church Corporation were not represented in the civil trial division litigation is similarly unconvincing. The petitioners concede, for instance, in their petition that respondent Kenneth Shelton is the General Overseer of the General Assembly and the President of the Church Corporation.[3] According to pleadings in the 1995 litigation, the chief officer of the corporation is the President and General Overseer.[4] The articles of incorporation and bylaws of the corporation-- named "The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith"—provide that legal title to all property of the corporation is to be vested and managed by six trustees, and that membership in the corporation shall consist of persons serving as members of the board.[5] Although the individual petitioners characterize themselves as members of the General Assembly, they neither aver that they served as members of the Board nor do they specifically challenge Kenneth Shelton's authority to represent the nonprofit corporation. Instead, they characterize him as the Bishop, General Overseer of the General Assembly and the President of the Church Corporation.[6] Moreover, in pleadings filed in the Civil Trial Division, Kenneth Shelton filed a counterclaim purporting to represent the interests of the church and corporation.[7]

---

1  See 10/16/2006 Anthonee Patterson Answer, ¶ 42 & Ex. K (docket entries); 10/16/2006 GlassRatner Management & Realty Advisors, LLC, Response, ¶ 7, fn.1.
2  10/24/2006 Answer of the Commonwealth of Pennsylvania, Office of the Attorney General, ¶ 12.
3  8/3/2006 Petition, ¶ 9.
4  See 8/3/2003 Petition, Ex. 1, Complaint, Patterson v. Kenneth Shelton, July 1995, No. 2945 (hereinafter "1995 Complaint"), ¶ 6; 10/16/2006 Answer by GlassRatner Management & Realty Advisors, LLC, Ex. 1, Answer and New Matter of Kenneth Shelton and Erik Shelton to the Plaintiff's Complaint, ¶ 6.
5  10/16/2006 Anthonee Patterson Answer, ¶ 6 & Ex. A (Articles of Incorporation of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Section I, VI & IX). The Bylaws, in Article II, Section 2 give the General Overseer and Bishop blanket authority to conduct all negotiations and closings in the purchase of real or personal property for the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith.
6  8/3/2006 Petition, ¶¶2-9.
7  10/16/2006 GlassRatner Management & Realty Advisors, LLC Response, Ex. 1 (Counterclaim of Kenneth Shelton and Erik Shelton, individually and behalf of the Church and Church Corporation) filed in Patterson v. Shelton, July Term 1995, No. 2945.

Finally, the Petitioners' claim that Orphans' Court has sole authority over the issues raised throughout the 1995 Civil Trial Division litigation because they involved the administration of a nonprofit corporation's assets is without merit. Each division of a Court of Common Pleas is vested with the full jurisdiction of the whole court under 42 Pa.C.S. § 952. Pennsylvania Rule 2156 of Judicial Administration invoked by the petitioners merely provides for allocation or distribution of business among the various divisions of a court of Common Pleas and does not establish exclusive jurisdiction. See Pa. R. J.A. 2156. Petitioners cite no precedent to support a contrary conclusion. Local Philadelphia Orphans' Court Rule 1.2.N. specifically provides for concurrent jurisdiction if "any other Division of the Common Pleas has previously assumed jurisdiction over any matter over which it has concurrent jurisdiction with the Orphans' Court Division, jurisdiction will not be entertained by this Division except upon written order of the President Judge of the Court of Common Pleas. Phila. O.C. Rule 1.2.N. Petitioners provide no such written order to transfer this more than a decade long litigation to Orphans' Court.

For these reasons, and in the interest of judicial economy, petitioners should address any request for further relief to the appropriate Civil Trial Division Judge.

BY THE COURT:

John W. Herron, J.

Lawrence Barth, Esquire, for the Commonwealth
Robert Burke, Esquire
Andre Dennis, Esquire
Denis Lawler, Esquire
Ann C. Lebowitz, Esquire
Stephen M. Orlofsky, Esquire
Lynette M. Santiago, Esquire
Stephanie E. Sanderson-Braem, Esquire
Fincourt Shelton, Esquire

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

NOV 0 6 2006

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

COURT OF COMMON PLEAS OF PHILADELPHIA
ORPHANS' COURT DIVISION
O. C. No. 1134 NP of 2006
In re: The Trustees of the Church of the Lord Jesus Christ
of the Apostolic Faith, Inc.
Control No. 068391

D E C R E E

AND NOW, this *6th* day of November 2006, after a hearing and upon consideration of the Petition for Special Injunction to Stay Arbitrator Nayton's Final Adjudication and Decree filed by The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith ("General Assembly"), by Church Members Carlton Morrison, Diane Taylor, Andrew Scott and C. Katerline Williams, Trustees *ad litem,* and by Carlton Morrison, Diane Taylor, Andrew Scott and C. Katherine Williams, individually, it is hereby ORDERED and DECREED that this Petition is DENIED. Petitioners have failed to establish that they are likely to prevail[1] on the claims set forth in their August 3, 2006 Petition and subsequent memorandum because, inter alia, a judge of coordinate jurisdiction may not overrule the decisions of a co-equal judge. Yamulla Trucking & Excavating Co., Inc., 2001 Pa. Super. 72, 771 A.2d 782 (2001), app. denied, 421 Pa. Super. 642, 612 A.2d 540 (1992)("Judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other"); Martin Stone Quarries, Inc., 2001 Pa. Super. 318, 786 A.2d 998 (2001), app. denied, 569 Pa. 707, 805 A.2d 525 (2002)(recognizing but not applying the general principle). In light of the extensive litigation before the Civil Trial Division that spanned more than a decade, any request for review of those prior decisions should be raised instead before the appropriate Civil Trial Division Judge or the appellate court. Moreover, since appeals have been filed concerning the issues raised by petitioners,[2] no action may be taken by this court as to those issues. Pa.R.A.P.1701("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter").

The Petitioners' assertion that the prior orders of the Civil Trial Division in the 1995 Litigation must be declared null and void due to the lack of the indispensable parties--the Attorney General and the Church Corporation—should be raised, in the first instance, before the appropriate

---

1 Pennsylvania courts have cautioned that a "preliminary injunction should be granted only if all of the following four "essential prerequisites" are proven: (i) a strong likelihood of success on the merits; (ii) a showing of immediate and irreparable harm that cannot be compensated by money damages; (iii) a showing that greater injury will result if preliminary injunctive relief is denied than if such injunctive relief is granted; and (iv) a showing that a preliminary injunction would restore the status quo." Allegheny Anesthesiology Assocs., Inc. v. Allegheny Gen. Hosp., 2003 Pa. Super. 189, 826 A.2d 886, 891 (2003), app. denied, 577 Pa. 684, 844 A.2d 550 (2004)(citations omitted).
2 See 10/16/2006 Anthonee Patterson Answer, ¶ 42 & Ex. K (docket entries); 10/16/2006 GlassRatner Management & Realty Advisors, LLC, Response, ¶ 7, fn.1.

judge of the Civil Trial Division. Moreover, this assertion of failure to include indispensable parties is not supported by the record. The Attorney General in his formal answer states that "although an indispensable party to all actions involving charitable trusts, the Attorney General as parens patriae and in the exercise of his discretion has determined that it will not take a position in this litigation."[3]

The claim that the interests of the Church Corporation were not represented in the civil trial division litigation is similarly unconvincing. The petitioners concede, for instance, in their petition that respondent Kenneth Shelton is the General Overseer of the General Assembly and the President of the Church Corporation.[4] According to pleadings in the 1995 litigation, the chief officer of the corporation is the President and General Overseer.[5] The articles of incorporation and bylaws of the corporation-- named "The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith"-—provide that legal title to all property of the corporation is to be vested and managed by six trustees, and that membership in the corporation shall consist of persons serving as members of the board.[6] Although the individual petitioners characterize themselves as members of the General Assembly, they neither aver that they served as members of the Board nor do they specifically challenge Kenneth Shelton's authority to represent the nonprofit corporation. Instead, they characterize him as the Bishop, General Overseer of the General Assembly and the President of the Church Corporation.[7] Moreover, in pleadings filed in the Civil Trial Division, Kenneth Shelton filed a counterclaim purporting to represent the interests of the church and corporation.[8]

Finally, the Petitioners' claim that Orphans' Court has sole authority over the issues raised throughout the 1995 Civil Trial Division litigation because they involved the administration of a nonprofit corporation's assets is without merit. Each division of a Court of Common Pleas is vested with the full jurisdiction of the whole court under 42 Pa.C.S. § 952. Pennsylvania Rule 2156 of Judicial Administration invoked by the petitioners merely provides for allocation or distribution of business among the various divisions of a court of Common Pleas and does not establish exclusive jurisdiction. See Pa. R. J.A. 2156. Petitioners cite no precedent to support a contrary conclusion. Local Philadelphia Orphans' Court Rule 1.2.N. specifically provides for concurrent jurisdiction if "any other Division of the Common Pleas has previously assumed jurisdiction over any matter over which it has concurrent jurisdiction with the Orphans' Court Division, jurisdiction will not be

---

3   10/24/2006 Answer of the Commonwealth of Pennsylvania, Office of the Attorney General, ¶ 12.
4   8/3/2006 Petition, ¶ 9.
5   See 8/3/2003 Petition, Ex. 1, Complaint, Patterson v. Kenneth Shelton, July 1995, No. 2945 (hereinafter "1995 Complaint"), ¶ 6; 10/16/2006 Answer by GlassRatner Management & Realty Advisors, LLC, Ex. 1, Answer and New Matter of Kenneth Shelton and Erik Shelton to the Plaintiff's Complaint, ¶ 6.
6   10/16/2006 Anthonee Patterson Answer, ¶ 6 & Ex. A (Articles of Incorporation of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Section I, VI & IX). The Bylaws, in Article II, Section 2 give the General Overseer and Bishop blanket authority to conduct all negotiations and closings in the purchase of real or personal property for the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith.
7   8/3/2006 Petition, ¶¶2-9.
8   10/16/2006 GlassRatner Management & Realty Advisors, LLC Response, Ex. 1 (Counterclaim of Kenneth Shelton and Erik Shelton, individually and behalf of the Church and Church Corporation) filed in Patterson v. Shelton, July Term 1995, No. 2945.

entertained by this Division except upon written order of the President Judge of the Court of Common Pleas.  Phila. O.C. Rule 1.2.N.  Petitioners provide no such written order to transfer this more than a decade long litigation to Orphans' Court.

For these reasons, and in the interest of judicial economy, petitioners should address any request for further relief to the appropriate Civil Trial Division Judge.

BY THE COURT:

John W. Herron, J.

Lawrence Barth, Esquire, for the Commonwealth
Robert Burke, Esquire
Andre Dennis, Esquire
Denis Lawler, Esquire
Ann C. Lebowitz, Esquire
Stephen M. Orlofsky, Esquire
Lynette M. Santiago, Esquire
Stephanie E. Sanderson-Braem, Esquire
Fincourt Shelton, Esquire

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

NOV 0 6 2006

FIRST JUDICIAL DISTRICT OF PA
USER I.D.: _____

**EXHIBIT I**

## SUPERIOR COURT OF NEW JERSEY
### CHANCERY DIVISION- GENERAL EQUITY
### CAMDEN COUNTY

THE GENERAL ASSEMBLY OF THE
CHURCH OF THE LORD JESUS
CHRIST OF THE APOSTOLIC FAITH,
an unincorporated association, and
FATINA MING and DARRYL JONES,
INDIVIDUALLY AND AS MEMBERS
OF THE GENERAL ASSEMBLY,

Plaintiffs

vs

ANTHONEE PATTERSON,
THE TRUSTEES OF THE GENERAL
ASSEMBLY OF THE CHURCH OF THE
LORD JESUS CHRIST OF THE
APOSTOLIC FAITH, INC., a
Pennsylvania non-profit corporation, and
THE TRUSTEES OF THE GENERAL
ASSEMBLY OF THE CHURCH OF THE
LORD JESUS CHRIST OF THE
APOSTOLIC FAITH, INC., a New Jersey
non-profit corporation,

Defendants

CIVIL ACTION

NO. C-208-06

JAN 16 2007

## ORDER

AND NOW, upon consideration of Plaintiffs' Motion for Temporary Restraining Order

in the above-captioned matter and/or request for permanent injunction, it is hereby ORDERED

this 16th day of January, 2007, after a hearing on this matter that both the temporary restraining

order and permanent injunction is DENIED and the matter dismissed with prejudice.

BY THE COURT:

Honorable M. Allan Vogelson, Judge

**EXHIBIT J**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Anthonee Patterson,<br>                  Appellant | : |
| | : |
|       v. | : |
| | : |
| Kenneth Shelton, Individually, and | : |
| President of the Board of Trustees | : |
| of the General Assembly of the Church | : |
| of the Lord Jesus Christ of the | :   No. 2396 C.D. 2011 |
| Apostolic Faith, Inc. | :   Argued: October 15, 2012 |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY             FILED: March 6, 2013

      Anthonee Patterson (Patterson) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) which granted summary judgment in favor of Bishop Kenneth Shelton (Shelton) and dismissed Patterson's Complaint based on Patterson's "lack of standing" under the Pennsylvania Nonprofit Corporation Law (NCL), 15 Pa.C.S. §§5101-5997.

## **Factual and Procedural Background**

      This marks the fourth time this Court has been called upon to review action by the trial court in the underlying tangle of controversies involving a religious schism which has spanned over two decades. In all, seven lawsuits were instituted by various parties against a church, its corporate trustee and various officials in the Court of Common Pleas of Philadelphia County, Court of Common

Pleas of Delaware County, and United States District Court for the Eastern District of Pennsylvania.[1]

The key players involved in the present offshoot of the controversy are: (1) the Church of the Lord Jesus Christ of the Apostolic Faith (**the "Church"**), an unincorporated association, founded in 1919; (2) the "Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.", (**the "Corporate Trustee"**), a Pennsylvania nonprofit corporation formed in 1947 **to act as the trustee and hold property in trust for the Church**[2]; (3) Patterson, a life-long member, elder, and minister of the Church; and (4) Shelton, the current "Bishop" and/or "Overseer" of the Church and "President" of the Corporate Trustee.

The dispute began in 1991 when then-Bishop S. McDowall Shelton, died, leaving vacancies in the offices of "Overseer" of the Church and "President" of the Corporate Trustee. Immediately upon Bishop S. McDowall Shelton's death, Shelton and his "faction" took control of the accounts, trusts and properties of the

---

[1] These lawsuits are recounted in more detail in this Court's previous opinion in <u>Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton</u>, (Pa. Cmwlth. Nos. 376 C.D. 2000 and 559 C.D. 2000, filed April 10, 2001). <u>See also</u> <u>Church of the Lord Jesus Christ of the Apostolic Faith, Inc., et al, v. Roddy Shelton, II</u>, 740 A.2d 751 (Pa. Cmwlth. 1999), for an insightful history of this complex and protracted dispute. <u>See also</u> <u>Joseph Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.</u>, 644 F.Supp. 2d 584 (E.D. Pa. 2009) ("<u>Askew I</u>") and <u>Joseph Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.</u>, 776 F.Supp. 2d 25 (E.D. Pa. 2011) ("<u>Askew II</u>").

[2] The Corporate Trustee's Charter provided that the purpose for which it was formed was to "take, receive, have and hold and manage real and personal property in trust for the uses and purposes specified by the General Assembly of the Church" and that said purposes did "not contemplate pecuniary gain or profit incidental or otherwise to its members." Charter, June 27, 1947, at 1; Reproduced Record (R.R.) at 266a.

Church and Corporate Trustee. After extensive litigation initiated by two other dissident factions of the Church congregation[3] over the leadership of the Church and Corporate Trustee, the trial court ultimately determined, and this Court later affirmed, that Shelton and his Board of Trustees were in control.[4]

## Patterson's Action in Equity Which Is the Subject of This Appeal

On July 24, 1995, Patterson, as life-long member, elder and minister of the Church, commenced an action in equity against Shelton, in Shelton's individual capacity and as the President of the Board of Trustees of the Corporate Trustee.[5] Patterson alleged that since taking control of the Church and Corporate Trustee in 1991, Shelton and his Board of Trustees have misappropriated funds, "looted the Church's assets," paid themselves salaries in contravention of Church By-Laws, and funded private expenditures, lavish vacations, lingerie, cars, homes and other personal incidentals with assets which were donated and designated for Church religious and charitable missions.[6]

---

[3] Patterson was the leader of one such faction.

