**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., | No. 21-cv-00634 |
| and | **DEFENDANT ANTHONEÉ PATTERSON'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, | |
| Plaintiffs, | |
| v. | |
| ANTHONEÉ PATTERSON, | |
| and | |
| ROCHELLE BILAL, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.   PRELIMINARY STATEMENT .................................................................................1

II.  THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE
     LEAVE TO AMEND WAS NEVER SOUGHT OR OBTAINED ...............................2

III. BISHOP PATTERSON IS NOT A STATE ACTOR AND, IN ANY EVENT,
     ACTED IN GOOD FAITH IN EXECUTING JUDGMENTS THAT HAVE BEEN
     UPHELD IN THE PENNSYLVANIA COURTS MULTIPLE TIMES ........................2

IV.  THE PENNSYLVANIA COURTS HAVE RULED THAT BISHOP
     PATTERSON WAS NEVER REMOVED AS A CHURCH MEMBER ....................4

V.   ADDITIONAL RECORDS CONFIRM THAT PLAINTIFFS PARTICIPATED
     IN THE ARBITRATION AND SUBSEQUENT LITIGATIONS THEY
     CLAIM THEY WERE NOT PARTIES TO ................................................................5

VI.  CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................... 12

*Cooper v. Commercial Sav. Bank*,
   (S.D. Ohio, Dec. 12, 2013, No. 2:12-cv-0825) ............................................................ 3

*Jordan v. Fox, Rothschild, O'Brien Frankel*,
   20 F.3d 1250 (3d Cir. 1994) .................................................................................... 3, 4

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ...................................................................................................... 3

*Patterson v. Shelton*,
   No. 2147 C.D. 2014 (Pa. Cmmw. Ct. Dec. 18, 2015) ................................................. 5

*Revis v. Meldrum*,
   489 F.3d 273 (6th Cir. 2007) ....................................................................................... 3

*Wyatt v. Cole*,
   504 U.S. 158 (1992) ...................................................................................................... 4

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................................................ 2

Defendant Anthoneé Patterson submits this memorandum of law in support of his Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). As explained below, leave to file the FAC was never sought or obtained and no request for consent was made, Patterson is not a state actor and, in any event, acted in good faith so as not to be liable under Section 1983, Patterson has been ruled by the Pennsylvania courts to have never been properly removed as a Church member and to have standing to pursue his claims notwithstanding any after-the-fact chicanery to remove him, additional records confirm that Plaintiffs, and, contrary to their misrepresentations and those of their counsel, participated in the underlying litigation. At a minimum, Patterson must be allowed to assume his office as president of the Board of Trustees to perform his obligations as an officer, safeguard Church assets and property from further looting, and preserve Church Corporation records from further spoliation.

## I.      PRELIMINARY STATEMENT

The First Amended Complaint is nothing more than one more volley in the campaign by Kenneth Shelton and those under his thrall to mislead and deceive every court entertaining their frivolous claims. This motion provides even more evidence confirming that Plaintiffs and their counsel have violated their duties of candor to this Court and that they have perjured themselves in the past and in their current pleading. As detailed below, documentary evidence contradicts their claims and establishes their claims and testimony are simply false. Indeed, this Court has already determined in 2007 that it lacked subject matter jurisdiction over the claims that the Award may not be enforced against them due to their supposed lack of participation in the arbitration and the Third Circuit affirmed that ruling. The Church and Trustees' own counsel acknowledged at the time of the arbitration that it was a Church tribunal with Judge Naythons as the agreed-to neutral to break any ties and the record confirms that the Church and Trustees

1

asserted a counterclaim in the arbitration, presented evidence thereon, and received relief in the proceeding. The First Amended Complaint and this proceeding should be dismissed in its entirety, with prejudice, and enforcement of Patterson's judgment allowed to proceed.

At a minimum, Patterson must be allowed to assume his position as president of the Church Corporation Board given this Court's acknowledgment that he may proceed as against Kenneth Shelton.

## II.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE LEAVE TO AMEND WAS NEVER SOUGHT OR OBTAINED.

The Federal Rules of Civil Procedure require that, unless amendment is filed within 21 days of a pleading being served or prior to any responsive pleadings, leave of court or written consent is required to amend the pleading. Fed. R. Civ. P. 15(a)(1), (2). Here, this case has been active for a lengthy period, responsive pleadings have been filed, significant motion practice has taken place, and an evidentiary hearing has been held. Yet Plaintiffs purport to amend their complaint without seeking consent of the parties or seeking leave of Court. The FAC should be dismissed for failure to comply with the Federal Rules of Civil Procedure.

