**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., et al., <br><br>     Plaintiffs, <br><br>     *v.* <br><br> **ANOTHNEÉ PATTERSON, et al.,** <br><br>     Defendants. | CIVIL ACTION <br><br> NO. 21-634-KSM |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                     **November 14, 2022**

Following a several-decades-long conflict between two factions of the Church of the

Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church")—and shortly after an eviction

notice was posted on the doors of the Church premises—Plaintiffs the Trustees of the General

Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church

Corporation") and the Church (collectively, "Plaintiffs") sued Defendants Anthoneé Patterson

and Rochelle Bilal, in her official capacity as Sheriff of Philadelphia County.[1]  (Doc. Nos. 1, 67.)

In their First Amended Complaint ("FAC"), Plaintiffs seek a declaratory judgment

against both Defendants that the arbitration adjudications in an underlying state court case do not

apply to Plaintiffs and are unconstitutional.  (Doc. No. 67 at 28–29 (Count I).)  Plaintiffs also

---

[1] Simultaneously, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  (Doc. No. 4.)   On March 19, 2021, following a three-day evidentiary hearing, the Court granted the preliminary injunction in an 85-page opinion.  (Doc. Nos. 37, 38.)  Subsequently, Patterson appealed the Court's issuance of the preliminary injunction (Doc. No. 39), which the Third Circuit Court of Appeals affirmed (Doc. No. 41).

assert two claims pursuant to 42 U.S.C. § 1983 against both Defendants: one for violation of the First Amendment and the other for violation of the due process protections of the Fifth and Fourteenth Amendments.  (*Id.* at 29–34 (Counts II & III).)

Presently before the Court are Sheriff Bilal's Motion to Dismiss the First Amended Complaint (Doc. No. 69) and Patterson's Motion to Dismiss (Doc. No. 77).  Plaintiffs oppose both motions.  (Doc. Nos. 72, 80.)  For the reasons discussed below, the Court grants Sheriff Bilal's motion and denies Patterson's motion.

## I.   FACTS

This case is premised on an unusually complicated set of facts and a long and winding procedural history, given that it arises out of an almost thirty-year dispute in state court in the matter of *Anthoneé Patterson v. Kenneth Shelton*, July Term 1995, No. 2945 (the "Patterson Action").  Accepting the allegations in the FAC as true, the facts are as follows:

### A.   *The Church and Church Corporation*

The Church, an unincorporated entity, was founded by Bishop S.C. Johnson in 1919 and is headquartered in Philadelphia at 701 South 22nd Street.  (Doc. No. 67 at ¶ 32; Doc. No. 67-4 at ¶ 3.)  It has more than 50 satellite locations across the United States.  (Doc. No. 67-4 at ¶ 7.)

The Church's highest adjudicatory body is its spiritual leader, the General Overseer (also known as the Bishop).  (*Id.* at ¶ 8.)  The General Overseer position is a lifetime appointment. (*Id.* at ¶ 9.)  Following the death of Bishop S. McDowell Shelton in 1991, Bishop Kenneth Shelton has served as the General Overseer of the Church since 1992.  (*Id.* at ¶ 10.)  At that time (1992), Patterson was excommunicated from the Church.[2]  (Doc. No. 67 at ¶¶ 2, 21.)

_____

[2] In addition, in 2006, the Council of Priests declared that "it [would] not accept Anthonee [sic] Patterson or any of those who aid, abet or associate with him as members or officers of this Church, as they have demonstrated that they hold religious and doctrinal views contrary to our own."  (Doc. No. 67-

The Church Corporation is a separate entity and was duly incorporated as a non-profit corporation under the laws of Pennsylvania in 1947. (*Id.* at ¶ 35.) The Church's business interests are managed by the Church Corporation's Board of Trustees. (Doc. No. 67-4 at ¶ 12.) The Church Corporation manages property for the benefit of the Church's members. (*Id.*; *see also* Doc. No. 67 at ¶¶ 94, 97 (alleging that the Church Corporation holds title to the property Patterson seeks to obtain).)

