IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., et al.,**<br><br>    Plaintiffs,<br><br>    *v.*<br><br>**ANOTHNEÉ PATTERSON, et al.,**<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 21-634-KSM |

## MEMORANDUM

**Marston, J.**                                                              **November 14, 2022**

Before the Court are Defendant Anthoneė Patterson's Motion to Dissolve the preliminary injunction the Court entered on March 19, 2021[1] (Doc. No. 51), Motion to Take Judicial Notice (Doc. No. 52); and Motion to Supplement (Doc. No. 58). For the reasons discussed below, the Court grants in part and denies in part the motion to take judicial notice and denies the motions to dissolve and to supplement.[2]

**I.   MOTION TO TAKE JUDICIAL NOTICE**

First, the Court addresses Patterson's motion requesting that the Court take judicial notice

---

[1] The preliminary injunction prohibits Patterson from enforcing against Plaintiffs The Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church Corporation") and the Church of the Lord Jesus Christ of Apostolic Faith (the "Church") arbitration adjudications in the underlying state court case, *Patterson v. Shelton*, July Term 1995, No. 2945 (CCP Phila. Cnty.) (the "Patterson Action") and from attempting to take control of the Church or any property of the Church or Church Corporation (*see* Doc. No. 38). Patterson appealed the Court's issuance of the preliminary injunction (Doc. No. 39), which the Third Circuit Court of Appeals affirmed (Doc. No. 41).

[2] Because the Court writes only for the parties, who are intimately familiar with the facts surrounding this case, and because the facts were extensively outlined in the Court's March 19, 2021 Memorandum granting Plaintiffs' motion for a preliminary injunction (Doc. No. 37), the Court does not restate the underlying facts here.

of a myriad of documents, largely consisting of court filings and orders in the Patterson Action and court filings in other litigations. (Doc. No. 52-1.) As a preliminary matter, the Court notes that the declaration Patterson included in his motion to take judicial notice states that he is attaching certain exhibits, but these exhibits do not match up with what was actually attached. (*Compare* Decl. at ¶ 3 ("Attached herewith as Exhibit A is a true and correct copy of a complaint filed against me and others by Plaintiffs and/or their predecessors in interest in this Court in 1994."), with Ex. 1 (the Commonwealth Court's January 31, 2008 opinion in the Patterson Action).) (*Compare* Decl. at ¶ 4 ("Attached herewith as Exhibit B is a true and correct copy of discovery responses served and filed by the Church and Church Corporation, as parties, in that 1994 action."), *with* Ex. 2 (the Commonwealth Court's January 31, 2018 opinion in the GlassRatner matter).) The Court will only address the exhibits *actually* attached to the motion to take judicial notice.

Patterson argues that those documents may be judicially noticed under Federal Rule of Evidence 201 and, in the alternative, they are admissible as records of regularly conducted activity. (*Id.*) Plaintiffs oppose the motion. (Doc. No. 62.)

Under Federal Rule of Evidence 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Fed. R. Evid. 201(b). Under Rule 201(c), a court "(1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

The vast majority of documents Patterson seeks to judicially notice are either court filings in state or federal actions or the court's opinions or orders in those matters. (*See* Ex. 1

(Commonwealth Court's January 31, 2008 opinion in the Patterson Action); Ex. 2 (Commonwealth Court's January 31, 2008 opinion in the GlassRatner action); Ex. 3 (Commonwealth Court's December 18, 2015 opinion in Patterson Action); Ex. 4 (Pennsylvania Supreme Court's April 27, 2016 denial of allowance of appeal); Ex. 5 (October 11, 2016 letter from the United States Supreme Court in the Patterson Action to Kenneth Shelton's counsel, Danielle Banks, Esquire, denying petition for writ of certiorari); Ex. 6 (Patterson's May 27, 2016 motion in the Patterson Action, with various exhibits attached); Ex. 7 (July 15, 2016 order denying Patterson's appeal); Ex. 8 (Notice of Appeal in Patterson Action); Ex. O (January 4, 2007 Circuit Court for Baltimore City order).)

