# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., et al., | Civil Action No. 21-634-KSM |
| Plaintiffs, | |
| v. | |
| ANTHONEÉ PATTERSON | |
| Defendant/Counterclaim Plaintiff and Third-Party Plaintiff, | |
| v. | |
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., et al., | |
| Counterclaim Defendants, | |
| and | |
| FOX ROTHSCHILD, LLP., et al. | |
| Third-Party Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO (1) DISMISS DEFENDANT PATTERSON'S COUNTERCLAIMS AND (2) STRIKE THIRD PARTY COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................. 1

II.    FACTS AND PROCEDURAL HISTORY ......................................................... 2

III.   STANDARD OF REVIEW .............................................................................. 3

      *A.*     *Rule 12(b)(1)* ............................................................................. 3

      *B.*     *Rule 12(b)(6)* ............................................................................. 4

IV.   LEGAL ARGUMENTS ................................................................................... 4

      A.     Patterson's Declaratory Judgment Claim (Count I) Fails Because It Is Entirely Duplicative Of His Prior Claims In This Case. ........................................... 5

      B.     Patterson's Breach of Fiduciary Duty Claim (Count II) Fails Because Patterson Lacks Standing and His Claim Is Time-Barred. ................................. 7

      C.     Patterson Fails To Plead Any Sufficient Facts To Support An Abuse Of Process Claim (Count III). ...................................................................... 13

      D.     Patterson's RICO Claim (Count IV) Fails Because Patterson Lacks RICO Standing and Has Failed To Plead A Pattern Of Racketeering Activity Necessary To Support His RICO Claim. ........................................... 16

      E.     All of Patterson's Claims Fail Under Rule 8 Because He Fails to Differentiate The Target Defendants Of His Counterclaims and Third Party Complaint ......... 18

      F.     This Court Should Strike Patterson's Third Party Complaint As Procedurally Defective Under Fed. R. Civ. Rule 14. .............................................. 20

V.     CONCLUSION ................................................................................................. 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,
    483 U.S. 143 (1987)......................................................................................17

*Agresta v. City of Philadelphia*,
    694 F.Supp. 117 (E.D. Pa. 1988) ..............................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4, 19

*Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ*
    *of Apostolic Faith*,
    776 F. Supp. 2d 25 (E.D. Pa. 2011) ...........................................................3

*Askew v. Trustees of General Assembly of the Lord Jesus Christ of Apostolic*
    *Faith Inc.*,
    684 F.3d 413 (3d Cir. 2012).............................................................. *passim*

*United States ex rel. Atkinson v. PA. Shipbuilding Co.*,
    473 F.3d 506 (3d Cir. 2007)........................................................................3

*Baker v. Family Counseling Corp.*,
    440 F. Supp. 2d 392 (E.D. Pa. 2006) .........................................................7

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007)........................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................4, 20

*Berg v. Access Grp., Inc.*,
    2014 WL 4812331 (E.D. Pa. Sept. 26, 2014) ..........................................11

*Binder v. Westar Mortg.*,
    2016 WL 3762710 (E.D. Pa. Jul. 13, 2016)..............................................19

*Butta v. GEICO Cas. Co.*,
    400 F. Supp. 3d 225 (E.D. Pa. 2019) .........................................................6

*Cameron v. Graphic Mgmt. Assoc.*,
    817 F. Supp. 19 (E.D. Pa. 1992) ...................................................13, 14, 15

*Clausi v. Stuck*,
    74 A.3d 242 (Pa. Super. Ct. 2013).................................................13, 14

*Common Cause of Pa. v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009)..........................................................................................7

*Conquest v. WMC Mortgage Corp.*,
  247 F. Supp. 3d 618 (E.D. Pa. 2017) ...........................................................................7

*Cook v. City of Phila.*,
  94 F. Supp. 3d 640 (E.D. Pa. 2015) .............................................................................4

*Davis v. Fox & Roach LP*,
  2022 WL 2757413 (E.D. Pa. Jul. 14, 2022)..................................................................3

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)....................................................................................4, 10

*EMC Outdoor, LLC v. Stuart*,
  2018 WL 3208155 (E.D. Pa. Jun. 28, 2018)................................................................13

*H.J. Inc. v. Northwestern Bell Tele. Co.*,
  492 U.S. 229 (1989)....................................................................................................17

*Hanna v. U.S. Veterans' Admin. Hosp.*,
  514 F.2d 1092 (3d Cir. 1975)......................................................................................11

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)....................................................................................................16

*JPMorgan Chase Bank, NA v. Keyser*,
  2013 WL 1345388 (M.D. Pa. Apr. 2, 2013).................................................................7

*Langman v. Keystone Nat'l Bank & Trust Co.*,
  672 F. Supp. 2d 691 (E.D. Pa. 2009) .........................................................................15

*LM Gen. Ins. Co., v. LeBrun*,
  470 F. Supp. 440 (E.D. Pa. 2020) ................................................................................6

*Magnum v. Archdiocese of Phila.*,
  2006 WL 3359642 (E.D. Pa. Nov. 17, 2006) .............................................................16

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)........................................................................................17

*McGee v. Fee*,
  535 A.2d 1020 (1987)..................................................................................................15

*In re Mushroom Transp. Co.*,
  382 F.3d 325 (3d Cir. 2004)........................................................................................11

*Nase v. Bucks Cty. Housing Auth.*,
  2016 WL 5390648 (E.D. Pa. Sept. 27, 2016) ........................................................11

*Naythons v. Stradley, Ronon, Stevens & Young, LLP*,
  2008 WL 1914750 (E.D. Pa. Apr. 30, 2008), *aff'd*, 339 F. App'x 165 (3d Cir.
  2009) ........................................................................................................................13

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
  38 F.3d 1380 (3d Cir. 1994), *overruled in irrelevant part by Rotkiske v.
  Klemm*, 830 F.3d 422 (3d Cir. 2018) ....................................................................11

*Petruska v. Gannon Univ.*,
  462 F.3d 294 (3d Cir. 2006)....................................................................................3

*Philippi v. Philippe*,
  115 U.S. 151 (1885)..............................................................................................11

*Reynolds v. Rick's Mushroom Serv., Inc.*,
  2006 WL 1490105 (E.D. Pa. May 26, 2006) ....................................................21, 22

*Ristenbatt v. Western Glass Supply, Inc.*,
  2021 WL 5867434 (M.D. Pa. Jul. 19, 2021)..........................................................21

*Roberts v. Leasure*,
  2006 WL 1967335 (E.D. Pa. Jul. 11, 2006)...........................................................22

*Rosen v. Tesoro Petroleum Corp.*,
  582 A.2d 27 (1990) ................................................................................................13

*Schmidheiny v. Weber*,
  164 F. Supp. 2d 484 (E.D. Pa. 2001) ...............................................................14, 15

*Schmolz & Bickenback USA, Inc. v. Dauble*,
  2011 WL 285123 (E.D. Pa. Jan. 28, 2011) ..............................................................7

