IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC., et al., <br><br> Plaintiffs, <br><br> *v.* <br><br> ANOTHNEÉ PATTERSON, et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 21-634-KSM |

## MEMORANDUM

**Marston, J.**                                                                                  **April 25, 2023**

Before the Court are Defendant Anthoneé Patterson's Motion for Leave to File Third

Party Complaint (Doc. No. 97) and Motion to Amend or Correct[1] (Doc. No. 93), as well as Parts

E and F of Plaintiffs The Trustees of the General Assembly of the Church of the Lord Jesus

Christ of the Apostolic Faith, Inc. ("Church Corporation") and the Church of the Lord Jesus

Christ of Apostolic Faith's ("Church") (collectively, "Plaintiffs") Motion to Dismiss Patterson's

Counterclaims and Strike Third Party Complaint (Doc. No. 96). For the reasons discussed below,

the Court denies Patterson's motions and Plaintiffs' motion as moot and *sua sponte* dismisses the

third-party complaint for lack of subject matter jurisdiction.[2]

---

[1] Pursuant to the Court's February 9, 2023 Order, the Court granted in part Patterson's Motion to Amend/Correct, allowing the name "Michael A. Burke" in Patterson's Amended Answer to be amended to "Robert A. Burke" and permitting the individuals identified as "Counterclaim-Defendants" in Patterson's Amended Answer to be amended to "Third Party Defendants." (Doc. No. 100.)  The Court took the remaining issues raised in the motion under advisement. (*Id.*)

[2] Because the Court writes only for the parties, who are intimately familiar with the facts surrounding this case, and because the facts were extensively outlined in the Court's March 19, 2021 Memorandum granting Plaintiffs' motion for a preliminary injunction (Doc. No. 37), the Court does not

## I.      PROCEDURAL HISTORY[3]

Following the Court's November 14, 2022 Memorandum denying Patterson's motion to dismiss (Doc. No. 82) and the Court's December 9, 2022 Order directing Patterson to file an answer to Plaintiffs' First Amended Complaint (Doc. No. 86), Patterson filed his Answer and First Counterclaim against the Church Corporation on December 23, 2022 (Doc. No. 87).

On January 3, 2023, Plaintiffs' counsel advised the Court that Patterson informed him that he intended to file an Amended Answer with counterclaims in the next few weeks.[4] (*See* Doc. No. 88 at 3.) That same day, the Court entered an Order setting forth a pleading schedule, pursuant to which Patterson was to file his Amended Answer with counterclaims by January 13, 2023. (*Id.* at 1.) The Order also outlined the deadline for Plaintiffs to respond to Patterson's counterclaims and a briefing schedule to the extent Plaintiffs filed a motion to dismiss the counterclaims. (*Id.*) On January 5, the Court entered an amended Order, which only changed Plaintiffs' reply brief deadline (to the extent they filed a motion to dismiss the counterclaims). (*See* Doc. No. 89.)

On January 15, Patterson filed an Amended Answer, which included not only a counterclaim against the Church Corporation but also a Third Party Complaint against Anthony Lamb, John Carlton Thomas, James Brown, Leon Bligen, and Johnny Brown, Esq. (individually and in their roles as Trustees), and Michael Twersky, Esq., Danielle Banks, Esq., Michael A. Burke, esq., Luther Weaver, Esq., L.E. Weaver & Associates, P.C., Fox Rothschild, LLP,

---

restate the underlying facts here.

[3] For the same reasons discussed *supra* n.2, the Court omits the lengthy background of this case and only includes the essential procedural history underlying these pending motions.

[4] Plaintiffs did not object to Patterson's request. (*See* Doc. No. 88 at 3.)

2

Stradley Ronon Steven & Young, and John/Jane Does 1-30.  (Doc. No. 90; *see also supra* n.1.)

On January 26, Patterson filed a Motion to Amend/Correct, in which he sought to correct the name of Third Party Defendant "Michael A. Burke" to "Robert A. Burke" and to substitute Montgomery McCracken Walker & Rhoads, LLP and MacElree Harvey as Third Party Defendants for John Doe Defendants 1 and 2.  (Doc. No. 93.)

