## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<table>
<tr><td>

THE TRUSTEES OF THE GENERAL
ASSEMBLY OF THE LORD JESUS CHRIST
OF THE APOSTOLIC FAITH, INC., et al.,

     Plaintiffs,

     *v.*

ANTHONEÉ PATTERSON,

     Defendant.

</td><td>

CIVIL ACTION

NO. 21-634-KSM

</td></tr>
</table>

## MEMORANDUM

**Marston, J.**                                                                                      **June 1, 2023**

Plaintiffs the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. (the "Church")

and the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the

Apostolic Faith, Inc. (the "Church Corporation") (collectively, "Plaintiffs") sued Defendant

Anthoneé Patterson, seeking a declaratory judgment that the arbitration adjudications in an

underlying state court case do not apply to Plaintiffs and asserting § 1983 claims against

Patterson for violations of the First, Fifth, and Fourteenth Amendments.[1]  (Doc. No. 67 (Counts

I, II, & III).)  Patterson has filed an Amended Answer with Counterclaims.[2]  (Doc. No. 90.)

Patterson asserts claims for breach of fiduciary duty, abuse of process, and Racketeer Influenced

---

[1] Simultaneously, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  (Doc. No. 4.)  On March 19, 2021, following a three-day evidentiary hearing, the Court granted the preliminary injunction in an 85-page opinion.  (Doc. Nos. 37, 38.)  Subsequently, Patterson appealed the Court's issuance of the preliminary injunction (Doc. No. 39), which the Third Circuit Court of Appeals affirmed (Doc. No. 41).

[2] Patterson's Amended Answer also included a third-party complaint.  (*See* Doc. No. 90.)  On April 25, 2023, the Court dismissed the third-party complaint for lack of subject matter jurisdiction.  (*See* Doc. Nos. 119, 120.)

and Corrupt Organizations Act ("RICO").  (*Id.* (Counts II, III, & IV).)  He also seeks a declaratory judgment that Plaintiffs' claims are barred and that the state court arbitration adjudication "is fully and immediately enforceable."  (*Id.* (Count I).)

Plaintiffs move to dismiss Patterson's counterclaims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  (Doc. No. 96.)  Patterson opposes the motion.  (Doc. No. 122.)  For the reasons discussed below, the Court grants in part and denies in part Plaintiffs' motion.

# I.   DISCUSSION[3]

In their motion, Plaintiffs chiefly argue that the fiduciary counterclaim must be dismissed under Rule 12(b)(1) because Patterson lacks standing; the RICO counterclaim fails under Rule 12(b)(6) because Patterson does not have civil RICO standing and has failed to plead facts showing a pattern of racketeering activity; the abuse of process counterclaim fails because it is time-barred; and the declaratory judgment counterclaim should be dismissed because it is duplicative.  (*See* Doc. No. 96-2.)  The Court first addresses whether Patterson has standing to bring his breach of fiduciary counterclaim, as that involves the Court's subject matter jurisdiction over that claim and Rule 12(b)(1), before turning to Plaintiffs' remaining arguments under Rule 12(b)(6).

## A.   *Rule 12(b)(1)*

### 1.   <u>Legal Standard</u>

A party may move to dismiss an action for lack of subject matter jurisdiction under Rule

---

[3] The Court does not set forth a separate facts section, given that the parties are intimately familiar with the facts of this thirty-year dispute.  *See, e.g., Tr. of Gen. Assembly of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 730–47 (E.D. Pa. 2021); *Tr. of Gen. Assembly of the Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, -- F. Supp. 3d --, 2022 WL 16935615, at *1–4 (E.D. Pa. Nov. 14, 2022).  The Court notes any newly pleaded and relevant facts in its analysis below.