[4] See Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Shelton, (Pa. Cmwlth. Nos. 376 C.D. 2000 and 559 C.D. 2000, filed April 10, 2001).

[5] Erik Shelton was also named as a Defendant but on November 30, 2005, he was voluntarily dismissed from the lawsuit.

[6] Specifically, Patterson alleged that Shelton took physical possession of cash offerings designated for the Church from churches throughout the Eastern United States and converted them to his own use; converted $111,537 from the Gresham Trust, a fund held for the benefit of Church members in need of social services; converted $111,533 from a Church account held at Fidelity National Bank; converted $10,585 from the Church's "Bus Rally Money Account;" converted $64,000 from a Church account at Commonwealth Federal and Loan which was dedicated for youth studies; and converted $8,000 from two accounts at Mid Atlantic Bank donated by Church members for the purpose of financially assisting the Church's international missions. Complaint, ¶¶12(a)-(f) at 5-7; R.R. at 127a-129a.

3

Patterson requested, *inter alia*: (1) the appointment of a receiver to take control of the assets of the Church held by the Corporate Trustee; (2) an order requiring Shelton to issue annual financial reports for the years 1991, 1992, 1993, and 1994; and (3) an accounting.

The parties engaged in discovery. Patterson retained James A. Stavros, CPA (Stavros), a forensic financial investigator, to analyze the finances and expenditures of the Church and the Corporate Trustee. Stavros authored a report which detailed his findings that Shelton and his Board of Trustees withdrew hundreds of thousands of dollars from Church accounts with no accounting of where the funds went and that they expended Church funds on a significant amount of "personal" items and expenditures that appeared to be outside the normal course of business and outside Church laws and customs.[7] He concluded that Church accounts had declined by nearly $1 million under Shelton's control.[8]

In January 2006, the parties agreed to submit to binding arbitration. The Arbitrator concluded that the credible evidence established that Shelton had engaged in various acts of fraud, mismanagement, conspiracy, breach of fiduciary responsibilities, violations of By-laws and the Articles of Incorporation in seizing corporate funds and assets and depleting bank accounts designated for Church-related purposes. The Arbitrator concluded that Shelton had diverted Church funds and assets to himself and others for his and their benefit. The Arbitrator appointed a receiver and directed Shelton to account for all Church funds removed by him or those acting with him.

---

[7] This included vacations all over the world including, but not limited to: Cannes, France, Disney World, Switzerland, and purchases from stores such as Victoria's Secret.

[8] Shelton did not retain a financial expert to counter Patterson's report.

4

Shelton filed a motion to vacate the award which the trial court denied. On appeal, this Court overturned the arbitration award because the arbitrator went beyond the scope of his authority in fashioning relief. See Shelton v. Patterson, 942 A.2d 967 (Pa. Cmwlth. 2008). This Court remanded the matter to the trial court to determine whether Patterson was entitled to relief under the NCL.

On remand, Shelton moved for summary judgment on the ground that Patterson lacked "statutory standing" under Section 5782 of the NCL, 15 Pa.C.S. §5782. Shelton argued that only an officer, director, or member of a nonprofit corporation has "statutory standing" to enforce a right of a nonprofit corporation through a derivative action. Section 5782 of the NCL, which is contained in Subchapter F governing "derivative actions," provides:

> **Actions against directors, members of an other body and officers**
>
> **(a) General rule** – Except as provided in subsection (b), **in any action** or proceeding **brought to enforce a secondary right on the part of one or more members of a nonprofit corporation** against any present or former officer, director or member of an other body of the corporation because the corporation refuses to enforce rights that may properly be asserted by it, each plaintiff must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains. (Emphasis added).

15 Pa.C.S. § 5782.

Shelton pointed to the Corporate Trustee's Articles of Incorporation which limited its membership in the nonprofit corporation to its Board of Trustees.

5

Shelton asserted that because Patterson was never a member of the Board of Trustees he was never a "member" of the Corporate Trustee, and thus, he had no "statutory standing" to bring claims that are derivative of the Corporate Trustee's rights.

The trial court agreed that under Section 5782 of the NCL, Patterson could only bring suit if he was a member of the Corporate Trustee at the time of the alleged events outlined in the Complaint. The trial court looked to Article IX of the Articles of Incorporation which states: "membership in the corporation [Corporate Trustee] shall consist of those persons serving as members of the Board of Trustees." The trial court concluded that because Patterson had never been a member of the Board of Trustees he was not a member of the Corporate Trustee. The trial court reasoned that because the NCL created the cause of action and designated who may sue; standing was a jurisdictional prerequisite to any action. Grom v. Burgoon, 672 A.2d 823 (Pa. Super. 1996). The trial court "finding no possible way to affirm that [Patterson] has standing" granted the motion for summary judgment and dismissed the case. Trial Court Opinion, January 25, 2012, at 3.

Patterson now appeals.[9]

---

[9] This Court's review of issues of standing, which are questions of law, is plenary, under the *de novo* standard. Hunt v. Pennsylvania State Police, 603 Pa. 156, 983 A.2d 627 (2009).

## The Statutory Standing Provisions of
## Section 5782 of the NCL Applies to "Derivative" Actions

After review of the transcript of the argument on the summary judgment motion and reviewing the parties' briefs, it appears that the focus of the parties and the trial court was on Patterson's status and whether he met the definition of a "member" of the Board of Trustees and the Corporate Trustee. No one seemed to question whether Patterson's action was, in fact, a derivative action as envisaged by this section. The threshold inquiry, in this Court's view, must be whether Section 5782 of the NCL controlled.

Section 5782 of the NCL, 15 Pa.C.S. §5782, by its express language, limits those who may bring a derivative action against a board of directors or management on behalf of a nonprofit corporation. An action is derivative if the gravamen of the complaint is injury **to the corporation or its members as a whole**. Abraham Lincoln Hotel Corp. v. Metropolitan Edison, 4 Pa. D. & C. 4th 85 (1988), *affirmed*, 620 A.2d 534 (Pa. Super. 1992); Hendrickson v. Vandling, 41 Pa. D. & C. 3d 568 (1983). In effect, the suing shareholder claims to be acting **on behalf of the corporation**, because the directors and management have failed to exercise their authority for the benefit of the company and all of its shareholders.

In Davis v. U.S. Gypsum Co., 451 F.2d 659 (3rd Cir.1971), the Third Circuit distinguished between a derivative action and an individual action as follows:

> It is hornbook law that claims asserted for the benefit of stockholders *qua* stockholders in a corporation because of the tortious acts of its officers or those actions in conjunction with them is a class suit, a derivative action, and **recovery is for the benefit of the corporation directly and indirectly to its stockholders**. It is equally

7

> clear that where a corporation, tortiously conspires with others to damage an individual and does so a cause of action arises which belongs to the individual.

451 F.2d at 662 (Emphasis added).

Pennsylvania corporate commentators also recognize this distinction:

> Where there is a breach of the contract existing between the corporation and a shareholder by reason of his status as a shareholder, as distinguished from a breach of a contract between the corporation and a third person; or where there is a breach of the fiduciary duty which the directors, officers, or majority shareholders owe to a shareholder or the minority shareholders, as such, as distinguished from the breach of such a duty owed to the corporation, the shareholder injury by such breach has a direct, personal cause of action.

W. Edward Sell & William H. Clark, Jr., Pennsylvania Business Corporations (1997) § 1782.2. *See also* William M. Fletcher, 12B Cyclopedia of the Law of Private Corporations ("Fletcher") § 5911 ("If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, as where the action is based on a contract to which the shareholder is a party, ... it is an individual action.").

When an injury to a corporation results in injury to the corporation's shareholders, it "is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder," requiring that a "derivative action" be brought on behalf of the corporation. Burdon v. Erskin, 401 A.2d 369, 370 (Pa. Super. 1979) (citing Kelly v. Thomas, 234 Pa. 419, 428, 83 A. 307 (1912)). *See also* John L. Motley Assocs., Inc. v. Rumbaugh, 104 B.R. 683, 686 (E.D. Pa. 1989) ("An action to redress injuries to a corporation cannot be maintained by a shareholder in

8

his own name but must be brought in the name of the corporation."); <u>Kehr Packages, Inc. v. Fidelity Bank, Nat'l Ass'n</u>, 710 A.2d 1169, 1176 (Pa. Super. 1998) ("[W]here the gravamen of a claim is injury to a corporation, the shareholders of the corporation may not claim injury to themselves rather than the corporation.").

An example of derivative claims previously asserted against the Corporate Trustee and Shelton (and others) is found in the related case commenced by Joseph Askew (Askew) in the United States District Court for the Eastern District of Pennsylvania in 2009. <u>See</u> footnote 1.

In <u>Askew I</u>, Askew, who claimed to be a member of the Church, brought an eight-count complaint against Shelton, the Corporate Trustee and the other managers of the Corporate Trustee (collectively "Defendants"). In Count II, Askew alleged breach of fiduciary duty **owed to the Corporate Trustee**. In Count IV, Askew alleged that the Board of Trustees failed to present the members of the Corporate Trustee with an annual report containing specific financial information under Section 5553 of the NCL. In Count V, Askew sought the removal of Shelton as President of the Corporate Trustee.

Defendants moved to dismiss these counts because Askew lacked standing under the NCL to bring derivative claims.

The District Court agreed that these claims were derivative because any alleged failure to satisfy a supposed duty of loyalty and care owed **to the Corporate Trustee** would "injure[] only that corporation." <u>Askew I</u>, 644 F.Supp. 2d at 590. The District Court determined Count IV was also a derivative claim

9

because that section guarantees a nonprofit corporation "the right to self-knowledge" and that "[a]ny right that Section 5553 may confer is **a right of the corporation**, and a claim to encore this section necessarily falls within the ambit of Section 5782." Askew I, 644 F.Supp.2d at 590 (Emphasis added). As for Count V, the District Court found that under Section 5726 of the NCL, a court is only empowered to remove a director "upon petition of any member or director" of the nonprofit corporation. Id.

The District court concluded that since Askew was not a member or director of the Corporate Trustee, he did not have "statutory standing" to seek these kinds of relief.

Even though the District Court found that Counts II, IV and V were derivative claims, the District Court explained that Askew's claims in Counts I and VI for breach of fiduciary duty **to the Church** and unjust enrichment for misappropriation **of Church funds** were **not** derivative of the Corporate Trustee's rights. Therefore, they were not claims "that only the Corporation's [Corporate Trustee] members directors or officers can bring." Askew I, 644 F.Supp. at 590.

This Court believes that same analysis is applicable here.

## Patterson's Action Is Not a Derivative Action

Like Counts II, IV and V of Askew's Complaint, Patterson did not bring his lawsuit to enforce the rights of the Corporate Trustee. He did not claim that the Corporate Trustee was harmed by the unauthorized and wrongful misconduct of Shelton and his Board of Trustees. He did not purport to act **on behalf of the Corporate Trustee**. Patterson alleged, not that the Corporate

10

Trustee was harmed, but that **the Church and its members were harmed** by Shelton's "looting" of the Church's assets which the Corporate Trustee was obligated to hold "in trust" for the purposes set forth in its Articles of Incorporation. Patterson brought the action **against** Shelton, as President of the Board of Trustees and the person with full control of the Corporate Trustee. This was an action by an individual who claimed injury **to himself - as a member of the Church**. It was a **direct**, third-party claim against Shelton, as the person who controlled the nonprofit Corporate Trustee and who owed fiduciary duties to the Church and its members, i.e., the beneficiaries of the trust relationship between the Church and the nonprofit Corporate Trustee. *See, e.g.,* Bolton v. Stillwagon, 410 Pa. 618, 190 A.2d 105 (1963).

When a nonprofit corporation is incorporated to act as a trustee its board of directors or other body of the corporation are held to the same degree of responsibility and accountability **as if not incorporated**. A nonprofit corporate trustee may be accountable or responsible for failure to handle the property it holds "in trust" for the purposes set forth in its articles of incorporation. Section 5547(a) of the NCL provides:

> **General rule** - Every non-profit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles. **The board of directors or other body of the corporation shall, as trustees of such property, be held to the same degree of responsibility and accountability as if not incorporated,** unless a less degree or a particular degree of responsibility and

accountability is prescribed in the trust instrument,[10] or unless the board of directors or such other body remain under the control of the members of the corporation or third persons who retain the right to direct, and do direct, the actions of the board or other body as to the use of the trust property from time to time.[11] (Emphasis added).

15 Pa.C.S. § 5547(a).

Here, the Articles of Incorporation establish the fiduciary relationship the Corporate Trustee was to have with the Church's assets and property.[12]  The Corporate Trustee was to "take, receive, have and hold and manage real and personal property in trust for the uses and purposes specified by the General Assembly of the Church."   Articles of Incorporation, at 1; Supplemental Reproduced Record (S.R.R.) at 41b.  The Corporate Trustee and its members were prohibited from realizing any "pecuniary gain or profit, incidental or otherwise."  Articles of Incorporation, at 1; S.R.R. at 41b.

**None** of Patterson's claims belongs to the nonprofit Corporate Trustee whose primary duty it was to preserve the Church's assets.  Instead, Patterson's claims derive from his membership in the Church and from the trust relationship that existed between the Church and the nonprofit Corporate Trustee.

---

[10] A lesser degree of responsibility and accountability was not prescribed in the trust instrument.

[11] The Board of Trustees was not under the control of anyone else.

[12] Even notwithstanding the Articles of Incorporation, officers or authorities of a Church are prohibited by statute, i.e., Section 7 of the Act of April 26, 1855, *as amended,* 10 P.S. §81, from diverting Church property from a use to which it was dedicated to another inconsistent use. St. John the Baptist Greek Catholic Church of Allentown v. Musko, 448 Pa. 136, 292 A.2d 319 (1972); St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko, 436 Pa. 243, 259 A.2d 419 (1969), *certiorari denied,* 399 U.S. 920 (1970).

12

Accordingly, the "statutory standing" prerequisites of Section 5782 of the NCL do not bar Patterson's action.[13]

## Standing to Bring a Third-Party Action Against Officers and Directors of A Nonprofit Corporate Trustee

Neither do the remainder of the provisions of the NCL bar Patterson's action.  The nonprofit corporation involved was actually "the trustee" of the Church's assets.  Unlike the section of the NCL governing "derivative actions" (requiring that such a lawsuit be maintained by a member) there are no "statutory standing" jurisdiction prerequisites to an action by a party who seeks **to enforce his own rights** against a nonprofit corporation which was formed to act as a trustee.[14]

---

[13] The protections afforded to officers and directors under the limitation on standing to bring derivative actions are not implicated where, as here, the plaintiff seeks to enforce his own rights against the nonprofit corporation and/or its managers and directors.  White v. Associates in Counseling, 767 A.2d 638 (Pa. Cmwlth. 2001).

[14] Patterson argues, unnecessarily, that he has standing as "an other body" under Section 5893(a) of the NCL entitled, "Review of contested corporate action" which provides, in pertinent part: "any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such action." This Court does not agree that this section is applicable.

First, Patterson is not "a member of an other body...of the nonprofit corporation." His action is to enforce his own rights as a member of the Church congregation against the officers and directors of the nonprofit corporation.

Second, the action which Patterson contests is not the type of "corporation action" which is subject to this section.  Corporate action subject to this section includes: "the election, appointment...suspension, removal or expulsion of members of the nonprofit corporation;" or an action "which is required" to be taken under the nonprofit law or which is required to be submitted for action to the members of the nonprofit corporation. 15 Pa.C.S. §5791. None of Patterson's allegations involve this type of action.  Rather, they involve the "looting" of the Church's assets.

**(Footnote continued on next page...)**

If a nonprofit corporation is sued in its capacity as a trustee, its officers and directors must be held to the same accountability and responsibility as any other trustee "as if not incorporated." 15 Pa.C.S. § 5547(a). Section 199 of the Restatement Second of Trusts provides that a beneficiary of a trust can maintain a suit:

> (a) to compel the trustee to perform his duties as a trustee;
>
> (b) to enjoin the trustee from committing a breach of trust;
>
> (c) to compel the trustee to redress a breach of trust;
>
> (d) to appoint a receiver to take possession of the trust property and administer the trust;
>
> (e) to remove the trustee.

Restatement (Second) of Trusts §199 (1959).

Patterson's action sounds in breach of trust. He alleges that Shelton, as the person in control of the nonprofit Corporate Trustee, was accountable and responsible to hold the Church's assets in trust. Instead, Shelton engaged in self-dealing and depleted the Church's funds for his own pecuniary and personal gains.