## III.   BISHOP PATTERSON IS NOT A STATE ACTOR AND, IN ANY EVENT, ACTED IN GOOD FAITH IN EXECUTING JUDGMENTS THAT HAVE BEEN UPHELD IN THE PENNSYLVANIA COURTS MULTIPLE TIMES.

Plaintiffs' claim that Patterson is a state actor for purposes of their claims against him is specious. The United States Supreme Court has cautioned against unwarranted expansion of the "state action" requirement to state a claim under Section 1983:

> Careful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982). There is a two-part inquiry to determine whether conduct allegedly causing deprivation of constitutional rights is fairly attributable to the state: (1) the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by someone the state is responsible for, and (2) the party charged with the deprivation must be a person who may fairly be said to be a state actor. (*Id*. at 937.) Mere action by a private party pursuant to a statute, without anything more, is insufficient to convert a private party into a state actor. (*Id*. at 938.)

Here, Bishop Patterson is merely seeking to enforce his rights as the holder of a judgment in his favor. The mere fact that he has invoked Pennsylvania law to enforce those rights, without more, does not make him a state actor[1]. (*Id*.) The sheriff's involvement does not convert him into a state actor either, as Pennsylvania law requires the sheriff's involvement in writs of execution and self-help is not available to Patterson legally or practically[2]. To the extent that the Third Circuit hold that executing on a judgement without pre-deprivation notice converts a private party a state actor, it is submitted that the case is wrongfully decided. See, e.g., *Jordan v. Fox, Rothschild, O'Brien Frankel*, 20 F.3d 1250, 1267 (3d Cir. 1994). To hold otherwise converts any judgment creditor into a state actor merely by seeking to enforce his or her judgment. Indeed, in *Jordan*, the case involved confessions of judgment by third parties without notice to those affected by the judgment. That is absolutely not the case here, where Plaintiffs have had notice of

---

[1] There appears to be an outlier unpublished opinion from the Southern District of Ohio holding that Pennsylvania writs of possession and their enforcement make private parties state actors. (*Cooper v. Commercial Sav. Bank* (S.D. Ohio, Dec. 12, 2013, No. 2:12-cv-0825) [pp. 11].) That case conflicts with the Sixth Circuit's precedent holding, consistent with *Lugar,* that merely invoking one's rights to enforce a judgment does not convert a private party into a state actor. "The private-party defendants' invocation of presumptively valid state procedures therefore amounts, at most, to the sort of statutory misuse or abuse that *Lugar* specifically instructs does not give rise to state action." *Revis v. Meldrum*, 489 F.3d 273, 291 (6th Cir. 2007) (addressing claims that writs of execution were obtained fraudulently or without cause.)

[2] Plaintiffs and/or their predecessors in interest have subjected Patterson and others to physical violence in the past and it is anticipated they will continue to do so unless prevented by law enforcement from attacking Patterson.

the underlying arbitration and litigation and have participated therein, contrary to their false claims.

Where private parties are alleged state actors in a 1983 claim, they are entitled to assert a defense that they acted in good faith. *Jordan v. Fox, Rothschild, O'Brien Frankel, supra*, 20 F.3d at 1276. Absent proof a showing of malice and evidence that the judgment creditor knew or should have known that his or her act deprived the judgment debtor of their constitutional rights, the claims fail as a matter of law. (*Id*. at 1276-77.) "[A] private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law, and therefore, under the circumstances of this case, lack of probable cause can *only* be shown through proof of subjective bad faith." *Wyatt v. Cole*, 504 U.S. 158, 174 (1992) (Kennedy, J., concurring) (emphasis in original.)

There is not and cannot be any allegations that Patterson acted in subjective bad faith given the decades of litigation in this case and the various Pennsylvania Courts that have upheld his recent legal victories. Accordingly, the claims against him fail as a matter of law and should be dismissed. *Jordan v. Fox, Rothschild, O'Brien Frankel, supra*, 20 F.3d at 1277.

## IV.    THE PENNSYLVANIA COURTS HAVE RULED THAT BISHOP PATTERSON WAS NEVER REMOVED AS A CHURCH MEMBER.

Plaintiffs claim that Patterson was "excommunicated" from the Church is belied by the finding of the Pennsylvania courts that he was never removed from the Church through to procedures required by its bylaws:

> Here, there is no question that Patterson was a member of the Church when he
> instituted the action. As a member of the Church congregation, Patterson was part
> of the beneficiary class for which the Corporate Trustee held the Church's assets
> in trust. As such, he has standing to bring this action to enforce his own rights and
> the rights commonly held by all beneficiaries to obtain restoration to the Church
> of its full losses. Thus, the action should not have been dismissed due to lack of
> standing under the NCL.