The Board of Trustees is currently comprised of six trustees. (Doc. No. 67-4 at ¶ 13.) Members of the Board of Trustees are members of the Church and clergy in the Church. (*Id.* at ¶ 19.) The General Overseer serves as the President of the Board of Trustees. (*Id.* at ¶ 14.) Because the General Overseer serves for life, the position of President of the Board of Trustees is necessarily also a lifetime appointment. (*See id.*) All other members of the Board of Trustees must first be nominated by the General Overseer and then voted on by the General Assembly. (*Id.* at ¶¶ 17–18.)

## B.     *The Patterson Action*

Bishop McDowell Shelton's death "led to a bitter struggle over control of the Church and Church Corporation" and resulted in numerous lawsuits, including the Patterson Action. (*See* Doc. No. 67 at ¶¶ 37, 46.)

In 1995, Patterson filed the Patterson Action against Bishop Kenneth Shelton and Erik Shelton, a Church Corporation Board Member, in the Philadelphia Court of Common Pleas. (*Id.* at ¶ 46.) Patterson alleged that Bishop Shelton looted the Church and Church Corporation's funds and violated the Pennsylvania Nonprofit Corporation Law ("NPCL") by failing to present an annual report of the Church Corporation's financial affairs. (*Id.*) Patterson sought (1) the

_____

6.)

appointment of a receiver to take control of the Church Corporation's property, (2) an order requiring the issuance of annual financial reports for the years 1991–1994, (3) an accounting of all funds removed from the Church or Church Corporation's accounts by Bishop Shelton or those acting in concert with him, (4) an order confirming Patterson as General Overseer, and (5) an order commanding that elections be held for such offices as the Court finds to be vacant. (*Id.* at ¶ 47.)

On February 22, 1996, the Patterson Action was stricken from the docket and remained that way until December 2004, when Patterson moved to reinstate it. (*Id.* at ¶ 49.) On January 10, 2006, Judge James Murray Lynn issued an Order officially dismissing Erik Shelton as a party to the Patterson Action, leaving Patterson and Kenneth Shelton as the only two remaining parties. (Doc. No. 67-9.) The Order also referred the Patterson Action to arbitration, noting that "[t]his arbitration will be binding on *both* parties with no right to appeal," and dismissed the case. (*Id.* (emphasis added).)

In February and March 2006, Bishop Shelton and Patterson each individually signed an arbitration agreement, pursuant to which they agreed to go to final, binding arbitration. (Doc. No. 67-8.) The Church and Church Corporation are not mentioned in the agreement. (*See id.*)

On April 26, 2006, the Arbitrator, retired United States Magistrate Judge Edwin E. Naythons ("the Arbitrator"), issued his decision. (Doc. No. 67-11 ("April 26 Arbitration Award").) The Arbitrator determined that Kenneth Shelton committed "various acts of fraud, mismanagement, conspiracy, breach of fiduciary responsibilities," and violated the "Bylaws and the Articles of Incorporation in seizing Corporate funds and assets" and "deplet[ing] corporate bank accounts." (*Id.* at 16.) The Arbitrator also concluded that Patterson "has been shown to have acted in harmony with the laws, usages and customs accepted by the General Assembly

4

before the dispute and dissension arose" and that, as a result, Patterson's faction should hold title to the Church Corporation's property. (*Id.* at 16–17.) However, the Arbitrator stated that before any property could vest in Patterson's faction, an accounting must be completed "of all funds removed from Corporate Church accounts by Bishop Shelton" within thirty days, and he directed the parties to find a mutually satisfactory receiver. (*Id.* at 17.)

On May 8, 2006, the Arbitrator issued a supplemental arbitration adjudication. (Doc. No. 67-12 ("May 8 Supplemental Adjudication").) The Arbitrator wrote: "It has been brought to the attention of the Chancellor that newly retained counsel for the Defendant and the Church have sought to collaterally attack the final judgment on the merits . . . by asserting that the Church was not named as a party in the Complaint and hence there is a Fourteenth Amendment violation of taking property without due process." (*Id.*) The Arbitrator rejected this collateral attack as meritless: first, he found that it violated Patterson and Kenneth Shelton's arbitration agreement and second, he noted that "all procedural arguments including standing and failure to join indispensable parties were expressly waived prior to the commencement of the hearings before the Chancellor." (*Id.*) Last, the Arbitrator reasoned that, "In any event even were the corporation added as a party Defendant as counsel is asserting, the result would inevitably be the same as the 'corporate veil' would be pierced[.]" (*Id.*) The Arbitrator concluded he could pierce the corporate veil between Bishop Shelton and the Church Corporation, having found a "failure to adhere to corporate formalities" and "evidence of intermingling of corporate and personal affairs." (*Id.*) The Arbitrator then appointed GlassRatner to serve as a receiver of the Church Corporation's property. (Doc. No. 67 at ¶ 54.)