Patterson appears to want the Court to judicially notice the factual allegations and arguments raised in these various filings and their corresponding exhibits, not just the *existence* of the filings themselves. (Doc. No. 52-1 at 10–11 ¶¶ 1–2 ("[T]he exhibits attached to Patterson's accompanying Motion to Take Judicial Notice are subject to judicial notice and confirm that Plaintiffs repeatedly took the position (when it served their purposes to do so) that they were parties to the underlying Pennsylvania actions or were otherwise in privity with Shelton. They consist of various court filings and other documents confirming that Plaintiffs and Shelton acted in concert with each other or that, at a minimum, Shelton represented their interests.").) The Court will not do so, especially at this stage of the litigation as the Court is simultaneously ruling on Defendants' Motions to Dismiss.[3] *Cf. M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) ("In the context of deciding a Rule 12(b)(6)

---

[3] Although Patterson's motion to take judicial notice is presently before this Court, the Court addresses his and Sheriff Rochelle Bilal's respective motions to dismiss in a concurrent Memorandum issued this same day. The Court also notes that it addressed issue preclusion at length in its March 19, 2021 Memorandum and considered many of the same court filings attached to the instant motion to take judicial notice in determining that the doctrine of collateral estoppel did not apply here. (*See* Doc. No. 37 at 37–66.)

motion that raises issue preclusion concerns, and where a plaintiff has not included the existence of substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims.  Thus, we have held that prior judicial opinion constitutes a public record of which a court may take judicial notice.  We have also held, however, that a court may do so on a motion to dismiss only to establish the existence of the opinion, and not for the truth of the acts asserted in the opinion.").

Instead, in line with well-established law, the Court will take judicial notice "of the fact of their filing and the rulings issued by the court[s] of record," but will not "accept[] as true all the contentions and allegations of the parties contained therein."  *Hynoski v. Columbia Redevelopment Auth.*, 941 F. Supp. 2d 547, 555–56 (M.D. Pa. 2013) (taking judicial notice of objections to takings and four Pennsylvania state court opinions related to the objections because "all of these documents are matters of public record and their accuracy is not reasonably questioned as they were all filed in formal state court proceedings" and emphasizing that "[t]aking judicial notice of these documents does not mean that the court accepts as true all the contentions and allegations of the parties contained therein.  Rather, the court notices the fact of their filing and the rulings issued by the court of record"); *see also Travelers Cas. & Surety Co. v. Falkowski*, Civil Action No. 15-6737, 2021 WL 2355915, at *2 (E.D. Pa. June 9, 2021) ("Publicly available records from prior judicial proceedings may be noticed to show what was in the public realm at the time, not whether the contents of those documents are true.  Taking such judicial notice is permissible only to show the court's document's existence.  To the extent that a party asks for judicial notice of facts gleaned from these documents, courts have declined to do so."); *id.* at *2 (denying the defendant's motion to take judicial notice because the "defendant

requests more than simply taking notice that the Information against him *exists*; he wants the Court to take notice that the Information *reveals* that Plaintiff had knowledge of his alleged conduct such that the statute of limitations for the instant claims has run"); *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 354 n.1 (E.D. Pa. 2015) ("[W]hile the Court may take judicial notice of prior court proceedings, it is not proper to take judicial notice of the truth of the facts averred in those proceedings." (cleaned up)); *In re Mahmud*, Bankruptcy No. 08-10855bf, 2008 WL 8099115, at *6 (Bankr. E.D. Pa. Dec. 4, 2008) ("[J]udicial notice of the existence of a document filed with the court is not the same as judicial notice of the truth of the factual assertion contained in that document . . . . [A] court may not take judicial notice of hearsay allegations as being true merely because they are part of a court record or file.  It is difficult to understand why the filing of a document with the court should magically result in the contents of the document attaining a sufficient degree of reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial before a bankruptcy judge." (cleaned up)).