*Shaffer v. Stewart*,
  473 A.2d 1017 (Pa. Super. Ct. 1984).....................................................................15

*Shujauddin v. Berger Bldg. Prod., Inc.*,
  2019 WL 9102043 (E.D. Pa. Jun. 18, 2019)....................................................19, 20

*Smith v. Harrison House*,
  2020 WL 208930 (E.D. Pa. Jan. 13, 2020) ..............................................................4

*Sullivan v. Limerick Golf Club, Inc.*,
  2008 WL 2502133 (E.D. Pa. Jun. 23, 2008) ..........................................................21

*Sutton v. West Chester Area Sch. Dist.*,
  2004 WL 999144 (E.D. Pa. May 5, 2004) ............................................................15

*Tierney & Partners, Inc. v. Rockman*,
  274 F. Supp. 2d 693 (E.D. Pa. 2003) ..................................................................17

*United States v. Rose*,
  346 F.2d 985 (3d Cir. 1965) ..............................................................................11

*Walter v. Palisades Collection, LLC*,
  480 F. Supp. 2d 797 (E.D. Pa. 2007) ............................................................16, 17

*Weis-Buy Servs., Inc. v. Paglia*,
  411 F.3d 415 (3d Cir. 2005) ..............................................................................11

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ................................................................................7

*Zappala v. Hub Foods, Inc.*,
  683 F. Supp. 127 (W.D. Pa. 1988) ......................................................................13

**Statutes**

42 Pa. C.S.A. § 5527(7) ...........................................................................................11

42 Pa. C.S. §§ 8351-8354 ........................................................................................15

18 U.S.C. § 1961(1) .................................................................................................17

18 U.S.C. § 1962(c) .................................................................................................17

18 U.S.C. § 1964(c) .................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 11 ....................................................................................................20

Fed. R. Civ. P. 12(b)(1) .............................................................................................3

Fed. R. Civ. P. 12(b)(6) .............................................................................................4

Fed. R. Civ. P. 13(a)(b) ........................................................................................3, 19

Fed. R. Civ. P. 14 ...............................................................................................21, 23

Fed. R. Civ. P. 14(a)(1) ..................................................................................2, 20, 21

Fed. R. Civ. P. 14(a)(1)(4) .........................................................................................1

Fed. R. Civ. P. 14(a)(4)..................................................................................21

Fed. R. Civ. P. 52(a)(2)....................................................................................3

3 James Wm. Moore, *Moore's Federal Practice* § 14.24 (3d ed. 2013)......................................21

Local Rule 14.1(a) ..........................................................................................22

Plaintiffs, the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Corporation") and the Church of the Lord Jesus Christ of the Apostolic Faith ("Church") (collectively, "Plaintiffs"), by and through their attorneys Fox Rothschild LLP, respectfully submit this memorandum of law in Support of their Motion to (1) Dismiss Defendant Anthonee Patterson's Counterclaims (the "Counterclaims") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and (2) Strike Third Party Complaint pursuant to Fed. R. Civ. P. 14(a)(1)(4).

## I.   **INTRODUCTION**

Under the guise of four distinct but equally meritless claims, Defendant Anthonee Patterson ("Patterson") asks this Court to revisit issues already decided (and arguments previously rejected) in yet another attempt to enforce an Arbitration Award against Plaintiffs to which they are not bound.[1]  In addition, and as explained below, all of the Counterclaims asserted by Patterson fail as

---

[1] Patterson claims he is proceeding in this matter *pro se*.  As such, the Court has construed his filings liberally.  *See* Nov. 14, 2022 Memorandum ("Nov. 14 Opinion") [ECF No. 84] at p. 8.  Patterson has not identified any attorney from whom he received "substantive assistance (*i.e.* help, guidance, direction or the like with the development of strategy or tactics, drafted pleadings, motions or briefs, etc.) … for any material filed with the Court" pursuant to the Court's Policies and Procedures (at I(F) *Pro Se* (Unrepresented) Litigants:  Assistance from a Lawyer).  Plaintiffs have reason to believe that Patterson is, in fact, receiving material assistance from an attorney but has not revealed that information to the Court.  On Friday, January 28, 2023, Michael Twersky, counsel for Plaintiffs, spoke to Jerry Menichini from Best Legal Service, who was retained to serve the Third Party Complaint on Mr. Twersky, Fox Rothschild and the other purported third party defendants.  When Mr. Twersky asked Mr. Menichini questions about whether he was being asked to accept service on behalf of other third party defendants, he advised Mr. Twersky that he previously had a three way telephone conversation with Patterson and "a lawyer who is helping him out" to discuss that issue.  Mr. Menichini could not recall the name of the lawyer.  In addition, Patterson's Initial Disclosures were provided to Plaintiffs via .pdf under the file name "Church Patterson Bilal Rule 26(f) Initial Disclosures--CWGDraft2.pdf."  Ex. A, Initial Disclosures.  On the same date, Patterson served a "Rule 26(f) Report" with the file name "Church Patterson Bilal Rule 26(f) Report -- CWGDraft.pdf."  Ex. B, Rule 26(f) Report.  Plaintiffs are unaware of any participant in this litigation on behalf of Patterson with the initials "CWG" and, therefore, suspect it may be the initials of the lawyer assisting Patterson.  Finally, the First Amended Answer filed by Patterson includes Counterclaims and a Third Party Complaint that are so sophisticated it is nearly impossible to believe it was drafted by a non-lawyer.  [ECF No. 90]  Given these facts, Plaintiffs are concerned that Patterson may not be honoring his duty of candor to the Court and is violating this Court's Policies and Procedures.  Under those circumstances, Plaintiffs do not believe it fair to construe any of his filings or conduct in this litigation liberally, as would be afforded to a *pro se* litigant.

a matter of law for, among other reasons, his lack of standing as a nonmember of the Church and Corporation, and because his claims are time-barred by applicable statutes of limitation.

## II.      FACTS AND PROCEDURAL HISTORY[2]

After denying Patterson's motions to dismiss the Amended Complaint [ECF Nos 82 and 83], this Court ordered Patterson to file an Answer to Plaintiffs' First Amended Complaint by December 23, 2022.   [ECF No. 85].   Patterson thereafter filed his Answer with a single counterclaim.  [ECF No. 87].

On January 3, 2023, after being advised that Patterson intended to file an Amended Answer, this Court ordered that such Amended Answer with counterclaims be filed by January 13, 2023.   [ECF No. 88.].   On January 15, 2023, Patterson filed a First Amended Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, which asserted Counterclaims against the Corporation and a Third Party Complaint against several lawyers and law firms: Michael Twersky, Esq. and Fox Rothschild, LLP; Danielle Banks, Esq. and Stradley Ronon Stevens and Young, LLP; Robert Burke, Esq. (misidentified as "Michael A. Burke"); and Luther Weaver Esq. and L.E. Weaver & Associates, P.C.  [ECF No. 90]. At no point did Patterson seek leave of Court to file the Third Party Complaint as required by Fed. R. Civ. P. 14(a)(1).[3]

The Counterclaims are asserted against the Corporation (but not the Church) and non-parties, Anthony Lamb, John Carlton Thomas, James Brown, Leon Bligen and John Brown, Esq. in their roles as trustees of the Corporation.  [ECF No. 90].  Significantly, however, while the

---

[2]  This Court previously recounted the long and complicated procedural history of the underlying dispute between the parties.  *See* March 19, 2021 Memorandum ("Mar. 19 Opinion") [ECF No. 37].  Plaintiffs incorporate that Opinion herein, as well as their Amended Complaint [ECF No. 67] and Motion for Preliminary Injunction [ECF No. 4].