On February 3, Plaintiffs filed a Motion to Dismiss Patterson's Counterclaims and to Strike the Third Party Complaint.  (Doc. No. 96.)  As is relevant here, in Sections E and F, Plaintiffs argued that Patterson's claims fail because (1) he does not differentiate between the Corporation, individual trustees, and Third Party Defendants or make clear which allegations lie against which parties, and (2) he did not seek leave to file his Third Party Complaint even though he filed it more than 14 days after serving his original answer, in contravention of Federal Rule of Civil Procedure 14(a)(1).  (*Id.* at 25–29.)  Shortly thereafter, on February 7, Patterson filed a Motion for Leave to File a Third Party Complaint.  (Doc. No. 97.)

On February 8, the Court held an in-person status hearing (Doc. No. 101), following which the Court ordered limited briefing on the Motion for Leave to File a Third Party Complaint and Sections E and F of Plaintiffs' Motion to Dismiss the Counterclaims and to Strike the Third Party Complaint (Doc. No. 100).  Those motions are now ripe for our review.

## II.     DISCUSSION

Under Rule 14(a)(1), "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."[5]  Fed. R. Civ. P. 14(a)(1).

---

[5] In their motion to strike, Plaintiffs argue that Patterson was required to file a motion for leave *before* filing his third party complaint and that his third party complaint was untimely.  (Doc. No. 96.)

As threshold matter, the Court will consider *sua sponte* whether the third-party claims

Patterson brings pursuant to Rule 14(a)(1) are properly before this Court. *Fortunato v. May*,

Civil Action No. 04-1140, 2009 WL 703393, at *6 (W.D. Pa. Mar. 16, 2009); see *also Morris v.*

*Lenihan*, 192 F.R.D. 484, 486 (E.D. Pa. 2000) ("Before the addressing the motions on the third-

party complaint, it must be determined whether the third-party complaint is properly before this

Court."). "The Court can consider this issue upon its own motion, because of the court's 'duty to

plumb its subject matter jurisdiction in every case at all times.'" *Fortunato*, 2009 WL 703393, at

*6 (quoting *Morris*, 192 F.R.D. at 487 n.3)).

"It is widely recognized that supplemental jurisdiction exists over a properly brought

third-party complaint. However, if a third-party complaint is not properly brought, the court has

no subject matter jurisdiction, and the complaint should be dismissed." *Morris*, 192 F.R.D. at

486–87 (collecting cases); *see also Fortunato*, 2009 WL 703393, at *6 ("Although Rule 14 does

---

The Court is not persuaded. Although Patterson served his original answer on December 23, 2022 (Doc. No. 87) and did not file his third party complaint until January 15, 2023 (Doc. No. 90) (and, therefore, more than 14 days passed, in contravention of the plain language of Rule 14(a)(1)), in the Court's January 3 and 5 Scheduling Orders, the Court explicitly permitted him to amend his answer and counterclaims by January 13, 2023 (Doc. Nos. 88, 89). In arguing that the third-party complaint was untimely filed, the Court finds that Plaintiffs ignore the Court's Scheduling Orders, which, broadly construed, would include amending to add a third-party complaint. *Cf. Simonson v. Borough of Taylor*, Civil No. 18-CV-2445, 2019 WL 6715789, at *3–4 (M.D. Pa. Dec. 10, 2019) ("No doubts that defendants did not file their [third-party complaint] within 14 days after they filed their answer to plaintiff's original complaint in compliance with Rule 14(a)(1). However, Defendants point out that they timely filed their [third-party complaint] pursuant to the court's March 29, 2019 Case Management Order in which it directed that the final date for the joining of additional parties shall be May 30, 2019. Even though the Case Management Order did not specifically reference the time to file a third party complaint, such a pleading is an appropriate way to join additional parties. . . . Based on the facts and circumstances of this case, the court finds that defendants timely filed their [third-party complaint] since it was filed by the deadline it set in [the] Case Management Order. Thus, no motion for leave of court to file the [third party complaint] was required in this case[.]"). And although Patterson filed his third-party complaint on January 15, he attempted to do so on January 13—the deadline in the Court's orders—and was only unable to do so because the Court's electronic filing system was down for maintenance that day. Regardless, for the reasons discussed *infra*, the Court finds that the Court's lack of subject matter jurisdiction over the third-party complaint renders that timeliness issue moot.