12(b)(1).  Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *see also Askew v. Tr. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 418 (3d Cir. 2012) (analyzing Rule 12(b)(1) standing challenge).  "A Rule 12(b)(1) standing challenge may attack the complaint facially or attack the factual basis for standing."  *Askew*, 684 F.3d at 418 (citation omitted).  "A facial challenge alleges a failure to plead jurisdictional prerequisites, whereas a factual challenge alleges that the prerequisites for jurisdiction do not in fact exist."  *Davis v. Fox & Roach LP*, Civil Action No. 20-2497, 2022 WL 2757413, at *2 (E.D. Pa. July 14, 2022) (citation omitted).  "When faced with a factual challenge, the Court may review evidence outside the pleadings and make a factual determination as to whether the Court has jurisdiction."  *Id.* (cleaned up); *see also Askew*, 684 F.3d at 417 (noting the district court "consulted depositions, affidavits, and other pertinent evidence" in analyzing the defendants' 12(b)(1) motion which raised "a factual challenge to [the plaintiff's] standing"); *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) ("The Government made a factual attack on the existence of subject matter jurisdiction (in contrast to a facial attack that deals with the sufficiency of the pleadings) . . . The District Court was permitted to make factual findings, beyond the pleadings, that were decisive to determining jurisdiction.").  This case involves a factual challenge, since Patterson pleads that he "is a member of the Church" (Doc. No. 90 at ¶ 184) and Plaintiffs argue that record evidence shows otherwise.  Therefore, the Court may consider evidence outside the pleadings below.

## 2.   <u>Analysis</u>

Plaintiffs argue that Patterson lacks standing to bring his fiduciary duty counterclaim because he is not a member of the Church.  (Doc. No .96-2 at 14–16.)  To establish that he has standing to sue, Patterson "must demonstrate that he suffered a concrete and particularized

injury-in-fact that is actual or imminent, not conjectural or hypothetical." *Askew*, 684 F.3d at 418 (internal quotation marks and citation omitted); *see also Schmolz?Bickenbach USA, Inc. v. Dauble*, Civil Action No. 09-5771, 2011 WL 285123, at *3 (E.D. Pa. Jan. 28, 2011) (noting that the "party asserting a claim has the burden to show that he or she has standing" and analyzing whether the defendants/counterclaimants had standing to pursue their counterclaims). In Count II, Patterson alleges that Plaintiffs breached their fiduciary duties by permitting Bishop Shelton and his flock to loot Church and Church Corporation assets and by paying for his legal fees. (*See, e.g.*, Doc. No. 90 at ¶¶ 397–98, 400–02.) However, "[m]isappropriation of church assets could have caused [Patterson] injury-in-fact, as an individual or derivatively, only if he is a member of the Church." *Askew*, 684 F.3d at 418 (analyzing standing with respect to plaintiff who asserted fiduciary duty claims). Therefore, to determine whether Patterson has standing to bring his fiduciary duty counterclaim, the Court must first determine whether Patterson is a member of the Church. The Third Circuit's decision in *Askew* governs our analysis and, for the reasons below, compels the conclusion that Patterson is *not* a member of the Church and that his breach of fiduciary claim cannot proceed in federal court.

"Civil courts encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance." *Askew*, 684 F.3d at 418. "The non-entanglement principle, anchored in First Amendment values, thus 'requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization.'" *Id.* (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)). "In so doing, civil courts accept decisions of the highest religious decision-maker as binding fact, so long as those decisions are not tainted by fraud or collusion." *Id.* Nonetheless, "the First Amendment does not remove from the purview of civil courts all controversies involving religious institutions," and a court may

4

"employ neutral principles of law to adjudicate" a controversy when the dispute "turns on a question devoid of doctrinal implications."  *Id.* at 418–19.

In *Askew*, the defendants argued that the plaintiff, Askew, was not a member of the Church and therefore did not have standing.  *Id.* at 417.  Significantly, *Askew* involved the same Church that is a party to this case.  *See generally id.*  *Askew* also involved substantially similar facts.  Like Patterson, Askew "was a member of the dissident faction" and did not accept Bishop Shelton as the General Overseer of the Church.  *Id.* at 416.  And like Patterson, Askew claimed that the Board of Trustees misappropriated Church assets and breached their fiduciary duties.  *Id.* at 415, 417.  There, the Third Circuit considered whether the controversy over Askew's membership status in the Church was "an ecclesiastical question or whether it may be resolved by reference to neutral principles of law" and concluded, upon review of the Church bylaws, that "in this Church, the question of who is and is not a member depends in part on religious practice."  *Id.* at 419.