---

**(continued...)**

Third, those cases decided under this section which involved "standing" of health insurance subscribers to challenge corporate action to retain profits do not apply. Those cases hold that in order to have standing to contest corporate action that the protestor contends harmed the nonprofit corporation or them as a member, officer, director etc., of the nonprofit corporation, the person must be in the same class as director. See Herman v. Capital Blue Cross, 11 A.3d 23 (Pa. Cmwlth. 2010), *appeal denied*, __ Pa. __, 34 A.3d 84 (2011); Petty v. Hospital Service Association of Northeastern Pennsylvania, 967 A.2d 439 (Pa. Cmwlth. 2009) *affirmed*, __ Pa. __, 23 A.3d 1004 (2011). Again, that is not the situation here.

Section 200 of the Restatement 2d of Trusts provides that "[n]o one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or enjoin redress for breach of trust." Restatement (Second) of Trusts §200 (1959). Standing is precluded unless a party can "plead and prove an immediate, direct and substantial injury." 1000 Grandview Assn., Inc. v. Mt. Washington Assoc., 434 A.2d 796, 797 (Pa. Super. 1981). This does not mean an economic injury must be present. "[I]t is clear that some interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms." Wm. Penn Parking, Inc. v. City of Pittsburgh, 464 Pa. 168, 193, 346 A.2d 269, 281 (1975).

In the context of churches, other courts, including the United States Supreme Court, have found that a church member may sue on behalf of the church. See, e.g., Beatty v. Kurtz, 27 U.S. 566 (1829) (some of the persons belonging to a voluntary religious society, and having a common interest, may sue in behalf of themselves and others having the like interest, as part of the same society, for purposes common to all, and beneficial to all); Bridges v. Oates, 605 S.E.2d 685 (N.C. App. 2004); Nash v. Sutton, 14 S.E. 77 (N.C. 1891) (member of a congregational church has standing to maintain an action on behalf of the congregation when a trustee has acted beyond the scope of his or her authority); South Kenton Union Sunday School Ass'n v. Espy, 17 Ohio C.C. 524 (1899) (if trustees of a religious organization have conveyed its property without authority, individual members of such organization may maintain an action on behalf of the entire congregation to have the unauthorized conveyance set aside).

In Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Church, 582 A.2d 237 (D.C. 1990), the District of Columbia Court

15

of Appeals addressed whether members of a church may file suit against the board of trustees of their church on the theory that members were "trust beneficiaries." That court permitted a suit by members of Mount Jezreel Church to go forward with their claim of breach of fiduciary duty by the trustees in managing the church's assets and business affairs.  The court explained that the members had "standing to sue the trustees in the event that the trust property is used or disposed of in a manner contrary to the stated purposes of the [church] trust." Id. at 239.

Similarly, in Askew I, the District Court determined, and this Court concurs, that the members of a Church's congregation suffer injury when the Church's assets, which were held in trust, are misused.  Askew I, 644 F.Supp. 2d at 591.  The District Court clarified that only through Askew's membership in the Church was he qualified to bring an action on behalf of the Church under Fed.R.Civ.P. 23.1 (governing standing to bring derivative actions on behalf of unincorporated associations).[15]

Here, there is no question that Patterson was a member of the Church when he instituted the action.[16]   As a member of the Church congregation, Patterson was part of the beneficiary class for which the Corporate Trustee held the Church's assets in trust.  As such, he has standing to bring this action to enforce his

---

[15] In Askew II, the District Court went on to find that Askew was not a "member" of the Church because he was expelled through the procedures in Article XIII of the Church's By-Laws.

[16] Shelton argues that Patterson was not a member of the Church congregation because he "abandoned" the Church.  However, the record demonstrates that the Church never took any action to remove Patterson.  Article XIII of the Church By-laws provided a method for the expulsion or suspension of members.  The Church could have used those procedures to remove Patterson who Shelton alleges abandoned the Church, but it did not do so.

own rights and the rights commonly held by all beneficiaries to obtain restoration to the Church of its full losses. Thus, the action should not have been dismissed due to lack of standing under the NCL.

As noted, the Church is an unincorporated association. This Court notes that its conclusion that Patterson has standing is also wholly consistent with principles governing standing to sue on behalf of an unincorporated association. See Pa.R.C.P. No. 2152 (action by unincorporated association must be brought in name of member as trustee ad litem).[17]

The order of the trial court is reversed. The case is remanded to the trial court for proceedings in accordance with this opinion. Jurisdiction is relinquished.

BERNARD L. McGINLEY, Judge

---

[17] To hold otherwise would, as a practical matter, insulate these most serious allegations from judicial review.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthonee Patterson, :
    Appellant :
       :
       :
   v.    :
       :
Kenneth Shelton, Individually, and :
President of the Board of Trustees :
of the General Assembly of the Church :
of the Lord Jesus Christ of the : No. 2396 C.D. 2011
Apostolic Faith, Inc.   :

## **O R D E R**

  AND NOW, this 6th day of March, 2013, the order of the Court of Common Pleas of Philadelphia County is hereby reversed.  The matter is remanded to the trial court to conduct a trial on the remaining factual and legal issues raised in Anthonee Patterson's complaint.  Jurisdiction is relinquished.

BERNARD L. McGINLEY, Judge

Certified from the Record

MAR – 6 2013

and Order Exit

**EXHIBIT K**

# BYLAWS
## OF
# THE GENERAL ASSEMBLY OF THE CHURCH OF
# THE LORD JESUS CHRIST OF THE
# APOSTOLIC FAITH

## ARTICLE ONE (I)

**Section One:** Each annual session of this "body" shall be designated and called The General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith. Any session of the General Assembly called by the General Overseer shall also be designated as a General Assembly, and shall have all the rights and powers and authority of the annual General Assembly. **(Amended, August 2000)**

**Section Two:** The officers of the General Assembly may consist of a General Overseer, members of the Council of Priests, and a General Secretary. All of the aforesaid offices are ecclesiastical in nature. The Bishop of the Church is the spiritual leader of the Church and is also known as the General Overseer. **(Amended, July 2006)**

## ARTICLE TWO (II)

**Section One:** The members of the Church corporation, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., shall consist of the members of the Board of Trustees (see Articles of Incorporation).

**Section Two:** The officers of the Church corporation, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., shall consist of: a President, Vice President, Secretary and Treasurer. All such officers of the Church corporation serve exclusively in a secular capacity, and shall have no ecclesiastical functions, duties, powers, or authority. Specifically, the President of the Church corporation is not synonymous with, and is a different office from that of, the General Overseer. **(Amended, July 2006)**

# ARTICLE THREE (III)

<u>Section One:</u>  The Bishop and Apostle as President of the Board of Trustees shall have the power to arrange for the registration of this corporation in all the states of the United States in which there shall be a Church home, or shall arrange to incorporate anew in any of the states or possessions of the United States, or any foreign country.

<u>Section Two:</u> The Trustees by a majority vote of the Board of Trustees are given "blanket" authority to conduct all negotiations and closings in a new purchase or sale of any property, real or personal, to be acquired or disposed of by the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. The title to any real or personal property is to be acquired in the name of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. Title to any real or personal property is to be disposed of in like manner.

<u>Section Three:</u>      The business or secular affairs of the General Assembly shall be managed by a Board of Trustees. The General Overseer, by virtue of his office, shall always be a trustee and President of the Board of Trustees.  The other trustees shall be elected by the General Assembly and shall serve for a term of one year or until their successors are qualified and elected.  Every trustee is eligible for re-election for as many terms as the General Assembly may elect him.  The General Assembly may elect only to the office of trustee, a person first approved and nominated by the General Overseer. **(Amended, August 2000)**

<u>Section Four:</u>      Despite any provisions to the contrary, the General Assembly may act to remove any officer of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith or any officer or member of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., upon the posting of a Petition for Removal on the Bulletin Board of the Headquarters Church, located on Apostolic Square, 701 South 22nd Street, Philadelphia, PA (also referred to as 22nd and Bainbridge Streets, Philadelphia, PA).

Such Petition for Removal shall bear the signatures of at least 750 members in good standing of the General Assembly, as determined by the Bishop of the Church in accordance with Article Eighteen of these bylaws.  In addition, a copy of such Petition shall be delivered to the following persons within 48 hours of posting:

1.  All officers of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith:
2.  All officers and members of The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.; and
3.  All District Supervisors of the Church of the Lord Jesus Christ of the Apostolic Faith.

A vote by the General Assembly on the Petition for Removal shall occur seven (7) calendar days after the posting of said Petition, and shall be held at the Headquarters Church located on Apostolic Square, 701 South 22nd Street, Philadelphia, PA (also referred to as 22nd and Bainbridge Streets, Philadelphia, PA). Such vote shall require a quorum to be present. If a quorum is not present, said vote shall be postponed for seven (7) calendar days. Upon the vote of at least seventy-five percent (75%) of the General Assembly members present and voting, the person who is the subject of the Petition shall be removed from office. **(Amended, July 2006)**

# ARTICLE FOUR (IV)

<u>Section One:</u> The quorum for the transaction of business before the General Assembly shall be five hundred (500) members voting before matters of the General Assembly. The presiding officers shall call for the yeas and nays, which shall be recorded by the Secretary. A majority vote of those present and voting shall determine such matters of the General Assembly. **(Quorum Amendment occurred in 1995 - Ratification of Correction of error in 2000 Bylaws, July 2006)**

<u>Section Two:</u> All motions of importance and resolutions must be submitted in writing to the General Overseer or any committee named and designated by him. The power of submitting or not submitting a motion or resolution to the General Assembly shall be left entirely to the discretion of the General Overseer.

<u>Section Three:</u>      The person offering a resolution or motion may open and close the discussion thereon and such person may take not more than fifteen minutes of time on any motion, resolutions, or questions unless special permission for such purpose is given.

<u>Section Four:</u> No member of a local assembly of this Church shall have any right, title or interest in any property. If a member withdraws from this Church, they shall have no claim to any real or personal property. **(Amended, August 2000)**

# ARTICLE FIVE *(V)*

<u>Section One:</u> Elders and Ministers desiring to hold credentials with this body must ascribe to the doctrine of the Church of the Lord Jesus Christ of the Apostolic Faith, as prescribed in Acts 2:4, 2:38, 10:44-48, 13:39 and 19:1-6; John 3:16, 6:47; Romans 5:1-2, 10:19 and Ephesians 1:13 & 19 and believe, teach and preach the same, and shall have prescribed to such for at least one year.

    (A) He must be able to read and write;
    (B) He must be able to conduct a religious service when necessary;
    (C) He must be able to officiate at a marriage ceremony, baptismal
         service and the Lord's supper; and

(D)  A written recommendation is required from the District Overseer over the state in which a Minister lives when applying for his first papers with this body. Such a letter should be sent with the application. **(Amended, August 2000)**

Section Two: Any person desiring to be a licensed worker in this body, may obtain such license by complying with the following requirements:

**(A)**  Must be baptized in accordance with Acts 2:38;

**(B)**  Believe the same;

IQ  Must evidence the fruit of the Spirit in his life;

mi  Must have a letter of recommendation from his (or her) home assembly, wherein he (or she) has been working showing fitness and ability; and

**III**  Shall present such letter, with application to the General Overseer or the Council of Priest, who shall thereupon issue licenses to such worker, if such action is approved by the General Overseer. **(Amended, August 2000)**

Section Three:  Any Minister holding credentials with this body, who may be charged with sin by two or three witnesses shall be tried by a committee made up of the General Overseer, or his nominee(s), State Elder or another man of good report among the saints designated by the General Overseer.

Section Four: No Minister or missionary shall be allowed to hold credentials with this body who teaches against any of the Doctrine of the Church of the Lord Jesus Christ of the Apostolic Faith.

Section Five: After any member or officer has been duly accused of an offense punishable by the Church, his status in the Church shall be determined by the Council of Priests or by the General Overseer, until trial. Nevertheless, this provision shall not be interpreted to, in any wise, deprive the General Overseer from the right to remove any Elder, Minister, officer or member of the Church from office or membership without accusation or trial if he may deem it necessary for the good of the Church of the Lord Jesus Christ of the Apostolic Faith. **(Amended, August 2000)**

## ARTICLE SIX (VI)

Ordination may be had and given by the consent of the General Overseer or with the assistance of whomever he may appoint.

## ARTICLE SEVEN (VII)

The General Overseer, Bishop (Omega) Kenneth N. Shelton, shall continue to hold the office of General Overseer, Trustee and President of the Board of Trustees during his

lifetime. The General Secretary shall be elected for the term of one year. The General Secretary is eligible to serve as many successive terms as he may be elected to by the General Assembly. He may hold office until his successor is elected and qualified. The General Secretary shall be approved and nominated by the General Overseer and will be elected upon receiving a majority vote of those voting on the specific question of his election at the General Assembly.

# ARTICLE EIGHT (VIII)

The headquarters of the Church of the Lord Jesus Christ of the Apostolic Faith is located on Apostolic Square (701 South 22nd Street) in Philadelphia, Pennsylvania. However, the session of the body may be held in any other city of the United States or foreign country, should the General Assembly or General Overseer only, so desire.

# ARTICLE NINE (IX)

The General Overseer shall have full authority to determine any question concerning parliamentary procedures and there shall be no appeal from the decision of the General Overseer. The General Overseer, in his discretion, may adopt the rules or procedure set forth in Robert's Rules of Order. The General Overseer shall be the final arbiter on all matters affecting the interpretation of the doctrine applicable to the Church of the Lord Jesus Christ of the Apostolic Faith. **(Amended, August 2000)**

    (A)    All doctrinal controversies may come before the General Overseer for consideration and final settlement.

# ARTICLE TEN (X)

These rules, by-laws and regulations may be amended at any session of the General Assembly, provided that such proposed amendment is submitted in writing on the day prior to action thereon to the Secretary. Any proposed amendment shall be first submitted to the General Overseer whose approval of the proposed amendment shall be a condition precedent to the submission of the amendment to the General Assembly. A majority vote of those voting on the specific proposed amendment shall be necessary before this approval. This paragraph does not apply to any change of by-laws or regulations submitted by the General Overseer, who may, at any time, present any motions or resolutions.

## ARTICLE ELEVEN (XI)

The Elders and Licensees shall be subject to the State Elders/District Overseers and in cases of insubordination and grievous discord, shall be tried by a committee. When an appeal is taken from the decision of the State Elder/District Overseer, or when trial by committee is proper, said committee shall be composed of the General Overseer or his nominee, the State Elder/District Overseers and another man of good report among the saints chosen by the General Overseer. Any decision rendered by such a committee may be appealed to the Council of Priests. Any decision rendered on appeal to the Council of Priests may be further appealed to the General Overseer. The General Overseer may at any time assume original jurisdiction, in any such matter and the decision of the General Overseer shall be final and binding on all persons. The General Overseer shall have full power to suspend or expel any person so tried from the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith. **(Amended, August 2000)**

## ARTICLE TWELVE (XII)

In case of a majority complaint against an Elder, Officer, or member, the General Overseer shall appoint an investigative committee to investigate the complaint. The said committee will report any violations of the doctrine, rules, regulation or moral laws and the General Overseer shall thereupon take such action as he may deem warranted. Any decision rendered by such a committee may be appealed to the Council of Priests. Any decision rendered on appeal to the Council of Priests may be further appealed to the General Overseer. A final appeal may be taken to the General Overseer and the General Overseer may at anytime assume original jurisdiction, in any such matter and the decision of the General Overseer shall have full power to suspend or expel any person so tried from the General Assembly of the Church or from any local assembly thereof. **(Amended, August 2000)**

## ARTICLE THIRTEEN (XIII)

Any conflict existing in the rules, regulations and by-laws of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, or any matters not covered by the rules and regulations shall be determined by the General Overseer and his ruling thereon shall be final.

## ARTICLE FOURTEEN (XIV)

<u>Section One:</u> The General Secretary may succeed temporarily to the office of the General Overseer, with the approval of the Council of Priests, upon the death of the General Overseer and shall hold office until the next General Assembly elects a successor who is duly nominated and presented by the Council of Priests for election.

<u>Section Two:</u> However, an ordained Elder in good standing shall be eligible regardless of the time of his ordination or the length of his service as Elder. **(Amended, August 2000)**

# ARTICLE FIFTEEN (XV)

All officers, group of people, committees, or Council of Priests whether holding positions on the local, state, national or international level of the Church of the Lord Jesus Christ of the Apostolic Faith are appointed by the General Overseer and are holding office at his will and pleasure and can therefore be removed by him. **(Amended, August 2000)**

# ARTICLE SIXTEEN (XVI)

All money raised or collected by any individual member, local Church, agency or auxiliary of the Church of the Lord Jesus Christ of the Apostolic Faith must be sent within one week of its receipt to the President of the Board of Trustees to Headquarters on Apostolic Square, Philadelphia, PA 19146.