4

*Patterson v. Shelton*, No. 2147 C.D. 2014, at *8, see also *9 n.10[3] (Pa. Cmmw. Ct. Dec. 18,
2015). Shelton may claim that the bylaws have been changed to permit him to "excommunicate"
Church members on a whim, but those changes would not be applicable to Patterson, as
recognized by the Pennsylvania courts. "To hold otherwise would, as a practical matter, insulate
these most serious allegations from judicial review." *Patterson v. Shelton, supra*, No. 2147 C.D.
2014, at *9 n.11.

## V.   ADDITIONAL RECORDS CONFIRM THAT PLAINTIFFS PARTICIPATED IN THE ARBITRATION AND SUBSEQUENT LITIGATIONS THEY CLAIM THEY WERE NOT PARTIES TO.

Further proof that Plaintiffs and their counsel are being less than candid (at a minimum)
regarding their involvement in the underlying litigation and proceedings is submitted herewith.
Kenneth Shelton submitted to binding common law arbitration on behalf of the Church and the
Trustees and he only did so after a conference with Johnny Brown, John Thomas, and Bligen.
(Exhibit A (Pratter, J., Proceedings) to August 31, 2022, Declaration of Bishop Anthonee′
Patterson (Patterson Decl.) at pp. 127-132.) Erik Shelton consistently states that he signed the
counterclaim (asserted by Plaintiffs or their predecessors in interest) in Attorney Weaver's
office. (Patterson Decl., Exhibit A at pp. 133-138.)

In proceedings before Lynn, J., Attorney Weaver and Attorney Brown entered their
appearances for defendants Kenneth Shelton and Erik Shelton. (Patterson Decl., Exhibit B (12-2-
2005 Colloquy, Lynn, J.) at p. 1.) Attorney Weaver discussed at length that the parties were
waiving any claims regarding jurisdiction or standing by agreeing to the arbitration and placed

---

[3] "Shelton argues that Patterson was not a member of the Church congregation because he "abandoned" the Church. However, the record demonstrates that the Church never took any action to remove Patterson. Article XIII of the Church By-laws provided a method for the expulsion or suspension of members. The Church could have used those procedures to remove Patterson who Shelton alleges abandoned the Church, but it did not do so." *Patterson v. Shelton, supra*, No. 2147 C.D. 2014, at *9 n.10.

on the record that Kenneth Shelton approved that waiver and submission to arbitration. (*Id*. at pp. 2-10.)

In additional proceedings before Lynn, J., Attorney Weaver and Attorney Brown entered their appearances for defendants Kenneth Shelton and Erik Shelton. (Patterson Decl., Exhibit C (11-30-2005 Colloquy, Lynn, J.) at p. 1.) During the colloquy, Attorneys Weaver and Brown both spoke extensively regarding the structure for the arbitration, the lists of participants from the Church and from Patterson, and Erik Shelton's dismissal from the case because he had voluntarily resigned from the Trustees. (*Id.* at pp. 2-19.) Attorneys Weaver and Brown appeared for the defendants before Lynn, J. on November 29, 2005, claiming that Patterson lacked standing and that the Church Corporation was a necessary party to the lawsuit. (Patterson Decl., Exhibit D (11-29-2005 Colloquy, Lynn, J.) at pp. 1, 3-14.) Patterson maintained that he had standing as a member of the Church to bring his claims and that Kenneth Shelton, by virtue of his status as General Overseer at the time, also stood for the Trustees and Church Corporation by virtue of his office. (*Id*. at 16-38, 53-63.) Patterson confirmed that Attorney Brown had instructed him to write a letter to Brown's attention regarding the alleged status of his Church membership. (*Id*.)

Kenneth Shelton and John Thomas both testified in these proceedings <u>in their official capacities as members of the Board of Trustees.</u> (*Id*. at pp. 68-81.) Thomas confirmed that the Trustees answered to the general assembly – the Church members. (*Id*.) He further confirmed that, if a Church member questioned the disposition of Church funds or assets, the Trustees were obligated to respond. (*Id*.) Thus, the Trustees participated in the underlying litigation that resulted in the arbitration with full knowledge of what was being litigated and resolved in the arbitration.