On July 10, 2006, the trial court denied Bishop Shelton's petitions to vacate the Arbitration Award and confirmed the Arbitration Award. (Doc. No. 67-14; Doc. No. 67 at ¶ 60.)

A few weeks later, on July 20, 2006, Patterson filed a praecipe requesting that the Prothonotary enter judgment on the April 26, 2006 Arbitration Award in Patterson's favor against Bishop Shelton.  (Doc. No. 67 at ¶ 58.)  The Prothonotary entered judgment.  (*Id.*)

On October 3, 2006, the Arbitrator issued his Final Adjudication and Decree, which was back dated July 25, 2006.  (Doc. No. 67-13 ("Arbitrator's Final Adjudication").)  In the Final Adjudication, the Arbitrator suspended all Church officers and Trustees from their positions and barred them from holding office for five years.  (Arbitrator's Final Adjudication at 11 ¶¶ 4, 7.)  This provision, in effect, required that Kenneth Shelton be stripped of his title as President of the Board of Trustees.  The Arbitrator recognized, however, that Bishop Kenneth Shelton "<u>shall not</u> be dismissed as presiding Bishop unless and until a meeting of the Church corporation shall be called and notice of such meeting given . . . according to the bylaws, regulations, practice, discipline, rules, and usage of the Church."  (*Id.* at 11 ¶ 2.)

The Arbitrator then declared Patterson President of the Board of Trustees and named him as receiver of the Church and Church Corporation's property.  (*Id.* at 11 ¶ 3 ("All property of the [Church] held by the trustees of the [Church Corporation] Overseen by Kenneth N. Shelton, President and those trustees serving with him is hereby DECREED transferred to the Trustees and [Church Corporation], under President Patterson's control and responsibility as receiver."); *see also id.* at 12 ("to continue the [sic] allow for the smooth transition of all property (real and personal) to Anthonee [sic] Patterson and his officers . . .").)

After the Arbitrator issued the Final Adjudication, on October 12, 2006, Patterson again requested that the Prothonotary enter judgment on the Arbitration Award in his favor, this time requesting it be entered against the Church and Church Corporation.  (Doc. No. 67 at ¶ 59.)  The Prothonotary entered judgment.  (*Id.*)

### C.      Appeals of the Patterson Action and Writ of Possession

There were then a number of appeals filed and the case volleyed back and forth between the trial court and Commonwealth Court for years.[3]  At bottom, the Patterson Action took an incredibly "circuitous route."  (Doc. No. 67 at ¶¶ 61–79.)  For the purposes of the instant motions to dismiss, the Court does not chronicle each appeal, but notes that ultimately, on April 15, 2019, the Commonwealth Court denied Bishop Shelton's latest appeal, and on October 5, 2020, the United States Supreme Court denied certiorari.  (*Id.* at ¶ 79.)  On November 2, 2020, following Patterson's October motion to lift the order staying execution of judgments in the Patterson Action, the trial court lifted the stay.[4]  (*Id.* at ¶¶ 81–82.)

On November 23, 2020, Patterson obtained a Writ of Possession for the Church's headquarters and Sheriff Bilal posted an Eviction Notice requiring that the Church be vacated by December 15, 2020 at 9:00 a.m.  (*Id.* at ¶ 83; Ex. 67-2.)  Plaintiffs allege that "[t]he Writ of Possession was obtained as a result of the improperly entered judgment against Plaintiffs by Patterson in October 2006."  (Doc. No. 67 at ¶ 84.)  Plaintiffs also allege that "Patterson acted together with Sheriff Bilal and/or has obtained significant aid from Sheriff Bilal in seeking to execute on that unconstitutional judgment."  (*Id.* at ¶ 85.)

On December 2, 2020, Bishop Shelton filed an Emergency Motion for a Permanent Injunction, which the Court of Common Pleas ultimately denied on January 27, 2021.  (*Id.* at ¶¶ 86–87.)  Bishop Shelton appealed that decision and requested a stay pending resolution of the appeal; his request for a stay was denied on February 4, 2021.  (*Id.* at ¶ 88.)