As for the printout of an appellate state court docket (Ex. 9), the Court takes judicial notice of it.  *See Hadesty v. Rush Twp. Police Dep't*, Civil Action No. 3:14-2319, 2016 WL 1039063, at *5 (M.D. Pa.  Mar. 15, 2019) ("[T]he court takes judicial notice of the Pennsylvania Magisterial District Court docket:  Commonwealth v. Hadesty . . . . This docket relates to the criminal charges Rush Township filed against the plaintiff, which are central to the plaintiff's malicious prosecution claims in this case . . . . A state court docket by its very nature can be accurately and readily determined, and the accuracy and authenticity of the docket cannot reasonably be questioned.")  But the Court does not take judicial notice of a litigation chart (Ex. N) that Patterson purports to have created himself because it cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid.

5

201(b).[4]

Thus, the Court grants in part and denies in part Patterson's motion to take judicial notice.

## II. MOTION TO DISSOLVE AND MOTION TO SUPPLEMENT

Next, the Court turns to the motion to dissolve[5] and motion to supplement the motion to dissolve.

Patterson moves to dissolve the preliminary injunction under Federal Rules of Civil Procedure 54(b) and 65. (Doc. No. 51 at 2.) In his motion, Patterson argues that Plaintiffs should be judicially estopped from arguing that they were not parties to the Patterson Action, or in privity to Bishop Kenneth Shelton. (*See, e.g.*, *id.* at 7, 12–13.) Patterson also argues that Plaintiffs obtained the preliminary injunction through fraud and misrepresentation and that "changed circumstances" make the preliminary injunction "unnecessary or inappropriate" because "Plaintiffs' claims that they did not participate in the underlying litigation and are not in privity with or virtually represented by Kenneth Shelton are demonstrably false." (*Id.* at 7, 12; *see also id.* at 1–11.) In addition, Patterson asserts that amendments to the Church bylaws show

---

[4] The Court also rejects Patterson's argument that his litigation chart is admissible under the regularly conducted activity hearsay exception. Under Federal Rule of Evidence 803(6), a record of an act, event, condition, opinion, or diagnosis may be excluded from the rule against hearsay if: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . and (E) the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6). Patterson has not established how the litigation chart is in any way part of his regularly conducted activity as a bishop for his flock; his declaration is wholly conclusory on this point. (*See* Doc. No. 52-1 at 13 ¶ 16 ("Attached herewith as Exhibit N is a true and correct copy of a litigation chart I have created to track the various proceedings in multiple jurisdictions concerning these disputes and periodically updated as the proceedings commenced which I have maintained in the regular course of the business of the Church faction I represent.").)

[5] The Court also considers the exhibits attached to Patterson's motion to supplement and motion to take judicial notice in deciding the motion to dissolve.

that Plaintiffs were in privity with Shelton (*id.* at 14–15) and Plaintiffs' counsel misrepresented the factual background of this thirty-year-dispute to the Court (*id.* at 15).  In his supplemental motion, Patterson reiterates the same arguments, asserting that the additional exhibits with which he seeks to supplement the motion to dissolve show that Plaintiffs obtained the preliminary injunction through fraud, Plaintiffs were parties to the Patterson Action or in privity with Kenneth Shelton, and Plaintiffs' counsel made critical factual misrepresentations to the Court.  (Doc. No. 58.)

Plaintiffs oppose the motions, arguing, among other things, that Rules 54(b) and 65 are inapplicable, the motion to dissolve is untimely under Rule 60, and Patterson's motion to dissolve is actually an untimely motion for reconsideration.  (Doc. No. 61.)  For the reasons discussed below, the Court agrees with Plaintiffs and denies Patterson's motions to dissolve and to supplement.

### A. *Rules 54(b) and 65*

First, the Court considers the applicability of Rules 65 and 54(b) to Patterson's motion to dissolve.