[3]  Patterson subsequently filed a Motion to Amend/Correct Caption to correct Mr. Burke's name and to add two additional law firms as new Third Party Defendants:  Montgomery McCracken Walker & Rhoads, LLP; and MacElree Harvey.  [ECF No. 93].

Corporation is a party to this action none of the individual trustees is an "opposing party" as they are not named as plaintiffs in the Amended Complaint.  *See* Fed. R. Civ. P. 13(a)(b) (requiring counterclaims to be asserted only against "an opposing party . . . .").

Patterson now asserts four legally deficient causes of action against the Corporation and purported Third Party Defendants: (1) Declaratory Judgment (Count I); (2) Breach of Fiduciary Duty (Count II); (3) Abuse of Process (Count III); and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV).  For the reasons set forth herein, all claims fail as a matter of law and should be dismissed with prejudice.

## III.  STANDARD OF REVIEW

### A.  *Rule 12(b)(1)*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "challenges the power of a federal court to hear a claim or a case."  *Davis v. Fox & Roach LP*, 2022 WL 2757413 at \*2 (E.D. Pa. Jul. 14, 2022) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).  "When presented with a Rule 12(b)(1) motion, the claimant has the 'burden of proof that jurisdiction does in fact exist.'"  *Id.* (quoting *Petruska*, 462 F.3d at 302 n.3).

"A Rule 12(b)(1) motion may raise either a facial or a factual challenge."  *Id.*; *Askew v. Trustees of the General Assembly of the Church of the Lord Jesus Christ of Apostolic Faith*, 776 F. Supp. 2d 25, 28 (E.D. Pa. 2011).  "When faced with a factual challenge, the Court may 'review evidence outside the pleadings and make a factual determination as to whether the Court has jurisdiction."  *Davis*, 2022 WL 2757413, at \*2 (quoting *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).[4]  "A motion to dismiss for want of standing

---

[4]  For the purpose of their Rule 12(b)(1) motion, Plaintiffs rely, in part, on this Court's Mar. 19 Opinion [ECF No. 37], which constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a)(2).

is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *see also Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

### B.    Rule 12(b)(6)

To survive a motion to dismiss based upon Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 2007)).  Stating a plausible claim requires that a plaintiff "plead[] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Cook v. City of Phila.*, 94 F. Supp. 3d 640, 643 (E.D. Pa. 2015).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

A plaintiff's "allegations 'must be enough to raise a right to relief above the speculative level.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[B]are-bones, conclusory allegations" are "insufficient to survive a motion to dismiss." *See Smith v. Harrison House*, 2020 WL 208930, at *4 (E.D. Pa. Jan. 13, 2020) (quoting *Iqbal*, 556 U.S. at 677).  Thus, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### IV.    <u>LEGAL ARGUMENTS</u>

The bases for all of Patterson's claims can be gleaned in his request for declaratory judgment (Count I).  Am. Ans. [ECF No. 90] at ¶¶ 385-393.  He asks the Court – yet again – to reconsider its prior rulings and declare that "Plaintiffs' claims are barred by collateral estoppel, res

4

judicata and/or the Rooker-Feldman Doctrine . . . ." *Id.* at ¶ 393; *see also id.* at ¶ 441 (asking for a finding "that Plaintiffs' claims are barred and that his judgment is fully and immediately enforceable" along with "a permanent injunction preventing Plaintiffs or anyone in privity with them from asserting these claims in this or any other forum in the future[.]").

But the Court has considered – and reconsidered – these claims numerous times already, each time rejecting them.  Patterson now presents to this Court (and the parties) yet another motion for reconsideration in disguise, hoping to undermine this Court's prior determination that the Church and Corporation were (a) not parties to the Patterson Action and (b) not in privity with Bishop Shelton.  *See* Mar. 19 Opinion [ECF No. 37] at p. 9.

In addition, all of Patterson's claims fail as a matter of law, including for reasons determined by this Court and affirmed by the Third Circuit in *Askew v. Trustees of General Assembly of the Lord Jesus Christ of Apostolic Faith Inc.*, 684 F.3d 413, 418 (3d Cir. 2012).

### A.     Patterson's Declaratory Judgment Claim (Count I) Fails Because It Is Entirely Duplicative Of His Prior Claims In This Case.

Patterson asserts a claim for Declaratory Judgment in which he seeks the following relief: (1) a declaration that Plaintiffs' claims are barred by collateral estoppel, res judicata, and/or the Rooker/Feldman Doctrine; (2) a declaration that Plaintiffs' claims are barred and that his judgment in the state court action is fully and immediately enforceable against the Corporation; and (3) a permanent injunction preventing Plaintiffs or anyone in privity with them from asserting these claims in this or any other forum in the future.  Am. Ans. [ECF No. 90] at ¶¶ 391-393.  Patterson is asking this Court to reverse itself (and the Third Circuit), as the relief he seeks directly contradicts this Court's prior decision in the Mar. 19 Opinion.  [ECF No. 37].

This is now at least the third time Patterson asks this Court to reconsider that decision in one way or another:  (1) his appeal to the Third Circuit; (2) his Motion to Dissolve the Preliminary

Injunction [ECF No. 51]; and (3) his Motion to Supplement [ECF No. 58].  As this Court previously held, Patterson's Motion to Supplement and Motion to Dissolve "makes the same argument[ ] . . . which at bottom, [is] a motion for reconsideration."  Nov. 14 Opinion [ECF No. 84] at p. 10, n. 7.  Accordingly, those motions were rejected:

> The court finds that the motion to dissolve is essentially a motion for reconsideration in disguise because Patterson does nothing more than disagree with the Court's conclusion in our March 19, 2021 preliminary injunction opinion that [Plaintiffs] were not parties to the Patterson Action or in privity with Bishop Shelton . . . . And, even if it was not untimely, the Court would find Patterson failed to meet his burden under the Motion for Reconsideration standard.

*Id.* at pp. 9-11.

This iteration is no different.  Patterson – unwilling and unable to accept the decisions of this Court and the Third Circuit – merely recycles the same issues (and arguments) previously presented in hopes of obtaining yet another bite of the proverbial apple.  For that reason alone, this Court should dismiss Count I with prejudice.