not create an independent basis for subject-matter jurisdiction, supplemental jurisdiction exists over a properly plead[ed] Rule 14 claim . . . On the other hand, a third-party claim which is not properly brought pursuant to Rule 14, falls outside the court's supplemental jurisdiction, and should be dismissed.").

"A third-party claim pursuant to Rule 14(a) can only be asserted if it is based upon a theory of secondary or derivative liability of the third-party defendant to the third-party plaintiff." *Fortunato*, 2009 WL 703393, at *6; *see also Ristenbatt v. W. Glass Supply, Inc.*, NO. 1:20-cv-1634, 2021 WL 5867434, at *2 (M.D. Pa. July 19, 2021) ("In order for a third-party claim to be valid, there must be a basis for liability between the defendant/third-party plaintiff and the third-party defendant."); *Berryman v. Newalta Env't Servs., Inc.*, Civil Action No. 18-793, 2018 WL 5631169, at *2 (W.D. Pa. Oct. 31, 2018) ("[T]hird party complaints are proper under Rule 14 provided that the pleadings provide a basis for the third-party defendant's liability to the defendant/third-party plaintiff."); *United Nat'l Ins. Co. v. Indian Harbor Ins. Co.*, 306 F.R.D. 153, 154 (E.D. Pa. 2015) ("Rule 14(a) allows a defendant, as a third-party plaintiff, to bring in a third-party defendant only where the defendant alleges that its liability to the plaintiff is secondary or derivative of the liability of the third-party defendant."); *Morris*, 192 F.R.D. at 488 ("[I]n determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for the third-party defendant's liability to the defendant/third-party plaintiff." (cleaned up)).  "Such secondary or derivative liability exists, for example, where there is an indemnity agreement in favor of the defendant or indemnity is implied by law," or where the third-party defendant "owes or may owe the defendant contribution as a joint tortfeasor." *United Nat'l Ins. Co.*, 306 F.R.D. at 154–55; *see also Fortunato,* 2009 WL 703393, at *7 ("[A third-party complaint] must set forth a claim of

secondary liability in which the third-party defendant is liable under a theory of derivative

liability recognized by substantive law such as indemnification or contribution.").

At bottom, "[t]he crucial characteristic of a Rule 14 claim is that defendant is attempting

to transfer to the third-party defendant the liability asserted against him by the original plaintiff."

*Rocuba v. Mackrell*, Civil Action No. 10-1465, 2011 WL 5869787, at *1 (M.D. Pa. Nov. 22,

2011) (internal quotation marks and citation omitted); *see also id.* ("Third-party liability must

depend on the outcome of the main claim and derive from defendant's liability to the plaintiff in

the main action so that, if the third-party plaintiff is found liable, the third-party defendant will

be liable to the third-party plaintiff 'under a theory of indemnification, contribution, or some

other theory of derivative liability recognized by the relevant substantive law.'" (citation

omitted)).  A defendant/third-party plaintiff may not bring a claim against a third-party defendant

who is solely liable to the plaintiff.  *See, e.g.*, *Simonson*, 2019 WL 6715789, at *4 ("Indeed, a

defendant may not assert a third-party claim under Rule 14 against a party who is solely liable to

the plaintiff." (cleaned up)).  "The mere fact that the alleged third-party claim arises from the

same transaction or set of facts as the original claim is not enough." *Rocuba*, 2011 WL 5869787,

at *2 (cleaned up).

Here, Plaintiffs asserted three claims against Patterson in the First Amended Complaint.