In its analysis, the Third Circuit first determined that "membership in the Church is an ecclesiastical matter, for [the second membership requirement outlined in the bylaws] conditions an individual's membership on living in conformity with 'the doctrine of the Church.'"  *Id.* (citing the Church bylaw that provides "Qualifications and membership shall be judged by . . . (b) Life being consistent with the doctrine of The Church of the Lord Jesus Christ of the Apostolic standard").)  The court added, "We know of no neutral principle of law that could assist in evaluating whether a member lives his or her life in a manner consistent with church doctrine."  *Id.*

Second, the Third Circuit emphasized that the Church bylaws "delegate to the General Overseer the power to determine membership status," which encompasses the ability to

excommunicate members "for the good of the Church." *Id.* "Determining when excommunication is 'necessary for the good of the Church' undoubtedly involves a complex balancing of spiritual and pragmatic considerations, all properly left to the highest church authority, not civil courts." *Id.* at 420; *see also id.* ("We are not competent to upset judgments made by the General Overseer in this doctrinally sensitive area, for there are no neutral principles of law that shed light on the membership composition necessary for the good of the Church."). In turn, because Bishop Kenneth Shelton declared the plaintiff, Askew, to be a non-member of the Church, the Third Circuit found that he had no standing and affirmed dismissal of his claims for lack of jurisdiction. *See id.* at 420–21 ("Bishop Shelton, the General Overseer and the highest judicatory tribunal in the Church, testified that he declared Askew a nonmember on multiple occasions since 1992 . . . Consistent with the non-entanglement principle, we accept his pronouncement as conclusive.  Any other approach would embroil this Court in a two-decade-long intra-Church battle central to its mission and spiritual identity.").

So too here.  Virtually the same Church bylaws govern this case.  Accordingly, the Third Circuit's analysis applies with equal force here.  (*See* Pls.' PI Hr'g Ex. 2 (2006 Bylaws) Article 18 ("Qualifications and membership shall be judged by the following . . . (B) Life being consistent with the Doctrine of the Church of the Lord Jesus Christ of the Apostolic Faith"); Def.'s PI Hr'g Ex. 48 (2000 Bylaws) Article 18 (same); Pls.' PI Hr'g Ex. 1 (1961 Bylaws) Article XXI (same); *see also* Pls.' PI Hr'g Ex. 1 (1961 Bylaws) Article V, Section 9 ("The General Overseer has the right to remove any . . . member of the Church from office or membership without accusation or trial if he may deem it necessary for the good of the Church of the Lord Jesus Christ of Apostolic Faith"); Def.'s PI Hr'g Ex. 48 (2000 Bylaws) Article V, Section 5 (explaining that the General Overseer has the "right to remove any . . . member of the

Church from office or membership without accusation or trial if he may deem it necessary for the good of the Church of the Lord Jesus Christ of Apostolic Faith"); Pls.' PI Hr'g Ex. 2 (2006 Bylaws) Article 5, Section 5 (same).)

Bishop Kenneth Shelton has testified that Patterson is not a member of the Church and was disfellowshipped in 1992. (*See* Feb. 23, 2021 Tr. at 182:15–183:4 (testifying that he declared that all of those who aligned themselves with Roddy Nelson Shelton were disfellowshipped and are no longer members of the Church, including Patterson), 185:2–14. *Cf.* Doc. No. 67-6, Ex. E (Council of Priests' proclamation that "[w]e will not accept Anthonee Patterson or any of those who aid, abet or associate with him as members or officers of this Church, as they have demonstrated that they hold religious and doctrinal views contrary to our own").) Just as in *Askew*, where the Third Circuit accepted Bishop Shelton's pronouncement that the plaintiff was not a member of the Church, in accordance with the non-entanglement principle, here the non-entanglement principle similarly requires this Court to defer to Bishop Shelton's testimony that he declared Patterson to be a non-member of the Church. And because Patterson is *not* a member of the Church, he lacks standing[4] to bring his breach of fiduciary duty

---

[4] In his sur-reply, Patterson argues, "The length of time that these related proceedings in various courts have gone on without any determination that Patterson lacks standing confirms that he has standing." (Doc. No. 124 at 5; *see also id.* ("The Pennsylvania Courts . . . have expressly ruled that he has standing."); *id.* at 6 ("Contrary to Plaintiffs' specious contentions, *Rooker-Feldman* compels this Court to accept the Pennsylvania Courts' determination that Patterson has standing to assert his claims against them.").) But this fundamentally misunderstands what standing means. The party asserting a claim must demonstrate that he has standing to pursue a claim in federal court. *See, e.g.*, *Askew*, 684 F.3d at 418 ("Askew, the party seeking to invoke federal court jurisdiction, shoulders the burden of establishing his standing to sue."); *Schmolz?Bickenbach USA*, 2011 WL 285123, at *3 (applying the same principles to counterclaimants). Whether the Pennsylvania *state* courts have found that Patterson has standing is entirely irrelevant to determining whether he has standing to pursue his counterclaims in *federal* court. Further, Patterson's argument that the *Rooker-Feldman* doctrine applies here is incorrect and ignores this Court's previous ruling. (*See* Doc. No. 37 at 67 ("Since Plaintiffs were not a party in the Patterson Action, they were not 'state court losers' and Patterson's *Rooker-Feldman* argument necessarily fails.").)