(A)   All Churches and auxiliary functions of this body are to report every convention. This includes all Ministers, Elders, Licensees, Missionaries and any other officer.

(B)   All Churches in this body must report to their State or District Overseer on their activities and he, in turn, must send his report along with the Church report once a month to the Headquarters. **(Amended, August 2000)**

# ARTICLE SEVENTEEN (XVII)

All Churches established or affiliated with the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith is under the control of the General Elder and is subject to the Doctrine expressed and initiated by him. The General Overseer, by reason of his office, has blanket authority in directing the mood of religious worship, for all affiliations of the Church of the Lord Jesus Christ of the Apostolic Faith, as well as broadcasting and any phase of publication.

(A)   The <u>WHOLE TRUTH</u> MAGAZINE WHICH WAS ESTABLISHED IN May 1948 shall be the official Church organ and it has been decided that the General Overseer shall be Editor-In-Chief.

# ARTICLE EIGHTEEN (XVIII)

Qualifications and membership shall be judged by the following:

**fA1**    Tithe paying
1. All payments of tithes by Elders, Licensees, Ministers and members as commanded in Malachi 3:9 is basic to our doctrinal salvation and necessary for the growth and advancement of the Church.

**ID**    Life being consistent with the Doctrine of the Church of the Lord Jesus Christ of the Apostolic Faith,

**IQ**    Regular attendance except when this is for the reason of long sickness or physical impossibilities; at such time the member is required to remain in contact with the General Overseer at regular intervals to explain reason of absence; as well as to the one in charge of the local assembly.

# DEFINITIONS

**(1)    CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH:**

The Ecclesiastical Church Body, also referred to as the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith.

**(2)    CHURCH ORGANIZATION:**

The collective entity Spiritual Church Body and the Secular Church Corporation.

**(3)    GENERAL OVERSEER:**

The Spiritual Leader of the Church Body, also referred to as the Bishop, General Elder and Apostle.

**(4)    HEADQUARTERS:**

The International Headquarters and Business Office of the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., located at (Apostolic Square) 701 South 22nd Street, Philadelphia, PA 19146.

**(5)    THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC.:**

Is the "Church Corporation" which is in fact the Board of Trustees, who are the only members of the Corporation.

**EXHIBIT L**

Jan 31 2008  10:25

Jan. 31. 2008 10:27AM    Commonwealth Court of PA                    No. 4241    P. 2/21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthoneé J. Patterson                    :
                                         :
          v.                             :       No. 1967 C.D. 2006
                                         :
Kenneth Shelton,                         :
                    Appellant            :
                                         :
Anthonee Patterson                       :
                                         :
          v.                             :       No. 1968 C.D. 2006
                                         :
Kenneth Shelton                          :       Argued: December 10, 2007
                                         :
Appeal of: Bishop Roddy                  :
J. Shelton, II                           :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE DAN PELLEGRINI, Judge
          HONORABLE JAMES R. KELLEY, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE KELLEY                    FILED: January 31, 2008

          In these consolidated appeals, Kenneth Shelton appeals from the July
10, 2006 order of the Court of Common Pleas of Philadelphia County (trial court)
denying his petitions to vacate arbitration award and a supplemental adjudication
and confirming the arbitration award in the matter of Anthoneé J. Patterson v.
Kenneth Shelton, July Term 1995, No. 2945.  Bishop Roddy J. Shelton (Roddy
Shelton) appeals from the July 19, 2006 order of the trial court denying his petition

to intervene in the matter of <u>Anthoneé J. Patterson v. Kenneth Shelton</u>, July Term 1995, No. 2945.

      In his appeal, Kenneth Shelton raises the issue of whether the trial court erred in confirming the April 26, 2006 arbitration award and denying Kenneth Shelton's petitions to vacate the arbitration award and the May 8, 2006 supplemental award. In his appeal, Roddy Shelton raises the issue of whether the trial court abused its discretion in denying his petition to intervene in light of the fact that the underlying litigation is ongoing and the determination of such may affect any legally enforceable interest of Roddy Shelton whether or not he may be bound by the judgment in the action.

      The Church of the Lord Jesus Christ (Church) was founded in 1919 by Bishop S.C. Johnson and located at 22nd and Bainbridge Streets (also referred to as "Apostolic Square") in Philadelphia, Pennsylvania. The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (Corporation) is the secular arm of the Church and was established as a nonprofit corporation in 1947. The Corporation is governed by Pennsylvania's Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law), 15 Pa.C.S. §§ 5101 - 5997, the articles of incorporation, and corporate bylaws. The Corporation is the legal owner of all property of the Church.

      The affairs of the Church are managed by the General Overseer/Bishop. The Corporation and all assets are managed by the President and the Board of Trustees. Whoever serves as the General Overseer of the Church also serves as the President of the Board of Trustees of the Corporation. The office of General Overseer is a life term.

      Bishop S. McDowell Shelton served as General Overseer of the Church and President of the Corporation from 1961 until his death on October 13,

1991. Upon Bishop S. McDowell Shelton's death, a bitter dispute arose over who was the rightful General Overseer and President with the legal right to control the Church and the Corporation and the assets thereof.

These appeals are round two in the continuous litigation between the parties in these cases over the control of the Church and the Corporation. Round one ended on April 10, 2001, when this Court affirmed the trial court's determination that as a result of the valid action taken at the annual session of the General Assembly[1] in September 1992, specifically, confirming Kenneth Shelton as General Overseer and President, Kenneth Shelton is the rightful General Overseer of the Church and President of the Corporation. See Church of the Lord Jesus Christ of the Apostolic Faith, Inc., (Pa. Cmwlth., Nos. 376 CD 2000, 559 CD 2000, filed April 10, 2001), petition for allowance of appeal denied, 567 Pa. 766, 790 A.2d 1019 (2001). Hence, since September 1992, Kenneth Shelton has been lawfully in control of the Corporation.

The action at issue in these consolidated appeals began on or about July 24, 1995, when Anthoneé J. Patterson (Patterson), as a member of the Church, filed a complaint against Kenneth Shelton and Erik Shelton, as members of the Church and as *de facto* controllers of the Church and the Corporation and its assets. Therein, Patterson alleged that on May 28, 1994, after due notice and upon a quorum of the General Assembly, Patterson was duly confirmed as General Overseer and President of the Corporation. Patterson alleged further that despite the election of Patterson as General Overseer and President of the Corporation, Kenneth Shelton and Erik Shelton have refused to relinquish control of the various accounts, trusts and properties of the Corporation and that Kenneth Shelton has

---

[1] The General Assembly is the annual session of the Church congregation.

assumed for himself the office of General Overseer and President.   Patterson alleged further that Kenneth Shelton and Erik Shelton have taken *de facto* control of the Corporation and its property and have operated the same in total disregard of the interests of the members and requirements of law.

Patterson alleged that Kenneth Shelton and Erik Shelton have failed to present an annual report of financial affairs and activities as required by Section 5553 of the Nonprofit Corporation Law,[2] for the years 1991 through 1994. Patterson alleged that Kenneth Shelton and Erik Shelton have systematically looted the Corporation's accounts and trusts as well as the regular Church collections.

Therefore, Patterson requested the following relief pursuant to Section 5793(b) of the Nonprofit Corporation Law:[3]  (1) the appointment of a receiver to

---

[2]  15 Pa.C.S. §5553.  Section 5553 provides that the board of directors shall present annually to the members a report for the fiscal year immediately preceding the date of the report detailing: (1) the assets and liabilities of the corporation; (2) the principal changes in assets and liabilities of the corporation; (3) the revenue or receipts of the corporation; (4) the expenses or disbursements of the corporation; and (4) the number of the members of the corporation as of the date of the report.

[3]  15 Pa.C.S. §5793(b).  Section 5793 governs review of contested corporate action and provides as follows:

> (a) GENERAL RULE.-- Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

> (b) POWERS AND PROCEDURES.-- The court may make such orders in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the corporation and other relevant evidence which may relate to the issue. The court shall provide for notice of the pendency of the proceedings under this section to all persons affected thereby. If it is determined that no valid corporate action has been taken, the

*(Continued....)*

take control of the property, accounts and records of the Corporation; (2) an order requiring Kenneth Shelton and Erik Shelton, or alternatively the receiver, to issue annual financial reports for the years 1991, 1992, 1993 and 1994; (3) an accounting of all funds removed from corporate or Church accounts or trusts by Kenneth Shelton, Erik Shelton, and any persons acting in combination with them; (4) an order confirming Patterson as General Overseer; and (5) an order commanding that elections be held for such offices as the court finds to be vacant.

After the filing of preliminary objections, answers, and new matters, the matter was stricken by the calendar judge on February 22, 1996.[4]  In the meantime, as set forth above, it was finally determined by this Court on April 10, 2001, that Kenneth Shelton is the rightful General Overseer of the Church and President of the Corporation.[5]

---

court may order a meeting to be held in accordance with section 5792 (relating to proceedings prior to corporate action).

[4] It is unclear from the record why the matter was stricken.

[5] This Court's April 10, 2001 decision involved three separate equity actions which involved the fundamental question of who had the legal right to control the Corporation and the property. The three actions docketed in the trial court were: (1) Fincourt B. Shelton, as Minister Asher Ben Judah, Treasurer of the General Assembly of the Church of the Apostolic Faith, Inc. and Fincourt B. Shelton, Individually and on behalf of All Members of the Church Aggrieved By the Actions of Kenneth Shelton and Erik Shelton v. Kenneth Shelton, Erik Shelton and Trustees of the General Assembly (June Term 1992, No. 1887, Court of Common Pleas of Philadelphia County); (2) Church of the Lord Jesus Christ of the Apostolic Faith, Inc., and the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Fincourt Shelton and Anthoneé J. Patterson and George E. Patterson, Sr. and A. Leah Gregory (July Term 1994, No. 0914, Court of Common Pleas of Philadelphia County); and (3) Church of the Lord Jesus Christ of the Apostolic Faith and Roddy J. Nelson Shelton, I, General Overseer, and Roddy J. Nelson Shelton, II, Trustee, and Frank Matthews, Trustee v. Kenneth Shelton and Erik Shelton and Alonzo Woodard Reagan and John Carlton Thomas and Daniel Bowens and George Brown, Individually and As Trustees of the Church of the Lord Jesus Christ of Apostolic Faith, Inc. (August Term 1994, No. 3654, Court of Common Pleas of Philadelphia County).

In the actions docketed at numbers 1887 and 3654, Roddy Shelton, Anthoneé Patterson

*(Continued....)*

On December 7, 2004, Patterson filed a motion to reinstate his action with the trial court.[6] On December 27, 2004, Kenneth Shelton filed an answer to the motion for reinstatement.[7] Thereafter, an order was entered on February 12, 2005 reinstating the action and removing the notation from the docket that the matter had been stricken on February 22, 1996.[8]

---

and Fincourt Shelton contested the validity of elections which were held in 1991 and 1992, and alleged, *inter alia*, that Kenneth Shelton and the Trustees violated the corporate bylaws, failed to provide proper notice of the meetings and elections, and illegally seized control by removing a trustee and forcibly expelling members of the congregation. In the action docketed at No. 0914, Kenneth Shelton and the Trustees sought to prevent Anthoneé Patterson and Fincourt Shelton from claiming control and interfering with the assets of the Church and the Corporation.

By order dated November 3, 2004, Judge Younge: (1) dismissed the action at number 3654 based on an agreement between all parties in that action to withdraw all claims and cross claims; (2) dismissed the action at number 1887 based on an agreement between the parties in that action to withdraw all claims and cross claims; and (3) dismissed the action at number 0914 because the plaintiff agreed to withdraw all claims if all other litigation was terminated.

[6] Patterson requested reinstatement on the basis that he had not received notice from the trial court scheduling the matter for conference, that through some unknown clerical error, the docket was noted that the matter was stricken on February 22, 1996, and that no notice of said action was afforded any party to the action.

[7] In his answer, Kenneth Shelton denied the material allegations of Patterson's motion to reinstate. In his new matter, Kenneth Shelton averred that Patterson's complaint in this action involved issues that were identical to the three consolidated actions at numbers 1887, 0914 and 3654 which had been disposed of by the trial court. Kenneth Shelton averred further that Patterson's counsel, by letter dated March 13, 1996 to the trial court, acknowledged: (1) that this action had been listed as a non-jury matter; (2) that the matter had been removed from the trial list on the ground that it had been assigned to Judge Sabo along with the three other related Church cases but was never consolidated or any action taken thereon; and (3) that the matter should be relisted but that as a practical matter, it would be best to await disposition of the three related equity actions currently on appeal to this Court. Therefore, Kenneth Shelton requested that the trial court denying Patterson's motion to reinstate based upon: (1) the doctrine of waiver and res judicata; (2) the doctrine of unclean hands because Patterson was attempting to have the trial court re-list a case based upon a misrepresentation of the record; and (3) the doctrine of laches because Patterson waited a period of 8 years to request reinstatement to the prejudice of Kenneth Shelton.

[8] This order was entered by Judge Mazer Moss.

On November 30, 2005, Erik Shelton was voluntarily dismissed by Patterson as a defendant and the matter proceeded solely against Kenneth Shelton. On that same date, Patterson and Kenneth Shelton agreed to proceed to binding arbitration with no right of appeal and the same was memorialized in a written order dated January 10, 2006. The January 10, 2006 order also stated that the case was dismissed from the trial court by agreement of both parties.   As such, the matter proceeded to arbitration.

The arbitrator rendered his initial decision in this matter on April 26, 2006. Therein, the arbitrator determined that Kenneth Shelton held *de facto* control over the Corporation and its property between October 13, 1991 until September 1992 when he was elected General Overseer and President.   The arbitrator determined that throughout the period of *de facto* control, Kenneth Shelton violated the bylaws and articles of the Corporation by accumulating pecuniary gain and profit by systematically reducing the Corporation's accounts and trusts as well as the regular Church collections, without making any regular reports regarding the misappropriation of funds. The arbitrator found further that no accounting has ever been given to the General Assembly since 1973.

Accordingly, the arbitrator determined that title to the Corporation's property rested with the faction who acted in harmony with the laws, usages and customs accepted by the body before the dispute and dissension arose.   The arbitrator found that Patterson was the one who acted in harmony with the laws, usages and customs accepted by the General Assembly before the dispute and dissension arose but that before any property could vest in Patterson's faction, an accounting of all funds removed from the Corporate Church's accounts or trusts by Kenneth Shelton and any persons acting in combination with him had to be undertaken within thirty days with full discovery to determine the amounts of

7

misappropriations.    The arbitrator further ordered counsel for both parties to undertake action to find a person or persons mutually satisfactory to act as receiver to take control of the property, accounts and records.  The arbitrator further ordered any elections for offices of General Overseer and President shall await the final results of the receiver's report and accounting.  Finally, the arbitrator ordered that any award requiring payment of funds to be paid by Kenneth Shelton and the members of the Board of Trustees under his administration shall await the results of the accounting of all funds described.

On May 8, 2006, the arbitrator issued a supplemental adjudication wherein he accepted Patterson's recommendation of GlassRatner Management and Realty Company (GlassRatner) to act as receiver commencing immediately. Therein, the arbitrator rejected Kenneth Shelton's attack on his April 26, 2006 decision on the basis that the Church was not named as a party in the initial complaint filed by Patterson and hence there is a 14th Amendment violation of taking property without due process.  The arbitrator determined that the attack was collateral and in violation of the parties' arbitration agreement.   The arbitrator stated that all procedural arguments including standing and failure to join an indispensable party were expressly waived prior to the commencement of the hearings before the arbitrator.  The arbitrator stated further that in any event even if the Corporation were added as a party defendant, the result would inevitably be the same as the corporate veil would be pierced since the arbitrator has found that failure to adhere to corporate formalities is a factor to be considered in determining to pierce the corporate veil as well as evidence of intermingling of corporate and personal affairs.    Thereafter, the arbitrator issued an order on May 8, 2006 appointing GlassRatner as receiver for the purpose of taking control of the assets of

the Church which are held by the Trustees of the Corporation and setting forth the receiver's powers.