This stands in stark contrast to Attorney Brown's claims before Pratter, J., where he claimed the litigation only involved Kenneth Shelton and Patterson and the Church and Trustees had no involvement, despite the Church paying Kenneth Shelton's legal fees. (Patterson Decl., Exhibit A (5/17/2006 Hearing before Pratter, J.) at 2-9, 19-20, 117-119.) The Church also paid settlements and/or legal fees incurred by Shelton in a defamation case (Terrance Patterson v. Kenneth Shelton) and in a case brought by Shavika Ward alleging multiple sexual assaults. (Patterson Decl. Exhibit I.) This is contrary to the well-settled principle that corporate officers and fiduciaries accused of malfeasance bear the costs of their own defense and then seek reimbursement if appropriate and if they have been determined not to have engaged in wrongdoing.

Erik Shelton testified that he went to Attorney Weaver's office to sign verifications or other court-related documents whenever Weaver asked and that he signed them without question. (Patterson Decl., Exhibit A at pp. 137-138.) Attorney Brown conceded that he used his personal letterhead and Church letterhead (as the Trustees' counsel) interchangeably and maintains a law office in the Church building. (Patterson Decl., Exhibit A at pp. 13-17, 20-26, 29-36, 63-65, 82-84.) Brown acknowledged that he was copied on communications concerning the various litigations, including termination of the federal case by the Church and Trustees against Fincourt Shelton, Patterson, and two others (CD 94-4712), and that he assisted Attorney Weaver in getting verifications and other pleadings signed. (*Id*.) He admitted that Attorney Weaver represented the Church at all relevant times the Church asserted these claims in litigation. (*Id*.) He acknowledged that the Church and Trustees asserted a counterclaim against Fincourt Shelton, Patterson, and others for alleged misappropriation of Church funds and property, and that similar allegations against these individuals were asserted by the Church and Trustees in other state

(Florida- Duval County Circuit Court, Pennsylvania Philadelphia Court of Common Pleas July Term 1994) and federal litigations. (*Id*.) This counterclaim was part of the arbitration as well and the Church and Trustees recovered some damages thereon. (Patterson Decl. at ¶ ____.) Attorney Brown also attended many of the conferences before Judge Padova as counsel for the Church, along with Attorney Weaver, although he claimed failed memory when questioned about what was said to Judge Padova during those conferences. (*Id*. at 78-81.) He acknowledged, however, that Fincourt Shelton had stated numerous times to him and the other Church and Trustee attorneys that the federal case could be concluded because the parties were going to arbitrate their claims. (*Id*.)

Attorney Brown also acknowledged he was familiar with Judge Padova's evidence preservation order, the stipulation the Church and Trustees entered to discontinue their federal action CD 94-4712, and other pleadings involving the Church and Trustees from correspondence on which he was copied. (Patterson Decl., Exhibit A at pp. 17-20.) It "was not his recollection" that he testified at the arbitration as a witness called by Attorney Weaver to give evidence on the Church and Trustees' counterclaim but admitted that he did testify at the arbitration that he had witnesses alleged misconduct by Fincourt Shelton and Patterson. (*Id*. at 26-29, 74-78.) He later conceded that Weaver had called him as a witness at the arbitration and that Weaver asked questions about and he testified concerning alleged misconduct by Patterson. (*Id.*) He admitted that Judge Naythons's adjudication referenced the Church counterclaim but claimed that he was unable to "digest" what "counterclaim" meant. (*Id*.) He admitted that his duties as counsel for the Church and Trustees included reviewing and advising regarding legal matters and "often" representing them in those matters and preparing and guiding any response to any subpoenas for business records. (*Id*. at 35-37, 40-41.) He acknowledged that Kenneth Shelton had the authority

to bind the Church and Church Corporation in business and litigation matters. (*Id*. at 45-51.) He claimed that the Trustees, however, were one-man-one-vote and that Kenneth Shelton could not break a 3-3 tie but admitted that there had never been a situation where there was a tie. (*Id*.) He claimed that Kenneth Shelton could not "pick" the Trustees but admitted that he was the sole person with authority to nominate a Trustee and that only those he nominated could be elected to serve as Trustees. (*Id*.) He also admitted that the bylaws were not amended until 1992 to make the purported one-man-one-vote change. (*Id*.) Kenneth Shelton confirmed that the General Overseer also held a lifetime position as president of the Board of Trustees. (*Id*. at 103-104.) This Court may judicially notice that it has requested proof of this claimed change to the bylaws from Plaintiffs and their counsel and they have failed to provide it. As discussed below, the record of those proposed amendments refutes the claim.