---

[3] There were also other actions brought in federal court during this time.  (*See* Doc. No. 37 at 18–20, 26–27.)

[4] The trial court had originally granted the stay on January 29, 2018.  (Doc. No. 37 at 29.)

### D.      Procedural History as to the Instant Case

On February 11, 2021, Plaintiffs filed their original Complaint (Doc. No. 1) and an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 4). Ultimately, following an evidentiary hearing, this Court granted the preliminary injunction on March 19, 2021.  (Doc. Nos. 37, 38.)  The Court enjoined Defendants "from enforcing against Plaintiffs the April 26, 2006 Arbitration Adjudication, May 8, 2006 Supplemental Adjudication, July 25, 2006 Final Adjudication, Writ of Possession, or any other order or adjudication in the Patterson Action, and from attempting to take control of the Church or any property of the Church or Church Corporation."  (Doc. No. 38.)  Shortly thereafter, Patterson filed a notice of appeal.  (Doc. No. 39.)  On December 21, 2021, the Third Circuit affirmed our March 19, 2021 Order.  (Doc. No. 41.)

After Sheriff Bilal filed her first motion to dismiss, Plaintiffs filed the FAC.  (Doc. Nos. 66, 67.)  Presently before the Court are Sheriff Bilal's second motion to dismiss and Patterson's motion to dismiss.  (Doc. Nos. 69, 77.)  Plaintiffs oppose both motions.  (Doc. Nos. 72, 80.)  The Court addresses each motion in turn below.

## II.      SHERIFF BILAL'S MOTION TO DISMISS

Sheriff Bilal moves to dismiss the FAC on two grounds:  first, she argues that Plaintiffs lack standing and second, she asserts that Plaintiffs have failed to plead sufficient facts to state a *Monell* claim.  (Doc. No. 69-1 at 10–18.)  Here, because the Court finds that the action is moot as to Sheriff Bilal, the Court does not address the Sheriff's arguments.

Although the parties did not raise mootness in their briefs, the Court addresses the issue *sua sponte* because whether this action is now moot implicates our subject matter jurisdiction. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) ("Although the parties did not raise the issue in their original briefs, we resolve the [mootness]

issue *sua sponte* because it implicates our jurisdiction."); *Zacharkiw v. Prudential Ins. Co. of Am.*, Civil Action No. 10-cv-0639, 2012 WL 39870, at *2 (E.D. Pa. Jan. 6, 2012) ("Importantly, a court has no subject matter jurisdiction over a controversy that has become moot.  In other words, a court lacks jurisdictional authority to adjudicate a now-moot controversy . . . . [B]ecause subject matter jurisdiction is central to a court's authority, a court can raise issues of subject matter jurisdiction *sua sponte* at any time." (cleaned up)); *Gordon v. E. Goshen Township*, 592 F. Supp. 2d 828, 837 (E.D. Pa. 2009) ("In this case, judicial defendants do not raise the issue of mootness in their Motion to Dismiss.  A federal court, however, may raise it *sua sponte* as the court is prohibited from issuing an advisory opinion."); *see also Seneca Resources Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our continuing obligation to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.").

Under Article III of the Constitution, a federal court may only exercise jurisdiction where an actual "case" or "controversy" exists.  *See, e.g.*, *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017); *Donovan*, 336 F.3d at 215; *Gordon*, 592 F. Supp. 2d at 835.  Courts enforce this case-or-controversy limitation through several justiciability doctrines, including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions."  *Hamilton*, 862 F.3d at 334–35 (cleaned up).

"An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  A case becomes moot if "developments occur during the course of the adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief."  *Hamilton*, 862 F.3d at 335 (cleaned up).  "Mootness has been described as the

doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English*, 520 U.S. at 68 n.22 (cleaned up); *see also id.* at 67 ("As a state employee subject to Article XXVIII, Yniguez had a viable claim at the outset of the litigation in late 1988 . . . . Yniguez left her state job in April 1990 to take up employment in the private sector, where her speech was not governed by Article XXVII.  At that point, it became plain that she lacked a still vital claim for prospective relief.").