Rule 65(a) applies to *preliminary injunctions*, while Rule 65(b) applies to *temporary restraining orders* ("TROs").  Fed. R. Civ. P. 65(a)–(b).  Rule 65(b) governs TROs issued without notice, and under Rule 65(b)(4), an adverse party may move to dissolve the TRO under certain circumstances.  Fed. R. Civ. P. 65(b)(4).  Specifically, Rule 65(b)(4) states, "On 2 days' notice to the party who obtained the [TRO] without notice . . . the adverse party may appear and move to dissolve or modify the order.  The court must then hear and decide the motion as promptly as justice requires."  *Id.*  By its very terms, Rule 65(b)(4) applies only to TROs that were obtained without notice.  *See, e.g.*, *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, Civil Action No. 16-2499, 2016 WL 6442077, at *3 (E.D. Pa. Oct. 31, 2016)

("Rule 65(b)(4) addresses the procedure for dissolving TROs that were obtained without notice. Brand attempts to insert language into Rule 65(b)(4), arguing that it should apply equally to TROs entered with notice. [] Rule 65(b)(4) is expressly limited to TROs entered without notice."). And Rule 65(a) does not have a similar "motion to dissolve" provision. *See* Fed. R. Civ. P. 65(a). Here, the Court entered a preliminary injunction only after providing notice to Defendants and conducting an extensive evidentiary hearing; therefore, Rule 65 is inapplicable.

In addition, Rule 54(b) applies to final judgment when there are multiple claims or multiple parties involved. *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties if the court expressly determines there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."). Here, the Court has not entered any final judgment; rather, the Court has merely entered a preliminary injunction.

For these reasons, the Court finds that Rules 54(b) and 65 are inapplicable here.

### B.     Rule 60

Because Patterson is currently proceeding *pro se*, the Court construes his brief liberally. *See Dophin v. Bank of Am. Mortg. Co.*, 641 F. App'x 131, 133 (3d Cir. 2016); *see also Simmons v. Berryhill*, No. 4:15-CV-1268, 2017 WL 2813296, at *1 (M.D. Pa. June 29, 2017) ("[B]ecause [the plaintiff] is proceeding pro se, I will construe his filing liberally. The obligation to liberally construe a pro se litigant's pleadings is well-established."). Thus, the Court considers whether Patterson seeks relief under Rule 60.

Rule 60 outlines "grounds for relief from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). It states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for several reasons, including "fraud, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

To the extent Patterson moves to dissolve under Rule 60(b), his motion is untimely. Under Rule 60(c), "a motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of judgment or order or the date of proceedings." Fed. R. Civ. P. 60(c). Here, the Court entered the preliminary injunction on March 19, 2021, but Patterson did not file his motion to dissolve until April 19, 2022—over a year later. Because Patterson contends that the preliminary injunction was obtained through fraud (Rule 60(b)(3)), and his motion was filed over a year after the preliminary injunction order was entered, his motion is untimely.[6] And, to the extent Patterson moved to dissolve the preliminary injunction based on another ground, the Court still finds that the year-plus delay is an unreasonably lengthy delay, rendering his motion untimely.

## C. *Reconsideration*

The Court finds that the motion to dissolve is essentially a motion for reconsideration in disguise because Patterson does nothing more than disagree with the Court's conclusion in our March 19, 2021 preliminary injunction opinion that the Church and Church Corporation were not parties to the Patterson Action or in privity to Bishop Shelton. (*Compare* Doc. No. 37 at 56 (holding that the Church and Church Corporation were not parties to the Patterson Action); *id.* at 57 (concluding that the Church and Church Corporation were not in privity with Bishop

---

[6] Even if the motion was timely, the Court finds that none of the documents Patterson cited show that the preliminary injunction was obtained by fraud.

Shelton); *id.* at 67 ("Since Plaintiffs were not a party in the Patterson Action, they were not 'state court losers' and Patterson's *Rooker-Feldman* argument necessarily fails."), *with* Doc. No. 51 at 7 (arguing that "various court filings and other documents confirm[] that Plaintiffs and Shelton acted in concert with each other or that, at a minimum, Shelton represented their interests"); *id.* at 13–14 ("It is important for the Court to understand that this is no mere conflict between Patterson and Kenneth Shelton as two individuals. They are the respective leaders of rival factions of the Church. Patterson asserted the claims adjudicated in the Arbitration on behalf of himself and other Church members harmed by Kenneth Shelton and the trustees under his influence and control looting Church and Church Corporation assets. Kenneth Shelton claimed the right to engage in this misconduct as the undisputed authority over both the Church and Church Corporation. The Plaintiffs here (or their predecessors in interest) joined him in that claim. They should not be allowed to change that position now to thwart the process they participated in and agreed to."); *id.* at 14 (asserting that the amendments to the Church bylaws "would have been entirely unnecessary if there truly was not privity between Kenneth Shelton, the Church, and the Church Corporation"); *id.* ("There is no rational or lawful claim that Plaintiffs or their predecessors in interest were not state-court-losers under *Rooker-Feldman*.").)[7]