However, that is not the only ground to dismiss Count I. "Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action."  *LM Gen. Ins. Co., v. LeBrun*, 470 F. Supp. 440, 455 (E.D. Pa. 2020) (Marston, J.,) (quoting *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019)).  Duplicative declaratory judgment claims are routinely dismissed by this Court and in this circuit.  *Id.* (collecting cases).  Here, Patterson's Declaratory Judgment Counterclaim is duplicative of, and intertwined with, ***all*** of his Counterclaims.  Present in every Count of Patterson's Counterclaims is the rote allegation that Plaintiffs are evading enforcement of the Arbitration Award and engaging in an illicit "scheme" to loot Church assets.

For these reasons, Count I should be dismissed with prejudice.

**B.     Patterson's Breach of Fiduciary Duty Claim (Count II) Fails Because Patterson Lacks Standing and His Claim Is Time-Barred.**

Count II alleges breach of fiduciary duty but fails as a matter of law for two reasons.  First, Patterson is not a member of the Church (and has not been for 30 years) and he has never been a member of the Corporation.  Therefore, he is owed no fiduciary duty by the Church or Corporation, and thus lacks standing to assert his claim.  *See Askew*, 684 F.3d at 418.  Second, Patterson's claim is barred by the applicable two-year statute of limitations.

Patterson bears the burden of establishing that this Court has subject matter jurisdiction over his Counterclaims.  *Id.* ("the party seeking to invoke federal court jurisdiction, shoulders the burden of establishing his standing to sue") (citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)); *see also Schmolz & Bickenback USA, Inc. v. Dauble*, 2011 WL 285123, at *3 (E.D. Pa. Jan. 28, 2011) (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007)); *JPMorgan Chase Bank, NA v. Keyser*, 2013 WL 1345388, at *2 (M.D. Pa. Apr. 2, 2013).  Patterson cannot, as a matter of law, meet that burden.

Patterson asserts his Counterclaim for breach of fiduciary duty individually and on behalf of the Church against the Corporation.  To assert a breach of a fiduciary duty claim, however, a fiduciary duty must first exist between the parties.  *Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 634 (E.D. Pa. 2017) (recognizing that a fiduciary duty must exist between the parties before one may be breached between the parties) (citing *Baker v. Family Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006)).  "A claimant cannot recover if they are unable to prove a fiduciary duty exists." *Id.*  (citing *Baker*, 440 F. Supp. 2d at 414-15).

Third Circuit caselaw is clear that Patterson could make such a claim "as an individual or derivatively . . . **_only_** if he is a member of the [C]hurch." *Askew*, 684 F.3d at 618 (emphasis added).  Indeed, in *Askew* the District Court addressed a nearly identical dispute arising from the very same

7

two church organizations now reappearing before this Court. *Id*. at 415. There, the plaintiff was a member of Patterson's church who claimed to have been a member of Plaintiffs' Church before the death of the prior bishop in 1991. *Id.* at 416. He asserted against the Corporation various allegations of improper dealings, including breach of fiduciary duty. *Id.* Having found that the plaintiff's "nonmember status deprive[d] him of standing to assert claims alleging harm to the Church," the District Court dismissed his breach of fiduciary claim, and the Third Circuit affirmed. *Id.* at 415, 421.

In reaching its decision, the Third Circuit emphasized that Bishop Shelton, as "the General Overseer and the highest judicatory tribunal in the Church," declared the plaintiff a nonmember on multiple occasions since 1992. *Id.* The Court also considered that the plaintiff attended other churches and did not accept Bishop Shelton as the General Overseer of the Church. *Id.* at 416. For those reasons, it was held that the plaintiff, as a nonmember of the Church, could not maintain a claim for breach of fiduciary duty against the Corporation. *Id.* at 421. *Askew* is factually and legally indistinguishable, and disposes of Patterson's breach of fiduciary duty claim here.

Just like the plaintiff in *Askew*, Patterson's ability to assert fiduciary duty claims against the Corporation turns on whether Patterson is a member of the Church. *See id.* at 418. ("The core dispute, then, is whether [the plaintiff] is a Church member."). But just like the plaintiff in *Askew*, Patterson is not a member of the Church and has not been for decades. First, it is undisputed that Patterson (like the plaintiff in *Askew*) voluntarily left the Church in 1991. *See* Mar. 19 Opinion at p. 7 [ECF No. 37]. As this Court recognized, Kenneth Shelton became the leader of the Church in 1992 and subsequently declared that all of those who aligned themselves with Roddy Nelson Shelton were "disfellowshipped and no longer members of the church." *Id.*

The Church's By-Laws provide that Bishop Shelton, as General Overseer of the Church, has "the right to remove any Elder, Minister, Officer, or Member of the Church from office or membership without accusation or trial if he may deem it necessary for the good of the Church of the Lord Jesus Christ of the Apostolic Faith."  Ex. C, Art. V, Sec. Five (Amended August 2000) (introduced at the injunction hearing).[5]

Because Patterson aligned himself with Roddy Nelson Shelton, he has not been a member of the Church since 1992. *See* Mar. 19 Opinion [ECF No. 37] at p. 7 (recognizing that Bishop Shelton became the leader of the Church in 1992; that Bishop Shelton declared all those who aligned themselves with Roddy Nelson Shelton were disfellowshipped; and that Patterson aligned himself with Roddy Shelton at that time). Therefore, Patterson ***cannot*** maintain his claim for breach of fiduciary duty for reasons already recognized by this Court.

Second, even assuming *arguendo* that Patterson was not declared a nonmember in 1992 (he was), an August 31, 2006 Proclamation from the Church's Council of Priests declared that it "will not accept Anthonee Patterson or any of those who aid, abet or associate with him as members or officers of this Church, as they have demonstrated that they hold religious and doctrinal views contrary to our own."  Am. Compl. at ¶ 22 [ECF No. 67] (citing Ex. E, August 31, 2006 Council of Priests Proclamation ("Proclamation")).

Third, Patterson (like the plaintiff in *Askew*) admits that he has not attended the Church in more than 30 years and refuses to acknowledge Kenneth Shelton as the General Overseer and spiritual leader of the Church.  Mar. 19 Opinion at p. 7 [ECF No. 37] (recognizing that "Kenneth Shelton became the leader of the Church in 1992"); *id.* at p. 80 ("Patterson maintains that *he* is the

---

[5]  While Patterson incorrectly claims that only the original 1961 By-Laws may be considered (*see* Am. Ans. at ¶¶ 198-200, 400), the 1961 By-Laws provide the General Overseer with exactly the same authority.  *See* Ex. D., 1961 Rules and By-Laws at Art. V, sec. 9 (introduced at injunction hearing).

Bishop and General Overseer of the Church") (emphasis in original) (citing Feb. 23, 2021 Tr. At 92:13–18)).  For all of these reasons, Patterson ***is not*** a member of the Church and therefore ***cannot*** establish standing for a breach of fiduciary duty claim against the Corporation.