(Doc. No. 67 at 28–35 (Counts I–III).)  First, they seek a declaratory judgment that the

arbitration adjudications and judgment Patterson acquired in the Patterson Action are

unenforceable against the Church and Church Corporation.  (*Id.* (Count I).)  Then, they assert

two 42 U.S.C. § 1983 claims, one alleging a First Amendment violation and the other alleging

violations of the due process protections of the Fifth and Fourteenth Amendments.  (*Id.* (Counts

II–III).)

In his third party complaint, Patterson asserts three claims against all the Third Party

Defendants, which are comprised of individual Trustees as well as the attorneys and law firms

that have represented Bishop Shelton, the Church, and the Church Corporation over the past

decade-plus:  first, he seeks a declaratory judgment that "Plaintiffs' claims are barred by

collateral estoppel, res judicata, and/or the *Rooker-Feldman* doctrine" and that "his judgment is

fully and immediately enforceable" (Doc. No. 90 at ¶¶ 391–92 (Count I)); second, he brings an

abuse of process claim (*id.* at 68–72 (Count III)); and third, he asserts a Racketeer Influenced and

Corrupt Organizations ("RICO") Act claim (*id.* at 72–76 (Count IV)).  As to the Trustees, he

asserts an additional fourth claim for breach of fiduciary duty.[6]  (*Id.* at (Count II).)

Critically, nowhere in his third party complaint does Patterson allege that the Third-Party

Defendants are secondarily or derivatively liable to him on the claims Plaintiffs' assert against

him.[7]  (*See generally* Doc. No. 90.)  In other words, he is not attempting to transfer liability to

the third-party defendant as to the claims asserted against him by Plaintiffs; instead, he brings

independent claims.  This is the death knell for his third-party complaint.  *See Fortunato*, 2009

WL 703393, at *7 ("In this case, third-party plaintiffs did not set forth derivative claims against

third-party defendant. . . . The third-party claim is for negligence and is framed as a defense to

---

[6] Patterson also brings the same claims as counterclaims against Plaintiffs.  Parts A to D of
Plaintiffs' motion to dismiss, which address Patterson's counterclaims, remain under advisement, and will
be addressed separately once the parties complete briefing.

[7] Despite no secondarily or derivative liability allegations in the third party complaint, Patterson
argues in his brief that "[t]he outcome of his claims is dependent upon the outcome of Plaintiffs' claims
because, once his judgment is found enforceable, [Third-Party Defendants] will be liable to Patterson
either through their privity with Kenneth Shelton or their illegal receipt of Church Corporation funds from
culpable parties they conspired with to abscond with those funds.  Thus, their liability is derivative of and
depend upon the outcome of Plaintiffs' claims."  (Doc. No. 110 at 5.)  As discussed in greater detail
below, the Court is unpersuaded and notes that Patterson fails to address how the third party defendants'
liability to him would in any way be connected to his liability to Plaintiffs for the claims asserted against
him.

plaintiff's allegations rather than a derivative claim. Third-party plaintiffs argue that they were

not negligent; rather it was third-party defendant who was negligent.  This is not a proper basis to

assert a third-party claim against a third-party defendant pursuant to Rule 14.  To state a

derivative claim, third-party plaintiffs would need to argue that if third-party plaintiffs are found

negligent, they are entitled to be indemnified by third-party defendant.").  *Cf. Barker v.*

*Hostetter*, Civil Action No. 13-5081, 2014 WL 6070757, at *7 (E.D. Pa. Nov. 13, 2014)

("Defendants do not allege any facts in the Third-Party Complaint to establish that Third-Party

Defendants are or may be liable to Defendants for all or any part of the claims Plaintiffs brought

against them on those grounds. . . . As Defendants have not sufficiently alleged facts

demonstrating the liability of Third-Party Defendants for all or part of the claims Plaintiffs

brought against Defendants, the sole Count in the Third-Party Complaint fails to satisfy Rule

14(a), and, as a result, that claim cannot be maintained.").  *Contra Berryman*, 2018 WL 5631169,

at *2 ("Newalta brings forth common law claims for breach of contract, indemnity, and

contribution.  The third-party complaint clearly sets forth a theory of secondary liability as

contemplated by Rule 14.  That is, there is a direct line of liability alleged to exist between

Newalta and Smith Management independent of that between Berryman and Newalta.  Yet,

secondary liability is also evident because both Newalta's contribution and indemnification

claims set forth alleged liability that is entirely dependent on being found liable to Berryman for

the underlying FLSA and PMWA violations.").