counterclaim and that claim must be dismissed.[5]  *See Askew*, 684 F.3d at. at 415 ("We conclude that the non-entanglement principle embedded in the Religion Clause shields Bishop Shelton's membership decisions from civil court review.  Correctly applying this principle, the District Court deferred to Bishop Shelton's declaration that he terminated Askew's membership in the Church.  Because Askew's non-member status deprives him of standing to assert claims alleging harm to the Church, we will affirm the dismissal of the case.").

### B.      Rule 12(b)(6)

#### 1.      <u>Legal Standard</u>

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

---

[5] In the alternative, the Court dismisses Patterson's breach of fiduciary claim under Rule 12(b)(6) as time barred.  A two-year statute of limitations applies to breach of fiduciary duty claims, which begins to run "when the trustee openly and unequivocally violates his duties."  *Weis-Buy Servs. Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005).  Patterson makes a host of allegations as to how Plaintiffs allegedly breached their fiduciary duties, but these all occurred many, many years ago.  (*See, e.g.*, Doc. No. 90 at ¶¶ 251–52 ("In or about June and July 1993, with the knowledge and assistance of Counterclaim and Third Party Defendants and their predecessors in interest, one or more checks totaling $3,600.00 drawn upon Church and/or Church Corporation funds signed by Kenneth Shelton were paid to or paid on behalf of Ernest Miller.  Upon information and belief, no explanation or accounting to the Church members for this payment has ever been made."), ¶¶ 282–83 ("In or about June and July 1994, and again in or about March 1, 2006, with the knowledge and assistance of Counterclaim and Third Party Defendants and their predecessors in interest, one or more checks totaling $6,500.00 drawn upon Church and/or Church Corporation funds signed by Kenneth Shelton were paid to or paid on behalf of Judah Jamison for PAR.  Upon information and belief, no explanation or accounting to the Church members for this payment has ever been made."), ¶¶ 300–08 (alleging that Elder John Thomas withdrew various amounts from the Church Account in 1994, 1995, 1997, and 1998 and that "no explanation or accounting to the Church members for these withdrawals has ever been made").)  To that end, Patterson does not allege facts to show that any of the conduct at issue occurred *in the last decade*.  Patterson alleges that "[th]ese violations have been occurring since 2006 and are continuous and ongoing" (*see id.* at ¶ 403) but this is entirely conclusory and unsupported by the facts pleaded in his counterclaims (*see id.* at 29–77).  As such, the continuing violations doctrine does not apply.  *See Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) ("This doctrine applies when a defendant's conduct is part of a continuing practice.  In such cases, so long as the last act in the continuing practice falls within the limitations period the court will grant relief for the earlier related acts that would otherwise be time barred." (cleaned up)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "Although the court is generally limited in its review to facts contained in the complaint, it may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *EMC Outdoor, LLC v. Stuart*, Civil Action No. 17-5172, 2018 WL 3208155, at *2 (E.D. Pa. June 28, 2018) (cleaned up). The same pleading standard applies to counterclaims. *See Schmolz?Bickenbach USA*, 2011 WL 285123, at *3 ("[T]he Court of Appeals and several district courts in this Circuit have noted that the pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to . . . counterclaims."); *see also EMC Outdoor*, 2018 WL 3208155, at *2 (applying same standard to motion to dismiss counterclaims).

## 2.  **Analysis**

Next, Plaintiffs move to dismiss Patterson's RICO, abuse of process, and declaratory judgment counterclaims for failure to state a claim. We address each in turn below.