By order entered May 10, 2006, the trial court confirmed the arbitrator's April 26, 2006 decision in favor of Patterson and against Kenneth Shelton and entered judgment in conformity therewith.   On May 12, 2006, judgment was entered on the binding arbitration in favor of Patterson and against Kenneth Shelton.  On May 19, 2006, the trial court vacated the order entered May 10, 2006 and directed Patterson to file a motion to confirm the award no later than May 27, 2006.

On May 26, 2006, Kenneth Shelton filed a petition to vacate the April 26, 2006 arbitration award. On June 5, 2006, Kenneth Shelton filed a supplemental petition to vacate the arbitrator's May 8, 2006 supplemental adjudication.  On June 6, 2006, Patterson filed an emergency petition to confirm the arbitration award. Answers to the various petitions/motions were filed.

By order dated July 10, 2006, the trial court denied Kenneth Shelton's petitions to vacate and confirmed the arbitration award pursuant to Section 7341 of the Judicial Code, 42 Pa.C.S. §7341, on the basis that the arbitration was binding with no right of appeal.  On July 20, 2006, judgment was entered in favor of Patterson and against Kenneth Shelton.

On July 13, 2006, Roddy Shelton filed a petition to intervene on the basis that according to the Church's/Corporation's customs, practices, bylaws, etc., he is the rightful successor as leader of the Church/Corporation as he is the rightful successor to Bishop S. McDowell Shelton and is the only party with "clean hands." By order of July 19, 2006, the trial court dismissed Roddy Shelton's petition to intervene as moot in light of the trial court's July 10, 2006 order.

9

On July 26, 2006, Kenneth Shelton appealed the trial court's July 10, 2006 order to the Superior Court which transferred the matter to this Court on September 22, 2006.[9]  Roddy Shelton appealed the trial court's July 19, 2006 order to this Court and the two appeals were consolidated for disposition by this Court.[10] We will first address Kenneth Shelton's appeal.

Kenneth Shelton contends that the trial court erred in confirming the arbitrator's award because the April 26, 2006 award was not final, the award is an irregularity that has led to an unconscionable result, and the arbitrator exceeded the scope of the arbitration by deciding doctrinal issues and by going beyond the 1991 to 1994 time period expressed in the complaint.

As recently stated by this Court in Jefferson Woodlands Partners, L.P. v. Jefferson Hills Borough, 881 A.2d 44, 48-49 (Pa. Cmwlth. 2005):

> Pursuant to Section 7341 [of the Judicial Code], 42 Pa. C.S. § 7341, common law arbitrations are "binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." An "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *Gargano v. Terminix Internat'l Co., L.P., 784 A.2d 188, 193 (Pa. Super. 2001).* It is well-settled that a

---

[9] On October 12, 2006, a praecipe to enter judgment in favor of Patterson and against the Trustees of the Corporation and the Church headed by Kenneth Shelton was filed with the trial court. On November 2, 2006, a motion to intervene was filed with the trial court by the Trustees. The motion to intervene was denied by order of November 17, 2006 and entered November 21, 2006. The trial court determined that the Trustees waited too long to request intervention. The Trustees appealed to this Court from that order on December 15, 2006, which is docketed in this Court at 2338 C.D. 2006.

[10] This matter is appealable as of right to the Commonwealth Court pursuant to our not-for-profit corporation jurisdiction under Section 762(a)(5) of the Judicial Code, 42 Pa. C.S. §762(a)(5).

common law arbitration award is not reviewable on the basis of an error of law or fact. *Borgia [v. Prudential Ins. Co., 561 Pa. [434,] 440, 750 A.2d [843,] 846 [(2000)]; Hade v. Nationwide Ins. Co., 519 Pa. 227, 546 A.2d 615 (1988).* Finally, an award may also be corrected if the arbitrator exceeds the scope of his authority. *Gargano; Ginther v. United States Fid. & Guar. Co., 632 A.2d 333 (Pa. Super. 1993). See also Sley Sys. Garages v. Transport Workers Union of America, 406 Pa. 370, 178 A.2d 560 (1962).*

With the foregoing in mind, our review of the arbitrator's April 26, 2006 decision in this matter leads us to the conclusion that the arbitrator clearly went beyond the scope of his authority. As stated previously herein, this action began in July 1995 when Patterson filed a complaint against Kenneth Shelton and Erik Shelton. Therein, Patterson challenged Kenneth Shelton's status as General Overseer and President of the Corporation and alleged, *inter alia*, that he was the rightful General Overseer and President of the Corporation and that despite this fact, Kenneth Shelton refused to relinquish control of the various accounts, trusts and properties of the Corporation. Patterson alleged further that Kenneth Shelton had taken *de facto* control of the Corporation and its property and had operated the same in total disregard of the interests of the members and requirements of law. Patterson also alleged that Kenneth Shelton failed to present an annual report of financial affairs and activities as required by Section 5553 of the Nonprofit Corporation Law, 15 Pa.C.S. §5553, for the years 1991 through 1994.

Therefore, Patterson requested certain relief pursuant to Section 5793(b) of the Nonprofit Corporation Law including the appointment of a receiver to take control of the property, accounts and records of the corporation, an order requiring Kenneth Shelton, or alternatively the receiver, to issue annual financial reports for the years 1991, 1992, 1993 and 1994, an accounting of all funds

11

removed from Corporate or Church accounts or trusts by Kenneth Shelton or others acting with him, an order confirming Patterson as General Overseer, and an order commanding that elections be held for such offices as the court finds to be vacant.

Also, as stated previously herein, after the action brought by Patterson was stricken by the calendar judge on February 22, 1996, Patterson filed a motion to reinstate his action on December 7, 2004. An order was entered on February 12, 2005 reinstating the action and removing the notation from the docket that the matter had been stricken. As the record reflects, the motion to reinstate and the grant of the same occurred well after this Court's determination by opinion and order dated April 10, 2001, which determined that Kenneth Shelton is the rightful General Overseer of the Church and President of the Corporation, and shortly after the trial court dismissed, based upon agreement of the parties, the three equity actions underlying our decision.

Accordingly, the only relief remaining that was obtainable, if Patterson prevailed, when this matter was reinstated was the relief he sought pursuant to Sections 5553 and 5793(b) of the Nonprofit Corporation Law. Specifically, the only relief available is an accounting of the Corporation's financial dealings for the years 1991, 1992, 1993 and 1994, and a determination as to whether Kenneth Shelton had misappropriated assets during that time period and an order requiring Kenneth Shelton to issue annual financial reports for the years 1991, 1992, 1993 and 1994.[11]   Therefore, when the trial court ordered, by agreement of the parties, that this matter be submitted to arbitration, the foregoing

---

[11] We note that Patterson's July 1, 2005 motion to file an amended complaint changing the scope of the relief sought to the time period 1991 to the present was denied by order entered

*(Continued....)*

were the only issues before the arbitrator. The remaining issues had already been settled between the initial filing of Patterson's action in July 1995 and the reinstatement of the same in February 2005.[12] However, in rendering a decision the arbitrator clearly went beyond this scope in more than one respect.

The arbitrator first exceeded the scope of the arbitration in his April 26, 2006 decision by going beyond the 1991 to 1994 time period. The arbitrator's decision clearly covers the time period 1991 to 1998. See Decision of Arbitrator dated April 26, 2006.

The arbitrator next exceeded the scope of the arbitration by deciding the issue of who should be in control of the Church's property. The arbitrator opined that because there was a division in the Church's congregation and a battle as to its property rights, it was his duty as a court of equity to determine in which faction title to the Church property rests. Id. at 15-16. The arbitrator found that the preponderance of the evidence was in favor of Patterson and determined that the property owned by the Church and the Corporation should vest in Patterson's minority faction because Patterson was able to show that he acted in harmony with the laws, usage and customs accepted by the General Assembly before the dispute and dissension arose. Id. at 16. To effectuate this "vesting", the arbitrator ordered that an accounting of all funds removed from the "Corporate Church's" accounts or trust by Kenneth Shelton or any persons acting in combination with him should

July 8, 2005.

[12] It is clear from the record in this matter that the trial court should have been aware, before it granted Patterson's motion for reinstatement, of the three related equity actions decided by Judge Younge determining that Kenneth Shelton was in rightful control as the General Overseer and President of the Corporation as of September 1992. See Certified Record, Petition/Motion Cover Sheet Accompanying Kenneth Shelton's Answer to Patterson's Motion to Reinstate Case to Trial List.

be undertaken with full discovery to determine the amounts of misappropriations within 30 days and that the parties undertake action to find a person or persons to act as a receiver to take control of the property, accounts and records. Id. The arbitrator further ordered that any elections for the offices of General Overseer and President of the Corporation await the final results of the receiver's report and accounting. Id.

By ordering the foregoing actions, the arbitrator clearly went beyond the scope of the arbitration, which was to determine whether Patterson was entitled to relief under the Nonprofit Corporation Law. In essence, the arbitrator ordered the removal of the control of the assets and property of the Corporation and the Church from the Trustees and Kenneth Shelton, as the rightful General Overseer and President of the Corporation, and placed the same into the hands of Patterson through the appointment of a receiver chosen by Patterson. This not only violates the Corporation's bylaws[13] but also does not comply with the Nonprofit Corporation Law.

---

[13] As pointed out by this Court in our April 10, 2001 decision, the Corporation's bylaws provide that the General Overseer, by virtue of the office, shall always be a Trustee and the President of the Board of Trustees and shall continue to hold these offices during his lifetime. The bylaws provide further that upon the death of the General Overseer, the General Assembly shall elect a successor. The "General Assembly" is the annual session of the Church congregation. Article I of the Bylaws. "Any session called by the General Overseer shall also be designated as a general assembly and shall have all the rights and powers and authority of the annual general assembly." Id. The bylaws further provide that the "quorum for the transaction of business before the General Assembly shall be fifty members voting before matters of the General Assembly." Article IV of the Bylaws. "A majority of those present and voting shall determine such matters of the General Assembly, except in the case of the election of officers, which is otherwise provided for here in these By-laws." Id.

In our April 10, 2001 decision we affirmed the trial court's finding that a valid meeting of the General Assembly was held in September 1992 at Apostolic Square. The testimony revealed that approximately 5,000 members were in attendance. We held that

(Continued....)

Section 5764 of The Nonprofit Corporation Law permits a member of a corporation to make an application to the court for the appointment of a custodian of a corporation on deadlock or other cause including if any of the conditions specified in Section 5981, which relates to proceedings upon petition of any member, exist with respect to the corporation.[14]   A review of Patterson's

according to the bylaws, this constituted a quorum for the transaction of business. A majority of those present and voting unanimously elected Kenneth Shelton as the General Overseer. We held that the trial court properly found that Kenneth Shelton, having been confirmed as General Overseer, automatically became President of the Corporation according to the bylaws. Based upon our review of the record, we determined that the trial court's findings were supported by substantial evidence and were not in violation of the law or corporate bylaws.

[14] Section 5764 provides in pertinent part as follows:

> (a) General Rule.-- The court, upon application of any member, may appoint one or more persons to be custodians of and for any nonprofit corporation when it is made to appear:

> (1) That at any meeting for the election of directors the members are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon the qualification of their successors; or

> (2) that any of the conditions specified in section 5981 (relating to proceedings upon petition of any member, etc.) exists with respect to the corporation.

15 Pa.C.S. §5764.

Section 5981 reads in pertinent part:

> The court may, upon petition filed by a member or director of a nonprofit corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation, when any of the following are made to appear:

> (1) That the objects of the corporation have wholly failed; or are entirely abandoned, or that their accomplishment is impracticable.

> (2) That the acts of the directors, or those in control of the corporation, are illegal, oppressive, or fraudulent, and that it is beneficial to the interests of the members that the corporation be wound up and dissolved.

*(Continued....)*

15

allegations contained in his complaint reveal that he is not requesting that a custodian/receiver be appointed for any of the reasons permitted in the Nonprofit Corporation Law.  The allegations of the complaint clearly show that Patterson is not seeking dissolution of the Corporation due to the alleged misapplication or wasting of the Corporation's assets/property but is only in fact seeking to replace Kenneth Shelton as General Overseer and take control himself of the Church and the Corporation.

This is evidenced further by the arbitrator's May 8, 2006 "Order to Appoint a Receiver" wherein the arbitrator states that "the evidence adduced during arbitration that [Patterson] representing the minority faction is entitled to the appointment of a receiver for the purpose of taking control of the assets of the Church of the Lord Jesus Christ which are held by the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., currently headed by [Kenneth Shelton]."  See May 8, 2006 Order.  The arbitrator in the May 8, 2006 order appointed GlassRatner, an entity chosen by Patterson, to act as receiver and to take control of all of the Church's and the Corporation's assets and property.  Id.  The arbitrator also ordered that, during the receiver's period of control of the "church property" and prior to returning the same to "Bishop Patterson", Kenneth Shelton and the Trustees were enjoined from, *inter alia*,

---

(3) That the corporate assets are being misapplied or wasted, and that it is beneficial to the interest of the members that the corporation be wound up and dissolved.

(4) That the directors or other body are deadlocked in the management of the corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.

15 Pa. C.S. §5981.

possessing or managing the property and from interfering in any way with possession or management of the property by the receiver. Id.

Accordingly, the arbitrator went well beyond the scope of his authority by deciding who was to be in control and possession of Church property and ordering that the assets of the Church/Corporation be first turned over to a receiver for an accounting prior to being returned to Patterson. Again, the arbitrator was only authorized to determine if Kenneth Shelton had misappropriated the Corporation's assets/funds and if so, whether Patterson was entitled to an accounting of the Corporation's assets for the time period 1991 to 1994. As such, the trial court erred by confirming the arbitrator's April 26, 2006 and May 8, 2006 decisions and orders.

Therefore, the trial court's July 10, 2006 order denying Kenneth Shelton's petition and supplemental petition to vacate and confirming the arbitrator's award is reversed. In addition, this matter is remanded to the trial court with instructions to vacate the arbitrator's April 26, 2006 decision and any decisions rendered by the arbitrator after that date and for the trial court to conduct the proper proceedings consistent with this opinion to determine whether Patterson is entitled to relief pursuant to Sections 5553 and 5793(b) of the Pennsylvania Nonprofit Corporation Law as alleged in his complaint filed July 24, 1995.

We now turn to Roddy J. Shelton's appeal from the July 19, 2006 order of the trial court denying his petition to intervene as moot in light of the trial court's July 10, 2006 order confirming the arbitration award.[15] The gist of Roddy

---

[15] The Pennsylvania Rules of Civil Procedure which apply to interventions are set forth at Pa.R.C.P. Nos. 2326-2350. One wishing to intervene is required to file a petition to intervene, "setting forth the ground on which intervention is sought and a statement of relief or defense which the petitioner desires to demand or assert." Pa.R.C.P. No. 2328. Whether or not to grant a

*(Continued....)*

Shelton's argument that the trial court erroneously denied his petition to intervene is based on his position that he is the rightful General Overseer and President. Notwithstanding the fact that this issue was finally decided by this Court on April 10, 2001 as set forth above, the trial court did not abuse its discretion by denying the petition to intervene. Bishop Roddy J. Shelton did not seek to intervene in this matter until July 13, 2006, which was more than a  year after Patterson's action was reinstated by the trial court and three days after the trial court issued its order confirming the arbitration award. Accordingly, the trial court's July 19, 2006 order is affirmed.

JAMES R. KELLEY, Senior Judge

---

petition is within the discretion of the trial court.  Stanbro v. Zoning Hearing Board of Cranberry Township, 566 A.2d 1285 (Pa. Cmwlth. 1989), petition for allowance of appeal denied, 526 Pa. 644, 584 A.2d 325 (1990).

Jan. 31. 2008 10:34AM    Commonwealth Court of PA                Jan 31 2008 10:32    No. 4241    P. 20/21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthoneé J. Patterson | : | |
| v. | : | No. 1967 C.D. 2006 |
| Kenneth Shelton, | : | |
| Appellant | : | |
| Anthonee Patterson | : | |
| v. | : | No. 1968 C.D. 2006 |
| Kenneth Shelton | : | |
| Appeal of: Bishop Roddy | : | |
| J. Shelton, II | : | |

## O R D E R

AND NOW, this 31st day of January, 2008, it is hereby ordered as follows:

1. The order of the Court of Common Pleas of Philadelphia County, at No. 2945 July Term, 1995, dated July 19, 2006, denying the petition to intervene filed by Bishop Roddy J. Shelton, II, is affirmed.