Colloquy before Judge Prater also confirmed that Attorneys Brown and Weaver, the Church, and the Trustees agreed with Patterson that the arbitration was, for all intents and purposes, an apostolic tribunal with Judge Naythons as the mutually agreed upon neutral to break any tie. (Patterson Decl., Exhibit A at pp. 51-60, 68-70, 84-101.) The arbitration was referenced by Attorneys Weaver and Brown as a tribunal in correspondence but later they decided not to use that name, even though the process involved three Church members from each faction of the Church with Naythons (the neutral both factions agreed upon) only deciding the matter in the event of a tie. (*Id*.) Attorney Brown admitted that the tribunal encompassed the issues being litigated before Judge Lynn but again feigned memory loss only when questioned about matters discussed before the court that Brown deemed harmful to their current specious claims. (*Id*.) He admitted that he made the phone call to Kenneth Shelton to discuss his waiver of certain claims in the arbitration and handed the phone to Attorney Weaver. (*Id*.) He acknowledged that he

understood the standing issue had to have been waived for the arbitration to proceed. (*Id*.) It was confirmed before Judge Prater that the purported 1992 amendments to the Church bylaws did not alter Kenneth Shelton's authority (as General Overseer) to rule upon and override decisions of any Church body he disagrees with and that there is no recourse for his decision to do so. (*Id*.) Kenneth Shelton confirmed that he relied upon Attorneys Weaver and Brown to protect his interests and the Church's interest in the various litigations and the arbitration and that he was at least "un-keenly" aware of the Church's and Trustee's claims against Patterson being litigated in the arbitration and the award of less than the total sought on those counterclaims. (*Id*. at 123-127.) He also knew that the award on the counterclaim was to be paid to the Church and not to himself or Erik Shelton. (*Id*.)

Further evidence that the "one-man-one-vote" claim is a sham is a transcript of a recording of the September 3, 1992, General Assembly of the Church, produced by the Church, Trustees, and Kenneth Shelton during the underlying litigations. (Patterson Decl. Exhibit E.) The transcript confirms that Kenneth Shelton was empowered to call a General Assembly at his discretion whenever he wanted to. (*Id*. at pp. 1-2.) The quorum for such meetings was fifty or more members. (*Id*.) Kenneth Shelton stated that the Church choir had enough members to give him a quorum and that he could call for amendment of the bylaws at any time he desired. (*Id*. at 1-2, 9-11.) The Trustees were granted blanket authority to conduct all business and related negotiations concerning the sale or purchase of any property, real or personal. (*Id*. at pp. 2-3.) Kenneth Shelton was granted sole authority to submit motions or resolutions to the General Assembly without recourse if anyone objected to his handling of the matters. (*Id*. at pp. 3-4.) When one Church member deigned to vote nay on this proposal, it was immediately stated from the dais "I am going to assume that was an errant sound." (*Id*. at p. 4.) Kenneth Shelton then

"joked" that he was "getting ready to get fired up, boy, I was about to come off this altar…" (*Id.*) He then continued "that's not an intimidation. If you have a nay let's hear it (laughs). Let's hear it." (Laughs and chatter). (*Id.*) Kenneth Shelton claimed sole authority to remove any elder, minister, office, or member on a whim, with no recourse. (*Id.* at 7.) He also had sole authority, without recourse or appeal, to determine any questions of parliamentary procedures, making him "the boss as far as any questions…" (*Id.* at pp. 9-11.) On person voted nay on this change, at which point the Assembly was paused, off the record discussion was held, and it was proclaimed the change passed unanimously upon resumption of the Assembly with no explanation. (*Id.* 10-11.) Kenneth Shelton reserved sole authority to "suspend," "silence," or "expel" any Church member with or without "trial." (*Id.* at 11-12.) Kenneth Shelton was president of the Board of Trustees for life and no one else could serve on the Board unless approved and nominated by Shelton. (*Id.* at 12-13.)