Here, Plaintiffs plead that Patterson obtained a Writ of Possession for the Church's headquarters on November 23, 2020 and that the Writ was obtained as a result of the improperly entered judgment in state court against Plaintiffs.  (Doc. No. 67 at ¶¶ 83–04.)  Plaintiffs also allege that Sheriff Bilal posted an Eviction Notice requiring that the Church be vacated by December 15, 2020 at 9:00 a.m.  (*Id.* at ¶ 83; *see also id.* at ¶ 133 ("[T]he Sheriff was prepared here to assist Patterson in enforcing the unconstitutional judgment through the Writ of Possession and Eviction Notice, which would result in the eviction of Church members from, among other places, the Church sanctuary and would prevent Bishop Shelton from ministering to his flock.").)  That Writ of Possession is now expired.  (*Id.* at ¶ 92.)  Pa. R. Civ. P. 3106(d) ("A writ shall not be served nor shall a levy or attachment be made thereunder after the expiration of ninety days from the date of issuance or reissuance.").  Without a valid writ, there is no risk of Sheriff Bilal executing a writ—or otherwise assisting Patterson in executing the allegedly unconstitutional judgment entered against Plaintiffs in state court.  In other words, the risk of harm that Plaintiffs alleged they faced by way of Sheriff Bilal's actions has been eliminated.  Accordingly, because the writ is expired, this action is moot as to Sheriff Bilal.[5]

---

[5] The Court does not find the action moot as to Patterson, however.  This distinction is best understood in terms of the imminence of the alleged harm.  Because the writ of execution has expired,

In addition, this case does not fall within the "capable of repetition yet evading review" exception to the mootness doctrine. "The capable-of-repetition doctrine is a narrow exception that 'applies only in exceptional situations' where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Hamilton*, 862 F.3d at 335 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Contrary to Plaintiffs' assertions otherwise,[6] the Court cannot find that this is the sort of action that is incapable of review or that there is "a reasonable expectation" or "demonstrated probability" that the "same controversy will recur" here, at least as to Sheriff Bilal. *Id.* Again, because there is no valid writ (and Patterson cannot currently obtain a new writ), there is *no risk* of the Sheriff enforcing any writ against Plaintiffs.

And to the extent that Plaintiffs argue that the harm may be repeated because the Sheriff and Patterson are only *preliminarily* enjoined from enforcing the arbitration adjudications—and therefore Patterson may go ahead and obtain another writ and seek the Sheriff's assistance in enforcing the new writ—Plaintiffs miss the point. This is an action in which Plaintiffs seek declaratory and *permanent* injunctive relief. (Doc. No. 67 at 34–35.) Accordingly, at the end of the case, Patterson will either be permanently enjoined from enforcing the arbitration

---

and Patterson is prohibited from obtaining a new writ under the preliminary injunction, there is no imminent threat of the Sheriff evicting Plaintiffs. In other words, no harm can come to Plaintiffs from dismissing Sheriff Bilal because without the writ, Sheriff Bilal lacks the authority to take any action against the Plaintiffs. By contrast, Patterson, were he not a party to this action, could immediately obtain a new writ of possession for the Church premises and attempt to execute the state court judgment. The preliminary injunction is the only thing keeping him from harming Plaintiffs.

[6] Plaintiffs argue that the capable of repetition yet evading review exception to the *mootness* doctrine applied when opposing Sheriff Bilal's motion to dismiss for lack of *standing*; in doing so, they confuse mootness and standing. (*See* Doc. No. 72 at 8–9.) Plaintiffs also plead that the exception applies in their FAC. (*See* Doc. No. 67 at ¶ 139 (alleging that "Plaintiffs' constitutional violations are ongoing and capable of repetition").)

adjudications (i.e., he will be unable to obtain another writ) or he will be permitted to obtain a new writ to the extent that the Court finds that there is no underlying constitutional violation and/or the arbitration adjudications are lawful.  Therefore, looking forward, the Sheriff will only ever be permitted to execute a lawful writ as it pertains to this case.

For these reasons, the Court dismisses the action as to Sheriff Bilal.

## III.     PATTERSON'S MOTION TO DISMISS

Next, the Court turns to Patterson's motion to dismiss.