"A timely motion for reconsideration under Local Rule 7.1(g) is considered analogous to a motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *Kennedy Indus., Inc. v. Aparo*, Civil Action No. 04-5967, 2006 WL 1892685, at *1

---

[7] Because Patterson makes the same arguments in his motion to supplement as he does in his motion to dissolve, the Court likewise finds that the motion to supplement is, at bottom, a motion for reconsideration. (*See* Doc. No. 58 at 10 ("These exhibits confirm that that [sic], not only were Plaintiffs in this matter state-court losers under the *Rooker-Feldman* doctrine and/or were barred from relitigating their current claims in this proceeding because they were parties in the state court action or, at a minimum, were in privity with Shelton – who has controlled both the Church and Church Corporation since the mid-1990s – but that, in addition, they have expressly waived those claims in the Pennsylvania Litigation Release.").)

(E.D. Pa. July 6, 2006). "The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Out of consideration for finality and judicial economy," courts should grant motions for reconsideration "sparingly." *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted). Before altering or amending a prior decision, courts in this Circuit require the moving party to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Under Local Civil Rule 7.1(g), "motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)." E.D. Pa. Local Civ. R. 7.1(g). As noted above, the preliminary injunction order was entered on March 19, 2021, but Patterson did not file his motion to dissolve until April 19, 2022. Therefore, Patterson's motion to dissolve—which the Court construes as a motion for reconsideration—is untimely.[8]

And, even if it was not untimely, the Court would find that Patterson failed to meet his burden under the motion to reconsideration standard. None of the evidence Patterson offers in his motion to dissolve is new or recent—i.e., none of the exhibits post-date the Court's March 19, 2021 Memorandum and Order. (*See* Doc. No. 51, Ex. A (a complaint dated August 4, 1994, in the matter of *Church of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Fincourt Shelton et al.*, No. 94-CV-H1R (E.D. Pa.)); Ex. B (July 12, 1995 letter from Luther Weaver, Esquire, to

---

[8] Even if the motion was governed by Rule 59(e)'s 28-day deadline, Patterson's motion would still be untimely, since it was filed well over 28 days after our entry of the preliminary injunction order.

11

Patterson's counsel, copying John Brown, Esquire, Plaintiffs' in-house counsel, enclosing Church and Church Corporation meeting minutes from a variety of dates in 1991, 1992, and 1993); Ex. C (transcript of state court proceedings in late 2005 and a March 14, 2006 letter from Luther Weaver, Esquire to Fincourt Shelton, Esquire); Ex. D (March 15, 2006 letter from Luther Weaver, Esquire to Fincourt Shelton, Esquire, attaching names of proposed arbitrators); Ex. E (June 8, 2006 order in *GlassRatner Management & Realty Advisors, LLC v. Church of the Lord Jesus Christ of the Apostolic Faith et al.*); Ex. F (Judge Dych's July 10, 2006 denying Bishop Shelton's petition to vacate and confirming the arbitration award); Ex. G (Judge Dych's July 20, 2006 order in the Patterson Action striking the "Preliminary Objections to the Emergency Petition to Confirm Arbitration Award filed by non-parties, [the Church and Church Corporation" as an impermissible filing, and Judge Dych's July 20, 2006 order in *Church of the Lord Jesus Christ of Apostolic Faith v. Patterson et al.* dismissing the plaintiffs' complaint with prejudice); Ex. H (November 6, 2006 order in Orphans' Court case); Ex. I (January 16, 2007 order in a New Jersey Superior Court case denying motion for temporary restraining order and permanent injunction); Ex. J (March 6, 2013 opinion by the Commonwealth Court); Ex. K (the Church's bylaws, which appear to be most recently amended in July 2006); Ex. L (Commonwealth Court's January 31, 2008 opinion); Ex. M (January 29, 2018 order in Patterson Action, granting in part Kenneth Shelton's stay of execution proceedings, and Bishop Shelton and the Church Corporation's November 2017 Preliminary Objections to Patterson's Praecipe for Writ of Revival).)[9]