It is well settled that the First Amendment non-entanglement principle forbids a court from further delving into Patterson's membership status.  *Askew*, 684 F.3d at 418 (recognizing that Church membership is an "ecclesiastical matter" that "conditions an individual's membership on living in conformity with 'the doctrine of [t]he Church.'") (alteration in original).  Thus, Patterson's status as a nonmember of the Church cannot be revisited as it "falls squarely within the realm of matters insulated from civil court review." *Id.* at 419 ("The record indicates that, in this Church, the question of who is and is not a member depends in part on religious doctrine . . . . membership in the Church [is] an ecclesiastical matter, for it conditions an individual's membership on living in conformity with 'the doctrine of the Church.' . . . the Bylaws also delegate to the General Overseer the power to determine membership status . . . The General Overseer's authority to excommunicate members falls squarely within the realm of matters insulated from civil court review.") (alteration added).

Indeed, the Third Circuit stressed in *Askew* that "[d]etermining when excommunication is necessary for the good of the Church" – as Bishop Shelton did with Patterson – "undoubtedly involves a complex balancing of spiritual and pragmatic considerations, all properly left to the highest church authority, not civil courts." *Id.*  Because Patterson, as a nonmember of the Church, cannot establish standing, this Court is without subject matter jurisdiction over his claim.  *See, e.g.*, *Davis*, 824 F.3d at 346 ("Standing is a jurisdictional matter.").  Accordingly, Patterson's claim for breach of fiduciary duty should be dismissed with prejudice pursuant to Rule 12(b)(1).

Lastly, Patterson's fiduciary duty claim is barred by the applicable statute of limitations. Pennsylvania law imposes a two-year statute of limitations for breach of fiduciary duty claims. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) ("breach of fiduciary claims . . . must be brought within two years of the date the claim accrues") (quoting 42 Pa. C.S.A. § 5527(7)); *In re Mushroom Transp. Co.*, 382 F.3d 325, 336 (3d Cir. 2004) (recognizing a two-year statute of limitations for breach of fiduciary duty claims). "[T]he statute of limitations begins to run on a breach of fiduciary duty claim when the trustee openly and unequivocally violates his duties." *Weis-Buy Servs.*, 411 F.3d at 422 (citing *Philippi v. Philippe*, 115 U.S. 151, 157 (1885)); *United States v. Rose*, 346 F.2d 985, 989-990 (3d Cir. 1965).

The statute of limitations can provide "proper grounds for dismissal under Rule 12(b)(6)." *Nase v. Bucks Cty. Housing Auth.*, 2016 WL 5390648, at *2 (E.D. Pa. Sept. 27, 2016); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."), *overruled in irrelevant part by Rotkiske v. Klemm*, 830 F.3d 422, 428 (3d Cir. 2018) (*en banc*); *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) ("[A] Rule 12(b) motion can be utilized when the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.") (alteration in original); *Berg v. Access Grp., Inc.*, 2014 WL 4812331, at *12 (E.D. Pa. Sept. 26, 2014) (same).

Patterson's breach of fiduciary duty claim relies upon a variety of factual allegations, all of which are alleged to have occurred well beyond the two-year statute of limitations. For example, Patterson alleges that Kenneth Shelton has held "de facto control over the Church since 1991" and

that with the assistance of "Counterclaim . . . Defendants and their predecessors in interest, accumulated pecuniary gain and profit during his period of control by reducing the Church Corporation's accounts and trusts." Am. Ans. [ECF No. 90] at ¶¶ 242-43. Patterson further asserts that he filed a complaint in a Pennsylvania state court (previously referred to as the Patterson Action, which was filed in 1995) "on behalf of himself" and what he believes to be "the minority faction" charging that the "Trustees, in their official capacities," committed "theft and misappropriation of funds held in trust for the members of the General Assembly."[6] *Id.* at ¶¶ 212-213. Thus, Patterson has been aware of the alleged facts upon which he bases his fiduciary duty claim for *more* than twenty (20) years.

Patterson also makes numerous allegations of wrongdoing that occurred from 1992 to 2008 ostensibly in support of his fiduciary duty claim, including that numerous checks were issued, credit charges were placed, withdrawals were made, and funds were directed improperly by the Church and Corporation. *See id.* at ¶¶ 242-369.[7] Not one of the allegations contained in Patterson's exhaustive list is alleged to have occurred after 2008. Thus, even accepting all factual allegations as true and construing Patterson's claim in the light most favorable to him, Count II

---

[6] The so-called "minority faction" is a fiction created by Patterson. As the Court noted in its Mar. 19 Opinion [ECF No. 37], this case has a long and tortured history. One thing that is clear, however, is that while the Church and Patterson's church share an origin, they are not a single church and are not separate factions of a single church. To the contrary, as Bishop Shelton testified, Patterson and his followers share different beliefs. Am. Compl. [ECF No. 67] at Ex. E, Proclamation. This is no different than different sects of religious orders. For example, the Catholic Church, Episcopal Church and Baptist Church all have the same origin in Christianity, but each has distinct and separate beliefs. And, significantly, a member of the Catholic Church would not have standing to sue the other two (and vice versa), notwithstanding they all are sects of Christianity. The same is true here with regard to Plaintiff's Church and Patterson's church – they are simply not the same. Nor is there a "majority" and "minority" faction of the Church; rather there are two different and separate churches, with different spiritual leaders, different beliefs, and different traditions.

[7] For the sake of brevity, Plaintiffs do not incorporate each and every allegation contained within Patterson's Amended Answer. Plaintiffs have, however, undertaken a thorough analysis of each allegation therein. At no point does Patterson assert any facts for his breach of fiduciary claim alleged to have occurred after 2008. Indeed, it appears as though Patterson has lifted the allegations from the arbitral decisions issued by Arbitrator Naythons in the arbitration between only Patterson and Bishop Shelton. As this Court found, and the Third Circuit affirmed, the Church and Corporation were not parties to that arbitration or in privity with Bishop Shelton.

fails.  Under the applicable statute of limitations, Patterson was required to bring his claim years ago, (assuming he had standing, which he did not).  Because Patterson's claim is literally over a decade late, it is time-barred and should be dismissed with prejudice.

### C.    Patterson Fails To Plead Any Sufficient Facts To Support An Abuse Of Process Claim (Count III).

Patterson's claim for abuse of process is equally deficient and fails as a matter of law.  First, Patterson fails to plead that the Corporation perversely and coercively abused judicial process, as the law requires him to plead.  *See Cameron v. Graphic Mgmt. Assoc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992).  In fact, the Church and Corporation invoked this Court's process (and prevailed) for the very purpose courts exist:  to protect Plaintiffs' property and to prevent Patterson from eviscerating their constitutional rights.  Second, Patterson's claim is barred by the applicable two-year statute of limitations governing abuse of process claims.

The essence of an abuse of process claim is that judicial proceedings are used for a purpose not intended by law.  *Cameron v. Graphic Mgmt. Assoc., Inc.*, 817 F.Supp. at 21 (citing *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 32 (1990)).  Such claims typically "pertain to situations involving 'extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution.'"  *Id.* (quoting *Zappala v. Hub Foods, Inc.*, 683 F. Supp. 127, 129 (W.D. Pa. 1988)).  That is not even remotely the case here.