       In his reply brief in support of his motion for leave, Patterson recognizes that he is not

seeking indemnification or contribution, two widely recognized forms of derivative liability.

(*See* Doc. No. 110 at 5 ("The claim that Rule 14 bars Patterson's claims because they do not seek

indemnity or contribution is a red herring and elevates form over substance.").)  Patterson

argues, however, that "[t]he outcome of his claims is dependent upon the outcome of Plaintiffs'

claims because, once his judgment is found enforceable, [Third-Party Defendants] will be liable

to Patterson either through their privity with Kenneth Shelton or their illegal receipt of Church

Corporation funds from culpable parties they conspired with to abscond with those funds. Thus,

their liability is derivative of and depend upon the outcome of Plaintiffs' claims." (*Id.*) This is

unsupported and quite a leap. Notably, although Patterson argues that the third party defendants

would be liable to him *if he were to succeed on his third-party claims against them*, he does not

argue that they would be liable to him *based on his liability to Plaintiffs for the claims asserted

against him*. In short, Patterson misunderstands the notion of derivative liability.

Furthermore, the crux of the breach of fiduciary duty and RICO claims Patterson asserts

against the Third-Party Defendants is that they were looting, or conspiring to loot, Church and

Church Corporation assets and misusing Church and Church Corporation funds. (*See, e.g.*, Doc.

No. 90 at ¶ 397 (alleging, with respect to the breach of fiduciary duty claim, that "Counterclaim-

Defendants failed to take any action to prevent Kenneth Shelton and others under his control or

acting in concert with him, all adjudicated thieves, from looting Church and Church Corporation

assets"); *id.* at ¶ 401 (alleging, with respect to the breach of fiduciary claim, "The misuse of trust

funds to bankroll the legal defense of fiduciaries accused of theft is unlawful and against public

policy"); *id.* at ¶ 429 (alleging, with respect to the RICO claim, that "Counterclaim and Third-

Party Defendants used the Church and Church Corporation as an enterprise in furtherance of

their scheme to continue to loot Church and Church Corporation property and assets"); *id.* at

¶ 436 (alleging, with respect to the RICO claim, that "[t]he wire and mail fraud are based upon a

scheme of illicitly transferring Church and Church Corporation funds from Church and Church

Corporation accounts or other trust accounts for the benefit of Church members into the hands of

members of the conspiracy or to locations outside the Commonwealth of Pennsylvania without explaining or accounting to the Church members for those transfers").)  But whether the Third-Party Defendants violated RICO or breached their fiduciary duties to the Church and Church Corporation by looting funds is *not* dependent on whether Patterson used state procedures to deprive Plaintiffs of their property or the enforceability of the arbitration adjudications against the Church and Church Corporation.  And, contrary to Patterson's assertion, even if the Court were to ultimately rule in Patterson's favor on Plaintiffs' claims against him and find that he did not violate Plaintiffs' constitutional rights and that the arbitration adjudications are enforceable against the Church and Church Corporation, that does not mean that the Third-Party Defendants are automatically liable for violating RICO and their fiduciary duties.  Those are wholly independent claims.

\* \* \*

Ultimately, because Patterson's third party complaint fails to satisfy the requirements of Rule 14(a)(1), the Court must dismiss his complaint for lack of subject matter jurisdiction.

## III.     CONCLUSION

For the foregoing reasons, the Court dismisses the third party complaint for lack of subject matter jurisdiction.  The Court denies Plaintiffs' motion to strike and Patterson's motion for leave and the remainder of his motion to amend his answer as moot.  An appropriate Order follows.