### i.  *RICO*

Plaintiffs argue that Patterson lacks standing to assert a civil RICO claim. (Doc. No. 96-2 at 23–24.) "Civil RICO standing is usually viewed as a Federal Rule of Civil Procedure 12(b)(6) question of stating an actionable claim, rather than as a Rule 12(b)(1) question of subject matter jurisdiction." *DiGilio v. U.S. Xpress, Inc.*, 293 F. Supp. 3d 522, 525 n.12 (E.D. Pa. 2018) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 n.7 (3d Cir. 2000)). "To have standing under RICO, a plaintiff must show (1) that his business or property was injured (2) by reason of a violation of the racketeering statute." *Id.*; *see also* 18 U.S.C. § 1964(c) ("Any person injured in his business

or property by reason of a violation of section 1962 of this chapter may sue . . ."); *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) ("As distinct from Article III standing, a plaintiff bringing a civil RICO claim must additionally state an injury to business or property and that a RICO predicate offense not only was a but for cause of injury, but was the proximate cause as well." (cleaned up)).  "The Third Circuit has explained that an injury to business or property requires 'a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Ketner v. Widell*, No. 5:20-cv-6360, 2021 WL 2808829, at *3 (E.D. Pa. July 6, 2021) (quoting *Maio*, 221 F.3d at 483).  "The injury alleged must 'be an ascertainable out of pocket loss.'" *Id.* (citation omitted).  Patterson has not met that standard here.

First, Patterson has not pleaded any facts to show a concrete injury to his individual business or property (i.e., that he has suffered personal monetary losses).  Rather, Patterson merely pleads that Plaintiffs have "loot[ed] Church and Church Corporation property and assets" and "fraudulently transferred Church and Church Corporation funds, assets, and/or real property from Church and Church Corporation accounts and title to private accounts and title."  (*See, e.g.*, Doc. No. 90 at ¶¶ 429–30, 433, 438; *see also id.* at ¶ 436 ("The wire and mail fraud are based upon a scheme of illicitly transferring Church and Church Corporation funds from Church and Church Corporation accounts or other trust accounts for the benefit of Church members into the hands of members of the conspiracy . . ."), ¶ 437 ("The wire and mail fraud are based upon a scheme to dispose of Church and Church Corporation real property by illicitly transferring same either directly into the hand [sic] of members of the conspiracy or illicitly transferring the proceeds from the sale of same into the hand [sic] of members of the conspiracy . . .").)  In other words, he alleges the Church and Church Corporation were injured.  This is insufficient.

For the reasons discussed *supra* Section A.2, Patterson is not a member of the Church. And even if Patterson were a member of the Church Corporation (a non-profit corporation under Pennsylvania law), he still could not have civil RICO standing because his claims are derivative. *Cf. Jannuzzio v. Danby*, Civil Action No. 22-cv-01189, 2022 WL 2541678, at *10 (E.D. Pa. July 7, 2022) ("Notably in the context of analyzing proximate cause for RICO standing, the Third Circuit has spread a wide net for what constitutes a derivative harm.  For example, in the shareholder context, actions that decrease the value of the corporation have been held not to confer RICO standing on individual plaintiffs."); *Irish v. Ferguson*, 970 F. Supp. 2d 317, 348 (M.D. Pa. 2013) ("Although Irish is a member of the Lakefront limited liability company, Lakefront is not a plaintiff in this action.  The Complaint, however, alleges harm to Lakefront. Irish cannot recover for those alleged harms because the harm to Irish, if any, is indirect because he is only a member of the LLC.  A plaintiff must suffer a direct injury in order to have RICO standing."); *id.* at 349 ("This type of injury, the looting of a company, also does not confer individual standing on Plaintiffs."); *John L. Motley Assocs., Inc. v. Rumbaugh*, 104 B.R. 683, 687 (E.D. Pa. 1989) ("The RICO count asserted by Rumbaugh alleges dissipation of the corporate assets.  This is an injury done to the corporation itself rather than to any individual shareholder.  The RICO injury asserted by Rumbaugh alleges a harm to the corporation and not a harm to Rumbaugh in his individual capacity.  There is no independent shareholder standing to assert RICO claims where the harm to the shareholders is derivative of the harm to the corporation.  This RICO action is derivative and belongs to the corporation."); *Commer v. Am. Fed'n of State, Cnty. & Municipal Emps.*, No. 01 Civ. 4260(RWS), 2003 WL 21697873, at *3 (S.D.N.Y. 2003) ("Commer also lacks standing to bring a RICO suit making these allegations in a personal capacity because the injury he alleges has been incurred not by Commer personally

but by the entire membership of Local 375 and DC 37.  The damages alleged by Commer derive

from injury to a third party, and Commer accordingly lacks standing to bring a RICO action.").