2. The order of the Court of Common Pleas of Philadelphia County, at No. 2945 July Term, 1995, dated July 10, 2006, vacating Kenneth Shelton's petition and supplemental petition to vacate and confirming the arbitration award, is reversed.

3. This matter is remanded with instructions to vacate the arbitrator's April 26, 2006 award/decision and any decisions rendered by the arbitrator after

that date and for the trial court to conduct the proper proceedings consistent with the foregoing opinion to determine whether Anthoneé J. Patterson is entitled to relief pursuant to the Pennsylvania Nonprofit Corporation Law.

      4. Jurisdiction relinquished.

_____

JAMES R. KELLEY, Senior Judge

**EXHIBIT M**

FILED
29 JAN 2018 10:46 am
Civil Administration
E. HAURIN

| | |
|---|---|
| ANTHONEÉ PATTERSON | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| v. | |
| | JULY TERM, 1995 |
| KENNETH SHELTON | No. 2945 |

## ORDER

AND NOW, this <u>29th</u> day of <u>January</u>, 2018, it is hereby ORDERED that

the Emergency Motion of Defendant, Kenneth Shelton, to Set Aside the Writ of Possession

Entered on January 23, 2018 as improvidently granted, and for Stay of Execution Proceedings is

GRANTED in part.

It is FURTHER ORDERED that execution of the judg ment entered on July 20, 2006 in

the above-captioned matter is hereby STAYED until further Order of the Court.  Plaintiff shall

not engage in execution proceedings, discovery in aid of execution, and/or other proceedings

related to execution, whether within this County or without, until further order of Court.

BY THE COURT:

_____, J.

Case ID: 950702945
Control No.: 18013296

STRADLEY, RONON, STEVENS & YOUNG, LLP
By:    Danielle Banks (I.D. No. 70607)
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8000

FOX ROTHSCHILD LLP
By:    Michael K. Twersky (I.D. No. 80568)
2000 Market Street, 20th Floor
Philadelphia, PA  19103-7098
(215) 299-2000

*Attorneys for Defendant,*
*Kenneth Shelton*

Filed and Attested by the
Office of Judicial Records
08 NOV 2017 05:02 pm
B. MARTIN

*Attorneys for Defendant,*
*Trustees of the General Assembly of*
*the Church of the Lord Jesus Christ of*
*the Apostolic Faith, Inc.*

---

| | |
|---|---|
| ANTHONEÉ PATTERSON | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| v. | JULY TERM, 1995 |
| KENNETH SHELTON | No. 2945 |

---

## PRELIMINARY OBJECTIONS OF DEFENDANTS, KENNETH SHELTON AND THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., TO PLAINTIFF'S PRAECIPE FOR WRIT OF REVIVAL

Defendants, Kenneth Shelton ("Shelton") and the Trustees of the General

Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church

Corporation"), by and through their attorneys, hereby submit these preliminary objections to the

Praecipe for Writ of Revival of Plaintiff, Anthoneé Patterson ("Patterson"), pursuant to

Pennsylvania Rules of Civil Procedure 1028 and 3030, and Philadelphia County Civil Court Rule

1028(c).  In support, Defendants state the following:

### I.    INTRODUCTION

      1.    Patterson is once again attempting to enforce a 2006 judgment that is a

legal nullity.  Patterson's Praecipe for Writ of Revival (the "Praecipe") is yet another of

Patterson's misguided and frivolous attempts to resurrect litigation that this Court—and the

Commonwealth Court—already has determined is without jurisdiction to hear and that consequently was dismissed, with prejudice, on December 18, 2015.

2.      Even though Patterson has exhausted all appeals of that decision, he has since filed dozens of vexatious and harassing motions and other filings,[1] in a relentless campaign of abusive and bad-faith litigation maneuvers directed at confirming or enforcing the vacated and nullified arbitration award and the nullified judgment predicated upon it.

3.      This Praecipe is only the latest gambit in Patterson's ceaseless effort to prolong court proceedings that should have terminated (and in this case *did* terminate) many years ago.  Apropos of the instant filing, there is even an appeal currently pending in the Commonwealth Court from *this docket*, where Patterson filed a frivolous motion and appeal raising all of the same nonsensical arguments he does with this Praecipe, trying to resurrect the underlying vacated arbitration award and nullified judgment.

---

[1] Since early 2016—and while Patterson pursued an appeal of the Commonwealth Court's Order dismissing this litigation for lack of subject matter jurisdiction—Patterson has forced Defendants to respond to frivolous attempts to enforce the vacated, nullified judgment in Maryland, Florida, New Jersey, and now again in Pennsylvania.  In addition, as explained *infra*, Patterson filed a motion on this closed docket in a bad-faith attempt to revive this litigation, and has since improperly appealed the denial of that motion to the Commonwealth Court.  In September 2016, Patterson also unsuccessfully filed a petition to confirm the vacated arbitration award on a closed docket in the United States District Court for the Eastern District of Pennsylvania—more than *nine years* after the statute of limitations for doing so had expired and notwithstanding the fact that there is no judgment to enforce and despite the fact that a 2008 ruling by the United States Court of Appeals for the Third Circuit that the Eastern District of Pennsylvania lacked diversity jurisdiction over the petition.  (The Eastern District of Pennsylvania, per Judge Slomsky, dismissed Patterson's petition.)  No court ruling in any jurisdiction seems to dissuade or deter Patterson, and all of these frivolous filings necessitated countless responses from Shelton, continuously incurring unnecessary legal fees, which adversely impacts Defendants' religious mission.  Consequently, in addition to the sanctions requested herein, Defendants are preparing a complaint for abuse of process and other causes of action against Patterson arising from his outrageous litigation conduct.

Case ID: 950702945
Control No : 17111198

4.      Here, once again, Patterson asks this Court to invalidate the Commonwealth Court's Orders and revive the arbitration award and judgment—something the Court obviously cannot do.

5.      Patterson's Praecipe should therefore be dismissed for several reasons.

6.      <u>First</u>, Patterson exhausted his appeals seeking to overturn the Commonwealth Court's rulings that the arbitration award is vacated and that the Pennsylvania Courts are without subject matter jurisdiction to hear this dispute.  Both rulings render the underlying arbitration award and judgment legal nullities.  Thus, Patterson's Praecipe should be dismissed as legally invalid and barred by *res judicata*.  <u>See</u> Pa.R.C.P. 1028(a)(4).

7.      <u>Second</u>, the Praecipe should be dismissed because the Court lacks subject matter jurisdiction to grant it, as the Commonwealth Court has already ruled in a decision this Court is bound to follow.  <u>See</u> Pa.R.C.P. 1028(a)(1).

8.      <u>Third</u>, and finally, because this matter is currently the subject of Patterson's groundless appeal to the Commonwealth Court, the Court should dismiss Patterson's Praecipe due to the pending prior action, which also deprives this Court of jurisdiction while the appeal is pending (regardless of how frivolous the appeal).  <u>See</u> Pa.R.C.P. 1028(a)(6); <u>see also</u> Pa.R.A.P. 1701.

9.      Accordingly, the Court should sustain Defendants' preliminary objections for any or all of these reasons.  Defendants should further be awarded sanctions in the form of the legal fees they incurred for responding to Patterson's frivolous and vexatious Praecipe, pursuant to Pa. C.S.A. § 2503(7) and Pa.R.C.P. 1023.3.

Case ID: 950702945
Control No · 17111198

## II.   **FACTS**

10.     On or about July 17, 1995, Patterson filed a Civil Complaint (the "Complaint") in the Court of Common Pleas of Philadelphia County against Bishop Kenneth Shelton and Erik Shelton.  Both defendants were officers of the Church Corporation.[2]

*Procedural History – Arbitration and Appeals*

11.     After a long and labyrinthine procedural history, Patterson obtained an arbitration adjudication  (the "Arbitration Adjudication") that ultimately was vacated by the Commonwealth Court because it was *ultra vires*.  See Patterson v. Shelton, Nos. 1967 C.D. 2006, 1968 C.D. 2006, 2008 WL 9401359 (Pa. Super. Ct. Jan. 31, 2008), appeal denied by 963 A.2d 471 (Pa. 2008).  A copy of the Commonwealth Court's January 31, 2008, Opinion and Order is attached as **Exhibit 1**.[3]  Patterson requested review of that Order by the Pennsylvania Supreme Court, and his request was denied.  See Patterson v. Shelton, 963 A.2d 471 (Pa. 2008).

12.     In its Opinion and Order dated January 31, 2008, the Commonwealth Court held that the arbitrator who issued the underlying adjudication had "exceeded the scope of arbitration by deciding the issue of who should be in control of the Church's property," which is precisely the flawed premise on which Patterson is attempting to revive the nullified Arbitration Award here.  (Ex. 1 at *6.)  The Commonwealth Court's Opinion and Order dated January 31, 2008 also specifically vacated the arbitration adjudication and all related orders and remanded the matter to the Court of Common Pleas for trial.  (See id. at *8.)

---

[2]   Co-Defendant Erik Shelton was voluntarily dismissed from this case by Patterson on November 30, 2005.

[3]   The Commonwealth Court likewise vacated the Arbitration Adjudication against the Church Corporation as *ultra vires*.  A copy of the Commonwealth Court's  January 31, 2008 Opinion and Order is attached as **Exhibit 2**.

Case ID: 950702945
Control No : 17111198

### Procedural History – Trial After Remand

13.     On remand, Patterson tried his claims before this Court in July 2014.[4]  The

Court dismissed Patterson's case *with prejudice*.  Specifically, the Honorable Alice Beck Dubow

issued an Order and Memorandum Opinion on November 10, 2014, holding that the Court

lacked subject matter jurisdiction because the First Amendment bars courts from interfering with

the internal affairs of the church under the "Deference Rule."

14.     On December 18, 2015, the Commonwealth Court affirmed this Court's

Order dated November 10, 2014, that the Court lacked jurisdiction over this matter.  A copy of

the Commonwealth Court's Opinion and Order, Patterson v. Shelton, No. 2147 C.D. 2014, 2015

WL 9260536 (Pa. Commw. Ct. Dec. 18, 2015), is attached as **Exhibit 3**.

15.     In its Opinion and Order, the Commonwealth Court adopted in full Judge

Dubow's Memorandum Opinion and Order dismissing Plaintiff's complaint.  (See id. at *7

("The issue of subject matter jurisdiction was raised and argued before the trial court and ably

disposed of in the opinion of the Honorable Alice Beck Dubow . . . Therefore, this Court shall

affirm on the basis of Judge Dubow's opinion.").)

16.     As the Commonwealth observed, Judge Dubow had held, correctly, that

the Deference Rule precluded the Court from retaining jurisdiction over the remanded case

because the Court of Common Pleas "could not adjudicate the issues . . . by applying neutral

principles of law." (Id. at *9.)  More specifically, Judge Dubow ruled—and the Commonwealth

Court agreed—that the Court could not "evaluate the evidence without intruding into the sacred

precincts of the Church . . . ." and found it lacked subject matter jurisdiction as a result.  (Id. at

*11 (internal quotation marks and citation omitted).)

---

[4]     Significantly, the Church Corporation was not a party to the July, 2014 trial.  Defendant
Shelton was the sole defendant in that case.

Case ID: 950702945
Control No : 17111198

17.     Patterson subsequently filed an unsuccessful Petition for Allowance of Appeal to the Pennsylvania Supreme Court.  A true and correct copy of the Pennsylvania Supreme Court's Order dated April 16, 2016 denying Patterson's appeal is attached as **Exhibit 4**. Patterson next filed a Petition for a Writ of Certiorari ("Cert. Petition") with the Supreme Court of the United States on July 26, 2016.  The U.S. Supreme Court also refused to hear Patterson's appeal, denying his Cert. Petition.  A copy of the U.S. Supreme Court's October 11, 2016 Order denying certiorari is attached as **Exhibit 5**.

### *Procedural History – Patterson's Instant Praecipe for Writ of Revival*

18.     The denials of review by the Pennsylvania Supreme Court and the United States Supreme Court, respectively, should have ended the matter for Patterson in the Pennsylvania Courts.

19.     Undeterred, and solely for the purpose of continuing to vex and harass Shelton and the Church Corporation, on May 27, 2016, Patterson filed a motion on *this closed docket*, styled "Motion to Determine Certain Orders Void Based on the Lack of Subject Matter Jurisdiction" (the "Motion").  Ruling that it was utterly meritless, the Honorable Idee C. Fox denied the Motion on July 14, 2016, and filed her Opinion on October 6, 2016.  A copy of Patterson's Motion and a copy of Judge Fox's Order and Opinion denying Patterson's Motion are attached as **Exhibit 6** and **Exhibit 7**, respectively.

20.     Patterson then appealed the denial of his Motion to the Commonwealth Court.  A copy of Patterson's Notice of Appeal is attached as **Exhibit 8**.  That appeal is still pending.  A copy of the Commonwealth Court docket as of November 8, 2017, is attached as **Exhibit 9**.

Case ID: 950702945

21.     Despite the foregoing, with full knowledge that the Arbitration Award cannot be recognized by any court, and solely for the purpose of harassing Shelton, on October 19, 2017, Patterson improperly filed the instant Praecipe, purporting to revive the same unenforceable, non-existent judgment based on a vacated, nullified Arbitration Award that is the subject of his current appeal in the Commonwealth Court.

22.     At the same time, Defendants file these preliminary objections in response to Patterson's Praecipe, pursuant to Rules 1028(a) and 3030 of the Pennsylvania Rules of Civil Procedure.

## III.   **PRELIMINARY OBJECTIONS**

### A.   **Demurrer as to Plaintiff's Praecipe as Legally Insufficient (Pursuant to Pa.R.Civ.P. 1028(a)(4))**

#### 1.   **This matter is over.**

23.     "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible." Bayada Nurses, Inc. v. Commw. Dep't of Labor & Indus., 8 A.3d 866, 871 n.4 (Pa. 2010) (citing MacElree v. Phila. Newspapers, Inc., 674 A.2d 1050, 1054 (Pa. 1996)).

24.     That standard is satisfied easily here, because Patterson has already litigated the validity of the arbitration award on which the judgment is based, including multiple exhausted appeals—and he has lost at every turn.

25.     Patterson appealed the Commonwealth Court's Order vacating the Arbitration Award to the Pennsylvania Supreme Court, and the Court denied the appeal.  See Patterson v. Shelton, 963 A.2d 471 (Pa. 2008).  The Commonwealth Court's decision is therefore controlling as to the validity of the Arbitration Award.  See Rosenblum v. Port Auth. of Allegheny Cnty., 560 A.2d 912, 913 (Pa. Commw. Ct. 1989) (explaining that Commonwealth

Case ID: 950702945
Control No : 17111198

Court decisions "continue[] as controlling authority unless and until the Supreme Court reverses it").

26.     Then, during the trial ordered by the Commonwealth Court, Shelton moved to dismiss for lack of subject matter jurisdiction because *any* court ruling in this matter would violate the First Amendment.  As explained above, this Court granted Shelton's motion to dismiss, and the Commonwealth Court affirmed the order dismissing the case with prejudice. (See Ex. 3.)

27.     Patterson likewise appealed the Commonwealth Court's Order affirming that the Deference Rule bars this Court's jurisdiction over this matter, and the Pennsylvania Supreme Court again denied the appeal.  (See Ex. 4.)  Patterson then appealed *that* ruling to the Supreme Court of the United States, which denied certiorari.  (See Ex. 5.)

28.     Now, Patterson again attempts to revive the *ultra vires* Arbitration Adjudication and nullified judgment, which necessarily requires this Court to invalidate the Commonwealth Court's Orders vacating the Arbitration Adjudication and dismissing the Complaint with prejudice based on a lack of subject matter jurisdiction.

29.     Patterson's current effort to subvert these final and binding decisions is barred by *res judicata*.  "Broadly stated, the rule of *res judicata* is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court."  In re Wallace's Estate, 174 A. 397, 399 (Pa. 1934).

Case ID: 950702945
Control No : 17111198

30. Because the parties litigated the merits of whether the Arbitration Award was *ultra vires* and the Commonwealth Court ruled that it was, that determination is "final and conclusive as between the parties to the suit." Accordingly, *res judicata* bars Patterson's Praecipe on this point.

31. In like fashion, because the parties litigated the merits of whether the Pennsylvania Courts have subject matter jurisdiction, the Commonwealth Court affirmed that it does not, and Patterson has exhausted his appeals on that issue, the Commonwealth Court's ruling is also "final and conclusive," and Patterson's Praecipe is barred on this issue as well. Consequently, Defendants' preliminary objections in nature of demurrer pursuant to Pa. R.C.P. 1028(a)(4) should be sustained.