Kenneth Shelton also had sole authority to resolve any "conflicts" existing in the Church rules, regulations, and bylaws without recourse or challenge. (*Id.*) There was a nay vote, and Shelton stated, "I am hoping those that (laughs) hoping those, I am hoping, that was the slip of the tongue, or a miss, yes, yes." (*Id.* at 13-14.) The nay was then disregarded and the vote was proclaimed unanimous. (*Id.*) Another nay was disregarded, and Shelton responded, "we got a lot of inadvertent here tonight (laughs)." (*Id.* at 14.) All Church tithes, offerings, or other money raised was declared Kenneth Shelton's property. (*Id.* at 14-16.) Kenneth Shelton claimed that he had already expelled Fincourt Shelton as a member and then demanded that the Assembly unanimously approve his decision. (*Id.* 17-18.) The Assembly complied with his demand. (*Id.*) It then unanimously approved Kenneth Shelton's slate of nominees for Trustee. (*Id.* at 18-19.)

11

These documents confirm that Attorney Brown perjured himself when he gave contrary testimony to this Court on February 24, 2021, and when he claimed that recording the General Assembly was prohibited. (Patterson Decl., Exhibit F at 16-19.) Attorney Weaver claimed he could not recall whether evidence was presented on the Church's and Trustee's counterclaim during the arbitration – which he confirmed was a Church Tribunal – but the record confirms that his conveniently absent memory is incorrect. (*Id.* at pp. 135-136.) Judge Naythons confirmed in the Award that the counterclaim was prosecuted in the arbitration, that the defense presented evidence on that counterclaim, and that an award of damages was made thereon. (Patterson Decl., Exhibit I, April 26, 2006, Adjudication, at pp. 1, 13-15.) Having availed themselves (or their predecessors in interest having done so) of the court's and arbitrator's jurisdiction to obtain affirmative relief, Plaintiffs may not be heard to now complain they were not parties. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (purposeful availment of a forum confers jurisdiction.)

Plaintiffs and their counsel also further failed to honor their duty of candor to this Court by failing to acknowledge that they have already litigated their claim that they were not parties to the arbitration before this Court and the Third Circuit. This Court (Brody, J.), dismissed virtually identical claims as those asserted here in 2007, determining *sua sponte* that there was no federal jurisdiction over those claims at the Church and Church Corporation's request. (Patterson, Decl., Exhibit G.) This determination was appealed to the Third Circuit, which affirmed there was no federal jurisdiction. (Patterson Decl., Exhibit H.) This is consistent with other federal courts concluding they lack jurisdiction over these claims. Plaintiffs' sole recourse for their meritless claims was in the Pennsylvania courts, which have already rejected their claims. This matter should be dismissed, with prejudice.

12

**VI.    AT A MINIMUM, BISHOP PATTERSON IS ENTITLED TO ENTRY INTO THE CHURCH CORPORATION TO ASSUME HIS OFFICE, PERFORM HIS OBLIGATIONS AS AN OFFICER, AND PRESERVE CHURCH CORPORATION RECORDS AND PROPERTY.**

At a minimum, Patterson must be allowed to take his office as president of the Church Corporation's Board of Trustees so that he can honor his obligations of that office, secure Church property from further theft, and secure Church records from spoliation. This Court has already acknowledged that Patterson's judgment is enforceable as against Kenneth Shelton. Patterson taking his office as president of a secular corporate board of a non-profit corporation cannot legitimately be claimed to violate anyone's freedom of religion. The Church Corporation is a secular body tasked with conducting Church business in the secular world. It is not a doctrinal entity. To the extent any Church members claim dissatisfaction with Patterson being president of the Board of Trustees, they can, as they have advised Patterson so many times over the years, simply leave the Church. There is no legitimate reason to disallow Patterson from enforcing his judgment against Kenneth Shelton and preventing further theft.

**IV.     CONCLUSION**

For the reasons set forth above, this Court should issue an order dissolving the

preliminary injunction previously issued in this case, together with such other and further relief

to Patterson as this Court deems just and proper.

Date:   September 8, 2022

Respectfully Submitted,


_____/s/ Anthonee′ Patterson_____
*Anthonee′ Patterson, Defendant Pro Se*
P.O. Box 109
Darby, PA 19023
(904) 386-3108

14

## <u>CERTIFICATE OF SERVICE</u>

I, Anthoneé Patterson, Defendant Pro Se, hereby certify that I caused a true and correct

copy of the foregoing to be served on Plaintiffs' counsel by the means indicated below:

___ Facsimile              <u>X</u>  Email and ECF              ___ U.S. Mail, First Class

___ U.S. Mail, Priority        ___ Federal Express              ___ UPS


*/s/ Anthoneé Patterson*_____
*Anthoneé Patterson, Defendant, Pro Se*

Dated: September 8, 2022

15