### A.     *Legal Standard*

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (quotation marks and alterations omitted).  Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.     *Discussion*

In his motion, Patterson argues that the FAC should be dismissed because Plaintiffs failed to comply with Federal Rule of Civil Procedure 15 when they amended their complaint and

because Patterson was not a state actor and therefore a § 1983 claim cannot be brought against him.  (Doc. No. 77-2 at 5–6.)  Patterson also argues that even if he was a state actor, the good faith defense applies to him, such that Plaintiffs' § 1983 claim still fails.  (*Id.* at 7.)  Last, Patterson argues that:  he was never excommunicated from the Church; additional record evidence shows that Plaintiffs were parties to the Patterson Action; and he should be entitled to assume his office as President of the Church Corporation's Board of Trustees.  (*Id.* at 7–16.)  The Court addresses Patterson's contentions below.

## 1.    Timeliness under Rule 15

First, the Court rejects Patterson's argument that Plaintiffs' FAC was untimely.  Under Rule 15(a)(1)(B), if the pleading is one to which a responsive pleading is required, a party may amend its pleading once as a matter of course either 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1)(B).  Here, a complaint is a pleading to which a responsive pleading is required, and Plaintiffs filed the FAC on July 15, 2022—21 days after the City filed its Rule 12(b)(1) and (6) motion on June 24, 2022.  (Doc. Nos. 66, 67.)  Therefore, Plaintiffs were entitled to amend their complaint as of right and Patterson's motion to dismiss for untimeliness is denied.

## 2.    § 1983 Claim

Second, Patterson argues that he is not a state actor and that, even if he was, he acted in good faith, such that a § 1983 claim cannot lie against him.  We address each argument in turn.

### i.    *State Action*

To state a § 1983 claim, a plaintiff must show "(1) the violation of a federally protected constitutional or statutory right, (2) by state action or action under color of law."  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1264 (3d Cir. 1994).  Courts conduct a two-part inquiry to determine whether a private party is subject to liability under § 1983.  *Lugar v.*

*Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982); *Jordan*, 20 F.3d at 1265.  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."  *Lugar*, 457 U.S. at 937.  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  *Id.*; *see also Jordan*, 20 F.3d at 1266 ("Before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the deprivation, e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request.").  As to the second prong, the Supreme Court recognized that such a limit was needed because otherwise, "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."  *Lugar*, 457 U.S. at 937.

The Third Circuit has also cautioned that "a private party is not converted into a state actor as long as the assistance of state officials remains merely a potential threat.  It is only when, and if, such potential is realized that a private party may be converted into a state actor for purposes of satisfying the state action element of a § 1983 claim."  *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) (cleaned up).

*Jordan v. Fox, Rothschild, O'Brien & Frankel* and *Grillo v. BA Mortgage, LLC* are instructive.  In *Jordan*,[7] the plaintiff's landlord and the landlord's attorneys at Fox Rothschild

---

[7] The Court notes that it must follow Third Circuit precedent, regardless of whether Patterson believes *Jordan* is "wrongly decided."  (Doc. No. 77-2 at 6.)  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 544 (E.D. Pa. 2019) ("The district court is the lowest court in our federal hierarchical system and is bound by rulings of its circuit court and the Supreme Court.").

invoked a confession of judgment clause in the lease, causing the Prothonotary to enter judgment against the plaintiff for rents that the landlord claimed it owed.  *Id.* at 1253.  The Sheriff then garnished the plaintiff's checking account without notice or a hearing.  *Id.*  As to the execution and attachment proceedings, the plaintiff alleged that "the acts of the sheriff which the [landlord] and [the landlord's attorneys] set in motion denied it the use of the funds in its bank account." *Id.* at 1266.  The Third Circuit held that both *Lugar* requirements were satisfied and, therefore, affirmed the district court's conclusion that the Fox Rothschild attorneys were state actors for § 1983 purposes.  *Id.* at 1267.  First, "[w]hen the sheriff, on the direct request of Fox Rothschild, themselves acting, in turn, on instruction from the [landlord], served the writ garnishing [the plaintiff's] checking account at Fidelity, they caused the state forcibly to deprive [the plaintiff] of its property without the pre-deprivation notice and hearing due process requires."  *Id.*  The Third Circuit concluded that the second *Lugar* requirement was also satisfied because the deprivation complained of "was accomplished through use of the state's attachment and garnishment procedures."  *Id.*  In its analysis, the Third Circuit stated that "writs of execution and attachment involve actions by state officials that plainly involve or threaten the use of legal force."  *Id.*