---

[9] Given that none of these documents post-dated the Court's March 19, 2021 preliminary injunction order, the Court finds unavailing Patterson's argument that a change in circumstances rendered the preliminary injunction inappropriate. (*See* Doc. No. 51 at 12.) As the Third Circuit has recognized, "[a] motion to modify a preliminary injunction is meant only to relieve inequities that arise *after* the original order. The primary justification for granting a motion to modify is to avoid the injustice of requiring a defendant to continue complying with an injunctive order under circumstances that would

The same is true of the exhibits attached to Patterson's motion to supplement (*see* Doc. No. 58, Ex. A (an unsigned draft settlement agreement in 2006 Court of Common Pleas action); Ex. B (January 29, 2010 complaint in *General Assembly of the Church of the Lord Jesus Christ of Apostolic Faith v. Patterson et al.*); Ex. C (receiver GlassRatner's June 2006 Emergency Petition for Special Injunction)) and his motion to take judicial notice (*see* Doc. No. 52, Ex. 1 (Commonwealth Court's January 31, 2008 opinion in Patterson Action); Ex. 2 (Commonwealth Court's January 31, 2008 opinion in GlassRatner matter); Ex. 3 (Commonwealth Court's December 18, 2015 opinion in Patterson Action); Ex. 4 (Pennsylvania Supreme Court's April 27, 2016 denial of petition for allowance of appeal); Ex. 5 (United States Supreme Court's October 11, 2016 letter informing Kenneth Shelton's counsel that the petition for writ of certiorari is denied); Ex. 6 (Patterson's May 27, 2016 motion for declaration of void judgment and exhibits); Ex. 7 (July 14, 2016 trial court opinion in the Patterson Action); Ex. 8 (Patterson's August 2016 notice of appeal of July 14, 2016 trial court opinion); Ex. 9 (docket sheet with most recent date of March 30, 2017); Ex. N (Patterson's case chart); Ex. O (January 4, 2007 order denying temporary restraining order in Baltimore City Circuit Court and an August 2007 motion to alter judgment)).[10]

Nor does Patterson submit that he did not know *any* of these documents existed until

---

have prevented its entry in the first place." *Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 338 (3d Cir. 1993) (emphasis added); *see also id.* at 338–39 ("Here, the class certification is not such a change. It occurred at the same time the injunction was entered . . . The certification of the class is not a change in circumstances that occurred *after* entry of the preliminary injunction. Therefore, we have no basis for interfering with the district court's order denying modification on that basis." (emphasis added)). Further, a motion to modify an injunction "does not force the trial judge to permit relitigation of his original determination and should not serve as an avenue of untimely review of that determination." *Id.* at 340. That is exactly what Patterson seeks to do here.

[10] Most of the exhibits Patterson attaches to his three motions were made part of the record during the three-day preliminary injunction hearing held in February 2021 and were previously reviewed by the Court.

April 2022—i.e., they were not newly discovered or newly available.[11]  Further, there has been no intervening change in the law and there is no "need to correct a clear error of law or fact or to prevent manifest injustice."  Accordingly, the motion to dissolve must be denied as an untimely and insufficient motion for reconsideration.[12]

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Patterson's motion to take judicial notice.  The Court denies Patterson's motions to dissolve and to supplement.  An appropriate Order follows.

---

[11] To the contrary, in his motion to supplement, Patterson asserts that "these additional documents were not previously submitted because, despite due diligence, he only recently located them while preparing for the pending settlement conference." (Doc. No. 58 at 9.)  This indicates that the documents were in his possession all along and he knew of their existence.

[12] Because the Court finds Patterson's motion is an untimely motion for reconsideration, the Court does not address his judicial estoppel argument.  But, in the alternative, the Court would find that Patterson could, and should, have made this argument at the time of the preliminary injunction hearing, not over a year later after the Court ruled and after the Third Circuit affirmed.