To prevail on his abuse of process claim, Patterson must plead and prove facts establishing that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff."  *EMC Outdoor, LLC v. Stuart*, 2018 WL 3208155, at *3 (E.D. Pa. Jun. 28, 2018) (quoting *Naythons v. Stradley, Ronon, Stevens & Young, LLP*, 2008 WL 1914750, at *3 (E.D. Pa. Apr. 30, 2008), *aff'd*, 339 F. App'x 165 (3d Cir. 2009)); *Clausi v. Stuck*, 74 A.3d 242, 248 (Pa. Super. Ct. 2013).

13

The "touchstone" of an abuse of process claim "is that, *subsequent* to the issuance of process, a party has perversely, coercively, or improperly used that process." *Id.* (emphasis in original) (quoting *Cameron*, 817 F. Supp. at 21). However, there is "no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Id.*

It strains credulity to suggest that the Corporation perversely and coercively abused judicial process for a purpose not intended by law in this case. The Corporation was well within its rights to initiate, within the Church, the instant litigation against Patterson for the reasons detailed at length in its initial application for injunctive relief, which this Court granted. March 19, 2021 Order [ECF No. 38]. Patterson sought to violate Plaintiffs' First and Fifth Amendment rights, as well as those of their members, and dispossess the Church of its place of worship. In response, Plaintiffs sought injunctive relief and prevailed.

This is not a case of extortion, or execution or garnishment, or blackmail by means of arrest or prosecution, as is typical of an abuse of process claim. *Cameron*, 817 F.Supp. at 21; *Schmidheiny v. Weber*, 164 F. Supp. 2d 484, 486 (E.D. Pa. 2001). This is a case where Plaintiffs appropriately initiated process and carried that "process to its authorized conclusion" by seeking (and obtaining) an injunction from this Court. *Schmidheiny*, 164 F. Supp. 2d ("There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion."). By seeking this Court's intervention, Plaintiffs sought to invoke the judicial machinery for proper purposes. Patterson may not like the result, but his

dissatisfaction with the outcome does not give rise to an abuse of process claim as a matter of law.[8]
*See id.* ("We cannot perceive how the initial filing of a complaint alleging a statutory cause of
action is analogous to extortion by means of attachment, execution, or garnishment, and blackmail
by means of arrest or criminal prosecution.").

Count III also is barred by the applicable two-year statute of limitations governing abuse
of process claims. *Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F. Supp. 2d 691, 697 (E.D.
Pa. 2009). "The statute of limitations for an abuse of process claim 'begins to run as soon as the
right to institute and maintain a suit arises.'" *Id.* (quoting *Sutton v. West Chester Area Sch. Dist.*,
2004 WL 999144, at *8 (E.D. Pa. May 5, 2004)).

Here, the gist of Patterson's abuse of process claim dates back to "the issuance of the
Arbitration Award" according to Patterson's own averments.  Am. Ans. [ECF No. 90] at ¶¶ 406,

---

[8]  Though couched as an abuse of process claim, Count III of Patterson's Third Party Complaint reads like a malicious
use of civil process claim because Patterson challenges the initiation of civil proceedings since the issuance of the
Arbitration Award. *See, e.g.*, Am. Ans. [ECF No. 90] at ¶ 407 ("they **filed** and litigated claims with an ulterior purpose
and improperly used process in the litigation of the claims.") (emphasis added); *id.* at ¶ 408 ("Each and every pleading
***since*** the issuance of the Arbitration Award has been disingenuous and ***filed*** solely for delay and avoidance of the fact
that the majority faction lost at the Arbitration.") (emphasis added); *id.* at ¶ 410 ("The purported amendments to the
bylaws were disingenuous and merely post-Arbitration maneuvers . . . to deceive the various tribunals in which
Counterclaim and Third-Party Defendants had ***filed*** their frivolous cases . . . .") (emphasis added); *id.* at ¶ 411
("Immediately after Kenneth Shelton's majority faction lost the Arbitration, they ***began*** a series of efforts and frivolous
litigations across multiple states to avoid the Arbitral award.") (emphasis added).  The distinction between malicious
use of process and abuse of process claims is well settled. *See McGee v. Fee*, 535 A.2d 1020, 1023 (1987) (explaining
the difference between abuse of process and malicious use of civil process: "Malicious use of civil process has to do
with the wrongful initiation of such process, while abuse of process is concerned with a perversion of a process after
it is issued.") (emphasis added).  Courts have not hesitated to dismiss claims framed as abuse of process that assert
malicious use of process facts.  *See Cameron*, 817 F. Supp. at 21-22 (contrasting malicious use of process and abuse
of process and underscoring that the defendant's counterclaim was premised on the plaintiff's "initiation and
prosecution" of what defendant considered to be "two baseless lawsuits" as well as the "very commencement of this
litigation[,]" and dismissing the defendant's abuse of process counterclaim on the basis that it alleged wrongful
initiation of the underlying lawsuit).  Like the defendant's counterclaim in *Cameron*, Patterson's abuse of process
Counterclaim against the Corporation is premised on Plaintiffs' initiation of injunction proceedings to protect
Plaintiffs (and their community) from Patterson.  Thus, Patterson's abuse of process claim is "really tantamount to an
action for malicious use of process."  *Id.* at 21.  But even treating Patterson's abuse of process claim as one for
malicious use of process, Patterson's claim would ***still*** fail, as Patterson has not alleged that the underlying proceedings
that he challenges were terminated in his favor. *See Shaffer v. Stewart*, 473 A.2d 1017, 1019-20 (Pa. Super. Ct. 1984)
(citing 42 Pa. C.S. §§ 8351-8354)).  He has not because he could not, given that Plaintiffs prevailed in that proceeding.

407, 408, 410, 411, 412.  Thus, Patterson's abuse of process claim challenges the Corporation's efforts to avoid enforcement of the Arbitration Award – a process that began in 2006 and has spanned 17 years.  Patterson could have raised this issue in 2006; he did not.  Patterson could have raised the issue any time since 2006; he did not.  Patterson raises the issue ***for the first time*** when the only activity within the applicable statute of limitations (two years) is Plaintiffs' lawsuit seeking (and obtaining) injunctive relief.  Because Patterson failed to raise this issue in 2006 – and in the nearly two decades since – Count III should be barred by the applicable statute of limitations.

### D.   Patterson's RICO Claim (Count IV) Fails Because Patterson Lacks RICO Standing and Has Failed To Plead A Pattern Of Racketeering Activity Necessary To Support His RICO Claim.

Like Patterson's Breach of Fiduciary Duty claim (Count II), his RICO claim (Count IV) fails for two reasons, either of which should result in its dismissal.  First, Patterson has failed to allege RICO standing.  Second, even assuming he has RICO standing (he does not), Patterson fails to allege a pattern of racketeering activity to support his claims.