For these reasons, the Court dismisses Patterson's civil RICO claim (Count IV) for lack

of standing.

ii.     _Abuse of Process_

Plaintiffs also move to dismiss Patterson's abuse of process counterclaim, the crux of

which is that after the Arbitration Award was entered in April 2006, "each and every pleading

[Plaintiffs filed] . . . [was] disingenuous and filed solely for delay and avoidance of the fact that

the majority faction lost at the Arbitration."[6]  (Doc. No. 90 at ¶ 407; _see also id._ at ¶ 411

("Immediately after Kenneth Shelton's majority faction lost the Arbitration, they began a series

of efforts and frivolous litigations across multiple states to avoid the Arbitral award.").)

As a preliminary matter, the Court notes that many of Patterson's allegations are entirely

---

[6] Patterson also claims that Plaintiffs' representations about the Church and/or Church
Corporation by-laws during this action have been "disingenuous."  (_See_ Doc. No. 90 at ¶ 409 ("Each and
every representation of the Church and/or Church Corporation bylaws to the Court has been disingenuous
since the bylaws in effect at the time of the Arbitration are the only by-laws relevant to the action."), ¶ 409
("The purported amendments to the bylaws were disingenuous and merely post-Arbitration tactical
maneuvers designed, as part of the conspiracy and scheme to avoid enforcement of the Award and
continue looting Church and Church Corporation assets, to deceive the various tribunals in which
Counterclaim and Third-Party Defendants had filed their frivolous cases and contrive claims to avoid
enforcement of the Award.").)  Patterson's allegations about a party's _internal by-laws_ do not support his
abuse of process claim.  Patterson cites no authority—and this Court has found none—that holds an
organizations by-laws constitute _legal process_ for the purposes of an abuse of process claim.  _Cf. Fouad v.
Milton Hershey Sch. & Tr._, Civil No. 1:19-CV-253, 2020 WL 8254470, at *21 (M.D. Pa. Feb. 19, 2020)
("[A]s its name implies, an abuse of process claim must involve some actual abuse of legal process.
While the word process as used in the tort of abuse of process has been interpreted broadly, and
encompasses the entire range of procedures incident to the litigation process, an abuse of process claim
must entail abuse of some legal process and cannot merely rest on a general sense of affront inspired by
litigation." (cleaned up)); _Langenberg v. Warren Gen. Hosp._, No. 1:12-cv-175-NBF, 2013 WL 6147576,
at *11 (W.D. Pa. Nov. 22, 2013) ("The term 'process' has been interpreted in Pennsylvania to encompass
all of the procedures incident to the litigation process, including discovery proceedings, the noticing of
depositions and the issuing of subpoenas.  The filing of the Adverse Action Report in this case does not
constitute a use of 'legal process' and, therefore, Plaintiff cannot state a viable claim under Count 9."
(cleaned up)).

conclusory.  (*See, e.g.*, Doc. No. 90 at ¶ 406 ("Counterclaim and Third-Party Defendants' conduct amounts to abuse of process because they have maliciously misused the courts to accomplish a purpose not warranted."), ¶ 407 ("Specifically, they filed and litigated claims with an ulterior purpose and improperly used process in the litigation of the claims.").)  Given Patterson's vague and general allegations, it is also difficult for the Court to discern exactly what process Patterson is challenging and in which cases.  (*See id.* at ¶ 408 (stating that "each and every pleading" was "filed solely for [the purpose of] delay" actions), ¶ 411 (alleging Plaintiffs "began a series of efforts and frivolous litigations across multiple states to avoid the Arbitral Award").)