### 2. This Court cannot invalidate a Commonwealth Court Order and revive a nullified judgment.

32. More fundamentally, Patterson's Praecipe for Writ of Revival requests relief that this Court has no authority to grant.

33. Specifically, Patterson is seeking to revive a nullified judgment predicated on a vacated Arbitration Award in a closed case, which requires this Court to invalidate the Orders from the Commonwealth Court that (1) the arbitration award is *ultra vires* and (2) the Pennsylvania Courts have no subject matter jurisdiction over this matter. It is difficult to imagine a more astonishing and baseless request.

34. Indeed, just as he did with his Motion, Patterson once again asks this Court to ignore perhaps *the* most foundational and basic aspect of the both the United States and Pennsylvania legal systems: appellate court orders are binding upon a trial court. See, e.g., U.S. Const. art. III sec. 1; Pa. Const. art. V sec. 1; 28 U.S.C. §§ 1254, 1257, 1291–92; *About Federal Courts, Court Role & Structure*, US Courts.gov, http://www.uscourts.gov/about-federal-

courts/court-role-and-structure (last visited October 31, 2017); *Learn About the Judicial System*, The Unified Judicial System of Pennsylvania, http://www.pacourts.us/learn (last visited October 31, 2017). To suggest otherwise is simply frivolous.

**B.    Demurrer as to Plaintiff's Praecipe as Lacking Subject Matter Jurisdiction (Pursuant to Pa.R.Civ.P. 1028(a)(1))**

35.    Additionally, the fundamental illogic and self-contradiction of Patterson's Praecipe are fatal to the relief he seeks: a court cannot act without jurisdiction, yet Patterson asks this Court to rule on his Praecipe while explicitly asserting that it is without jurisdiction to do so. Shelton's preliminary objections should therefore also be sustained for lack of subject matter jurisdiction. See Pa.R.C.P. 1028(a)(1).

36.    When a court acts without jurisdiction, "its judgments and orders are regarded as nullities." (Letter attached to Patterson's Praecipe at 2 (quoting Elliot v. Piersol, 26 U.S. 328, 340 (1828)[5].) Patterson repeatedly acknowledges this basic legal truth throughout the letter attached to his Praecipe, quoting liberally from Superior Court cases explaining that "[w]here a court lacks jurisdiction in any case, any judgment regarding the case is void" and "[a]ll proceedings founded on the void judgment are themselves regarded as invalid and ineffective for any purpose." (Id. at 2–3 (quoting Rieser v. Glukowsky, 646 A.2d 1221, 1224 (Pa. Super. Ct. 1994) and First Seneca Bank v. Greenville Dist. Co., 533 A.2d 157, 162 (Pa. Super. Ct. 1987), respectively).)

37.    Despite acknowledging these principles, in a farcical attempt to avoid their obvious and necessary consequence, Patterson brazenly asserts that "[t]he finding of a lack of

---

[5]    For some reason, Patterson's letter attached to his Praecipe is addressed to Magistrate Judge Schneider of the United States District Court for the District of New Jersey and is styled as an "Expedited Motion to Remand to Superior Court." Because the letter accompanies Patterson's Praecipe, however, Defendants assume that it is meant to support the Praecipe in this Court, and addresses its frivolous arguments out of an abundance of caution.

subject matter jurisdiction by the courts effectively renders <u>void</u> all judicial orders/decisions *other than the statutory confirmations and entries of judgment on the binding common law arbitration award.*" (<u>Id.</u> at 2 (emphasis added).)

38.     Patterson has never explained, in the dozens of times he has unsuccessfully raised this nonsensical argument, how a finding of no jurisdiction—rendering all previous judgments and decisions a nullity—somehow leaves in place a judgment confirming an arbitration award, even though that award was previously vacated as *ultra vires*. The fallacy of Patterson's position is glaring.

39.     Indeed, Patterson knows full well that the language he quotes from <u>Elliot</u>, <u>Rieser</u>, and <u>First Seneca Bank</u> does not permit him to pick and choose which court might or might not have subject matter jurisdiction and which void orders a court can reinstate. On the contrary, the authority Patterson cites *precludes* the relief he seeks, because all of those decisions state plainly that *each and every* action taken by the Pennsylvania courts without jurisdiction are void. Judge Fox ably explained all of these points in her opinion denying Patterson's Motion. (<u>See</u> Ex. 7 at 4–6.)

40.     Thus, the only reasonable interpretation of Patterson's Praecipe is that he filed it in bad faith and solely for the purpose of harassing Defendants. Patterson's conduct in this regard warrants not only dismissal of his Praecipe, but also the imposition of sanctions against him. <u>See</u> Pa. C.S.A. § 2503(7); <u>see also</u> Pa.R.C.P. 1023.3.

**C.     Demurrer as to Plaintiff's Praecipe because of a Prior Pending Action (Pursuant to Pa.R.Civ.P. 1028(a)(6)**

41.     Finally, Patterson's Praecipe should be dismissed because of the appeal in this matter that is already pending before the Commonwealth Court. <u>See</u> Pa.R.A.P. 1701(a)

Case ID: 950702945

("Except as otherwise prescribed by these rules, after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter.")

42.    The Court must sustain preliminary objections when there is a prior action pending. See Pa.R.C.P. 1028(a)(6). "In order to plead successfully the defense of *lis pendens, i.e.,* the pendency of a prior action, it must be shown that the prior case is the same, the parties are the same, and the relief requested is the same." Crutchfield v. Eaton Corp., 806 A.2d 1259, 1262 (Pa. Super. Ct. 2002).

43.    All of these conditions are met here. As explained above, on May 27, 2016, Patterson improperly filed a motion on *this* _closed_ *docket* (which necessarily satisfies the conditions that the prior case and parties be the same), styled "Motion to Determine Certain Orders Void Based on the Lack of Subject Matter Jurisdiction." (See Ex. 6.)

44.    In that Motion, Patterson requested relief identical to that which he again seeks in the instant Praecipe—revival of a vacated, nullified arbitration award and judgment—and relied on the exact same frivolous, misguided arguments. (See id. at ¶¶ 21–24.) Judge Fox properly denied Patterson's frivolous Motion (see Ex. 7.), and Patterson appealed. (See Ex. 8.) That appeal, while improper, is currently pending in the Commonwealth Court. (See Ex. 9.)

45.    Accordingly, all of the *lis pendens* conditions are met here, and Patterson's Praecipe should be dismissed because it is identical to a pending prior action, pursuant to Pa.R.C.P. 1028(a)(6).[6]

---

[6]    In addition, Patterson's Praecipe is procedurally deficient for a number of reasons, separate and apart from the fact that this case has already been litigated to finality and conclusively decided. Patterson's prior attorney, Fincourt B. Shelton, Esquire, was suspended from the practice of law in Pennsylvania for four years on October 20, 2016. Patterson filed the Praecipe *pro se*, having neither advised the Court of the status of his counsel nor entered his *pro se* appearance. Moreover, despite being fully aware that Shelton is represented by counsel, Patterson served *Defendants*, and not their counsel, with the Praecipe, in violation of

Case ID: 950702945
Control No : 17111198

WHEREFORE, Defendants respectfully request that the Court sustain their preliminary objections and enter an order dismissing Plaintiff Anthoneé Patterson's Praecipe for Writ of Revival with prejudice; awarding sanctions in the form of attorneys' fees incurred in responding to this filing, pursuant to Pa. C.S.A. § 2503(7) and Pa.R.C.P. 1023.3; and awarding any and all other sanctions and other relief the Court deems appropriate.

Respectfully submitted,

*/s/ Danielle Banks*
Danielle Banks
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendant,
Kenneth Shelton

*/s/ Michael K. Twersky*
Michael K. Twersky
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Fax: (212) 299-2150
mtwersky@foxrothschild.com

Attorneys for Defendant,
Trustees of the General Assembly of the Church of
the Lord Jesus Christ of the Apostolic Faith, Inc.

---

Pa.R.C.P. 440(a)(1).  Finally, the Praecipe purports to revive a judgment against the Church Corporation, which is not a party to this litigation.  Nevertheless, out of an abundance of caution, the Church Corporation also preliminarily objects to Patterson's groundless Praecipe.

# 3383327

Case ID: 950702945
Control No : 17111198

STRADLEY, RONON, STEVENS & YOUNG, LLP
By:    Danielle Banks
2600 One Commerce Square
Philadelphia, PA   19103-7098
(215) 564-8000

FOX ROTHSCHILD LLP
By:    Michael K. Twersky
2000 Market Street, 20th Floor
Philadelphia, PA   19103-7098
(215) 299-2000

*Attorneys for Defendant,*
*Kenneth Shelton*

Filed and Attested by the
Office of Judicial Records
08 NOV 2017 05:02 pm
B. MARTIN

*Attorneys for Defendant,*
*Trustees of the General Assembly of*
*the Church of the Lord Jesus Christ of*
*the Apostolic Faith, Inc.*

| | | |
|---|---|---|
| ANTHONEÉ PATTERSON | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| v. | : | |
| | : | JULY TERM, 1995 |
| KENNETH SHELTON | : | No. 2945 |

**MEMORANDUM OF LAW OF DEFENDANTS, KENNETH SHELTON AND THE
TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD
JESUS CHRIST OF THE APOSTOLIC FAITH, INC.,
IN SUPPORT OF THEIR PRELIMINARY OBJECTIONS
TO PLAINTIFF'S PRAECIPE FOR WRIT OF REVIVAL**

Defendants, Kenneth Shelton ("Shelton") and the Trustees of the General

Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church

Corporation"), by and through their attorneys, hereby submit this Memorandum of Law in

support of their Preliminary Objections to the Praecipe for Writ of Revival of Plaintiff, Anthoneé

Patterson ("Patterson"), pursuant to Pennsylvania Rules of Civil Procedure 1028 and 3030, and

Philadelphia County Civil Court Rule 1028(c).  In support, Defendants state the following:

1.    **MATTER BEFORE THE COURT**

Before the Court are Defendants' Preliminary Objections to Patterson's Praecipe

for Writ of Revival.  Patterson is once again attempting to enforce a 2006 judgment that is a legal

nullity.  Patterson's Praecipe for Writ of Revival (the "Praecipe") is yet another of Patterson's

misguided and frivolous attempts to resurrect litigation that this Court—and the Commonwealth Court—already has determined is without jurisdiction to hear and that consequently was dismissed, with prejudice, on December 18, 2015. Even though Patterson has exhausted all appeals of that decision, he has since filed dozens of vexatious and harassing motions and other filings,[1] in a relentless campaign of abusive and bad-faith litigation maneuvers directed at confirming or enforcing the vacated and nullified arbitration award and the nullified judgment predicated upon it. This Praecipe is only the latest gambit in Patterson's ceaseless effort to prolong court proceedings that should have terminated (and in this case *did* terminate) many years ago. Apropos of the instant filing, there is even an appeal currently pending in the Commonwealth Court from *this docket*, where Patterson filed a frivolous motion and appeal raising all of the same nonsensical arguments he does with this Praecipe, trying to resurrect the underlying vacated arbitration award and nullified judgment. Here, once again, Patterson asks this Court to invalidate the Commonwealth Court's Orders and revive the arbitration award and judgment—something the Court obviously cannot do.

---

[1] Since early 2016—and while Patterson pursued an appeal of the Commonwealth Court's Order dismissing this litigation for lack of subject matter jurisdiction—Patterson has forced Defendants to respond to frivolous attempts to enforce the vacated, nullified judgment in Maryland, Florida, New Jersey, and now again in Pennsylvania. In addition, as explained *infra*, Patterson filed a motion on this closed docket in a bad-faith attempt to revive this litigation, and has since improperly appealed the denial of that motion to the Commonwealth Court. In September 2016, Patterson also unsuccessfully filed a petition to confirm the vacated arbitration award on a closed docket in the United States District Court for the Eastern District of Pennsylvania—more than *nine years* after the statute of limitations for doing so had expired and notwithstanding the fact that there is no judgment to enforce and despite the fact that a 2008 ruling by the United States Court of Appeals for the Third Circuit that the Eastern District of Pennsylvania lacked diversity jurisdiction over the petition. (The Eastern District of Pennsylvania, per Judge Slomsky, dismissed Patterson's petition.) No court ruling in any jurisdiction seems to dissuade or deter Patterson, and all of these frivolous filings necessitated countless responses from Shelton, continuously incurring unnecessary legal fees, which adversely impacts Defendants' religious mission. Consequently, in addition to the sanctions requested herein, Defendants are preparing a complaint for abuse of process and other causes of action against Patterson arising from his outrageous litigation conduct.

Patterson's Praecipe should therefore be dismissed for several reasons. First, Patterson exhausted his appeals seeking to overturn the Commonwealth Court's rulings that the arbitration award is vacated and that the Pennsylvania Courts are without subject matter jurisdiction to hear this dispute. Both rulings render the underlying arbitration award and judgment legal nullities. Thus, Patterson's Praecipe should be dismissed as legally invalid and barred by *res judicata*. See Pa.R.C.P. 1028(a)(4). Second, the Praecipe should be dismissed because the Court lacks subject matter jurisdiction to grant it, as the Commonwealth Court has already ruled in a decision this Court is bound to follow. See Pa.R.C.P. 1028(a)(1). Third, and finally, because this matter is currently the subject of Patterson's groundless appeal to the Commonwealth Court, the Court should dismiss Patterson's Praecipe due to the pending prior action, which also deprives this Court of jurisdiction while the appeal is pending (regardless of how frivolous the appeal). See Pa.R.C.P. 1028(a)(6); see also Pa.R.A.P. 1701. Accordingly, the Court should sustain Defendants' preliminary objections for any or all of these reasons. Defendants should further be awarded sanctions in the form of the legal fees they incurred for responding to Patterson's frivolous and vexatious Praecipe, pursuant to Pa. C.S.A. § 2503(7) and Pa.R.C.P. 1023.3.

2. **QUESTIONS INVOLVED**

    a.    Should the Court dismiss Patterson's Praecipe as legally insufficient and under the principles of *res judicata*?

        *Suggested Answer: Yes.*

    b.    Should the Court dismiss Patterson's Praecipe because the Commonwealth Court has already ruled that the Pennsylvania Courts lack subject matter jurisdiction over this matter?

        *Suggested Answer: Yes.*

c.      Should the Court dismiss Patterson's Praecipe because Patterson's appeal is

pending before the Commonwealth Court, and it concerns (i) the same parties, (ii) the same

litigation, and (iii) the same claims—namely, the enforceability of the underlying arbitration

award and judgment due to the Court's lack of subject matter jurisdiction over this litigation?

*Suggested Answer:  Yes.*

## 3.      FACTS

On or about July 17, 1995, Patterson filed a Civil Complaint (the "Complaint") in

the Court of Common Pleas of Philadelphia County against Bishop Kenneth Shelton and Erik

Shelton.  Both defendants were officers of the Church Corporation.[2]

### *Procedural History – Arbitration and Appeals*

After a long and labyrinthine procedural history, Patterson obtained an arbitration

adjudication  (the "Arbitration Adjudication") that ultimately was vacated by the Commonwealth

Court because it was *ultra vires*.  See Patterson v. Shelton, Nos. 1967 C.D. 2006, 1968 C.D.

2006, 2008 WL 9401359 (Pa. Super. Ct. Jan. 31, 2008), appeal denied by 963 A.2d 471 (Pa.

2008).  A copy of the Commonwealth Court's January 31, 2008, Opinion and Order is attached

to Defendants' Preliminary Objections as **Exhibit 1**.[3]  Patterson requested review of that Order

by the Pennsylvania Supreme Court, and his request was denied.  See Patterson v. Shelton, 963

A.2d 471 (Pa. 2008).

In its Opinion and Order dated January 31, 2008, the Commonwealth Court held

that the arbitrator who issued the underlying adjudication had "exceeded the scope of arbitration

---

[2]      Co-Defendant Erik Shelton was voluntarily dismissed from this case by Patterson on
November 30, 2005.

[3]      The Commonwealth Court likewise vacated the Arbitration Adjudication against the Church
Corporation as *ultra vires*.  A copy of the Commonwealth Court's  January 31, 2008 Opinion
and Order is attached to Defendants' Preliminary Objections as **Exhibit 2**.

- 4 -

by deciding the issue of who should be in control of the Church's property," which is precisely

the flawed premise on which Patterson is attempting to revive the nullified Arbitration Award

here. (Ex. 1 at *6.)  The Commonwealth Court's Opinion and Order dated January 31, 2008 also

specifically vacated the arbitration adjudication and all related orders and remanded the matter to

the Court of Common Pleas for trial.  (See id. at *8.)