Similarly, in *Grillo*, the plaintiffs purchased a family home, but the plaintiffs were unable to make timely mortgage payments and a default judgment in the amount of $153,910.85 was entered against the plaintiffs.  No. Civ.A.2:04CV02897LDD, 2004 WL 2250974, at *1 (E.D. Pa. Oct. 4, 2004).  "A writ of execution was issued for the sale of plaintiffs' home, and a sheriff's sale was scheduled."  *Id.*  Then, plaintiffs' counsel sent the defendant Spear & Hoffman law firm (which represented defendant BA Mortgage, the judgment creditor) a certified check in the amount of $159,909.87 (representing the amount of the original default judgment plus costs).  *Id.* In the letter that accompanied the check, plaintiffs' counsel also asked that the defendant cancel

the sale of the plaintiffs' home.  *Id.*  Later, Spear & Hoffman sent plaintiffs' counsel the check back via hand delivery, along with a letter stating that it was insufficient and the amount necessary to satisfy the judgment and costs was now $191,887.46.  *Id.*  Given that this was done the morning of the sheriff's sale, the plaintiffs were unable to attend the sheriff's sale and bid on their home.  *Id.*  Ultimately, the plaintiffs' home was sold through the Sheriff to defendant BA Mortgage.  *Id.*  The plaintiffs brought a § 1983 claim, pleading that Spear & Hoffman "caused the Sheriff of Bucks County to sell the [plaintiffs'] home," and Spear & Hoffman moved to dismiss, arguing that it was not a state actor.  *Id.* at *6.  The court denied the motion to dismiss, reasoning that Spear & Hoffman used the sheriff to execute a writ on a default judgment to sell the home and therefore the plaintiff adequately pleaded that Spear & Hoffman was a state actor. *Id.*  ("[P]ursuant to *Jordan*, this Court finds that, for purposes of a section 1983 analysis, Spear & Hoffman functioned as a state actor when it effectively and knowingly invoked the force of Pennsylvania law to foreclose on plaintiffs' property.").

The same logic applies with equal force here.  Plaintiffs plead that Patterson obtained a Writ of Possession for the Church's headquarters on November 23, 2020 and thereafter Sheriff Bilal posted an Eviction Notice requiring that the Church be vacated by December 15, 2020 at 9:00 a.m.  (Doc. No. 67 at ¶ 83; *see also id.* at ¶ 130 ("Patterson further seeks to enforce the arbitration adjudications and judgment through Sheriff Bilal . . . .  Specifically, Patterson has sought, and will seek in the future absent permanent relief from this Court, to have Sheriff Bilal evict Plaintiffs and their parishioners from the Church's main sanctuary and other Church Corporation property, and to have all Church property and assets turned over to him.").)  This was not merely a potential threat.  But for the preliminary injunction, the Church members would have been evicted from the Church premises by the Sheriff, pursuant to the Eviction Notice the

Sheriff posted at Patterson's behest.  And because, as Plaintiffs allege, they were not parties to the Patterson Action, this would amount to an unconstitutional deprivation of property.[8] Accordingly, Plaintiffs have adequately alleged that Patterson is a state actor for purposes of a § 1983 claim.

### ii.    *Good Faith Defense*

The Third Circuit has recognized a good faith defense for private parties acting under the color of state law.  *See Jordan*, 20 F.3d at 1276–77 (concluding that "'good faith' gives state actors a defense on their subjective state of mind"); *see also Diamond v. Pa. State Ed. Ass'n*, 972 F.3d 262, 271 (3d Cir. 2020) ("*Jordan* therefore established that the good faith defense is available to a private-party defendant in a § 1983 case if, after considering the defendant's 'subjective state of mind,' the court finds no 'malice' and no 'evidence that the defendant either knew or should have known of the statute's constitutional infirmity.'" (citation omitted)).