The federal civil RICO statute permits "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . [to] sue therefor in any appropriate United States District Court."  *Magnum v. Archdiocese of Phila.*, 2006 WL 3359642, at *3 (E.D. Pa. Nov. 17, 2006).  Put simply, RICO standing requires that Patterson (1) show injury to his "business or property" (2) because of the Corporation's alleged RICO violation.  *See Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 803-04 (E.D. Pa. 2007) (citing 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).[9]

---

[9] "A motion to dismiss under Rule 12(b)(6) for lack of RICO standing is distinct from a motion to dismiss under Rule 12(b)(1) for lack of constitutional standing."  *Walter*, 480 F. Supp. 2d at 803, n.10.  "[T]hese civil RICO 'standing' requirements are viewed as questions regarding the adequacy of the pleadings, rather than as questions of subject matter jurisdiction."  *Id.* (alteration in original) (quoting *Magnum*, 2006 WL 3359643, at *3).

Because Patterson is not (and cannot be) a member of the Church for the reasons explained above, Patterson cannot allege that the Corporation caused any injury to his "business or property."[10]  And because Patterson, as a nonmember, cannot allege that the Corporation caused him any harm, Patterson lacks standing to pursue his RICO claim.  Any conclusion to the contrary would obliterate RICO standing.  Consequently, Patterson's RICO claim fails on that basis alone and should be dismissed.

But even assuming Patterson has RICO standing, Patterson's claim still fails, as he has failed to allege a pattern of racketeering activity under 18 U.S.C. § 1962(c).  To successfully plead a civil RICO violation, Patterson must allege a "pattern of racketeering activity."  *Tierney & Partners, Inc. v. Rockman*, 274 F. Supp. 2d 693, 697-98 (E.D. Pa. 2003) (citing *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 232 (1989)); *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987) ("The heart of any RICO complaint is the allegation of a pattern of racketeering activity.").  The definition of racketeering activity is broad.  *Id.*  Included are "acts of mail fraud, wire fraud, bribery, counterfeiting, extortion, and financial institution fraud, as defined in the federal criminal statutes."  *Id.* (citing 18 U.S.C. § 1961(1).  No such activity exists here, and Patterson fails to adequately plead otherwise.

The core of Patterson's alleged racketeering activity is what he alleges to be "a scheme to loot Church and Church Corporation assets."  Am. Ans. [ECF No. 90] at ¶ 429.  Patterson supports his claim with what he erroneously believes to be two RICO predicate acts:  (1) that the "Counterclaim and Third-Party Defendants" have fraudulently transferred Church and Corporation funds, assets, and real property to avoid the Arbitration Award; and (2) that

---

[10]  The injury "requirement can be satisfied by 'allegations and proof of actual monetary loss, *i.e.*, an out-of-pocket loss.'"  *Walter*, 480 F. Supp. 2d at 803-04 (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)).  Patterson has failed to plead (and certainly cannot prove) any out-of-pocket loss given his nonmember status.

"Counterclaim and Third-party Defendants have knowingly paid purported attorneys' fees for the defense of allegations of their wrongdoing and prevention of the enforcement award." *Id.* at ¶ 433-34. Because Patterson has alleged these acts were committed in an effort to avoid the Arbitration Award (*id.* at ¶ 433), Patterson's alleged pattern of racketeering activity is premised, in part, on the faulty conclusion that the Church and Corporation are bound by the Arbitration Award when ***this Court has held they are not***. That alone unravels Patterson's entire RICO claim.

Equally unavailing is Patterson's reliance on the payment of "purported attorneys' fees" to support his RICO claim. Patterson's allegation relies on the assumption that the Church and Corporation's expenditures are improper, when, in fact – and as a matter of law – (1) Patterson has no standing to assert any claim over the propriety of the Church and Corporation's expenditures; and (2) the Arbitration Award, to the extent it would preclude such expenditures, does not apply to the Church or Corporation. Moreover, those attorneys' fees were expended for the defense of Patterson's misplaced and unrelenting allegations that the Church and Corporation are bound by decisions in a state court matter and arbitration to which they were not parties. Patterson is attempting to hold the Corporation liable on a RICO claim due to the expenditure of fees that Patterson himself has caused. The law does not permit such a result.

Patterson's RICO claim is just another example of his refusal to accept his status as a nonmember of the Church and the fact that neither the Church nor the Corporation is bound by the Arbitration Award. As Patterson has failed to allege any pattern of racketeering activity, his RICO claim should be dismissed with prejudice under Rule 12(b)(6).

**E.     All of Patterson's Claims Fail Under Rule 8 Because He Fails to Differentiate The Target Defendants Of His Counterclaims and Third Party Complaint.**

Patterson improperly adopts a "one size fits all approach" by lumping together the Corporation, individual trustees and Third Party Defendants to advance his claims. *See* Am. Ans.

at pp. 66-68.  For example, Patterson alleges "Counterclaim Defendants failed to take any action to prevent Kenneth Shelton and others under his control or acting in concert with him, all adjudicated thieves, from looting Church and Church Corporation assets and continuing to do so." *Id.* at ¶ 67.  Yet, Patterson lists several "Counterclaim Defendants" in addition to the Corporation: Anthony Lamb, John Carlton Thomas, James Brown, Leon Bligen and John Brown, Esq.[11]  *Id.* at ¶ 186-87.  Patterson also identifies numerous Third Party Defendants:  Michael Twersky, Esq.; Danielle Banks, Esq.; Michael A. Burke, Esq.; Luther Weaver, Esq.; L.E. Weaver & Associates; Fox Rothschild LLP; Stradley, Ronon, Stevens & Young; and John/Jane Does 1-30.  Despite naming more than a dozen Third Party Defendants to his claims, Patterson makes no effort to differentiate which allegations lie against which parties.

It is well settled that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants."  *Shujauddin v. Berger Bldg. Prod., Inc.*, 2019 WL 9102043, at *1, n.2 (E.D. Pa. Jun. 18, 2019) (quoting *Binder v. Westar Mortg.*, 2016 WL 3762710, at *3 (E.D. Pa. Jul. 13, 2016)).  "An allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim." *Shujauddin*, 2019 WL 9102043, at *1 (quoting *Binder*, 2016 WL 3762710 at *3).  *Iqbal* makes clear that generalized pleadings "are not entitled to the assumption of truth." 556 U.S. at 670.  Indeed, Patterson's Counterclaim is rife with generalized allegations against Counterclaim Defendants and

---

[11]  Notably, the "Counterclaim Defendants" Anthony Lamb, John Carlton Thomas, James Brown, and Leon Bligen and John Brown are not "Counterclaim Defendants" at all.  Patterson brought them in as new parties (assumingly under Rule 14) for the purposes of his Counterclaims in violation of Fed. R. Civ. P. 13(a)(b).  They are not, nor have they ever been, "opposing part[ies]" in this litigation.  *Id.*

Third Party Defendants.  But it remains unclear against whom, specifically, Patterson's claims apply.[12]

Because Patterson's claims are "bereft of specific wrongdoing" by the Corporation, they are "insufficient to state a claim" under Rule 8.  *Shujauddin*, 2019 WL 9102043, at *1, n.2.  How could Patterson's claims put the Corporation (or any Third Party Defendant) on notice of their alleged wrongdoing (as Rule 8 requires) if they are all lumped together?  *Twombly*, 550 U.S. at 544 (recognizing a claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (emphasis added); *Agresta v. City of Philadelphia*, 694 F.Supp. 117, 121 (E.D. Pa. 1988) (holding complaint failed to state a claim against multiple defendants where "[a]ll defendants [we]re simply lumped together.").