To the extent that Patterson's abuse of process claim is based on Plaintiffs' initiation of the instant action in February 2021 (*see* Doc. No. 124 at 9 ("Patterson has stated a valid . . . abuse of process claim on the basis that Plaintiffs – state-court losers under *Rooker-Feldman* – have instituted this sham litigation to dupe this Court into preventing Patterson from enforcing his judgment.")), the Court finds that such a claim fails as a matter of law.  "To state a claim for abuse of process under Pennsylvania law, a plaintiff must allege facts sufficient to show that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff."  *EMC Outdoor*, 2018 WL 3208155, at *3 (cleaned up).  Examples of abuse of process include "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution."  *Id.* (cleaned up).  "The touchstone of the tort is that, *subsequent* to the issuance of process, a party has perversely, coercively, or improperly used that process."  *Id.* (quoting *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992)).  "Absent allegations that a party has abused the process *after* its issuance an abuse of process

claim cannot stand." *Id.* at \*4 (cleaned up). "[T]he commencement or maintenance of a lawsuit, even for an improper purpose, does not constitute an abuse of process under Pennsylvania law." *Id.*; *see also id.* (dismissing the defendant's abuse of process counterclaim because the mere initiation of the present suit against the defendant did not give rise to an abuse of process claim); *Am. Institute for Chartered Prop. Cas. Underwriters v. Posner*, Civil Action No. 19-5369, 2020 WL 12968359, at \*1 n.1 (E.D. Pa. Dec. 31, 2020) ("[T]he allegations in the amended counterclaim all refer to Counterclaim Defendants' initiation of this lawsuit against her and their purported motivations for doing so. Posner has not alleged any definite acts by Counterclaim Defendants after the initiation of this action. At most, Posner has alleged that Counterclaim Defendants commenced the underlying action and sought a preliminary injunction for an improper purpose. As pled, however, this abuse of process claim fails as a matter of law because such a claim cannot be based on the commencement or continuation of legal proceedings, but rather must be based upon the improper use of process *after it has been issued*. Posner's abuse of process claim, based solely on Counterclaim Defendants' initiation of this lawsuit, is, therefore, dismissed." (cleaned up)); *Cameron*, 817 F. Supp. at 22 ("The core of GMA's argument is that GMA has improperly initiated this lawsuit. Noticeably absent . . . is any allegation that Cameron has abused the process *after* its issuance. Without such allegations an abuse of process claim cannot stand. Even if the plaintiff's motive for initiating this lawsuit is not laudable, it nevertheless does not give rise to a claim of abuse of process. When a lawsuit is initiated for vexatious and retaliatory purposes, the tort which is implicated is a [sic] wrongful use of civil proceedings. Accordingly, the defendant's abuse of process counterclaim is dismissed."). Thus, Patterson's abuse of process claim fails to the extent it rests on his allegations that Plaintiffs improperly brought this case against him.

Next, to the extent that Patterson hinges his abuse of process counterclaim on any legal process Plaintiffs allegedly used against him between April 2006 (when the Arbitration Award was entered) and January 2021 (two years before Patterson brought his counterclaim), the Court finds his claim is time-barred. Abuse of process claims are subject to a two-year statute of limitations in Pennsylvania. 42 Pa. C.S.A. § 5524(1); *Gok v. Roman Catholic Church*, 550 F. Supp. 3d 221, 237 (E.D. Pa. 2021). "The statute of limitations for an abuse of process claim begins to run as soon as the right to institute and maintain a suit arises." *Langman v. Keystone Nat'l Bank & Tr. Co.*, 672 F. Supp. 2d 691, 701 (E.D. Pa. 2009), *aff'd*, 502 F. App'x 220 (3d Cir. 2012). Therefore, any legal process that Patterson challenges that occurred before 2021 is barred by the two-year statute of limitations.[7]

For these reasons, the Court grants Plaintiffs' motion to dismiss the abuse of process counterclaim (Count III).[8]

---

[7] Nor has Patterson alleged facts sufficient to show that the continuing violation doctrine applies; as noted *supra* n.5, given the generality and vagueness of his allegations, it is unclear *what* process he is challenging and *when* that process was brought. Patterson's Amended Answer does not make clear whether any process he is challenging occurred in the last two years and whether such an act was indeed related to earlier time-barred acts. *See Randall*, 919 F.3d at 198.