### Procedural History – Trial After Remand

On remand, Patterson tried his claims before this Court in July 2014.[4]  The Court

dismissed Patterson's case *with prejudice*.  Specifically, the Honorable Alice Beck Dubow issued

an Order and Memorandum Opinion on November 10, 2014, holding that the Court lacked

subject matter jurisdiction because the First Amendment bars courts from interfering with the

internal affairs of the church under the "Deference Rule."  On December 18, 2015, the

Commonwealth Court affirmed this Court's Order dated November 10, 2014, that the Court

lacked jurisdiction over this matter.  A copy of the Commonwealth Court's Opinion and Order,

Patterson v. Shelton, No. 2147 C.D. 2014, 2015 WL 9260536 (Pa. Commw. Ct. Dec. 18, 2015),

is attached to Defendants' Preliminary Objections as **Exhibit 3**.

In its Opinion and Order, the Commonwealth Court adopted in full Judge

Dubow's Memorandum Opinion and Order dismissing Plaintiff's complaint.  (See id. at *7

("The issue of subject matter jurisdiction was raised and argued before the trial court and ably

disposed of in the opinion of the Honorable Alice Beck Dubow . . . Therefore, this Court shall

affirm on the basis of Judge Dubow's opinion.").)  As the Commonwealth observed, Judge

Dubow had held, correctly, that the Deference Rule precluded the Court from retaining

jurisdiction over the remanded case because the Court of Common Pleas "could not adjudicate

---

[4]   Significantly, the Church Corporation was not a party to the July, 2014 trial.  Defendant
Shelton was the sole defendant in that case.

Case ID: 950702945

Control No : 17111198

the issues . . . by applying neutral principles of law." (Id. at *9.)  More specifically, Judge Dubow ruled—and the Commonwealth Court agreed—that the Court could not "evaluate the evidence without intruding into the sacred precincts of the Church . . . ." and found it lacked subject matter jurisdiction as a result.  (Id. at *11 (internal quotation marks and citation omitted).)

Patterson subsequently filed an unsuccessful Petition for Allowance of Appeal to the Pennsylvania Supreme Court.  A true and correct copy of the Pennsylvania Supreme Court's Order dated April 16, 2016 denying Patterson's appeal is attached to Defendants' Preliminary Objections as **Exhibit 4**.  Patterson next filed a Petition for a Writ of Certiorari ("Cert. Petition") with the Supreme Court of the United States on July 26, 2016.  The U.S. Supreme Court also refused to hear Patterson's appeal, denying his Cert. Petition.  A copy of the U.S. Supreme Court's October 11, 2016 Order denying certiorari is attached to Defendants' Preliminary Objections as **Exhibit 5**.

### *Procedural History – Patterson's Instant Praecipe for Writ of Revival*

The denials of review by the Pennsylvania Supreme Court and the United States Supreme Court, respectively, should have ended the matter for Patterson in the Pennsylvania Courts.  Undeterred, and solely for the purpose of continuing to vex and harass Shelton and the Church Corporation, on May 27, 2016, Patterson filed a motion on *this closed docket*, styled "Motion to Determine Certain Orders Void Based on the Lack of Subject Matter Jurisdiction" (the "Motion").  Ruling that it was utterly meritless, the Honorable Idee C. Fox denied the Motion on July 14, 2016, and filed her Opinion on October 6, 2016.  A copy of Patterson's Motion and a copy of Judge Fox's Order and Opinion denying Patterson's Motion are attached to Defendants' Preliminary Objections as **Exhibit 6** and **Exhibit 7**, respectively.  Patterson then

Case ID: 950702945

Control No : 17111198

appealed the denial of his Motion to the Commonwealth Court. A copy of Patterson's Notice of Appeal is attached to Defendants' Preliminary Objections as **Exhibit 8**. That appeal is still pending. A copy of the Commonwealth Court docket as of November 8, 2017, is attached to Defendants' Preliminary Objections as **Exhibit 9**. Despite the foregoing, with full knowledge that the Arbitration Award cannot be recognized by any court, and solely for the purpose of harassing Shelton, on October 19, 2017, Patterson improperly filed the instant Praecipe, purporting to revive the same unenforceable, non-existent judgment based on a vacated, nullified Arbitration Award that is the subject of his current appeal in the Commonwealth Court. At the same time, Defendants file these preliminary objections in response to Patterson's Praecipe, pursuant to Rules 1028(a) and 3030 of the Pennsylvania Rules of Civil Procedure.

4. **ARGUMENT**

   A. **This Matter Is Over.**

   "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible." <u>Bayada Nurses, Inc. v. Commw. Dep't of Labor & Indus.</u>, 8 A.3d 866, 871 n.4 (Pa. 2010) (citing <u>MacElree v. Phila. Newspapers, Inc.</u>, 674 A.2d 1050, 1054 (Pa. 1996)). That standard is satisfied easily here, because Patterson has already litigated the validity of the arbitration award on which the judgment is based, including multiple exhausted appeals—and he has lost at every turn.

   Patterson appealed the Commonwealth Court's Order vacating the Arbitration Award to the Pennsylvania Supreme Court, and the Court denied the appeal. <u>See</u> <u>Patterson v. Shelton</u>, 963 A.2d 471 (Pa. 2008). The Commonwealth Court's decision is therefore controlling as to the validity of the Arbitration Award. <u>See</u> <u>Rosenblum v. Port Auth. of Allegheny Cnty.</u>, 560 A.2d 912, 913 (Pa. Commw. Ct. 1989) (explaining that Commonwealth Court decisions

"continue[] as controlling authority unless and until the Supreme Court reverses it"). Then, during the trial ordered by the Commonwealth Court, Shelton moved to dismiss for lack of subject matter jurisdiction because *any* court ruling in this matter would violate the First Amendment. As explained above, this Court granted Shelton's motion to dismiss, and the Commonwealth Court affirmed the order dismissing the case with prejudice. (See Ex. 3.)

Patterson likewise appealed the Commonwealth Court's Order affirming that the Deference Rule bars this Court's jurisdiction over this matter, and the Pennsylvania Supreme Court again denied the appeal. (See Ex. 4.) Patterson then appealed *that* ruling to the Supreme Court of the United States, which denied certiorari. (See Ex. 5.) Now, Patterson again attempts to revive the *ultra vires* Arbitration Adjudication and nullified judgment, which necessarily requires this Court to invalidate the Commonwealth Court's Orders vacating the Arbitration Adjudication and dismissing the Complaint with prejudice based on a lack of subject matter jurisdiction.

Patterson's current effort to subvert these final and binding decisions is barred by *res judicata*. "Broadly stated, the rule of *res judicata* is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court." In re Wallace's Estate, 174 A. 397, 399 (Pa. 1934). Because the parties litigated the merits of whether the Arbitration Award was *ultra vires* and the Commonwealth

Case ID: 950702945

Court ruled that it was, that determination is "final and conclusive as between the parties to the suit." Accordingly, *res judicata* bars Patterson's Praecipe on this point.

In like fashion, because the parties litigated the merits of whether the Pennsylvania Courts have subject matter jurisdiction, the Commonwealth Court affirmed that it does not, and Patterson has exhausted his appeals on that issue, the Commonwealth Court's ruling is also "final and conclusive," and Patterson's Praecipe is barred on this issue as well. Consequently, Defendants' preliminary objections in nature of demurrer pursuant to Pa. R.C.P. 1028(a)(4) should be sustained.

**B.      This Court Cannot Invalidate a Commonwealth Court Order and Revive a Nullified Judgment**

More fundamentally, Patterson's Praecipe for Writ of Revival requests relief that this Court has no authority to grant. Specifically, Patterson is seeking to revive a nullified judgment predicated on a vacated Arbitration Award in a closed case, which requires this Court to invalidate the Orders from the Commonwealth Court that (1) the arbitration award is *ultra vires* and (2) the Pennsylvania Courts have no subject matter jurisdiction over this matter. It is difficult to imagine a more astonishing and baseless request. Indeed, just as he did with his Motion, Patterson once again asks this Court to ignore perhaps *the* most foundational and basic aspect of the both the United States and Pennsylvania legal systems: appellate court orders are binding upon a trial court. See, e.g., U.S. Const. art. III sec. 1; Pa. Const. art. V sec. 1; 28 U.S.C. §§ 1254, 1257, 1291–92; *About Federal Courts, Court Role & Structure*, US Courts.gov, http://www.uscourts.gov/about-federal-courts/court-role-and-structure (last visited October 31, 2017); *Learn About the Judicial System*, The Unified Judicial System of Pennsylvania, http://www.pacourts.us/learn (last visited October 31, 2017). To suggest otherwise is simply frivolous.

Case ID: 950702945

Control No 17111198

### C.   No Court Can Act Without Subject Matter Jurisdiction.

Additionally, the fundamental illogic and self-contradiction of Patterson's Praecipe are fatal to the relief he seeks: a court cannot act without jurisdiction, yet Patterson asks this Court to rule on his Praecipe while explicitly asserting that it is without jurisdiction to do so. Shelton's preliminary objections should therefore also be sustained for lack of subject matter jurisdiction.  See Pa.R.C.P. 1028(a)(1).

When a court acts without jurisdiction, "its judgments and orders are regarded as nullities." (Letter attached to Patterson's Praecipe at 2 (quoting Elliot v. Piersol, 26 U.S. 328, 340 (1828)[5].)  Patterson repeatedly acknowledges this basic legal truth throughout the letter attached to his Praecipe, quoting liberally from Superior Court cases explaining that "[w]here a court lacks jurisdiction in any case, any judgment regarding the case is void" and "[a]ll proceedings founded on the void judgment are themselves regarded as invalid and ineffective for any purpose." (Id. at 2–3 (quoting Rieser v. Glukowsky, 646 A.2d 1221, 1224 (Pa. Super. Ct. 1994) and First Seneca Bank v. Greenville Dist. Co., 533 A.2d 157, 162 (Pa. Super. Ct. 1987), respectively).)

Despite acknowledging these principles, in a farcical attempt to avoid their obvious and necessary consequence, Patterson brazenly asserts that "[t]he finding of a lack of subject matter jurisdiction by the courts effectively renders void all judicial orders/decisions *other than the statutory confirmations and entries of judgment on the binding common law arbitration award.*" (Id. at 2 (emphasis added).)  Patterson has never explained, in the dozens of

---

[5]   For some reason, Patterson's letter attached to his Praecipe is addressed to Magistrate Judge Schneider of the United States District Court for the District of New Jersey and is styled as an "Expedited Motion to Remand to Superior Court."  Because the letter accompanies Patterson's Praecipe, however, Defendants assume that it is meant to support the Praecipe in this Court, and addresses its frivolous arguments out of an abundance of caution.

times he has unsuccessfully raised this nonsensical argument, how a finding of no jurisdiction—rendering all previous judgments and decisions a nullity—somehow leaves in place a judgment confirming an arbitration award, even though that award was previously vacated as *ultra vires*. The fallacy of Patterson's position is glaring.

Indeed, Patterson knows full well that the language he quotes from <u>Elliot</u>, <u>Rieser</u>, and <u>First Seneca Bank</u> does not permit him to pick and choose which court might or might not have subject matter jurisdiction and which void orders a court can reinstate. On the contrary, the authority Patterson cites *precludes* the relief he seeks, because all of those decisions state plainly that *each and every* action taken by the Pennsylvania courts without jurisdiction are void. Judge Fox ably explained all of these points in her opinion denying Patterson's Motion. (<u>See</u> Ex. 7 at 4–6.) Thus, the only reasonable interpretation of Patterson's Praecipe is that he filed it in bad faith and solely for the purpose of harassing Defendants. Patterson's conduct in this regard warrants not only dismissal of his Praecipe, but also the imposition of sanctions against him. <u>See</u> Pa. C.S.A. § 2503(7); <u>see also</u> Pa.R.C.P. 1023.3.

**E.** <u>**Patterson Has Already Improperly Appealed This Matter.**</u>

Finally, Patterson's Praecipe should be dismissed because of the appeal in this matter that is already pending before the Commonwealth Court. <u>See</u> Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter.") The Court must sustain preliminary objections when there is a prior action pending. <u>See</u> Pa.R.C.P. 1028(a)(6). "In order to plead successfully the defense of *lis pendens, i.e.,* the pendency of a prior action, it must be shown that the prior case is the same, the parties are the same, and the relief requested is the same." <u>Crutchfield v. Eaton Corp.</u>, 806 A.2d 1259, 1262 (Pa. Super. Ct. 2002). All of these conditions are met here. As

- 11 -

explained above, on May 27, 2016, Patterson improperly filed a motion on *this closed docket*

(which necessarily satisfies the conditions that the prior case and parties be the same), styled

"Motion to Determine Certain Orders Void Based on the Lack of Subject Matter Jurisdiction."

(See Ex. 6.)  In that Motion, Patterson requested relief identical to that which he again seeks in

the instant Praecipe—revival of a vacated, nullified arbitration award and judgment—and relied

on the exact same frivolous, misguided arguments.  (See id. at ¶¶ 21–24.)  Judge Fox properly

denied Patterson's frivolous Motion (see Ex. 7.), and Patterson appealed.  (See Ex. 8.)  That

appeal, while improper, is currently pending in the Commonwealth Court.  (See Ex. 9.)

Accordingly, all of the *lis pendens* conditions are met here, and Patterson's Praecipe should be

dismissed because it is identical to a pending prior action, pursuant to Pa.R.C.P. 1028(a)(6).[6]

---

[6]  In addition, Patterson's Praecipe is procedurally deficient for a number of reasons, separate
and apart from the fact that this case has already been litigated to finality and conclusively
decided.  Patterson's prior attorney, Fincourt B. Shelton, Esquire, was suspended from the
practice of law in Pennsylvania for four years on October 20, 2016.  Patterson filed the
Praecipe *pro se*, having neither advised the Court of the status of his counsel nor entered his
*pro se* appearance.  Moreover, despite being fully aware that Shelton is represented by
counsel, Patterson served *Defendants*, and not their counsel, with the Praecipe, in violation of
Pa.R.C.P. 440(a)(1).  Finally, the Praecipe purports to revive a judgment against the Church
Corporation, which is not a party to this litigation.  Nevertheless, out of an abundance of
caution, the Church Corporation also preliminarily objects to Patterson's groundless
Praecipe.

Case ID: 950702945

Control No: 17111199

5.    **RELIEF**

For all of the foregoing reasons, Defendants respectfully request that the Court sustain their preliminary objections and enter an order dismissing Plaintiff Anthoneé Patterson's Praecipe for Writ of Revival with prejudice; awarding sanctions in the form of attorneys' fees incurred in responding to this filing, pursuant to Pa. C.S.A. § 2503(7) and Pa.R.C.P. 1023.3; and awarding any and all other sanctions and other relief the Court deems appropriate.

Respectfully submitted,

/s/ *Danielle Banks*
Danielle Banks
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendant,
Kenneth Shelton

/s/  *Michael K. Twersky*
Michael K. Twersky
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Fax: (212) 299-2150
mtwersky@foxrothschild.com

Attorneys for Defendant,
Trustees of the General Assembly of the Church of
the Lord Jesus Christ of the Apostolic Faith, Inc.

# 3379322

Case ID: 950702949

|  |  |  |
|---|---|---|
| ANTHONEÉ PATTERSON | : | COURT OF COMMON PLEAS |
|  | : | PHILADELPHIA COUNTY |
| v. | : |  |
|  | : | JULY TERM, 1995 |
| KENNETH SHELTON | : | No. 2945 |
|  | : |  |

*and Attested by the
Office of Judicial Records
08 NOV 2017 05:02 pm
E. MARTIN*

**ORDER**

AND NOW, this _____ day of _____, 2017, upon consideration of

the Preliminary Objections of Defendants Kenneth Shelton and the Trustees of the General

Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. to Plaintiff's

Praecipe for Writ of Revival, any opposition by Plaintiff, any Reply by Defendants, and any oral

argument, it is hereby ORDERED that the Preliminary Objections are SUSTAINED and that

Plaintiff's Praecipe for Writ of Revival against Kenneth Shelton and Plaintiff's Praecipe for Writ

of Revival against the Trustees of the General Assembly of the Church of the Lord Jesus Christ

of the Apostolic Faith, Inc. are hereby DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
                                    , J.

# 3383392

Case ID: 950702945

Control No : 17111198