Here, Plaintiffs have sufficiently pleaded that Patterson acted in bad faith at this early stage in the litigation to withstand a motion to dismiss.  (*See, e.g.*, Doc. No. 67 at ¶ 9 ("Patterson was well aware that the Church and Church Corporation were not parties to the Patterson Action or arbitration, nor were they in privity with Bishop Shelton.  Yet he had a judgment entered against them to effectuate his decades-old vendetta.  In so doing, Patterson acted with malice and/or gross recklessness in seeking to deprive Plaintiffs of their property and First Amendment rights without due process."); *id.* at ¶¶ 148–49, 151 ("Neither the Church nor the Church

---

[8] Significantly, in arguing that he is not a state actor, Patterson does not accept the allegations in the FAC as true, as this Court *must* do.  (*Compare* Doc. No. 77-2 at 6–7 ("Plaintiffs have had notice of the underlying arbitration and litigation and have participated therein, contrary to their false claims."), *with* Doc. No. 67 at ¶ 133 ("[N]either the Church nor Church Corporation was a party to the Patterson Action or the arbitration."); *id.* at ¶ 147 ("Neither the Church nor the Church Corporation were ever made party to the Patterson Action, the lawsuit from which the judgment Patterson seeks to enforce arose.").)

Corporation was ever made a party to the arbitration proceeding that stemmed from the Patterson

action, nor were they in privity with Bishop Shelton.  Moreover, the only two parties to the

arbitration agreement at issue were Patterson and Bishop Shelton – a fact Patterson repeatedly

has admitted on the record.  Consequently, the absence of the Church and the Church

Corporation from the Patterson Action (and the underlying arbitration) renders any purported

judgment against them invalid and unenforceable . . . . Patterson was well aware of those

facts.").)  *See Rappaport v. Norlar, Inc.*, Civ. A. No. 93-4756, 1994 WL 167959, at *8 (E.D. Pa.

Apr. 29, 1994) ("Plaintiffs allege in the Complaint that defendants knew that the state procedures

through which Norlar obtained the Writs of Execution and attached the plaintiffs' assets were

constitutionally defective, and that Norlar and the Powell Firm used the Pennsylvania attachment

procedure intentionally and maliciously to deprive plaintiffs of their rights to due process.  Such

allegations satisfy the requirements for pleading lack of good faith adopted by the Third Circuit

in *Jordan*." (cleaned up)).

Further, Plaintiffs seek actual damages for their § 1983 claims in an amount to be proven

at trial.  (*See, e.g.*, Doc. No. 67 ¶¶ 141, 159.)  Patterson's subjective frame of mind (and whether

the good faith defense therefore applies to bar Plaintiffs' § 1983 claim) is a question of fact that

the trier of fact should decide at trial.  *See, e.g.*, *Foster v. City of Philadelphia*, Civil Action No.

12-5851, 2014 WL 5821278, at *22 (E.D. Pa. Nov. 10, 2014) (denying summary judgment

motion as to good faith defense because the defendant's "subjective state of mind is for a jury to

decide" and the evidence raised questions of fact); *Wolfe v. Horn*, 130 F. Supp. 2d 648, 659

(E.D. Pa. 2001) (denying summary judgment motion that asserted a good faith defense because

"the defendants' subjective state of mind cannot be evaluated without weighing the evidence and

determining credibility");

\*       \*       \*

In sum, the Court finds that Plaintiffs have sufficiently pleaded that Patterson was a state actor who lacked good faith.  For these reasons, the Court denies Patterson's motion to dismiss the § 1983 claims.

### 3.    <u>Remaining Arguments</u>

Patterson also argues that he was never excommunicated from the Church.  (Doc. No. 77-2 at 7–8.)  Because this contradicts Plaintiffs' Amended Complaint and/or documents relied upon or integral to the Amended Complaint (*see* Doc. No. 57 at ¶¶ 21–22, Doc. No. 67-6), and the Court must take their allegations as true at the motion to dismiss stage, the Court denies Patterson's motion to dismiss on this ground.

Patterson also asserts that Plaintiffs participated in the arbitration and subsequent litigations (*id.* at 8–15), and he is entitled to enter the Church to take his office as President of the Church Corporation (*id.* at 16).  By so arguing, Patterson essentially asks the Court to reconsider its prior ruling on the motion for preliminary injunction.  The Court denies Patterson's motion to dismiss on these grounds as an untimely motion to reconsider.[9]

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that this action is moot as to Sheriff Bilal and dismisses Sheriff Bilal as a defendant in this case.  The Court denies Patterson's motion to dismiss.  An appropriate Order follows.

---

[9] The Court addresses the motion to reconsider standard at length in a concurrently issued Memorandum on Patterson's motions to dissolve, to supplement, and to take judicial notice.