Patterson cannot circumvent Rule 8's pleading requirement merely by filling his pleadings with generalized allegations of wrongdoing and leave this Court (and the parties) guessing as to whom those allegations apply.  The law requires no such result.  Accordingly, all of the Counterclaims should be dismissed.

### F.    This Court Should Strike Patterson's Third Party Complaint As Procedurally Defective Under Fed. R. Civ. Rule 14.

Patterson's Third Party Complaint is procedurally defective and should be stricken because Patterson failed to obtain leave of court to file it more than 14 days after serving his original answer.  Fed. R. Civ. P. 14(a)(1) provides that a Third Party Plaintiff may "serve a summons and

---

[12]  Patterson's decision to lump together all Counterclaim Defendants and Third Party Defendants leads to absurd results (and implicates violations of Fed. R. Civ. P. 11).  Quite simply, his approach illustrates that he cannot have any factual basis for his allegations.  For example, many of the averments in the Third Party Complaint allege that the Third Party Defendants had knowledge and assisted in alleged fraud by Bishop Shelton and the Corporation trustees from 1991-1998.  *See, e.g.,* Am. Answer [ECF No. 90] at ¶¶ 251, 253, 255, 259, 261, 264, 266, 268, 270, 272, 274, 276, 278, 280, 282, 284, 287, 289, 291, 293, 321, 322, 323, 324.  But purported Third Party Defendants Ms. Banks, Mr. Burke, Mr. Twersky, as well as their respective law firms, did not get involved in any matter concerning Patterson or Plaintiffs until 2006.  In fact, Mr. Twersky did not graduate law school until 1997, so the notion that he had knowledge or assisted in any alleged improper conduct in the early-mid 1990s is literally impossible.

complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  "***But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer***."  *Id.* (emphasis added).  Rule 14(a)(4) allows a party to "move to strike the third-party claim, to sever it, or to try it separately."

Courts weigh several factors in deciding whether to strike:  (1) the timeliness of the Rule 14 motion seeking leave; (2) whether the filing of the third party suit would complicate the case at trial; (3) the likelihood and extent of delay in the trial; (4) whether the third party complaint would avoid multiple litigation and settle matters related in one suit; (5) the merit of the third party complaint, and (6) the extent of prejudice to the third party plaintiff.  *See Reynolds v. Rick's Mushroom Serv., Inc.*, 2006 WL 1490105, at *3 (E.D. Pa. May 26, 2006) (striking third party complaint where five of the six factors were met).

Patterson filed his Answer on December 23, 2022.  [ECF No. 87].  Thus, he had until January 6, 2023 (14 days from the date his Answer was filed) to file a Third Party Complaint without leave of court.  *See* Fed. R. Civ. P. 14(a)(1).  He failed to do so.  Nevertheless, on January 15, 2023 he filed his Amended Answer with a Third Party Complaint, without filing the required motion seeking leave of Court.

Where, as here, a defendant files an untimely third party complaint under Rule 14, "[t]he proper response . . . is to move to strike the [pleading]."  *Ristenbatt v. Western Glass Supply, Inc.*, 2021 WL 5867434, at *2 (M.D. Pa. Jul. 19, 2021) (quoting 3 James Wm. Moore, *Moore's Federal Practice* § 14.24 at 14-63 (3d ed. 2013)).  This Court has repeatedly struck untimely third party complaints filed without a motion under Rule 14(a)(1).  *See, e.g., Sullivan v. Limerick Golf Club, Inc.*, 2008 WL 2502133, at *3 (E.D. Pa. Jun. 23, 2008) (dismissing untimely third party complaint

filed without seeking leave of court and noting that "[n]oncompliance with Federal Rule 14(a)(1) and Local Rule 14.1 is sufficient to warrant dismissal of [a defendant's] third-party Complaint"); *Reynolds*, 2006 WL 1490105, at *1 (granting motion to strike third party complaint filed without leave of court); *Roberts v. Leasure*, 2006 WL 1967335, at *4 (E.D. Pa. Jul. 11, 2006) (granting motion to strike untimely third party complaint where the defendant failed to obtain leave of court under Rule 14(a)(1))).[13]  For that reason, the Third Party Complaint should be stricken.

Further support to strike Patterson's Third Party Complaint can be found in the factors above – all of which weigh in favor of striking Patterson's pleading:  (1) Patterson entirely neglected to file a Rule 14 motion (let alone file one on time) seeking leave to file his Third Party Complaint; (2) Patterson's third party claims necessarily complicate this suit by naming a variety of different parties and asserting a plethora of claims against them (all of which lack merit), which would inherently (3) delay trial in an already severely protracted case and lead to (4) duplicative litigation of matters previously settled.  *See Reynolds*, 2006 WL 1490105, at *3.  Moreover, for the reasons set forth herein, (5) all of Patterson's claims are devoid of any merit and (6) Patterson stands to suffer no prejudice because his third party complaint is a recitation of matters already decided – and arguments already rejected – by this Court.  *Id.*  Striking Patterson's pleading will merely preserve the *status quo* and prevent him from relitigating what this Court has already determined.

---

[13]  This Court emphasized in *Roberts*, that "litigants must comply with the basic edicts of both Federal Rule 14 and Local Rule 14.1(a) that once a party fails to file their third-party complaint within the [fourteen]-day restriction set forth in Federal Rule 14, the untimely party ***must*** obtain leave from the court to file a third-party complaint against a third-party defendant."  2006 WL 1967355 at *2 (emphasis added).

## V.        CONCLUSION

For the reasons set forth herein, all of the Counterclaims fail as a matter of law.  Patterson is merely seeking to continue this tired 30-year dispute despite this Court addressing – and rejecting – the central issues upon which Patterson's claims are based.  Accordingly, this Court should dismiss Patterson's counterclaims with prejudice, thereby bringing this needlessly protracted litigation one step closer to its end.  In addition, the Court should strike the Third-Party Complaint as it does not comply with Fed. R. Civ. P. 14.

Respectfully submitted,

Dated:  February 3, 2023

/s/ Michael K. Twersky
Michael K. Twersky, Esquire (ID # 80568)
Beth L. Weisser, Esquire (ID # 93591)
**FOX ROTHSCHILD LLP**
980 Jolly Road, Suite 110
Blue Bell, PA 19422
(215) 299-2923 (tel.)
(610) 397-0450 (fax)
mtwersky@foxrothschild.com
bweisser@foxrothschild.com

*Attorneys for Plaintiffs*