[8] Plaintiffs argue that Patterson is really asserting a malicious prosecution claim. (*See* Doc. No. 96-2 at 22 n.8 ("Though couched as an abuse of process claim, Count III of Patterson's Third Party Complaint reads like a malicious use of civil process claim because Patterson challenges the initiation of civil proceedings since the issuance of the Arbitration Award."); Doc. No. 123 at 11 ("Patterson's Malicious Prosecution claim is equally deficient.").) In his Amended Answer and Counterclaims, Patterson labeled Count III "Abuse of Process" and in his response, Patterson continued to refer to his claim as an abuse of process claim. (Doc. No. 122 at 23–24 (stating elements of abuse of process claim).) The Court therefore analyzed the claim as an abuse of process claim. However, in the alternative, the Court finds that to the extent Patterson asserted a malicious use of process claim, that claim also must be dismissed because Patterson has not pleaded specifically *which* proceedings he is challenging that *Plaintiffs* (as opposed to Kenneth Shelton or others of Shelton's flock) initiated or that those proceedings have concluded and terminated in his favor. *See Bell v. Sullivan*, Civil Action No. 17-912, 2017 WL 5518005, at *7 (E.D. Pa. Nov. 16, 2017) ("In Pennsylvania, the tort of malicious use of process has been codified and modified by the Dragonetti Act. To state a claim for wrongful use of civil proceedings, a party must prove that (1) the underlying proceedings terminated in his or her favor; (2) the defendant caused those proceedings to be instituted without probable cause; and (3) the proceedings were instituted for an improper purpose." (cleaned up)); *Gordian Med., Inc. v. Gentell, Inc*., Civil Action No. 12-5582, 2013 WL 4457363, at *1 (E.D. Pa. Aug. 21, 2013) ("Unlike the common law abuse of process tort, a

iii.     *Declaratory Judgment*

Last, the Court addresses Plaintiffs' motion to dismiss Patterson's declaratory judgment counterclaim as duplicative.  In Count I, Patterson seeks a declaratory judgment that "Plaintiffs' claims are barred and that his judgment is fully and immediately enforceable."  (Doc. No. 90 at ¶ 392; *see also id.* at ¶ 391 ("A declaration that Plaintiffs' claims are barred by collateral estoppel, res judicata, and/or the Rooker-Feldman Doctrine would definitively resolve that controversy.").)  In their motion, Plaintiffs argue that Patterson's declaratory judgment counterclaim is duplicative of arguments he made previously during the preliminary injunction hearing.  But Plaintiffs do not cite any case law supporting their position that this bars Patterson from bringing a counterclaim now.  *See* E.D. Pa. Local Civ. R. 7.1(c) (noting that movants must include "authorities relied upon in support of the motion").  Plaintiffs' contention that Patterson's declaratory judgment counterclaim should be dismissed as duplicative of his other counterclaims is also unavailing as the court has dismissed all of Patterson's other counterclaims.  Thus, the Court denies Plaintiffs' motion to dismiss the declaratory judgment claim.

## II.     CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to dismiss in part.  The Court dismisses the breach of fiduciary duty, abuse of process, and RICO counterclaims.  With respect to the breach of fiduciary duty and RICO counterclaims, the dismissal is with prejudice

---

Dragonetti Act [malicious use of process] claim requires that 'the proceedings have terminated in favor of the persons against whom they are brought.'" (quoting 42 Pa. Cons. Stat. Ann. § 8351(a)(2))).  And he cannot do so to the extent his claim hinges on Plaintiffs' initiation of *this lawsuit*, which is ongoing. (*See* Doc. No. 124 at 9 ("Patterson has stated a valid malicious prosecution/abuse of process claim on the basis that Plaintiffs – state-court losers under *Rooker-Feldman* – have instituted *this* sham litigation to dupe this Court into preventing Patterson from enforcing his judgment.") (emphasis added).)  *See Gordian Med., Inc.*, 2013 WL 4457363, at *2 ("Even if the amended counterclaim can be read as alleging a Dragonetti Act claim, any such claim would be premature.  It is well settled law that for claims under the Dragonetti Act the underlying litigation must be final before a counterclaim can be brought.  Here, the underlying litigation is still pending.").

and without leave to amend; the Court finds that leave to amend would be futile as to those claims. *See City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint would not 'withstand a renewed motion to dismiss.'" (citation omitted)). However, the dismissal is without prejudice and with leave to amend as to the abuse of process/malicious use of civil process counterclaim.[9]  Plaintiffs' motion to dismiss is denied as to the declaratory judgment counterclaim.

An appropriate Order follows.

---

[9] Given the vagueness and lack of detail of Patterson's allegations as to this claim, the Court cannot discern whether amendment would be futile.  If Patterson chooses to amend, he must be mindful of the issues the Court has identified, in particular the two-year statutes of limitations.